Stephanie J. Messner- Pro Se
447 4th Ave.
Garwood, N.J. 07027
908-456-4417

U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2019 JUL 24  A 10: 28

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **STEPHANIE J. MESSNER**<br>Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| **STATE OF NEW JERSEY UNION COUNTY**<br>**KARYN R. WEINGARTEN** (in her official<br>capacity of Union County Assistant Union<br>County Prosecutor),<br>**SOMERSET COUNTY SUPERIOR COURT**<br>**FAMILY PART- JUDGE HANY MAWLA**<br>(in his official capacity of Presiding Judge<br>of Superior Court Family Part in Somerset<br>County),<br>**SOMERSET COUNTY SUPERIOR COURT-**<br>**FAMILY PART- JUDGE KEVIN SHANAHAN**<br>(in his official capacity as Family Part Judge<br>under Judge Hany Mawla (Presiding Judge<br>of Somerset County Superior Court- Family<br>Part), **SOMERSET COUNTY SUPERIOR**<br>**COURT: KIMARIE RAHIll** (in her Official<br>capacity serving as Presiding Judge of<br>Somerset County following Judge Hany<br>Mawla's appointment to Appellate Court)<br>**JUDGE KATHY QASIM** (in her<br>Official capacity serving as Family Part<br>Judge of Somerset County)<br>**SOMERSET COUNTY SUPERIOR COURT-**<br>**FAMILY PART JUDGE BRADFORD BURY**<br> (in his Official capacity serving as Family Part<br>Judge of Somerset County<br>**SOMERSET COUNTY SUPERIOR COURT-**<br>**FAMILY PART JUDGE MICHAEL ROGERS**<br>(in his Official capacity serving as Family Part<br>Judge of Somerset County | : <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: | **<u>COMPLAINT</u>**<br><br>Jury Trial Demanded |

SOMERSET COUNTY PROBATION          :
DEPARTMENT - CEDERIC HOWARD and    :
NICOLE BARRACANO                   :
(in their Official capacity as Probation Officers) :
NJ. APPELLATE DIVISION-  Appeal Judges  :
Hon. Lisa Rose and                 :
Hon. Douglas M. Fasciale          :
both in their Official Capacity of Appellate  :
Court Judges                       :
and **John and Jane Doe 1-100**    :

## COMPLAINT

## Jurisdiction

1. This Court has jurisdiction over this matter under 28 U.S.C. §1331. I, the Plaintiff, am maintaining this action under 42 U.S.C. §1983, on my own behalf until or unless a Substitution of Attorney is otherwise provided. The State, Counties and individual Defendants in their official capacity deprived me, the Plaintiff, of Liberty, Due Process and Equal Protection under the color of law by depriving me as a parent who by Court Orders, the legal Guardian and the Custodial parent (PPR) of my fundamental right to the care, custody and control of my minor children without affording me even the minimal procedural protections guaranteed by the United States Constitution.

## SUMMARY

2. I, the Plaintiff from here on in,  seeks in relief to have my FD case moved out of Somerset County immediately to a county not connected in anyway to Somerset County or adjacent to Somerset County (Vicinage 13) which also includes Union County. Plaintiff seeks declaratory and injunctive relief under the Federal Rule of Civil Procedure 23 (a) and (b) (2) on behalf of all persons mothers and/or father's who have been or in the future will be deprived of child custody by Defendants without a prompt and full hearing; as well as monetary damages against the State and County Defendants which under the color of law deprived me, the Plaintiff, of custody, parenting time and major medical and educational decision making of my two minor children without a prompt, full and equitable hearing,  denying me my fundamental right to move with my children freely within the State of New Jersey to a better school system and better neighborhood without the threat of losing custody of my children, denying me my right to have an adjournment to seek legal representation which would have been equitable and blocking me from filing complaints and/or motions while "facilitating" the Parental kidnapping and withholding of the children from me, the custodial parent,  unjustly, causing

1

harm and irreparable damage to the children, my family and my ability to have a relationship with the children today and in the future while the father/Defendant in the case, who was in violation of all Court Orders and meets the criteria for probable cause to be prosecuted according to the N.J.S.A. 2C:13-4a Interference with custody statute gets a free pass from jail, from remedies and sanctions to motivate him to abide by the law, court orders and return the children to the custodial parent and instead of the Judge abiding by the law, court orders, court rules, statutes and moves to remedy the violations, he rewards the father for the parental kidnapping, with the transfer of legal custody and grants retroactive child support to the the father/Defendant, in violation of court orders, from the day he took the children from the custodial parent/Plaintiff thereby misapplying the retroactive child support statute which was meant for the payor facing a "change in circumstance" causing an inability to pay child support directing him/her to write a notice saying what the change of circumstance is e.g. disability, health related issues, inability to work etc. to lower the amount of payment retroactively from the date a motion is filed. Judge Mawla granted retroactive child support to begin accumulating from the day the father took the children with no intent to return them thereby acknowledging retroactive custody without or in violation of Court Orders and the father got rewarded for the Interference with custody, instead of being prosecuted and receiving jail-time and fines. Furthermore, Judge Mawla encourages the Interference with custody to continue under his final Court Order of 7/25/17 which makes a provision, a loophole for the father to continue to withhold the children from parenting time with the Plaintiff at will, randomly, at any time, thereby causing a violation of the Plaintiff's constitutional rights under the 14th Amendment to liberty, freedom, safety, parenting time, equal protection and due process..

3. The Defendants depriving me of my custody rights, the blocking of my right to legal access to file civilian complaints in the municipal court and blocking my access to file motions within the Superior Court- Family part to Enforce Litigant's rights, restricting my ability to move to a better neighborhood within the state of New Jersey, denying my right to have an equitable hearing by not allowing an adjournment to retain an attorney and be represented by legal counsel like the Defendant/Adversary are violations of my right to Due Process and Equal Protection clause which is in violation of the United States Constitution- the Fourteenth Amendment which pertains to this Jurisdiction.

4. The Defendants in this case allowed the Interference with custody and the illegal withholding of the children from me, the custodial parent to continue for the duration of 11 months prior to transferring custody legally, with no parenting time at all and very restricted contact and in which the children were made to remove me as a contact from their emails, social networking sites, and phone numbers changed while under the control of the children's

2

father and his wife who limited, restricted and monitored the children and their contact with me in an attempt to extricate me from the children's lives in what I call an act of "Parenticide" in which the children are made to detach from the targeted parent and exclude them from their lives.

5. While being withheld from me, the children decompensated psychologically, mentally and emotionally by the alienation the father imposed and the court allowed. They developed an irrational anger, hatred toward the Plaintiff directly related to the father and stepmother's coaching as per Dr. Walsh testimony on 9/27/2016 and the counseling sessions with Dr. Walsh before and during trial dates in which he stated that the children were told that they couldn't trust their own reality, that they were incapable of making safety decisions for themselves and for this reason, he stated, an adult/parent had to make decisions for them. This was when they expressed that they wanted to return home to their mother's care to go on vacation that was planned and he admitted that he was the CAUSE AND EFFECT of the children's changed attitudes toward me 180 degrees in my absentia and thus the children were irreparably harmed and are still currently being harmed as they are constantly thrust in the middle and used as weapons against me. The damages are cumulative and ongoing and because the trauma initially occurred while the children were still children it may take until adulthood to see the damage that has been caused while under the watch of the Court.

6. The officials especially Judge Hany Mawla, would argue that he has absolute Judicial immunity however, when a Judge departs from Judicial procedure, knowingly or in the context of "should know" by way of his position and education, violates the NJ statutes, court rules, adjudication process, refusing to follow case law that delegates the procedural framework that is the law by which a Judge is bound to abide by in order to provide an equitable hearing in adjudication or when a Judge pre-decides a case prior to adjudication, redefines the laws and/or knowingly misapplies them even to the extent of violating the very title nine N.J.S.A. 9:2-4 statute that the NJ State Legislature provides as the reasoning, procedural framework and standards that dictate as law that a Judge is bound by and if the Judge fails to protect under this law or abide by the law and make decisions that are not in the best interest of the children according to this law or statute by which a Judge must adjudicate and comply with in opposition to what the legislature defines as what is in the "Children's best interest standard", he/she must be held accountable because he/she knows the law and manipulated it to the benefit of Defendant/father in his favor when he knew by the statute guidelines that the Defendant's actions are illegal, criminal and were hurting the children and the Plaintiff.

7. In this case, Judge Hany Mawla sat back and allowed the father to change the children's schools on May 21, 2016 to ones closer to his house three months

before 8/17/16 and then on that day of the hearing, granted the father the end of summer vacation time beginning on that day with a return date to the Plaintiff on 8/22/17 and when the father did not return the children, Judge Mawla allowed the withholding of the children from the Plaintiff, isolating the children from their mother, friends, mother's family and allowed this to continue for months with restricted contact with the Plaintiff. During this time Judge Mawla was denying the Plaintiff all of her multiple filings of emergent OTSC while allowing Dr. Walsh to continue to see the children before and around trial dates s/p the submission of his final evaluation report and then shifted the burden of proof on to the Plaintiff by adjudicating, not on her move from South Bound brook to Garwood NJ, the "change in circumstance" by which Judge Shanahan opened the case but on the "self created" circumstance "self-created" by the father in this case of parental kidnapping thereby, deviating from the judicial framework and misplaced the blame on the children in what I call the "Scapegoat Phenomenon" for the violation of the Court Orders and not the adult who admitted that he was making these illegal decisions with his current wife, supported by his own expert witness testimony and making the children take the blame instead. For these actions, the Judge should not only NOT be granted immunity but be impeached and brought up on criminal charges under the N.J.S.A. 2C:13-4a Interference with Custody statute as a third party co-conspirator and third party accomplice in the parental kidnapping of the children.

## BACKGROUND

8. The first violation of my Constitutional rights begins with restricting my move within the State of New Jersey see below followed by denying my requests for legal representation see excerpt of the transcript of the hearing before Judge Shanahan on 8/19/15 as follows…

Mr. Gussis: "She wants to move 20 miles apart." "She can reside anywhere in Somerset County, but there's no reason for her to take the girls out of the County."
Court: Mr. Gussis, I mean that's just…I mean where legally…. I mean give me some basis from which I could say that a move from Somerville…Somerset County to Union County is in and of itself AGAINST a child's best interest?" "How could I possibly find that?" (8/19/2015 Transcript- Judge Kevin Shanahan-,p.8,20-25 p.9,1-7). The Court moved forward ordering of plenary hearing departing from judicial procedure as in the Supreme Court ruling Lepis v. Lepis..

4

This case presents a situation wherein on 7/2/2015, the Plaintiff filed for a Change in Venue with no other requests for parenting time or child support modifications and in return was served on 8/4/2015 a response that Defendant cross-motioned for transfer of custody of the children. Simply put, Appellant moved from Somerset to Union County and upon request for "vacation time", Respondent took the children 8/17/16 and refused to return them indefinitely. The Court erred in finding the move a prima facie change of circumstances and both the lower Court and Appellate Court erred by allowing the self-help that Respondent engaged in and rewarded him with a transfer of custody and retroactive child support back to 8/17/16.

The Plaintiff sought legal representation due to a "consequence of magnitude" which involved potentially losing custody of their children but was unable to get an appointment so she faxed a letter to Erica Carmen on 8/12/15 to request an adjournment of a hearing scheduled on 8/19/15. Her faxed request was denied and her verbal requests were ignored throughout the hearing before Hon. Kevin Shanahan on 8/19/15 (Transcript p.11,22-25, p.12,1-2).

Without being allowed an adjournment or to be represented by Counsel, the plenary hearing was ordered even though Respondent never met his burden of a prima facie change of circumstances. The Appellant was denied a reasonable adjournment to obtain Counsel of her choosing.

The Defendant/motion/Presiding Judge Mawla knew there were Court Orders in place designating me the custodial parent PPR since 2007, knows the N.J.S.A. 9:2-4 title nine statute by which he is to adjudicate based on this legal standard and he knows the criteria the legislation set for parameters of what constitutes the Best Interest of the Children standard and he not only permitted the violation of the Court Orders and nullifying his own but permitted the violation of my parental rights and the rights of the children according to the statute which is a harmful deviation from the standard.

Judge Hany Mawla was aware that the father in this case, had a history of domestic violence, had admitted been peeping into my windows of my second story apartment by use of his scoped boom truck which constitutes stalking under N.J.S.A. Domestic Violence Act, had admitted to entering my home multiple times without my knowledge and/or consent in violation of the civil restraints applied to him in the 9/17/2007 Court Order barring him from my home, had been Court Ordered to 6 months of anger management classes, was in violation of the Court Orders by taking the children for "vacation time" and never returning them and that at the commencement of the child custody hearings, the Father's wife who's forensic test scores indicated a moderately severe mental disorder purchased firearms, a .22 caliber glock and a .22 caliber rifle. What is concerning is that she tested

5

positive for  Bipolar 1 with Psychotic features, paranoid personality disorder, narcissistic personality style, grandiose, vindictive, malicious and in fact the forensic outsourced testing that was done by his own expert witness.  This explains some of the behaviors that indicate no regard for authority  or mine and the children's rights and welfare.  The refusal to co-parent on any level and the interference with custody, violation of court orders and use the children as weapons, scapegoats etc. would disqualify the defendant and his wife from the transfer of custody of the children over to them but Judge Mawla ignored the facts in this case and even refused my petitions and requests, expert witness recommendations for therapy for the children that they need.  The eldest child in her testimony stated she needs to get rid of her anger but Judge Mawla ignored her needs and did so because he stated that I didn't go to therapy however, he ignored the billing I provided as evidenced that I went prior to and for more sessions than the children did before the Defendant stopped bringing them.

The mental Disorders flagged in the forensic testing that Judge Mawla ignored include Antisocial Personality Disorder, Narcissist Personality Disorder, Bipolar 1 with Psychotic features, Mood cycling Disorder, Narcissist Personality Disorder, Turbulent Personality Disorder but Judge Mawla ignored the test results and Dr. Franklin's PhD's testimony and cross examination testifying that the behaviors of the Father in this case demonstrate the criteria to indicate that the testing was accurate and show that the Father's inability to co-parent would disqualify him from being awarded custody of the children and yet without any merit or cause, the motion Judge Mawla allowed the children to remain in restricted contact and isolation from me in the care of the step mother who Dr. Walsh stated on 11/1/16,  had perceived slights against me, purchased firearms, a .22 caliber glock and a .22 caliber rifle at the commencement of the child custody hearings and the children's mental state and attitude changed from I love my mother, I sort of miss my mother, I hate my mother to "she (me) is not my mother anymore" all in my absence and while being withheld by the father and stepmother who meet the criteria for probable cause under the N.J.S.A. 2C:13-4a- Interference with Custody Statute.

I only saw the children a few weekends during the course of nearly a year with no parenting time and trial was delayed for no known reason, which is in violation of the title nine statute of what is in the best interest of the child **9:2-4 - Custody of child; rights of both parents considered** 9:2-4 and my Constitutional rights to have a prompt hearing and enforcing the court orders to protect my rights and to provide a remedy to motivate the father to return the children.

The continued interference with custody following these visits with the children continued resulting in multiple police  calls and interventions and

6

reports by the Garwood Police in Union County however the Defendant continued to interfere with custody by picking the children up at their schools early ahead of me and refuse to return them home.

Union County Assistant prosecutor Karyn R. Weingarten issuing her verbal directives to the Garwood Police instructing them to deny me the legal access to be able to file a civilian complaint under the 2C:13-4a Interference with Custody statute. This deprived me under the U.S.C. 14th Amendment my rights to be protected.  She stated her reasoning was her review of police reports (not court orders) and talks with Sgt. Johnson in the Sheriff's department who informed me he was informed by Judge Mawla that this was to be considered a "custody dispute."

The Legislature finds and declares that it is in the public policy of this State to assure minor children of frequent and continuing contact with both parents after the parents have separated or dissolved their marriage and that it is in the public interest to encourage parents to share the rights and responsibilities of child rearing in order to effect this policy.  In any proceeding involving the custody of a minor child, the rights of both parents shall be equal.

The Defendants In this case demonstrate that they in fact did, violate my rights to due Process and equal protection under the color of law while blocking my access to filing a civilian complaint at the municipal level in two Counties for a 2C charge that carries a consequence of jail time and fines which is N.J.S.A. Interference with Custody statute modeled after the Federal's international law that prohibits, recognizes and finds that Parental kidnapping is a crime.  In my case, there was a protection of the father and of Judge Mawla's decision without acknowledging the facts or  abiding by the COURT ORDERS in which each person listed as a Defendant had no regard for, no regard to me or our children's rights.  We were not treated equal and this case was not equitable as evidenced by the 11/1/2016 hearing, pm session when Judge Hany Mawla stated, "Sanctioning the Defendant (father) the Court sees this as more violence than not in terms of enforcing the Court Orders or the Plaintiff's (and children's rights) to parenting time." What is important is that this statement was made prior to either party testifying and the only thing Judge Mawla knew was that the father was a man and the mother/me/the Plaintiff was a woman which is a discrimination based on gender and is a violation of my constitutional under the equal protection clause of the 14th Amendment.

In addition, at the same time, Judge Mawla stated he was denying the father's Order to Show cause for child support relief because he stated that he already enforced the Court Order of 10/20/2008 where I was designated the Custodial Parent on 9/27/16 where he ordered that child support must be

7

paid and the Order of 10/20/2008 enforced.  On 11/1/16 Judge Mawla stated that to grant the father the relief now would not only predict the "fait accompli" that he was predeciding the case prior to adjudication and it would also nullify his Order of 9/27/16. enforcing the Court Order of 10/20/2008 but on 1/3/17, when the Probation Department was coming after the father for arrears in the thousands, the Defendant/father's attorney wrote a letter to Judge Mawla reminding him that the father should not be punished and so Judge Mawla stopped the probation department from pursuing the Defendant/father and granted the relief requested by ordering that no disbursement of any funds that would be deposited into the account would be disbursed to me and to stand down and not enforce actions against the father, further evidence of violating my rights, children's rights, the Court Orders.

The Blocking of motions/verbal directives being issued to officials serving in the capacity of law enforcement to stand down is a demonstration of the abuse of power by over-reaching into the Union and Somerset Counties municipal/criminal jurisdiction, referring to my case as a "custody dispute" and instructing them that he is going to be the one to deal with my matter and to send me back to family court.  Calling this case a "custody dispute" is highly inappropriate when by multiple Court Orders, I already had legal custody of both children with Court Orders on the books  and directing my attorneys not to allow me to file motions stating that he is not going to hear any motions and will deal with all issues at the plenary hearing in which there was no date for not only delayed trial further and caused the children to be in isolation longer but it blocked me from the ability to file to dismiss the case based on the violation of pretrial discovery of submitted insufficient interrogatories, Enforcement of litigant's rights, Contempt of Court or even to file to have a witness like Dr. Walsh or Judge Mawla recused.

Judge Mawla's  statement," The Court views sanctioning the Defendant as more violence than not in terms of enforcing the Court Orders or the Plaintiff's rights to parenting time," was made in response to another Order to Show cause filed by me to return the children and to sanction the Father in parenting time after it was proven during the am session, that the Father's expert witness, Dr. William F. Walsh, who was serving in the capacity of a child custody evaluator was coaching/counseling the children after his final evaluation report was submitted thereby a violation of the Board of Psychological examiners state regulations governing serving in this capacity and is currently under a State Investigation with the New Jersey State Board of Psychological Examiners that is still pending in the Legal department.

During the 11/1/16 am session, Dr. Walsh admitted that his counseling sessions, which were conducted after the children on 8/19, 9/26, were taken and withheld from me indefinitely on 8/17/16 by the father, that he and his

counseling of the children was the cause and effect of the children changing their minds from wanting to return home to their mother to not wanting to return home.  Dr. Walsh stated in a text to me on 7/5/16, "You can only dictate procedure and content if you are the one willing to pay for the sessions," he testified that he did not know the statute very well if at all or have much experience as a child custody evaluator.  He violated the protocol for administration of the tests by issuing the father an outdated test from 1994 and reading him the questions thus lowering the clinical scores and administering everyone else the 2015 MCMI IV version. Judge Mawla was aware of these procedural errors, conditions created in the children by coaching from Dr. Walsh and the Father/stepmother in testimony given by Dr. Walsh on 9/27/16 but disregarded the evidence.  Judge Mawla eventually by Court Order of 7/25/2017 transferred custody of the children from the Plaintiff to the father/Defendant in this case.

## PARTIES

9.  **Stephanie Messner**- Plaintiff, mother of two daughters O.H. born 9/13/2000 now 18 years old and A.H. born 11/2/2004 now 14 years old.  It is important to note that the children were only 14 and 10 years old at the time of the first violation of statutory procedure and violation of Due Process by both Judge Hany Mawla and Judge Kevin Shanahan that deprived the Plaintiff her civil rights to request for an adjournment to hire or be represented by counsel in a case where the father of the children (who was represented by counsel at the time) was seeking a transfer of custody of the children because she moved from South Bound Brook to Garwood New Jersey.

10. **Defendants, Union County and Somerset County** ("County Defendants") are subdivisions of the State of New Jersey and are a "person" in all respects within the meaning of 42 U.S.C. §1983.  County defendants participate fully in enforcing Superior Court Orders through a variety of county agencies including law enforcement agencies, child welfare agencies and county visitation offices.

11. Individual Defendants sued in their official capacity are officials tasked with administration and enforcing New Jersey Law, and are sued in their capacity as administrators tasked with enforcing policies which deny plaintiff's constitutional rights under color of law; they are persons within the meaning of 42 U.S.C. § 1983 with respect to declarative and injunctive relief sought in this case.

12. **John and Jane Doe 1-100** refer to any entities or individuals that may need to be included in this case such as other public servants, officials and individuals that may need to be included at a later time.

9

## STATEMENT OF FACTS

13. The parties Miklos Hajdu-Nemeth and Stephanie Messner  FD-18-340-1 had a long-term premarital engagement in which two children, Olivia, DOB 09/13/00 and Alexandra DOB, 11/02/2004 and were born. The Plaintiff ended the relationship, the father (Defendant in FD case) has a history of Domestic Violence was Court Ordered to do 6 months of anger management classes. The Respondent viewed the Appellant's refusal to reunite as "rejection." When thinking about the Plaintiff talking to other men, the Respondent lamented, "It makes me jealous."

14. The Plaintiff was designated the custodial parent of the children since 2007 and another Court Order on parenting time and custody was issued dated 10/20/2008 designating the Plaintiff as the custodial parent (PPR) and the Defendant (PAR)., During the course of nearly a decade, the Plaintiff demonstrated that she could co-parent, involve the father/Defendant and foster the relationship between him and the children while being a single parent.

15. It is important to correct and clarify at this time that this case is being misrepresented as being a "CUSTODY DISPUTE" when in fact it is not because this is not a new divorce, there are Court Orders as early as 2007 designating the Plaintiff as the custodial parent of the children. This case involved a request by the Defendant for a "CHANGE/TRANSFER" of custody in which the Defendant had to meet the burden of proof of what harm was being caused to the children as a result of my move from South Bound Brook in Somerset County to Garwood in Union County and that burden was never met.

16. In  September of 2007 and October of 2008 Court Orders were issued designating the Plaintiff as the PPR, custodial parent of the two children. A Decade later in 2014 when the Appellant planned to marry, the Respondent became irate and began a campaign to turn the children against her during his parenting time while sending the Plaintiff text messages threatening to take the children from her. She filed for a Change in Venue to where she and the children were residing now in Union County and his response was a request to the Court for transfer of custody of the children over to him.

17. The Respondent stated, "I didn't think David (Mr. Beyers) would work out with Stephanie". He refused the Appellant's requests to sign to renew the children's passports which were about to expire and needed to involve the children to participate in the wedding which involved a cruise ship.

10

18. On 8/3/2015, Miklos Hajdu-Nemeth filed for custody of the children based on the Plaintiff's move from South Bound Brook New Jersey to Garwood, New Jersey and that it affected his ability to have parenting time with the children based on her move from South Bound Brook NJ to Garwood NJ.

19. I was served on 8/4/2015 with the motion for a change of custody of the children. I had not been able to obtain an appointment or retain legal counsel during that week and so on 8/12/2015, I faxed a written request to Somerset County Family Court: Attn: case manager Erica Carmen for an adjournment of a court hearing dated 8/19/2015 for the purpose of seeking to be represented by legal counsel but Judge Kevin Shanahan denied my requests both the written and during the 8/19/2015 hearing. This was a violation of my Constitutional rights under the 14th Amendment for Due Process in that this hearing was not equitable. The Defendant was represented by legal counsel and I was not. I am not a lawyer or understand what a "significant change in circumstances" meant or the case law that determines if a prima facie case was presented or made at the time of the Judge's ruling. Had I been represented, it would argued that there had been no change in circumstance that affected or harmed the children or the parties resulting from a move within the state from one county to another and the case would have been dismissed.

20. Judge Shanahan stated on the record that there was no legal argument for his ruling but ruled it anyway. Any statement that I made about the Court Order being outdated was due to the defendant refusing to make his parenting time and not because there was a need to change custody and had I been represented, I would not have made that statement in a way that it could be used against me or misconstrued.

21. According to the New Jersey Family court rule 4:3-3, the Presiding Judge or Assignment Judge are the only Judges allowed to be hearing any cases involving requests for a Change in Venue which would have been Judge Hany Mawla in this case, however, he deferred my request for a change in venue over to Judge Kevin Shanahan who made a ruling to deny my request in Judge Hany Mawla's behalf while also denying my written faxed request for an adjournment to seek to hire legal counsel and then ignored my multiple requests to be represented by legal counsel for the hearing before him on 8/19/2015.

22. The Court Rule for hearing on a Change in Venue was to be heard only by a Presiding Judge which was Judge Hany Mawla at the time however, he instructed Judge Kevin Shanahan to decide for him and who DENIED her request for a Change in Venue and simultaneously ruled that there was a "change of circumstance" although he also stated that he had no legal argument to do so, to open this case to best interest analysis and mediation

11

and if that was unsuccessful to trial for the reasons "the children were older" at 10 and 14 years old and the "Plaintiff moved."

23. Nine months later on 5/21/16, the Respondent premeditated the transfer of the children into alternate schools without the Appellant's knowledge or consent and three months later at the end of summer, on August 17th, 2016, came to the court with "unclean hands" with requests for end of summer vacation with a return date agreed upon by both parties but refused to return the children home to the Appellant who was the custodial parent. According to the Law, *Baures vs. Lewis, Lepis vs. Lepis*, the burden of proof lie with the Defendant to prove what harm was caused to the children by the Plaintiff's move from South Bound Brook, New Jersey to Garwood, New Jersey but on 8/17/2016 After the hearing before Judge Hany Mawla, who stated that the Defendant/father can take the children for what was to be some added "vacation time" at the end of summer, the Defendant/father refused to return the children to the custodial parent, Judge Hany Mawla, the presiding Judge, took over the case and shifted the burden of proof onto the Plaintiff to prove Parental Alienation vs. Estrangement and allowed the Defendant to withhold the children indefinitely which caused harm and irreparable damage to both the Plaintiff and the children's relationship and shifted the burden of proof with the Respondent's "self created" condition in the children which is "Alienation." This shift in burden is in itself a departure from standard procedure.

24. The Appellate Court affirmed Judge Mawla's decision to redefine the right of first refusal according to how the parties were already acting but this was during a "self created" change in violation of Court Orders by the Defendant/Father and the indefinite withholding of the children from the Plaintiff while substituting his wife in her place which was in violation of all the court orders, the Right of First Refusal clause in the 10/20/2008 court order and Parental Kidnapping/Interference with custody is both a statutory crime and a federal crime regarding the damage parental kidnapping causes the children by the criminal act of deprivation of both the Children and the Plaintiff's constitutional rights under the U.S.C. Fourteenth Amendment.

25. The children were parentally kidnapped on 8/17/2016 and withheld with no parenting time for the Plaintiff/mother but left in the custody of the stepmother who has been a driving force behind the acrimony between the parties and who also at the commencement of the child custody hearings purchased firearms, a .22 caliber glock and a .22 caliber rifle while instructing the children to severe their contact with their biological mother and start calling her "REAL MOM". (MCMI-IV TESTING 2015). The children were made to remove the Plaintiff from their social networking sites, email addresses were changed, new phones were given out and phone numbers and restricted and monitored contact with the Plaintiff/mother. This take

12

over of the children caused alienation between the children and the Plaintiff as evidenced by text messages and reports of the children attitudes changing from, "I love you too mom" a week before they were taken to "I sort of miss my mom" on 10/10/2016 to "bottled up hatred" toward their mother to "She's not my mom anymore" all in the absence of the Plaintiff.

26. The judicial procedure established in the State of New Jersey as in *Lepis v. Lepis* was vacated and Judge Hany Mawla allowed a "self created change" and condition to be the subject matter and not the "change in circumstances" on which the case was opened.

27. Judge Mawla ignored Dr. Walsh, hired by the father/Defendant/ Respondent who was acting on behalf of the Respondent to secure custody of the children and admitted to being **the cause and effect** of Alexandra changing her mind about returning home to her mother/Appellant followed by his admission on 9/27/16 of the Respondent coaching and instilling irrational fear onto the children about their safety on during this "vacation" time with the intent to complete the transfer of the children into the new schools and never return the children permanently which is both a Federal and Statutory crime.

28. The Plaintiff's argument in this case is highly supported by both Federal and state law.The Respondent and Counsel continue to misuse the term "relocation" to describe the Appellant's move to an adjoining county within the State of New Jersey.

29. The Fourteenth Amendment of the US Constitution Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. Included is an individual's right to pursue liberty, which includes a right to remarry and/or move freely within the State of New Jersey.

30. When Mr. Beyers had proposed marriage and the Plaintiff accepted the marriage proposal, she didn't expect her move to Garwood or getting married to carry a consequence of losing custody of the children. The Respondent ignores the fact that according to the Child Relocation Act, enacted by the Senate and General Assembly of the State of New Jersey or R.S. 9:2-2, "relocation" definition #2 states, "Relocate" means a permanent move out of the State of New Jersey and specifically excludes intrastate moves."

13

31. The Plaintiff's motion presents an issue of Public importance and a danger to the precedent it sets as a blue-print for obtaining custody of a child using illegal means to be granted legal custody and this motion presents a valid argument that has deprived the Plaintiff of her constitutional and civil rights as a citizen of the United States of America to be protected by the law from a criminal act that would deprive her of her inalienable right to parent her own child or be protected by the Court Orders that have been set in place historically for over a DECADE which is the status quo and not misinterpreted as a reason for custody to change.

32. The Defendant/father in this case was not showing up for his parenting time and thus the Plaintiff had stated that there may be a reason for modification but certainly not to give the parent that was not willing to drive to make his parenting time, custody of the children as the Appellate court misconstrued but to adjust his time with the children according to what he was willing to and in agreement to changing which was a reduction of his parenting time midweek and Sunday's into Mondays in which he stated on the record he did not want to do, he could not do and would not do because he did not like 5pm traffic and he did not want to drive from Somerset to Garwood to make his parenting time schedule.

33. FIRST JUDGE: JUDGE KEVIN SHANAHAN- SOMERSET COUNTY SUPERIOR COURT FAMILY PART- TO HEAR CHANGE OF VENUE (that by court rule has to be addressed by the Presiding Judge (Mawla) PLUS CROSS MOTION FOR A CHANGE OF CUSTODY

34. Judge Shanahan had no authority to rule on behalf of Judge Mawla for an application made for a Change in Venue. Only, the Presiding Judge or assignment Judge can hear that case so the Plaintiff's case went unheard at the same time Judge Shanahan DENIED the Plaintiff's request for a change in venue for the reason he stated that Judge Mawla would never agree to it, he also denied the Plaintiff's requests for an adjournment to be able to hire and be represented by legal counsel which she requested both by written fax addressed to case manager Erica Carmen and multiple times during the hearing on 8/18/15. After Judge Shanahan denied the Plaintiff's requests that would make the hearing equitable and fair, he remarkably stated," Where legally...give me some basis... how could I possibly find that?...How can I say that moving from one county to another is in itself AGAINST a child's best interest?" thereby an admission that he did not have the legal argument to make such a ruling that there was in fact, a CHANGE IN CIRCUMSTANCE that was harmful to the children which would warrant a hearing to determine a change in custody and this is what would have been successfully disputed had the Appellant been represented by legal counsel at that time as the Respondent was. The Appellant being refused an adjournment to hire legal counsel for this hearing was prejudiced. It was an injustice to her as it

14

was not an equitable hearing as the denial of an adjournment to appear at this hearing with legal representation left her disadvantaged and handicapped as the Respondent had the benefit of legal representation and the Appellant did not have that same protection.

35. The 6th Amendment created in 1791 , dealing with criminal cases but nevertheless cases in which there is a "consequence of magnitude" in which one party is represented and the other is not could result in unfair rulings, punishments or decisions that carry a "consequence of magnitude "which include a loss of a driver's license or a fine of $800.00, in this case a loss of custody of the children, withholding the children from the Appellant for nearly a year, irreparable damage done to the relationship between the Appellant and the children, a new order that allows the interference with custody to continue and imputing THOUSANDS of dollars of child support while she was the custodial parent. Although the Respondent/George Gussis is right, there is no right to counsel in family law cases, a right to an adjournment to seek to be "represented by counsel in such a hearing" as Judge Shanahan stated should have been granted and the outcome of this case would have concluded much differently in fact custody would never have changed, the isolation of the children would never have occurred and the irreparable damage that continues would not have developed or continue over the course of the long span of time that the children were withheld.  To have one party represented and the other denied that same protection is a violation of Due Process under the U.S.C. 14th Amendment.

36. The ruling Judge Shanahan made determining a "significant change of circumstances" on 8/19/15 needed to show that the current court order should be modified because the move negatively affected the Children and there was no prima facie showing, it should have been what was to be adjudicated to meet the prima facie burden but was not and thus there was a departure from the judicial procedure. The Respondent made it clear that it was his "choice" not to make his parenting time because he did not want to drive, he didn't like 5pm traffic, a mere inconvenience for himself as the children were happy, loved both parents equally, were honor-roll students with friends and active in the community while residing in Garwood with the Plaintiff. It is not enough for a parent to show just a genuine change of circumstances under the statute.  The parent must show that the undoing of the prior order would be in the best interests of the child.

37. To establish a prima facie case for modification of a custody arrangement, the moving party must show a substantial change in circumstances that affects the welfare of the child such that her best interests would be better served by modifying custody. *Mimkon v. Ford* , 66 N.J. 426, 438 (1975); *Hand* , supra, 391 N.J. Super. at 105; *Chen v. Heller* , 334 N.J. Super. 361, 380 (App. Div.

15

2000); *Sheehan v. Sheehan* , 51 N.J. Super. 276, 287 (App. Div.), certif. denied, 28 N.J. 147 (1958).

38. A judge must consider a request for modification in accordance with the procedural framework established by the Supreme Court in *Lepis v. Lepis*, 83 N.J. 139, 157-59 (1980). Under Lepis, the first question is whether the party seeking modification has made a prima facie showing of a substantial change in circumstances. Id. at 157; *Hand*, supra, 391 N.J. Super. at 105. If a prima facie showing is made, then *Lepis* requires the judge to consider whether discovery is needed and to define its scope. *Lepis*, supra, 83 N.J. at 157-58; R. 4:10-2; 7

39. R. 5:8-1 to -6. Following discovery, if there is a genuine dispute of fact regarding the welfare of the child, then a plenary hearing must be held. *Lepis*, supra, 83 N.J. at 159; Hand, supra, 391 N.J. Super. at 105.

40. Nowhere does the Judge state how this local move from South Bound Brook to Garwood NJ. negatively affects the children or the Respondent's ability to drive to make his parenting time. In regards to making his parenting time obligations, the Respondent states he just didn't want to drive, "I just don't want to go, that is all" *The Respondent's unwillingness to drive is not a reason to change custody. There is no current law or rule that states that Appellant needs permission from the Respondent to move within the state.

SECOND JUDGE- JUDGE MAWLA TAKES OVER AFTER LAST COURT HEARING ON 12/18/15 BEFORE JUDGE TOBER TO COMMENCE ON 8/17/2016, THEREBY DELAYING TRIAL 8 MONTHS WHILE HE WAS TRAINING FOR A PROMOTION TO THE APPELLATE COURT.

41. The trial date occurred on 8/17/2016 before Presiding Judge Hany Mawla whereas the Defendant/Respondent/father of the children requested some additional end of summer vacation time with the children. Judge Mawla granted it knowing from earlier submissions that the Defendant had registered the children into alternate schools and premeditated the takeover and transfer of the children.

42. From 8/17/2016, when the Respondent took the children after the hearing and withheld the children refusing to return them to their mother/custodial parent/Plaintiff, 7 Months went by before either party was able to testify and the children were withheld from the Appellant with no parenting time but a couple weekends in the course of nearly A YEAR…. prior to the "lengthy 9 days of trial" and prior to either parties testimony, Judge Mawla was making decisions favoring and protecting the Respondent at the expense of the Appellant's civil rights and parental rights by Court Order as well as the rights of the Children. During these 7 -8 months from  8/17/16- 3/28/17, to

16

the first trial date of 3/28/17 Judge Mawla had already allowed the Respondent to withhold the children indefinitely in violation of all Court Orders, refuse to sanction or remedy the interference with custody or regard the need of protection for the Appellant and children's rights.

43. The Plaintiff/mother/Ms. Messner filed OTSC which were denied, any false allegations of abuse were investigated by the DCP&P and the investigation was dismissed against Ms. Messner with no substantiation of abuse or neglect.

DEFENDANT KAREN WEINGARTEN- ASSISTANT COUNTY PROSECUTOR UNION COUNTY

44. KAREN WEINGARTEN- UNION COUNTY PROSECUTOR'S OFFICE directs the police to not allow me to file civilian complaints in the municipal court. The Garwood police, Captain Stoffer and Chief Wright stated that they were not being instructed by Karen Weingarten not to allow me to file a civilian complaint because Sergeant Johnson from the Sheriff's department called Judge Mawla and was told that this was a custody dispute and that he was hearing the case and determining action at the future plenary hearing. This was not a new divorce, court orders were on the books and me, the Plaintiff was the custodial parent all of the children's lives and this was the status quo. Karen Weingarten, the County Prosecutor refused to respond to letters and exhibits of Court Orders that were faxed to her office on multiple occasions and met with no response. The Police continue to refuse to allow me to file under the N.J.S.A. 2C:13-4a Interference with custody statute.

45. The Franklin Twp. Police in Somerset County refuse to allow me to file stating that this is a civil case when I told them that this is a criminal charge, nevertheless they stated that they are aware that we have a court case pending and directed me to address the issues of Parental kidnapping in family Court with Judge Mawla.

46. Judge Hany Mawla gave verbal orders and directives to my attorneys that he refuses to address or hear any motions and not to file any motions in my behalf, these motions include my complaints of Interference with Custody, Enforcement of litigant's rights, Motions for dismissal due to Incomplete interrogatory submissions, Contempt of Court or motions to request another Judge or recuse one when there is evidence of impartiality etc.

47. Judge Mawla disregarded all of the Court Orders including his own Court Orders enforcing the 10/20/2008 Court order which recognized the Plaintiff as the custodial parent. He refused to say or admit that Miklos/Defendant/Respondent was in violation of the Court Orders and instead, put the blame on the scapegoat children who were 10 and 14 at the

17

time, saying that they could make parenting time and custody decisions because they were older and mature while disregarding that they were under the control of the adults around them and conditioned by Dr. Walsh who admitted to being the cause and effect of the children refusing to return to their mother.

48. Judge Mawla, although he regards Dr. Franklin PhD as being the most credible, he also disregarded Dr. Franklin  PhD 4 hours of testimony and  4 hours of cross examination as a professional witness to the children before and after they were taken and abducted being withheld from their mother, the Plaintiff, the drastic changes in their mental health, behavior and his diagnosis of PARENTAL ALIENATION and harm to the children.

49. Judge Mawla ignored all the times that the Plaintiff attended the Court Ordered therapy and the Defendant had the children stop thereby refusing to Order the much needed therapy that all the expert witnesses testified that the children needed because he stated that I did not go which was false, I went more times than the children before the Defendant Miklos stopped the children from going .

50. Judge Mawla issues new Court Order transferring custody to the Defendant blaming the Plaintiff as the cause of "estrangement" without any supporting evidence and creates a loophole for the Defendant to continue interfering with custody which violates the criminal NJ statute and the Plaintiff's parental rights and the children's rights to parenting time with the Plaintiff. In the Order he also redefines the RIGHT OF FIRST REFUSAL clause to expand to third parties, the very thing it is designed to prevent.

51. *Troxel v. Granville:* 530 U.S. 57 (2000),  a U.S. Supreme Court before Sandra Day O'Connor, William Hubbs Rehnquist, Ruth Bader Ginsburg and Stephen G. Breyer states that the Due Process Clause prevents the government from intruding on fundamental rights and liberty interests, one of which is the liberty interest that parents have in controlling the care and custody of their children. "The state may not give rights to any third party to challenge any decision by a parent regarding visitation with that parent's child in state courts.

52. Giving a state court judge the discretion to determine the best interests of the child in these situations violates due process, especially when there is no allegation that the parent is unfit. It is reasonable to presume that parents will act in the best interests of their children, so the state should not interfere and take that role away from them." To be put simply, this ruling states that there is a fundamental right under the Fourteenth Amendment for a parent to oversee the care, custody, and control of a child.

18

3rd JUDGE KATHY QASIM- 2/20/208

"The public interest dictates that the Family Part must enforce its own orders" ~ Hon. Kathy Qasim~

53. Judge Kathy Qasim states that the Public Interest dictates that the family part enforce their own orders and she provides the N.J.S.A. Interference with Custody statute as part of her response in her Orders warning the public about the consequences of violation of the statute however on 2/20/2018, Judge Kathy Qasim unjustly adopts Judge Mawla's redefinition of the RIGHT OF FIRST REFUSAL clause expansion to include third parties by granting superior custody rights to the stepmother over the Plaintiffs parental rights as the PAR, JOINT CUSTODIAL AND BIOLOGICAL PARENT.  This expansion to the stepmother while the father of the children is inpatient hospitalized for several months is a violation of this U.S. Supreme Court ruling of *Troxel v. Granville* 530 U.S. 57 (2000) and a violation of the Plaintiff's constitutional rights under the 14th Amendment.

54. Judge Kathy Qasim- First Judge to hear OTSC on a motion filed on 2/20/2018 after the father, now custodial parent by Judge Mawla's 7/25/2017 Court Order DENIES Plaintiff/Joint custodial parent, Stephanie Messner temporary custody of the children after the Father, newly appointed custodial parent is inpatient hospitalized for "several months" because she states without any hearing and only relying on ex parte communication from the Adversary, that "the Plaintiff doesn't like the new custody arrangement" without fact finding, pausing to schedule a hearing or delving into the emergent matter demonstrating prejudice against the Plaintiff/Mother/Stephanie Messner in favor of Defendant/Father of the children/Miklos Hajdu-Nemeth without so much as a hearing on the "change in circumstance" which was emergent, leaving the children in the custody of the third party step parent  as the custodial parent granting the third party superior rights over the biological parent because of the new Court Order that redefines RIGHT OF FIRST REFUSAL clause to expand to third parties which is contradicted by Troxel vs. Granville that protects a parent's constitutional rights under the 14th Amendment to specifically exclude third parties from any custody rights to the children.

APPELLATE COURT JUDGES
HONORABLE LISA ROSE and HONORABLE DOUG FACIALE

55. Recap, Honorable Judge Shanahan on 8/19/15 admitted that he had no legal argument for his decision yet Hon. Lisa Rose and Hon. Doug Faciale of the Appellate Division supported Judge Shanahan's decision that there was a legitimate change of circumstance, in which they determined was the children's maturation at the ages of then, 10 and 14 years old and my

19

residential move from one adjacent county to the next in the State of New Jersey was a reason to modify the custody order. If they really believed that this was true, why couldn't Judge Shanahan prove, show or say that this move from South Bound Brook to Garwood, New Jersey is NOT in the child's best interest? Furthermore, why didn't Judge Hany Mawla vacate this belief while addressing the custody factors, in fact he ordered me to do twice the driving that the father of the children stated he couldn't do "at all" and lastly why was this "change of circumstance" vacated, not adjudicated and replaced with the "self-created" change in circumstance created by the father when he kidnapped the children and Judge Mawla shifted the burden of proof which was the fathers on to me the Plaintiff to prove Parental Alienation vs. Estrangement? These Judges stated that losing custody of the children is not a consequence of magnitude which the direction of the children's lives, the relationship between the children and the Plaintiff, the quality of the education of the children and their futures are worth far more than a drivers licence and/or an $800.00 fine.

56. Not only was Judge Mawla's adjudication process a departure from judicial procedure which Hon. Lisa Rose and Hon. Doug Faciale ignored in the Appellate process of adjudication or review which would have vacated Judge Mawla's order but the Appellate Division Judges ignored my rights as the custodial parent to the custody of the children, the emergent nature of seeking relief by denying a Stay of Judge Mawla's order which contains a loophole for allowing and legalizing the continued interference with custody by the father depriving the children and I of parenting time which continues to date.

57. The Appellate Court Judges Hon. Lisa Rose and Hon. Doug Faciale ignored all the procedural errors of the lower court which included allowing to be entered into evidence multiple versions of Dr. Walsh reports that were not included in discovery, incomplete interrogatories, blocking of my ability to file motions to enforce litigants rights, to request a dismissal based on the incomplete interrogatories which were crucial to determining Dr. Walsh ability and qualifications to be able to serve in the capacity of a child custody evaluator, omission of the pathological forensic testing results of the father and his wife and her purchase of firearms at the commencement of the child custody hearings that was not factored in by Judge Mawla while addressing the child custody factors, redefining the clause of Right of First Refusal to be extended to third parties which is in violation of my constitutional rights as a parent supported by a U.S. Supreme Court ruling in Troxel vs. Granville. The Appellate Court allowed the redefining "relocation" to mean moving within the state in contradiction to the N.J. Child relocation act specifically excludes intrastate moves which violates my Constitutional rights under the 14th Amendment.

20

58. There were more errors by the Lower Court that the Appellate court did not acknowledge but the blatant violation of the Appellate Division is that they did not recognize my Constitutional rights to the custody of my children, the court orders designating me as the custodial parent, the fact that I was vehemently opposing the children "residing" anywhere else but our home as per court order. The Appellate Court ignored my requests to seek to hire legal counsel to be represented by counsel like the Defendant/father in this case and misstated in their decision posted and is accessible online, that I was seeking pro-bono attorneys. They ignored my petitions for relief to hold the father accountable for being in violation of the court orders, requests for remedies and bring the children back home as per Court Order. They ignored the parental kidnapping and adopted the scapegoat phenomenon by the lower court shifting the blame not on the parent in violation of the Court Orders but on the children! They ignored the counseling and coaching sessions by Dr. Walsh the father's expert witness who admitted being the cause and effect of changing the children's minds from wanting to return to their mother to stating they don't want to return. Dr. Walsh whom I filed a complaint with the NJ. State Board of Psychological Examiners for his violations of the state's laws of regulations that govern his practice and causing harm to the children has not been dismissed but is currently in the legal division and they denied my filing for a STAY on Judge Mawla's order which creates a loophole for a parent to get away with the withholding of the children on the other parents parenting time. The interfering with custody and parenting time is both a state and federal crime.

59. The Appellate Court's denial of a STAY was legally blocking me from filing any additional motions with the court because my requests were the subject of the Appeal and so I had to wait until the Appeal was heard while having to put up with more violations of my parental rights and those rights of the children which violates both the childrens' rights as well as my constitutional rights.

60. The Appellate Court accepted Judge Mawla's reasoning to redefine the Right of First Refusal to include third parties because they stated that Judge Mawla went by "how the parties were already acting" in the father's/Defendant's self created condition while in violation of the Court Orders, the Plaintiff's rights to parenting time and while the children were being withheld in isolation from their mother for nearly a year and so to restate the facts, the Appellate Court failed to consider that this decision of Judge Hany Mawla to expand THE RIGHT OF FIRST REFUSAL clause was based on the father's withholding of the children denying me and the children any parenting time and this decision and the support thereof grants third parties superior custody rights above the biological parent which is another violation of my Constitutional rights under the 14th Amendment which supports my rights to due process and equal protection under the law.

21

JUDGE KIMARIE RAHILL- PRESIDING JUDGE SOMERSET COUNTY FOLLOWING JUDGE HANY MAWLA PROMOTION TO THE APPELLATE DIVISION

61. I just learned that Judge Kimarie Rahill was supposed to be the Judge hearing my case all along after Judge Mawla left. This recent discovery involving my case led me to trying to figure out how I ended up having my case heard before Judge Bradford Bury in the first place, a Judge who refused to hear my motions, refuse to allow me to talk, refuse any input from me, refuse me my rights to a hearing and a Judge who has been moved around in three counties, (Hunterdon, Union and Somerset) in two years!. Judge Bury imputed me thousands of dollars in fraudulent funds without a hearing or any input from me, who under his watch mine and my addresses were changed from within the court multiple times while the dates of our hearing was changed from what we agreed on and this needs to be investigated.

62. According to the Acting Administrative Director of the NJ Courts, Glenn A. Grant, J.A.D. phone number 609-815-2900, ext. 55350 in his DIRECTIVE #07-17 which Supersedes Directive #14-83 in an updated policy for issuing Uniform Docket numbers and Statistics for the Family Division, case assignments are supposed to be divided among Judges randomly by case number endings. He explained how a docket gets its number and it is as follows: F* (Docket type code) -_____ county code_____- sequential case number_____- Court year_____- (and regional code is optional) My case number is FD-18- 340-01. According to the New Jersey Courts for Somerset/Hunterdon/Warren Vicinage an updated notice to Somerset and Hunterdon Bar Associations- Family sections was issued on January 4th, 2019, if you follow this directive according to the list of Judges and who would be assigned my case, it would have been Judge Rahill who was assigned to hear Post Judgement Motions with docket numbers ending in 9 and 0 which means neither Judge Qasim, Rodgers, Ballard nor Judge Bury should have ever heard my case and why Judge Rahill appointed the newly assigned Judge, brought in from Union County, Judge Bradford Bury to hear my case remains unknown as well as the reasons why Judge Bradford Bury has been reassigned to three different counties in two years. Judge Kimarie Rahill assigned my case to Judge Bury when she knew it should have been before none other than Judge Kimarie Rahill all along, this is a departure from the rules of the court to make sure assignments are fair and random. Judge Rahill knows this list well because this notice to the Bar Associations and is online at www.njcourts.com is signed by HER with her phone number and email address at Kimarie.Rahill@njcourts.gov with her phone number at 908-332-7700 ext. 13630.

22

63. There are other questions about Judge Kimarie Rahills involvement behind the scenes involving my case such as her law clerk sitting in on the "impromptu" hearing before Judge Bury on 3/26/2016 and Judge Bury making a false statement on the record identifying the person sitting in on my hearing as Judge Rahills law clerk, "here on a different matter" when no other matter was discussed and there was no reason for Judge Rahill's law clerk to be sitting in on the "impromptu" hearing other than for the purpose of Judge Rahill's law clerk's supervision of Judge Bury to report back to Judge Rahill.

64. This hearing was a last minute and unexpected hearing for this 3/26/19 Court date that involved the Adversary, George G. Gussis Esq. making false statements that the court date of 4/1/19 was scheduled in error and then changing the dates to a date the Adversary knew my attorney stated on the record on 2/5/19, that he couldn't be there to the date 3/26/19 that neither my attorney and I received notification from the court for because some person employed by the court, who had access to my file mysterious changed both mine and my attorney's mailing addresses to fake ones within the court system to make sure we would not be informed and not show up thereby pushing forward the adversary's agenda and impute me thousands of dollars in fraudulent funds attached to my child support arrears. I was treated horribly during this hearing by which occurred with me being at my doctors office and over the phone.

65. Because of how I was treated by Judge Bury and because he was requesting the court to go off record during my hearing multiple times at his convenience, I was advised by Elizabeth Raimondo, the Somerset County Court's Ombudsman 908-332-7700 x13240. at the courthouse to write a letter to Presiding Judge Rahill requesting the "Smart Court" back-up recording of what took place at that hearing as well as addressing the issue of the changing of mine and my attorney's addresses and documents showing the Court date we had scheduled was in fact 4/1/19 not 3/26/19.

66. I wrote Judge Rahill and faxed the letter on 4/4/19 to her chambers requesting the audio, smart court recording. On 4/15/19 I received two notices from the Court. One was an UNSIGNED LETTER from Judge Rahill's chambers sending me back my letter with attachments refusing my requests and on the same date I received from my attorney, Jared A. Geist an order from Judge Bury that was sent to yet another changed address to Jared's former employer at an office he never worked at or address he never used. This new order imputed me thousands of dollars in fraudulent funds, granting the adversary nearly all his financial requests. I sent another letter to Judge Rahill on 6/19/19 requesting her to confirm if she was the author of the unsigned letter. I asked this question multiple times, multiple ways and informed her of Judge Bury's three week late Order and addressing more

23

changing of our addresses from within the Court and although she sent a signed letter back stating that she would address the issues, she refused to answer the question as to whether or not she was the author of the UNSIGNED LETTER. This is a big deal to me and I explained to her that the last time I was in receipt of an unsigned letter was when the anonymous letter was accompanying some test scores to illegally transfer my children to alternate schools in the premeditated parental kidnapping of the children. Because Judge Rahill would not acknowledge herself as the author of the unsigned letter, I am inclined to believe it was her law clerk who was the one sitting in on my hearing with Judge Bury on 3/26/19.

67. This needs to be investigated as it subjected me to legal abuse and bullying while violating my rights to custody, parenting time, to make medical decisions for my children who were taken for surgical procedures without my knowledge or consent and Judge Bury Ordered an "elective surgery" for my youngest daughter denying my request for a second medical opinion and an updated MRI because the Podiatrist was going by an MRI over a year old.

68. Judge Bury's DENIAL of my request as a parent with Joint Custodial rights and decision making was a violation of my Constitutional right under the 14th Amendment and supported by U.S. Supreme Court caselaw e.g. Troxel v. Granville. On February 5, 2019, Judge Bury was informed that the new MRI appointment was scheduled two days later and he could have given me some time alloted to get a second opinion by an Orthopedic surgeon after the updated MRI was done but he denied me my rights entirely .

6th JUDGE BRADFORD BURY-

69. Judge Bradford Bury, denies Plaintiff's parental rights as a parent and as per the Court Order of 10/20/2008 with regard to Joint Decision making on major medical and educational decisions. Judge Bury ignored my complaints that I had learned that Miklos/Defendant had taken our youngest child A.H. for general surgical procedure that required her to be put under general and local anesthesia at RWJ University Hospital in New Brunswick, in fact he stated that this surgery was considered day to day decision making allowed by the court and stated that this was not "real surgery". He refused to accept the operative report that I wanted to give to him to see even though I had an additional copy for the Adversary.

70. Judge Bury had DENIED my OTSC submitted on 12/7/18 that the Defendant is engaging the children in harmful acts against her, spying and diverting her emails, screenshots of her phone for him and instructed her to file as a motion in which she submitted on 12/18/18 which was never heard, not even to date as her complaint was ignored, never heard but requests were

24

DENIED without a proper hearing.   The Plaintiff has a constitutional right to be heard.

71. On 2/5/2019, which was the date set to hear the Plaintiff's 12/18/18 motion, Judge Bury, addresses only the issue of a surgery the Defendant scheduled for their youngest daughter A.H. without involving the Plaintiff until after receiving her motion of 12/18/18 filed in the court.  Judge Bury proceded on the surgery topic only without a proper hearing on the matter or allowing the Plaintiff to submit documents into evidence while depriving the Plaintiff of Joint decision making under the Joint custody agreement of 10/20/2008 by overriding her authority of making JOINT DECISION MAKING with the custodial parent by simply stating that her input "DOESN'T MATTER" when she stated that the father historically depended on her input to make medical decisions for the children, that he couldn't read, write or speak or understand what the Doctors were saying and ORDERED an "elective" surgery by a Podiatrist for the minor child that he had no knowledge about nor the consequences of the surgery and overruled Judge Ballard's Order to stop the surgery until further notice with no factual evidence that this surgery was needed given the risks and denied the Plaintiff her request to obtain a SECOND MEDICAL OPINION which was offered to the Defendant/father /Miklos who refused but was denied to the Plaintiff/mother who requested a second opinion by an Orthopedic surgeon.

72. In fact the Plaintiff had Judge Bradford Bury read aloud the transcript in which the father stated on the record that he historically depended on the Plaintiff to talk to the doctors and explain to him in a language he understands, but Judge Bury disregarded it and denied the Plaintiff's request for a second medical opinion on 2/5/19.  This violates the conditions of the Joint Custody agreement which states that the parties shall make decisions regarding the medical welfare and major educational decisions JOINTLY. At the end of the 2/5/19 hearing all parties agreed to continue to address my motion filed on 12/18/18 on the next scheduled court date 4/1/2019. (3/26/2019 transcript).

73. While 4/1/19 was agreed upon for a court hearing by all parties and my attorney Jared Geist specifically stated on the record that he will not be available the last week of March which included March 26th.  The adversary later changed the court date of 4/1/19 stating that the 4/1/19 date was made in error and  changed the new court date to 3/26/2019 then mysteriously my address and my attorneys addresses were changed in the computer system internally at the Court that caused a divergence of Superior Court related mail carried by the Post Office to be delivered that was meant for us to receive.  My address was changed to a fake address on 7 Franklin Street in Somerset that doesn't even exist and Jared's was changed not once but twice for the Court Appearance on 3/26/19 his address was changed to

25

Garces and Grabler at the firm's Newark address at a location Jared used to work at. The actual Court Order issued three weeks later on 4/12/19 by Judge Bury was sent to Jared Geist at Garces and Grabler New Brunswick address, an address he never used and a location he never worked at.

74. On March 26, 2019, I had been out of work sick all week and was still ill, I had a doctor's appointment to obtain medical clearance for a day to return back to work. I was notified the night before by Jared that I had to be in Court for this impromptu hearing before Judge Bury. I was not prepared, Jared was not prepared and rushed down to the Court. Judge Bury was pacing the floor, yelling in the Court that I was not there referring to me as "whackamole" His inappropriateness in Court, dates and addresses changed, he refused to address motion of 12/18/19 and what it was about and was calling me up at my Doctor's appointment implying that I was dodging the Court date in a harrassing and menacing manner.

75. Judge Bury's actions violate the Plaintiff's rights to Due Process and violate the Equal Protection Clause of the 14th Amendment which include not allowing me to speak, not allowing Jared to speak on my behalf, only accepting the Adversaries submissions and pleadings, not having possession of my documents and submissions, failing to protect mine and the childrens' rights to parenting time, failing to hold the Defendant accountable for violation of court orders by withholding the children without granting any make up time, while condemning me for not being able to pay for the retainer of the Parent Coordinator and delegating the task of "adjudication" to an unqualified person who is serving in the capacity of a Parent Coordinator while refusing to uphold the stipulations delineated in the Court Order of 7/25/2017 as well as the 10/20/2008 Court Order unaltered by the 7/25/2017 Court Order.

76. Judge Bury is also in violation because he punished me for being in arrears by not allowing me to claim one of the children on my taxes for as long as I am in arrears and by granting Miklos temporary power of attorney to obtain the children's passports and surgery without my input or a hearing.

77. Judge Bury retaliates against me for filing in the Supreme Court. One of the very first things Judge Bury said to me on 3/26/2019, when I reached him by phone was that he was made aware by the Adversary in a letter (that we never received- exparte communication) that I had now filed in the Supreme Court and without explanation beforehand stated on the record that he was not going to need any testimony from me because 99% of this hearing was not going to need any testimony thereby refusing to address my motion that he stated he was going to address on 2/5/19. *It is important to note that this is another way the Court is blocking me from legal access to prohibit me

from addressing my complaints. Judge Bury just doesn't allow me to be heard and that is a violation of my rights.

78. Judge Bury's abrupt reverse of course from his earlier decision to take testimony and a plenary hearing on 4/1/19 is retaliation for my filing at the Supreme Court being brought to his attention by the Adversary in ex parte communication and he punished me accordingly and financially without a hearing while threatening to take away mine and the children's rights to midweek parenting time.

79. On 4/4/2019, I faxed a letter to Presiding Judge Kimarie Rahill as advised by the Court's Ombudsman with a request to obtain the backup recording of an unanticipated and unexpected hearing before Judge Bradford Bury on 3/26/19 afternoon session beginning around 2pm where he was calling me by phone while I was still very ill and at my doctors office to obtain medical clearance for a date to return to work.

80. To recap, an impromptu hearing without prior notification to me was conducted on 3/26/19 after the anticipated and agreed upon date was changed by George Gussis who knowingly gave false information to the court that the 4/1/19 hearing date was an error in which it was NOT. At this hearing, I was treated horribly and my credibility attacked for not being present on 3/26/19 for no good reason. There would be no reason for me to dodge a court date or not appear to hear my own filing of motion 12/18/18 which is what Judge Bury stated was on the agenda on 2/5/19 . It doesn't make sense that I would avoid a hearing on 3/26/19 that I was committed to attend one week later on 4/1/19 as all parties agreed to on 2/5/19. It doesn't explain as to why I was treated with contempt, accused of playing games and called a "whack-a-mole."

81. This hearing was conducted absent my presence in which I was supposed to testify to address my complaint filed 12/18/18 and have my 28+ exhibits to demonstrate the Defendant's willful withholding of the children, refusal to give up one of his parenting days in exchange like the 7/25/17 Court order states as well as the Defendant engaging the children in harmful acts against me which include engaging them in going through my computers, providing him with access to my email accounts, stealing a computer from my home for him to go through and other horrendous illegal activities and violations of my personal rights and belongings on my parenting time.

82. This hearing moved forward without my presence, which was requested by my attorney and only fair to me. As a result of by absence, the hearing only addressing the adversary's requests were heard and not my complaint holding the Defendant responsible for violation of Court Orders and willful

27

refusal to co-parent or communicate that I filed first as an OTSC ON 12/7/2019 and then as a motion on 12/18/19.

83. The transcripts of 2/5/19 and 3/26/19 prove that none of my complaint was addressed nor my exhibits and that it was unjust for Judge Bury to state that he found no evidence that the Defendant was withholding the children on my parenting time or showing up on my parenting time or violation of Court Orders. In fact, Judge Bury stated on the record that he doesn't need me there (on 3/26/19), that 99% of the hearing will not need testimony, which aligns with the Adversary's agenda.

84. No order was issued at this time on 3/26/2019, however I have the transcript in which there were certain things that the Defendant requested that Judge Bury denied refusing to hear my reasons for opposition because at the time he stated that he was DENYING the request, that he inexplicably GRANTED three weeks later on 4/12/18 without a hearing or any input from me such as the $1200.00+ fraudulent "overpayment of child support" the Defendant and his attorney George Gussis falsely claimed.

85. I don't know why it took Judge Bury three weeks to issue an ORDER nor do I know why, what caused him to change his mind or when this change of mind occurred but he changed his position from 3/26/2019 hearing date and the date of issuing the ORDER on 4/12/2019 which included imputing thousand + dollars to me in fraudulent funds to be attached to my child support arrears without fact finding and only relying on the Adversary and this was done between 3/26/19 and 4/12/19.

86. Coincidently, I sent a letter to Presiding Judge Kimarie Rahill on 4/4/19, with the following attachments and in return, I received my paperwork mailed back from Judge Rahill's chambers with an UNSIGNED letter. I sent a fax and certified mail to Judge Rahill asking Hon. Rahill to please confirm that she is in fact, the author of the unsigned letter and that it was her who sent my paperwork back and I requested her to answer in writing with a request for her signature. She did write back that she would investigate the matter of the illegal changing of mine and my attorney's addresses within the court as well as Judge Bury's radical change in his order without a hearing once again denying me my right to a fair and equitable hearing or a right to be heard or to dispute a matter.

87. What is alarming is that the adversary, George Gussis falsely wrote to the Court that the April 1st date was a mistake and CHANGED THE COURT DATE (although he agreed to April 1st, 2019 on the record) and **around the same time** some person employed within this Court system, who has access to my file, the ability to change or alter addresses in the computer system and who was working between the dates of 2/5/2019 and 3/26/2019 had changed

BOTH mine AND my attorneys addresses with the intent that we would not be present for this new court date. It was by a stroke of luck that Jared Geist was able to make it but was unprepared and without me present. Not only was my address changed to an address that doesn't even exist but also Court notices were sent to Jared's former employer Garces and Grabler at the Newark address in opposition to what Judge Bury stated on the record that they went to Jared Geists Hackensack address.

88. What is even MORE disturbing is that after I had to fill out forms to change back my address to the proper one, my Garwood address which is the address I had received all my other notices and Jared corrected his address with the Court to remove his former work address in Newark, THREE WEEKS LATER Judge Bury's ORDER dated 4/12/2019 was sent to Jared A. Geist granting the Defendant in this case monies to be paid by me in the THOUSANDS of fraudulent funds that he originally DENIED on 3/26/2019 and the order was sent to not Jared Geist at his Hackensack address but Garces and Grabler at their New Brunswick address, an office Jared Geist never worked at and an address he never used. Changing addresses without consent and tampering with the mail that is delivered by utilization of the Post Office is a Federal Offense and I will find out how that pertains to employees of the Court changing the addresses without consent, permission of knowledge of the victims causing a divergence of Superior Court related mail on legal matters causing us to not be informed of Court dates, hearings and such that resulted in financial harm as I was not able to be there to see the documents being presented or have input, object and my attorney was denied his request to have me present.

89. I did not receive any notification by the Court. My attorney Jared Geist did not receive proper notification by the Court but only a fax in which the adversary was attempting to change the hearing date from April 1st to an earlier date, misleading the Court to believe that the April first date was an error of the Court and not a date he agreed on.

90. It is important to note that when I called in to Judge Bury, he was attacking my credibility and stating that he was, "with certainty" positive that I received notification from the court because he "knows" notification went out to my address on "7 Franklin street, Somerset, New Jersey," stated Judge Bury. I have NEVER lived at this address and when I looked up this address, it doesn't even exist. In fact, I checked in with the Family part desk and asked which address they had for me and I was told, "7 Franklin Street, Somerset, NJ." I had to fill out a formal form to change it back to my Garwood address. This means that between 2/5/19 and March 26, 2019 approximately 6 weeks, someone had to physically change my address to an invalid one internally. As far as I have been made aware, 7 Franklin Street in Somerset would be located in a cemetery!    I believe an investigation needs to be

29

conducted into this matter and I requested it to begin with Honorable Kimarie Rahill as the Presiding Judge when I wrote her a letter to please look into this matter in addition to my request of Honorable Kimarie Rahill to please confirm that she was the author of the unsigned letter sent out to me with all my attachments that I received on 4/15/19 along with Judge Bury's Order issued and sent out to me the same day.. I had asked the Presiding Judge Kimarie Rahill to send me a signed letter stating that she in fact, is the author of the UNSIGNED letter that I received from her Honor's chambers on 4/15/19 along with my corresponding documents that I sent to her on 4/4/2019. Although Hon. Kimarie Rahill responded and signed her name stating that she would look into the matter, she never answered the question as to if she was the author of the unsigned letter and this speaks Volumes, it makes me wonder if it wasn't her Clerk that had been coming into my hearing with Judge Bury on 3/26/19..

91. The transcripts of 2/5/19 and 3/26/19 prove that none of my complaint was addressed nor my exhibits and that it was unjust for Judge Bury to state that he found no evidence that the Defendant was withholding the children on my parenting time or showing up on my parenting time or violation of Court Orders. In fact, Judge Bury stated on the record that he doesn't need me there (on 3/26/19), that 99% of the hearing will not need testimony, which aligns with the Adversary's agenda.

92. No order was issued at this time on 3/26/2019, however I have the transcript in which there were certain things that the Defendant requested that Judge Bury denied refusing to hear my reasons for opposition because at the time he stated that he was DENYING the request, that he inexplicably GRANTED three weeks later on 4/12/18 without a hearing or any input from me such as the $1200.00+ fraudulent "overpayment of child support" the Defendant and his attorney George Gussis falsely claimed.

FEDERAL OFFENSE- TAMPERING WITH THE MAIL- CHANGING OF ADDRESSES TO DIVERT COURT HEARING NOTICES ADDRESSED WITH PRESIDING JUDGE KIMARIE RAHILL

93. Title 18 U.S. Code § 1342 Fictitious names and addresses:  Under this Federal U.S. code, Whoever, for the purpose of conducting, promoting, or carrying on by means of the Postal Service, any scheme or device mentioned in section 1341 of this title or any other unlawful business, uses or assumes, or requests to be addressed by, any fictitious, false, or assumed title, name, or address or a name other than his own proper name, or takes or receives from any post office or authorized depository of mail matter, any letter, postal card, package, or other mail matter addressed to any such fictitious, false, or

assumed title, name, or address, or a name other than his own proper name, shall be fined under this title or imprisoned not more than five years, or both. (June 25, 1948, ch. 645, 62 Stat. 763; Pub. L. 91–375, § 6(j)(12), Aug. 12, 1970, 84 Stat. 778; Pub. L. 103–322, title XXXIII, § 330016(1)(H), Sept. 13, 1994, 108 Stat. 2147.)

94. Title 18 U.S. Code § 1341: Frauds and Swindles:  Under this Federal U.S. code, whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or imitated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.

95. I am not an attorney so I am unsure what the consequence is of an attorney, court official, Judge or law clerk or persons employed by the New Jersey Superior Court who tampers with a litigants addresses for the purpose of sending mail to fictitious addresses for the purpose of diversion of the mail so that the litigants miss the court notices informing them of a hearing to the adversary's benefit but it must be the same or worse because this matter is tampering with Superior Court related mail and I request this matter be investigated.

7TH JUDGE MICHAEL ROGERS

96. ORDERS ME TO PAY MIKLOS/DEFENDANT $1,000.00 BECAUSE HE SAYS, "MIKLOS LOOKS LIKE HE NEEDS IT." and disregarding that I had been making my child support payments on time demonstrating prejudice and a violation of my right to equal protection under the law. Judge Rogers did not have a full hearing to determine any additional monies to be paid to Defendant were just and fair and Miklos temporarily in a wheelchair does not constitute merit to award additional money.  This violates the equal protection clause of the 14th  Amendment.

31

CEDERIC HOWARD and NICOLE BARRACANO- SOMERSET COUNTY PROBATION OFFICER/DEPARTMENT

97. As of September 1, 1998, child support orders are subject to a cost of living otherwise known as COLA increase EVERY TWO YEARS. The child support COLA is pursuant to Court rule 5:6B of Cost of Living adjustments for Child support orders however, Cederic Howard the probation officer managing this case has improperly imputed me unfair COLA increases in violation to the Court Rules by increasing my child support and applying the COLA increase at only the one year benchmark, Judge Bury refused to address this misapplication of the law and court rule because he states, "it's a nominal amount of money," but as it pertains to the Federal level these application imputing me unjust funds, causing me unjust financial harm in violation of the court rules has violated my rights to equal protection by singling me out and treating me very differently than the other American and New Jersey citizens in addition, the Probation Department has treated Miklos who was in arrears over 9 thousand dollars in 2017 very differently by ignoring him being in arrears over 9 thousand dollars. Nicole Barracao was the Child Support enforcement hearing officer that heard my case on 4/17/18 who refused to allow me and my attorney to talk and who was trying to punish me for being in arrears, the arrears that Judge Mawla ordered "retroactively" while I was the custodial parent. I wasn't in arrears because I wasn't paying child support and yet Nicole Barracano treated me like a criminal and ordered me to pay an additional $1,000.00 even though I was ahead of my payment plan. This ended up going upstairs before Judge Rogers who then ruled that I had to pay the $1,000.00 because the Defendant "looked like he needed it."

98. The probation department which Cederic Howard has allowed Miklos/defendant/father to get away with being over 9,000.00 in arrears without any action but pursued me in a witch hunt by placing levies on my bank accounts, garnish my taxes, threatened me with jail time, notified my credit agencies and caused me financial harm even though he is aware that I was in arrears not because I didn't pay child support but because I was put in arrears while I was the custodial parent by the Courts Order of 7/25/2017 that was imputed to me retroactively in child support 11 months from the time the Defendant Miklos kidnapped the children in which the NJ statute for Retroactive Child support was misapplied. In March of 2018, Cederic Howard and the Probation Department placed levies on my bank accounts while I was out of state with the children visiting their grandparents in florida for no reason other than the adversary timing it to cause me hardship. I had to file OTSC while in florida unable to access funds. Cederic Howard was made aware that I had been making my weekly payments according to the Court Order and that in fact, I was ahead of my payment schedule and not

32

behind and yet both him and Judge Bury violated my rights to equal protection under the 14th Amendment.

99. Currently, there is a Court date pending for 8/20/19 before Judge Ballard with a motion to vacate the Order of Judge Bury dated 4/12/19 however, it is very unlikely based on the past that it would be adjudicated without predjudice since already there is a discrimination in that it is Judge Rahill who is supposed to hear my case but deferred it to Judge Ballard. One must ask why she won't put her name on adjudicating this case when it is delegated by the court that to be random she is assigned all cases and obligated to hearing all post judgements ending in 0.

100.    Parental Kidnapping or Interference with custody is a crime, both Statutory and Federal and is addressed by the Federal Government, which recognizes the act of Parental Kidnapping as an illegal activity but only intervenes when it is International because the Federal Government leaves the States in Power of their own jurisdiction to carry their own statutes to address this crime at the State level. According to the Department of Justice (DOJ) website, the reasoning for the criminalization of the Interference with custody remains the same in principle whether it is Statutory (within the states) or Federal (International) which is the deprivation of both the parent's fundamental rights under the U.S.C Fourteenth Amendment which protects the parent's rights to be able to parent and care for their children and the children's rights to have that same liberty to be free from harm and to be able to have a relationship with both parents.

101.    To withhold parenting time from a parent is a violation of both the parent and child's rights, which also causes irreparable damage that the DOJ recognizes as harm to the children. According to the D.O.J. website,   Every year, situations of international parental kidnapping are reported in the United States. It is common for the removal of a child to occur during a heated or emotional marital dispute, in the early stages of separation or divorce, or in the waiting period for a court custody order or agreement. International parental kidnappings of U.S. children have been reported in countries all over the world, including Australia, Brazil, Canada, Colombia, Germany, India, Japan, Mexico, the Philippines, and the United Kingdom.

102.    Child victims of international parental kidnapping are often taken from a familiar environment and suddenly isolated from their community, family, and friends. They may miss months or even years of schooling. The child may be moved to multiple locations in order to stay hidden or out of reach of the parent remaining in the United States. In some cases, the child's name, birth date, and physical appearance are altered or concealed to hide identity.

33

103.    In addition, the tense and unfavorable situation between the parents may be emotionally troubling to a child. Kidnapped children are at high risk for long-term psychological problems including anxiety, eating disorders, nightmares, mood swings, sleep disturbances, and aggressive behavior. As adults, child victims of international parental kidnapping may struggle with identity, relationships, and family issues.

104.    **Legal Hurdles and the Return of a Kidnapped Child to the United States**
Under federal law, prosecutors may investigate and prosecute the parent who kidnapped the child, however, prosecutors generally have no control over the custodial decisions affecting the child or whether foreign authorities will order the return of the child."

https://www.justice.gov/criminal-ceos/international-parental-kidnapping

**The DOJ states, "Child Custody and Visitation Matters"**
With the exception of international parental kidnapping, child custody and visitation matters are handled by local and state authorities, and not by the federal government. The matters are governed by the relevant state family court system and human services agency. Therefore, child custody or visitation issues should be reported to state or local law enforcement authorities or a state judicial officer but what happens when the state ignores their own policies, legislation and State Laws and court orders and these acts of neglect or departure from Judicial process and their owns of office in which they vow to uphold the laws of the land and our United States Constitution or when their acts or failure to act causes the violation the Constitutional rights of an American citizen? In the name of Justice, this case must be taken seriously.

Attached are 12 pages of Case Law supporting my arguments that protect a parents rights to custody and parenting time and all other supporting documents, which include transcripts and evidence of all accounts and in support of my certification herein, can be furnished during discovery or otherwise requested by the court or Defendant's involved.

34

## CERTIFICATION

I certify that my statement is true to the best of my knowledge and I understand that I am subject to punishment and penalties under the law.

Stephanie Messner

Respectfully Yours,

Stephanie Messner
447 4th Ave.

35

# CASE LAWS

The below information is not to be misinterpreted as any legal advice and is not presented by an attorney. This site is just designed to help as a guide and an individual should seek legal representation for further interpretation and applicability. Also realize some of the case laws may have been appealed or new case law precedent.

## Links to Individual Circuit Court Case Laws

1st - ME, MA, NH, PR, RI
2nd - NY, VT, CT
3rd - PA, NJ, DE, VI
4th - MD, NC, SC, VA, WV
5th - LA, TX, MS
6th - MI, OH, KY TN
7th - IL, IN, WI

8th - ND, SD, MN, NE, IA, MO AR
9th - CA, OR, WA, AZ, MT, ID, NV, AK, HI
10th - CO, KS, NM, OK, UT, WY
11th - AL, GA, FL
DC - DC, Tax Court, fed admin agencies.
Federal Patent, Int'l Trade, Claims Court and Veterans' Appeals.

## CONSTITUTIONAL RIGHT TO BE A PARENT CASE LAWS

Bell v. City of Milwaukee  (7th Cir. 1984)

- The Due Process Clause of the Fourteenth Amendment requires that severance in the parent-child relationship caused by the state occur only with rigorous protections for individual liberty interests at stake. The parent-child relationship is a liberty interest protected by the Due Process Clause of the 14th Amendment. 746 f 2d 1205, 1242-45; US Ct. App 7th Cir WI (1985)

Carson v. Elrod

- No bond is more precious and none should be more zealously protected by the law as the bond between parent and child. 411 F Supp 645, 649; DC E.D. VA (1976)

Doe v. Irwin  (US. D. C. of Michigan 1985)

- The rights of parents to the care, custody and nurture of their children is of such character that it cannot be denied without violating those fundamental principles of liberty and justice which lie at the base of all our civil and political institutions, and such right is a fundamental right protected by this amendment (First) and Amendments 5, 9, and 14.

Doe et al, v. Heck et al  (7th Cir. Ct. App.  2003)

- The practice of "no prior consent" interview of a child, will ordinarily constitute a "clear violation" of the constitutional rights of parents under the 4th and 14th Amendments to the U.S. Constitution. The investigative interview of a child constitutes a "search and seizure" and, when conducted on private property without "consent, a warrant, probable cause, or exigent circumstances (imminent danger)," such an interview is an unreasonable search and seizure in violation of the rights of the parent, child, and, possibly of the private property.

Elrod v. Burns  (96 S. Ct.  1976)

- Loss of First Amendment Freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. Though First Amendment rights are not absolute, they may be curtailed only by interests of vital importance, the burden of proving which rests on their government.

Franz v. U.S.

- A parent's right to the preservation of his relationship with his child derives from the fact that the parent's achievement of a rich and rewarding life is likely to depend significantly on his ability to participate in the rearing of his children. A child's corresponding right to protection from interference in the relationship derives from the psychic importance to him of being raised by a loving, responsible, reliable adult. 707 F 2d 582, 595-599; US Ct App (1983)

Griswold v. Connecticut

- The Constitution also protects "the individual interest in avoiding disclosure of personal matters" Federal Courts (and State Courts), under Griswold can protect, under the "life, liberty and pursuit of happiness" phrase of the Declaration of Independence, the right of a man to enjoy the mutual care, company, love and affection of his children, and this cannot be taken away from him without due process of law. There is a family right to privacy, which the state cannot invade or it becomes actionable for civil rights damages. 381 US 479, (1965)

Gross v. State of Illinois

- State Judges, as well as federal, have the responsibility to respect and protect persons from violations of federal constitutional rights. 312 F 2d 257; (1963)

In the Interest of Cooper (Kansas 1980)

- Parent's interest in custody of their children is a liberty interest which has received considerable constitutional protection; a parent who is deprived of custody of his or her child, even though temporarily, suffers thereby grievous loss and such loss deserves extensive due process protection.

In re J.S. and C.

- A parent's right to care and companionship of his or her children are so fundamental, as to be guaranteed protection under the First, Ninth, and Fourteenth Amendments of the United States Constitution. 324 A 2d 90; supra 129 NJ Super, at 489.

Kelson v. Springfield (US Ct. App 9th Cir. 1985)

- The U.S. Court of Appeals for the 9th Circuit (California) held that the parent-child relationship is a constitutionally protected liberty interest. (See: Declaration of Independence--life, liberty and the pursuit of happiness and the 14th Amendment of the United States Constitution -- No state can deprive any person of life, liberty or property without due process of law nor deny any person the equal protection of the laws.) 767 F 2d 651; US Ct. App 9th Cir, 1985

Langton v. Maloney (527 F Supp 538, D.C. Conn. 1981)

- The liberty interest of the family encompasses an interest in retaining custody of one's children and, thus, a state may not interfere with a parent's custodial rights absent due process protections.

Matter of Delaney (617 P 2d 886, Oklahoma 1980) verify citation

- Parents have a fundamental constitutionally protected interest in continuity of legal bond with their children.

Matter of Gentry

- A parent's right to the custody of his or her children is an element of "liberty" guaranteed by the 5th Amendment and the 14th Amendment of the United States Constitution. 369 NW 2d 889, MI App Div (1983)

May v. Anderson (73 S. Ct. 840 1952)

- The United States Supreme Court noted that a parent's right to "the companionship, care, custody and management of his or her children" is an interest "far more precious" than any property right. 345 US 528, 533; 73 S. Ct. 840, 843 (1952)

Meyer v. Nebraska  (43 S. Ct. 625  1923)  check cite

- Parent's rights have been recognized as being "essential to the orderly pursuit of happiness by free man." 262 US 390; 43 S. Ct. 625 (1923)

Nicholson v. Williams

- Suit challenged the practice of New York's City's Administration for Children's Services of removing the children of battered mothers solely because the children saw their mothers being beaten by husbands or boyfriends.  Judge ruled the practice unconstitutional in a landmark class action suit in U.S. District Court, Eastern District of New York.  Case No. 00-cv-2229.

Parham v. J.R.  (1979)

- Involves parent's rights to make medical decisions regarding their children's mental health.

Quilloin v. Walcott  (98 S. Ct. 549  1978)

- The U.S. Supreme Court implied that "a (once) married father who is separated or divorced from a mother and is no longer living with his child" could not constitutionally be treated differently from a currently married father living with his child.  98 S. Ct. 549; 434 US 246, 255-56, (1978)

Reynold v. Baby Fold, Inc.  - verify citation

- Parent's right to custody of child is a right encompassed within protection of this amendment which may not be interfered with under guise of protecting public interest by legislative action which is arbitrary or without reasonable relation to some purpose within competency of state to effect.

Santosky v. Kramer  (102 S. Ct. 1388 1982)

- Even when blood relationships are strained, parents retain vital interest in preventing irretrievable destruction of their family life; if anything, persons faced with forced dissolution of their parental rights have more critical need for procedural protections than do those resisting state intervention into ongoing family affairs.  The U.S. Supreme Court ruled that clear and convincing evidence rather than a mere preponderance were needed to terminate parental rights.  455 US 745 (1982)

Stanley v. Illinois  (92 S. Ct. 1208  1972)

- The Court stressed, "the parent-child relationship is an important interest that undeniably warrants deference and, absent a powerful countervailing interest, protection."  A parent's interest in the companionship, care, custody and management of his or her children rises to a constitutionally secured right, given the centrality of family life as the focus for personal meaning and responsibility.  405 US 645, 651; 92 S Ct 1208 (1972)

### DUE PROCESS CASE LAWS

Bendiburg v. Dempsey (11th Cir. 1990)

- Post-deprivation remedies do not provide due process if pre-deprivation remedies are practicable.

Brokaw v. Mercer County (7th Cir. 2000)

- Children have a Constitutional right to live with their parents without government interference. Child's four month separation from his parents could be challenged under substantive due process. Sham procedures don't constitute true procedural due process. -- Just the highlights

Chrissy v. Miss. Department of Public Welfare (5th Cir. 1991)

- Plaintiff's clearly established right to meaningful access to the courts would be violated by suppression of evidence and failure to report evidence.

Croft v. Westmoreland Cty. Children and Youth Services (3rd Cir. 1997)

- Social worker who received a telephone accusation of abuse and threatened to remove child from the home unless the father himself left and who did not have ground to believe the child was in imminent danger of being abused engaged in an arbitrary abuse of governmental power in ordering the father to leave.

K.H. through Murphy v. Morgan (7th Cir. 1990)

- When the state deprives parents and children of their right to familial integrity, even in an emergency situation, the burden is on the State to initiate prompt judicial proceedings for a post-deprivation hearing, and it is irrelevant that a parent could have hired counsel to force a hearing.

Lassiter v. Department of Social Services (1981)

- State intervention to terminate the relationship between a parent and a child must be accomplished by procedures meeting the requisites of the Due Process Clause. 452 US 18, 37.

Malik v. Arapahoe Cty. Department of Social Services (10th Cir. 1999)

- Absent extraordinary circumstances, a parent has a liberty interest in familial association and privacy that cannot be violated without adequate pre-deprivation procedures. An ex-parte hearing based on misrepresentation and omission does not constitute notice and an opportunity to be heard.
- Procurement of an order to seize a child through distortion, misrepresentation and/or omission is a violation of the Fourth Amendment.
- Parents may assert their children's Fourth Amendment claim on behalf of their children as well as asserting their own Fourteenth Amendment claim.

Morris v. Dearborne (5th Cir. 1999)

- Right to Procedural Due Process Violated: The state denied the plaintiff the fundamental right to a fair procedure before having their child removed by the intentional use of fraudulent evidence during the procedure.

Nicini v. Morra (3rd Cir. 2000)

- When the state places a child in state-regulated foster care, the state has duties and the failure to perform such duties may create liability under 1983. Liability may attach when the state has taken custody of a child, regardless of whether the child came to stay with a family on his own which was not an officially approved foster family.

Norfleet v. Arkansas Dept. of Human Services (8th Cir. 1993)

- When the state places a child in a foster home it has an obligation to provide adequate medical care, protection, and supervision

Quilloin v. Walcott (1978)

- A due-process violation occurs when a state-required breakup of a natural family is founded solely on a "best interests" analysis that is not supported by the requisite proof of parental unfitness. 434 U.S. 246, 255 (1978)

Ram v. Rubin (9th Cir. 1997)

- Children may not be removed from their home by police officers or social workers without notice and a hearing unless the officials have a reasonable belief that the children are in imminent danger.

Whisman v. Rinehart (8th Cir. 1997)

- Mother had a clearly established right to an adequate, prompt post-deprivation hearing. A 17 day period prior to the hearing was not a prompt hearing.

Yvonne L. v. New Mexico Department of Human Services (10th Cir. 1992)

- Children placed in a private foster home have substantive due process right to personal security and bodily integrity.

## GENERAL FAMILY RIGHTS CASE LAWS

Blackburn v. Alabama   361 U.S. 199, 206 (1960)

- Coercion can be mental as well as physical.

Brokaw v. Mercer County (7th Cir. 2000)

- Children have standing to sue for their removal after they reach the age of majority. Children have a constitutional right to live with their parents without government interference. -- Just the highlights

Cassady v. Tackett

- Coercive or intimidating behavior supports a reasonable belief that compliance is compelled.

Florida v. Bostick (S. Ct. 1991)

- "Consent" that is the product of official intimidation or harassment is not consent at all. Citizens do not forfeit their constitutional rights when they are coerced to comply with a request that they would prefer to refuse.

J.B. v. Washington County (10th Cir. 1997)

- The forced separation of parent from child, even for a short time (in this case 18 hours), represents a serious infringement upon the rights of both.

K.H. through Murphy v. Morgan (7th Cir. 1990)

- State employee who withhold a child from their family may infringe on the family's liberty of familial association. Social workers could not deliberately remove children from their parents and place them with foster caregivers when the officials reasonably should have known such an action would cause harm to the child's mental or physical health.

Malik v. Arapahoe Cty. Department of Social Services (10th Cir. 1999)

- Absent extraordinary circumstances, a parent has a liberty interest in familial association and privacy that cannot be violated without adequate pre-deprivation procedures.

North Hudson DYFS v. Koehler Family (2001)

- The court explained "absent some tangible evidence of abuse or neglect, the Courts do not authorize fishing expeditions into citizens' houses. Mere parroting of the phrase "best interest of the child" without supporting facts and a legal basis is insufficient to support a Court order based on reasonableness or any other ground."

Thomason v. Scan Volunteer Services, Inc. (8th Cir. 1996)

- Parent interest is of "the highest order," and the court recognizes "the vital importance of curbing overzealous suspicion and intervention on the part of health care professionals and government officials."

Troxel v. Granville (2002)

- The state may not interfere in child rearing decisions when a fit parent is available.  - Just the highlights.  530 U.S. 57

Valmonte v. Banc (2nd Cir. 1993) Decided March 03, 1994

- A Central Register that identifies individuals accused of child abuse and neglect and the communication of those names to potential employers in the child care field, implicates a protectible liberty interest under the Fourteenth Amendment.
- Appellant alleged the inclusion of her name on the New York State Central Register of Child Abuse and Maltreatment violated her right of due process. On appeal, court ruled that the appellant's right of due process was violated because it was found that she did have a liberty interest which was imperiled by the procedures.
- The court noted that the procedures, which permitted inclusion on the Register by virtue of "some credible evidence" of abuse, created a high risk of error.
- In a similiar case Paul v. Davis, the court ruled that damage to one's reputation is not "by itself sufficient to invoke the procedural protection of the Due Process Clause. Rather, the Court held, loss of reputation must be coupled with some other tangible element in order to rise to the level of a protectible liberty interest. This has been interpreted to mean that "stigma plus" is required to establish a constitutional deprivation.

Ward v. San Jose (9th Cir. 1992)

- A child has a constitutionally protected interest in the companionship and society of his or her parent.

Weller v. Department of Social Services for Baltimore (4th Cir. 1990)

- The private, fundamental liberty interest involved in retaining custody of one's child and the integrity of one's family is of the greatest importance.

Whisman v. Rinehart (8th Cir. 1997)

- Parents and child had a clearly established liberty interest in associating together. This right was violated where the defendants allegedly had no indication of any physical neglect of the child, no indication of any immediate threat to his welfare, and no indication of any criminal activity by his mother, where they had only third-hand hearsay that the child's mother had gotten drunk and failed to pick up the child from his babysitter, and where defendants refused to return the child, had not investigated to determine whether it was necessary to remove the child in the first place, and had not investigated the possibility of returning the child to his mother, grandmother, or anyone designated by the mother.

## JUDGES & PROSECUTORS - ABSOLUTE IMMUNITY CASE LAWS

Ashelman v. Pope

- As long as the judge's ultimate acts are judicial actions taken within the court's subject matter jurisdiction, immunity applies. -- Just the highlights

Buckley v. Fitzsimmons (S. Ct. 1993)

- Prosecutor's allegedly false statements made during a press conference announcing the indictment of plaintiff had no functional tie to the judicial process and were not entitled to absolute immunity.

Chrissy v. Miss Department of Public Welfare (5th Cir. 1991)

- Prosecutor was not entitled to absolute immunity for failure to initiate an investigation, failing to disclose medical reports at a court hearing and allowing father to have contact with child in violation of a court order.

Forrester v. White  (S. Ct. 1988)

- Holding that judges do not have absolute immunity when acting in an administrative capacity. -- Just the highlights

Joseph v. Patterson (6th Cir. 1986)

- Prosecutor was not entitled to absolute immunity where it is alleged that he supervised and participated in an unconstitutional police interrogation.

Kalina v. Fletcher (S. Ct. 1997)

- A prosecutor is not entitled to absolute immunity for allegedly false statements of fact made in an affidavit supporting an application for a warrant.

Power v. Coe (2nd Cir. 1984)

- Prosecutor is not entitled to absolute immunity for statements he distributes to the press.

Zarcone v. Perry

- Denying judicial immunity to a judge who ordered a coffee vendor brought before him in handcuffs because of the poor quality of the coffee.

## QUALIFIED IMMUNITY CASE LAWS

Ernst v. Child and Youth Department of Chester County (3rd Cir. 1997)

- Court emphasizes that only qualified immunity is available for "investigating or administrative" actions such as opening and investigating child abuse cases.

Germany v. Vance (1st Cir. 1989)

- Case worker who intentionally or recklessly withheld potentially exculpatory information from an adjudicated delinquent or from the court itself was not entitled to qualified immunity.

Good v. Daupin County Social Services (3rd Cir. 1989)

- Defendants were not entitled to qualified immunity for conducting a warrantless search of home during a child abuse investigation where exigent circumstances were not present. Court held that a search warrant or exigent circumstances, such as a need to protect a child against imminent danger of serious bodily injury, was necessary for an entry without consent, and an anonymous tip was insufficient to establish special exigency. 891 F.2d 1087

Grossman v. City of Portland   (9th Cir. 1994)

- Individuals aren't immune for the results of their official conduct simply because they were enforcing policies or orders. Where a statute authorizes official conduct which is patently violative of fundamental constitutional principles, an officer who enforces that statute is not entitled to qualified immunity.

Hafer v. Melo (S. Ct. 1991)

- Social workers (and other government employees) may be sued for deprivation of civil rights under 42 USC 1983 if they are named in their 'official and individual capacity. -- Just the highlights

Harlow v. Fitzgerald (1982)

- If the law was clearly established at the time the action occurred, a police officer is not entitled to assert the defense of qualified immunity based on good faith since a reasonably competent public official should know the law governing his or her conduct. 457 U.S. 800, 818

Hurlman v. Rice (2nd Cir. 1991)

- Defendant was not entitled to qualified immunity or summary judgment because he should have investigated further prior to ordering seizure of children based on information he had overheard.

K.H. through Murphy v. Morgan (7th Cir. 1990)

- Social workers were not entitled to absolute immunity where no court order commanded them to place plaintiff with particular foster caregivers.

Malik v. Arapahoe Cty. Department of Social Services (10th Cir. 1999)

- Police officer was not entitled to absolute immunity for her role in procurement of court order placing child in state custody where there was evidence officer spoke with the social worker prior to social worker's conversation with the magistrate and there was evidence that described the collaborative worker of the two defendants in creating a "plan of action" to deal with the situation. Officer's acts were investigative and involved more than merely carrying out a judicial order.

Malley v. Briggs (S. Ct. 1986)

- Police officer is not entitled to absolute immunity, only qualified immunity, to claim that he caused plaintiff to be unlawfully arrested by presenting judge with an affidavit that failed to establish probable cause.

McCord v. Maggio (5th Cir. 1991)

- Immunity is defeated if the official took the complained-of action with malicious intention to cause a deprivation of rights, or the official violated clearly established statutory or constitutional rights of which a reasonable person would have known.

Millspaugh v. County Department of Public Welfare (7th Cir. 1991)

- Social worker was entitled to absolute immunity for her testimony in an ex-parte judicial proceeding, but her application for the ex-parte order is only entitled to qualified immunity.

Shay v. Rossi (2000)

- Connecticut Supreme Court decision on qualified immunity and the individual liability of the state child welfare workers. The court held, inter alia, that the common-law doctrine of sovereign immunity did not bar claims against officers and employees of the Department of Children and Families in their official capacities and that statutory immunity under Connecticut Gen. Stat 4-165 did not prohibit claims against defendents in their individual capacities.
- Background: The state supreme court will decide the threshold issue of whether the denial of a motion to dismiss on grounds of sovereign immunity is an appealable final judgment. The trial court denied defendant's motion to dismiss tort claims against the defendants in their official capacity. The trial court rules that the allegation that the defendants exceeded their statutory authority in issuing a 96-hour hold takes the case out of the realm of sovereign immunity. On appeal, the

plaintiff's argue that their failure to allege reckless, wanton or malicious conduct does not implicate the court's jurisdiction, but rather affects only the legal sufficiency of the case. On cross appeal, the defendants argue that - due to the lack of any allegation that the defendants either did not have the statutory authority to issue a 96-hour hold or issued the hold to further an illegal plan-the court erred in denying the motion to dismiss claims against them in their official capacity.

Snell v. Tunnell (10th Cir. 1990)

- Social workers were not entitled to absolute immunity for pleadings filed to obtain pick-up order for temporary custody prior to formal petition being filed. Social workers were not entitled to absolute immunity where department policy was for social workers to report findings of neglect or abuse to other authorities for further investigation or initiation of court proceedings.
- Social workers investigating claims of child abuse are entitled only to qualified immunity.
- Assisting in the use of information known to be false in order to further an investigation is not subject to absolute immunity.
- Social workers are not entitled to qualified immunity on claims they deceived judicial officers in obtaining a custody order or deliberately or recklessly incorporated known falsehoods into their reports, criminal complaints and applications.
- Use of information known to be false is not reasonable, and acts of deliberate falsity or reckless disregard of the truth are not entitled to qualified immunity.
- No qualified immunity is available for incorporating allegations into the report or application where official had no reasonable basis to assume the allegations were true at the time the document was prepared.

Wallis v. Spencer and Wallis v. City of Escondido (9th Cir. 2000)

- State law cannot provide immunity from suit for federal civil rights violations. State law providing immunity from suit for child abuse investigators has no application to suits under 1983. -- Just the highlights. 202 F.3d 1126

Walsh v. Erie County Department of Job and Family Services

- Child protection social workers claimed they were immune from liability in a civil violation (4th Amendment) suit, claiming qualified immunity because "they had not had training in Fourth Amendment law." They felt they couldn't be sued for their mistake, because they thought they were not binded by the Fourth Amendment. The court disagreed ruling "That subjective basis for their ignorance about and actions in violation of the Fourth Amendment does not relieve them of the consequences of that ignorance and those actions." and denied their immunity. 3:01-cv-7588.

Whisman v. Rinehart (8th Cir. 1997)

- Defendants were not entitled to prosecutorial immunity where complaint was based on failure to investigate, detaining minor child, and an inordinate delay in filing court proceedings, because such actions did not aid in the presentation of a case to the juvenile court.

Young v. Biggers (5th Cir. 1991)

- A defendant in a civil rights case is not entitled to any immunity if he or she gave false information either in support of an application for a search warrant or in presenting evidence to a prosecutor on which the prosecutor based his or her charge against the plaintiff.

## SEARCH & SEIZURE CASE LAWS

Aponte Matos v. Toledo Davilla (1st Cir. 1998)

- An officer who obtains a warrant through material false statements which result in an unconstitutional seizure may be held liable personally for his actions under section 1983.

- False statements made to obtain a warrant, when the false statements were necessary to the finding of probable cause on which the warrant was based, violates the Fourth Amendment's warrant requirement. The warrant clause contemplates the warrant applicant to be truthful: "no warrant shall issue, but on probable cause, supported by oath or affirmation." Deliberate falsehood or reckless disregard for the truth violates the warrant clause. When a warrant application is materially false or made in reckless disregard for the truth, the warrant becomes invalid and will have been obtained in violation of the Fourth Amendment's warrant clause. A search must not exceed the scope of the search authorized in a warrant. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the Fourth Amendment particularity requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers of the Constitution intended to prohibit. There is a requirement that the police identify themselves to the subject of a search, absent exigent circumstances. Failure to knock and announce forms part of the reasonableness or not inquiry under the Fourth Amendment.

Brokaw v. Mercer County (7th Cir. 2000)

- Child removals are "seizures" under the Fourth Amendment. Seizure is unconstitutional without court order or exigent circumstances. Court order obtained based on knowingly false information violates fourth amendment. -- Just the highlights.

Calabretta v. Floyd (9th Cir. 1999)   Warrant-less Search

- There is no exception to the warrant requirement for social workers in the context of a child abuse investigation. A social worker may not force their way into a home without a search warrant in absence of an emergency. Police officers and social workers are not immune for coercing or forcing entry into a person's home to investigate suspected child abuse, interrogation of a child, and strip search of a child, without a search warrant or special exigency.. -- Just the highlights. 189 F. 3d 808.

California v. Hobari D. (1991)

- For purposes of the Fourth Amendment, a "seizure" of a person is a situation in which a reasonable person would feel that he is not free to leave, and also either actually yields to a show of authority from police or social workers or is physically touched by police. Persons may not be "seized" without a court order or being placed under arrest. 499 U.S. 621

Good v. Dauphin County Social Services (3rd Cir. 1989)

- Police officer and social worker may not conduct a warrant-less search or seizure in a suspected abuse case, absent exigent circumstances.
- Defendants must have reason to believe that life or limb is in immediate jeopardy and that the intrusion is reasonably necessary to alleviate the threat.
- Searches and seizures in investigation of a child neglect or child abuse case at a home are governed by the same principles as other searches and seizures at a home. 891 F.2d 1087

Griffin v. Wisconsin (483 U.S. 868 - 1987)

- The United States Supreme Court has held that courts may not use a different standard other than probable cause for the issuance of such orders. If a court issues a warrant based on an uncorroborated anonymous tip, the warrant will not survive a judicial challenge in the higher courts. Anonymous tips are never probable cause.

H.R. v. State Department of Human Resources (Ala. Ct. App. 1992)

- Court held that an anonymous tip standing alone never amounts to probable cause. 612 So. 2d 477

Hurlman v. Rice (2nd Cir. 1991)

- Defendant should've investigated further prior to ordering seizure of children based on information he had overheard. The mere possibility of danger does not constitute an emergency or exigent circumstances that would justify a forced warrantless entry and a warrantless seizure of a child.

Lenz v. Winburn (11th Cir. 1995)

- The Fourth Amendment protection against unreasonable searches and seizures extends beyond criminal investigations and includes conduct by social workers in the context of a child neglect/abuse investigation.

Lion Boulos v. Wilson

- One's awareness of his or her right to refuse consent to warrantless entry is relevant to the issue of voluntariness of alleged content.

Schneckloth v. Bustamonte

- Consent to warrantless entry must be voluntary and not the result of duress or coercion. Lack of intelligence, not understanding the right not to consent, or trickery invalidate voluntary consent.

State v. Hatter (1983)

- The exigent circumstances exception to the warrant clause only applies when 'an immediate major crisis in the performance of duty afforded neither time nor opportunity to apply to a magistrate.' 342 N.W.2d 851, 855 (Iowa 1983)

Tenenbaum v. Williams (2nd Cir. 1999) and F.K. v. Iowa

- 'In context of a seizure of a child by the State during an abuse investigation...a court order is the equivalent of a warrant.' 193 F.3d 581, 602 (2nd Cir. 1999) and F.K. v. Iowa district Court for Polk County, Id.

United States v. Becker (9th Cir. 1991)

- The protection offered by the Fourth Amendment and by our laws does not exhaust itself once a warrant is obtained. The concern for the privacy, the safety, and the property of our citizens continues and is reflected in knock and announce requirements. 929 F.2d

Wallis v. Spencer (9th Cir. 1999/2000)

- Police officers or social workers may not "pick up" a child without an investigation or court order, absent an emergency. Parental consent is required to take children for medical exams, or an overriding order from the court after parents have been heard. -- Just the highlights 202 F3d 1126

Walsh v. Erie County Department of Job and Family Services

- Child protection workers are subject to the 4th and 14th Amendment in the context of an investigation of alleged abuse or neglect as are all "government officials". The court ruled "despite the defendant's (child protection worker) exaggerated view of their powers, the Fourth Amendment applies to them, as it does to all other officers and agents of the state whose request to enter, however benign or well-intentioned, are met by a closed door." "The Fourth Amendment's prohibition on unreasonable searches and seizures applies whenever an investigator, be it a police officer, a DCFS employee, or any other agent of the state, responds to an alleged instance of child abuse, neglect, or dependency". 3:01-cv-7588.

White v. Pierce County (9th Cir. 1986)

- A government official cannot coerce entry into another's house without a search warrant or applicability of an established exception to the requirement of a search warrant. Any governmental official can be held to know that their office does not give them an unrestricted right to enter peoples' homes at will. Police could not enter a dwelling without a warrant even under statutory authority where probable cause existed without exigent circumstances. 797 F. 2d 812.

Wooley v. City of Baton Rouge (5th Cir. 2000)

- Defendants could not lawfully seize child without a warrant or the existence of probable cause to believe child was in imminent danger of harm.
- Where police were not informed of any abuse of the child prior to arriving at caretaker's home and found no evidence of abuse while there, seizure of the child was not objectively reasonable and violated the clearly established Fourth Amendment rights of the child.

Yabarra v. Illinois (1979)

- Where the standard for a seizure or search is probable cause, then there must be particularized information with respect to a specific person. This requirement cannot be undercut or avoided simply by pointing to the fact that coincidentally there exists probable cause to arrest or to search or to seizure another person or to search a place where the person may happen to be. 44 U.S. 85

Under Title IV-E "reasonable efforts", DCF is required by Federal law to provide the disabled mother with any services she needs in order to keep the child home.