# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
### (609) 989-2182

CHAMBERS OF
**FREDA L. WOLFSON**
CHIEF JUDGE

Clarkson S. Fisher Federal Building &
U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

### AMENDED LETTER ORDER

May 29, 2020

Stephanie J. Messner
Plaintiff, *pro se*
447 4th Avenue
Garwood, New Jersey 07027

Ashley Laura Costello, Esq.
Deputy Attorney General
New Jersey Office of the Attorney General
25 Market Street, 7th Floor – West Wing
Trenton, New Jersey 08625

RE:     ***Messner v. Karyn R. Weingarten, et al.,***
            **Civ. Action No. 19-15752 (FLW)_____**

Litigants:

In the above-referenced action, *pro se* plaintiff Stephanie J. Messner (Plaintiff") asserts claims under 42 U.S.C. § 1983 against various state employees ("State Defendants"),[1] alleging that State Defendants violated Plaintiff's constitutional rights during the course of a child custody matter in state court.  Presently before the Court is a motion, filed by State Defendants, to dismiss Plaintiff's Complaint, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  In their motion, State Defendants argue, *inter alia*, that they are entitled to sovereign immunity and/or absolute immunity from suit.  Because the issues raised in State Defendants' motion are not complex, in lieu of a formal opinion, I render my decision in this Amended Letter

---

[1]     "State Defendants," collectively, are: the Honorable Douglas M. Fasciale, J.A.D.; the Honorable Hany A. Mawla, J.A.D.; the Honorable Lisa Rose, J.A.D.; the Honorable Kimaire Rahill, P.J. Fam.; the Honorable Kevin M. Shanahan, P.J. Cr.; the Honorable Bradford Bury, J.S.C.; Honorable Kathy Qasim, J.S.C.; Honorable Michael J. Rogers, J.S.C.; Probation Officer Cederic Howard; Probation Officer Nicole Barracano; and Acting Assistant Prosecutor Karyn R. Weingarten.  In addition to State Defendants, Plaintiff also names Somerset County, Union County, and "John and Jane Doe 1-100" as defendants.  Judges Fasciale, Mawla, Rose, Rahill, Shanahan, Bury, Qasim, and Rogers are referred to, collectively, as the "Judge Defendants" in this Amended Letter Order.

Order.  For the reasons set forth below, State Defendants' motion is **granted in part** and **denied in part**.

*     *     *

The Court recounts the background and procedural history of this matter to the extent it is relevant to the present motion.  On August 3, 2015, the father of Plaintiff's children filed a motion for a change of custody of the parties' two children in the New Jersey Superior Court.  (*See* Compl. ¶¶ 18-19, ECF No. 1).  On July 25, 2017, the state trial court entered an order (the "July 25, 2017 Order") designating the children's father as the parent of primary residence and Plaintiff as the parent of alternate residence.  (*See* Compl. ¶¶ 2, 8, 50, 54; *see also Messner v. Hajdu-Nemeth*, No. A-5607-16T1, 2019 WL 692149, at *2 (N.J. Super. Ct. App. Div. Feb. 20, 2019).)  The July 25, 2017 Order also resolved issues of parenting time, child support, and counsel fees.  *See Messner*, 2019 WL 692149, at *3-4.  On February 20, 2019, the New Jersey Superior Court, Appellate Division, affirmed the July 25, 2017 Order.  (*See* Compl., ¶¶ 55-60; *see also Messner*, 2019 WL 692149, at *1.)  On September 4, 2019, the New Jersey Supreme Court denied Plaintiff's petition for certification.  *See Messner v. Hajdu-Nemeth*, 239 N.J. 270, 216 A.3d 970 (2019).

On July 24, 2019, Plaintiff filed the Complaint in the instant action in federal district court.  (*See* Compl., ECF No. 1.)  In the Complaint, Plaintiff names eight state judges, two court officers, and a state prosecutor as defendants.  The Complaint alleges that these officials, *i.e.*, State Defendants, violated Plaintiff's constitutional rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment during the course of the custody proceedings in state court.  More specifically, Plaintiff alleges that State Defendants engaged in various act and omissions, including: (i) failing to adjourn a hearing so that Plaintiff could obtain legal counsel, (ii) denying numerous motions and orders to show cause filed by Plaintiff, (iii) entering orders in favor of the children's father, (iv) failing to enforce court orders or to sanction the children's father, (v) disregarding Plaintiff's experts, (vi) misapplying the relevant law, and (vii) directing local police to not allow Plaintiff to file civilian criminal complaints in the municipal court.  (*See id.* at ¶¶ 2-8, 19-24, 26-27, 33-36, 41-50, 53-92, 96-98).

As for relief, Plaintiff asks this Court to "move" her "FD case" out of Somerset County "to a county not connected in anyway [sic] to Somerset County or adjacent to Somerset County (Vicinage 13) which also includes Union County."  (Compl. ¶ 2.)  In addition, Plaintiff seeks declaratory and injunctive relief, under Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, "on behalf of all persons [sic] mothers and/or father's [sic] who have been or in the future will be deprived of child custody by Defendants without a prompt and full hearing; as well as monetary damages against the State and County Defendant."  (*Id.*)[2]

On November 29, 2019, State Defendants filed the present motion, seeking to dismiss Plaintiff's Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  (*See* State Defs.' Mot, ECF No. 16.)  On January 6, 2020, Plaintiff filed a brief in opposition to the motion.  (*See* Pl.'s Opp., ECF N. 17).  Plaintiff subsequently filed additional

---

[2]     I note that, while it is not entirely clear from the Complaint, "County Defendant" appears to be a reference to Union County or Somerset County, neither which have entered an appearance in this action as of the date of this Amended Letter Order.

papers as "addend[a]" to her opposition brief.  *see* Pl.'s First Addendum to Opp. Br, ECF No. 18; Pl.'s Second Addendum to Opp. Br., ECF No. 20.)  State Defendants did not file any reply papers.

*       *       *

In the present motion, State Defendants argue that Plaintiff's Complaint must be dismissed on several grounds.  *First*, State Defendants argue that Plaintiff's claims against them in their official capacities are barred by the Eleventh Amendment to the U.S. Constitution.  *Second*, State Defendants argue that they are all entitled to absolute immunity from suit in their individual capacities.[3]  In response to these arguments, Plaintiff counters that the Eleventh Amendment does not apply in this case, and that none of State Defendants are entitled to absolute immunity from suit.  I address each of these arguments, in turn, below.

### 1.       Eleventh Amendment

I first address whether Plaintiff's claims against State Defendants in their official capacities are barred by the Eleventh Amendment of the United States Constitution.[4]  The Eleventh Amendment "is a jurisdictional bar which deprives federal courts of subject matter jurisdiction" over actions against a state.  *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n. 2 (3d Cir. 1996) (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984)).  The state's sovereign immunity from suit under the Eleventh Amendment also extends to "arms of the state," such as state agencies and departments.  *See Pennhurst*, 465 U.S. at 99 (3d Cir.1999); *Chisolm v. McManimon*, 275 F.3d 315, 322–23 (3d Cir.2001) ("Eleventh Amendment immunity may be available to a state party-in-interest notwithstanding a claimant's failure to formally name the state as a defendant.").  The state's sovereign immunity, moreover, is preserved under Section 1983; a state is therefore not a "person" who may be sued under Section 1983.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65–66 (1989).

The protections of the Eleventh Amendment also extend to protect entities and persons  , when "the state is the real, substantial party in interest."  *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945).  Specifically, state agencies and officials acting in their official capacity are generally afforded this protection.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.") (internal citations omitted); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir.2010) ("Individual state employees sued in their official capacity are also entitled to Eleventh Amendment immunity because 'official-capacity suits generally represent only another way of pleading an action' against the state.")

---

[3]       State Defendants also raise a number of other defenses in their motion, including that Plaintiff's claims are barred by the *Rooker-Feldman* doctrine and by the applicable statute of limitations.  These defenses appear to be applicable only to the conduct alleged against the Judge Defendants and against Defendants Howard and Barracano.  Because I find that all State Defendants are entitled to sovereign immunity and, in the case of the Judge Defendants and Defendants Howard and Barracano, to absolute immunity, I need not address in depth whether these separate grounds warrant dismissal.

[4]       The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.

3

In this case, Plaintiff has sued all of State Defendants in their official capacities. (*See Compl.*, Caption (stating that each named individual is being sued "in their Official capacity"), Compl. ¶ 1 ("The State, Counties and individual Defendants in their official capacity deprived me . . ."), Compl. ¶ 11 ("Individual Defendants sued in their official capacity . . ."). Moreover, all of the allegations pertain to acts that were committed by State Defendants while acting on behalf of either the New Jersey courts, *i.e.*, the Judge Defendants and Defendants Howard and Barracano, or the state county prosecutor's office, *i.e.*, Defendant Weingarten. Those agencies are clearly entitled to the protection of the Eleventh Amendment as arms of the state; and that protection extends to State Defendants while acting in their official capacities. *See Hunter v. Supreme Court of New Jersey*, 951 F. Supp. 1161, 1177 (D.N.J. 1996) (holding that the "the Supreme Court of New Jersey is protected by the state's sovereign immunity," and that "[t]the official-capacity suits against [two defendant-judges] are also barred by the Eleventh Amendment because they are actually suits against the . . . [New Jersey] Supreme Court"), *aff'd*, 118 F.3d 1575 (3d Cir. 1997); *Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir. 2008) (stating that a state's "judicial districts, including their probation and parole departments, are entitled to Eleventh Amendment immunity"); *Palmerini v. Burgos*, 2011 WL 3625104, at \*8 (D.N.J. Aug. 15, 2011) (noting that "courts within the Third Circuit have consistently and uniformly held that the Eleventh Amendment precludes federal suits against New Jersey county prosecutors, as well as their offices and staff, arising out of their law enforcement functions on the basis that the real party in interest in these suits is the State of New Jersey."). Accordingly, Plaintiff's claims, in their entirety, are barred against State Defendants in their official capacities under the Eleventh Amendment.[5]

### 2.    Absolute Immunity

While the Complaint explicitly asserts claims against State Defendants only in their *official* capacities, as discussed above, State Defendants have also apparently construed Plaintiff's

---

[5]    Plaintiff's reliance in her opposition on this Court's decision in *Mammaro v. The New Jersey Div. of Child Permanency & Prot.*, 2015 WL 225999, at \*1 (D.N.J. Jan. 16, 2015), is misplaced. In *Mammaro*, I applied the Supreme Court's decision from *Ex parte Young*, 209 U.S. 123 (1908), to claims against state employees. I found that the defendant-employees, while sued in their official capacities, were not entitled to the protections of the Eleventh Amendment for claims that were "purely for prospective injunctive relief." *Mammaro*, 2015 WL 225999, at \*6. In this case, in contrast, while Plaintiff appears to be seeking some form of injunctive relief (*see* Compl. ¶ 2 ("Plaintiff . . . seeks in relief to have my FD case moved out of Somerset County immediately . . ."), Plaintiff, in actuality, is seeking to remedy past injuries that have already been allegedly committed by State Defendants. Indeed, Plaintiff does not seek a remedy for any future or ongoing violations of her rights. Therefore, the reasoning from *Ex parte Young* does not apply in this case. *See Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) ("In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'") (citations omitted); *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* . . . to claims for retrospective relief."); *cf. Goodson v. Maggi*, 797 F.Supp.2d 604, 622–24 (W.D. Pa.2011) (holding that plaintiff's relief was not prospective and did not end an ongoing violation of law where it was "purely an attempt by [the plaintiff] to have this Court review the prior decisions of the state court judges, which it is not empowered to do"). In any event, to the extent Plaintiff intended to seek prospective injunctive relief for an ongoing violation of law, those claims against state court judges or the court administrators are nevertheless barred by judicial immunity, as discussed *infra*.

Complaint as alleging claims against them in their *individual* capacities. In particular, State Defendants argue that they are immune from suit under various doctrines of absolute immunity. These doctrines can only apply to the extent that Plaintiff's claims are asserted against State Defendants in their individual capacities. *See Agresta v. Goode*, 797 F. Supp. 399, 405 (E.D. Pa. 1992) ("Absolute immunity . . . applies only to actions brought against defendants in their individual capacities.); *Keehn v. Troutmann*, 2019 WL 1429332, at *6 (E.D. Pa. Mar. 29, 2019) ("Immunity for personal-capacity actions differ from official capacity as the only immunities available under official capacity actions 'are forms of sovereign immunity that the entity, qua entity, may possess, such as the Eleventh Amendment.'"). Consistent with the arguments advanced by State Defendants, I similarly construe Plaintiff's Complaint as asserting claims against State Defendants in their individual capacities.

### A)    Judicial Immunity

With respect to the Judge Defendants, it is well-established as "a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself." *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978) (quoting *Bradley v. Fisher*, 80 U.S. 335, 347, 20 L. Ed. 646 (1871). For that reason, the Supreme Court has held that "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." (*Id*.) "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages.[] Accordingly, absolute judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (citations omitted).

There are two circumstances where a judge's absolute immunity from civil liability may be overcome, both of which are narrow in scope. "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity." *Id*. (citing *Forrester v. White*, 484 U.S. 219 (1988) and *Stump*, 434 U.S. at 360). "[W]hether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Id*. (quoting *Stump*, 435 U.S. at 362). "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id*. (citing *Stump*, 435 at U.S. 356-57).

In this case, Plaintiff's claims against the Judge Defendants are all based upon alleged acts and omissions taken by those defendants in their capacities as judges. Plaintiff alleges, for example, that the Defendant-Judges (i) failed to adjourn a hearing so that Plaintiff could obtain legal counsel, (ii) denied numerous motions and orders to show cause filed by Plaintiff, (iii) entered orders in favor of the children's father, (iv) failed to enforce court orders or to sanction the children's father, (v) disregarded Plaintiff's experts, and (vi) misapplied the relevant law. All of these actions and omissions are quintessential judicial acts normally performed by a judge. Moreover, Plaintiff's claims against the Defendant-Judges are based entirely on Plaintiff's

interactions with those defendants in their capacities as judges.[6]  Accordingly, I find that the Judge Defendants are entitled to absolute judicial immunity, to the extent they are being sued in their individual capacities.

### B)   Quasi-Judicial Immunity

My conclusion that the Judge Defendants are entitled to absolute judicial immunity in turn demands that Defendants Howard and Barracano, as Child Support Enforcement and Hearing Officers for the New Jersey Superior Court, also be extended immunity.  Under the doctrine of "quasi-judicial immunity," a person who functions as "an integral part of the judicial process . . . is protected by the same absolute judicial immunity" that protects a judge.  *McArdle v. Tronetti*, 961 F.2d 1083, 1085 (3d Cir. 1992).  In that regard, the Third Circuit has held that "a court administrator or deputy administrator, who is charged with the duty of carrying out facially valid court orders, enjoys quasi-judicial immunity from liability for damages in a suit challenging conduct prescribed by that order."  *Addlespurger v. Corbett*, 461 F. App'x 82, 85 (3d Cir. 2012); *see also Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760, 772-73 (3d Cir. 2000) (extending quasi-judicial immunity to deputy court administrator who released information at judge's order); *Dongon v. Banar*, 363 F. App'x 153, 156 (3d Cir. 2010) (extending quasi-judicial immunity to other court employees).

In this case, the only specific actions alleged to have been committed by Defendants Howard and Barracano appear to have been pursuant to facially-valid court orders.  (*See* Compl. ¶ 97 ("Barracano treated me like a criminal and ordered me to pay an additional $1,000.00 even though I was ahead of my payment plan.  This ended up going upstairs before Judge Rogers who then ruled that I had to pay the $1,000.00 . . . "); Compl. ¶ 98 ("In March of 2018, Cederic Howard and the Probation Department placed levies on my bank accounts . . . Cederic Howard was made aware that I had been making my weekly payments according to the Court Order . . ."). Accordingly, I find that Defendants Howard and Barracano are entitled to absolute quasi-judicial immunity, to the extent those defendants are being sued in her individual capacities.

### C)   Prosecutorial Immunity

Finally, I turn to whether Defendant Weingarten, as Assistant Prosecutor for Union County, is entitled to absolute prosecutorial immunity in her individual capacity.  It is a well-established principle that prosecutors enjoy absolute immunity from liability in civil suits for actions taken in their role as prosecutors.  *See Imbler v. Pachtman*, 424 U.S. 409, 427-28 (1976).  Such immunity is founded in the concern that "harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the in independence of judgment required by his public trust."  *Id*. at 423.

---

[6]      In her opposition brief, Plaintiff argues that the Judge Defendants "are not entitled to absolute immunity because they were acting outside the ordinary scope of their judicial duties."  (Pl. Opp. at 10, ECF No. 17.)  This appears to be an argument that the Judge Defendants' actions were taken "in excess of [their] authority."  *Stump*, 435 U.S. 349, 356-57.  However, there are no facts in the Complaint to support a claim that any of the Judge Defendant's acts were "taken in complete absence of all jurisdiction."  *Mireles*, 502 U.S. at 11-12 (quoting *Stump*, 435 U.S. at 356-57 ("A judge . . . will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'")  Indeed, all of the allegedly improper acts or omissions by the Judge Defendants—*i.e.* denial of motions and orders, application of law to facts, etc.— are all well within the authority typically afforded to trial and appellate court judges.

Indeed, if subject to suit, the prosecutor would become "constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages." *Id.* at 424-25.

To that end, the Supreme Court has explained that prosecutorial immunity is intended to apply to conduct that is "intimately associated with the judicial phase of the criminal process." *Id.*, 424 U.S. at 430. The Supreme Court has stated, for example, that "absolute immunity applies when a prosecutor prepares to initiate a judicial proceeding, or appears in court to present evidence in support of a search warrant application[, but] absolute immunity does not apply when a prosecutor gives advice to police during a criminal investigation, when the prosecutor makes statements to the press, or when a prosecutor acts as a complaining witness in support of a warrant application." *Van de Kamp v. Goldstein*, 555 U.S. 335, 343, 129 S.Ct. 855, 172 L.Ed.2d 706 (2009) (citations omitted). Indeed, "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

As relevant to this case, the Third Circuit has held that "[t]he decision to initiate a prosecution is at the core of a prosecutor's judicial role," and that "[a] prosecutor is absolutely immune when making this decision, even where he acts without a good faith belief that any wrongdoing has occurred." *Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3d Cir. 1992). However, while "[a]lmost any action by a prosecutor, including his or her direct participation in purely investigative activity, could be said to be in some way related to the ultimate decision whether to prosecute," the Supreme Court has not interpreted prosecutorial immunity as that expansive. *Burns v. Reed*, 500 U.S. 478, 495 (1991). Rather, in determining whether prosecutorial immunity attaches, courts are instructed to "inquire whether the prosecutor's actions are closely associated with the judicial process." *Id.* As the Supreme Court has explained, "[a]t some point, and with respect to some decisions, the prosecutor no doubt functions as an administrator rather than as an officer of the court." *Imbler*, 424 U.S. at 431 n.33.

In this case, Plaintiff's claim against Defendant Weingarten is based on allegations that Defendant Weingarten directed police to not allow Plaintiff to file civilian criminal complaints in the municipal court. (*See* Compl. ¶ 9 ("Union County Assistant prosecutor Karyn R. Weingarten issuing her verbal directives to the Garwood Police instructing them to deny me the legal access to be able to file a civilian complaint under the 2C:13-4a Interference with Custody statute."); ¶ 44 ("[Defendant Weingarten] directs the police to not allow me to file civilian complaints in the municipal court"). These allegations involve acts that, if true, preceded any decision by Defendant Weingarten to initiate a prosecution. In other words, Plaintiff is claiming that Defendant Weingarten improperly interfered with Plaintiff's administrative right to file a complaint. Indeed, under the Rules of the New Jersey Courts, the prosecutor's role in deciding whether to initiate a prosecution does not appear to come into play until *after* a citizen is permitted to file a complaint.[7]

---

[7]     More specifically, under the Rules of the New Jersey Courts, "[t]he municipal court administrator or deputy court administrator *shall accept* for filing *every complaint* made by *any person*." New Jersey Court Rule 7:2-1 (emphasis added). It is only after the municipal court accepts the citizen's complaint that the prosecutor has a role in deciding whether to pursue criminal charges. *See* New Jersey Court Rule 7:2-1(b) ("Prior to a finding of probable cause and issuance of a Complaint-Warrant (CDR-2) or a Complaint-Summons (CDR-1) charging any indictable offense made by a private citizen against any individual the

*(Footnote continued on next page.)*

Accordingly, Defendant Weingarten is not entitled to absolute prosecutorial immunity for the conduct alleged to the extent she is being sued in her individual capacity.

Additionally, in their motion papers, State Defendants also argue the following briefly in a footnote: "Even assuming arguendo that A.P. Weingarten was not entitled to absolute prosecutorial immunity, Plaintiff's Complaint must still be dismissed with prejudice, as A.P. Weingarten is entitled to qualified immunity from suit where Plaintiff's Complaint fails to contain any factual allegations to state a claim against Defendant Weingarten for a violation of Plaintiff's constitutional rights." (State Defs.'s Br. at 28 fn. 28, ECF No 16-2.) I decline, however, to address an argument that is raised entirely in footnote and that lacks any substantive legal reasoning. *See e.g., John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 (3d Cir. 1997) ("[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived."). In any event, "[a] defendant has the burden to establish that he [or she] is entitled to qualified immunity." *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004). Here, by only raising the qualified immunity defense in a cursory footnote, State Defendants (and, in particular, Defendant Weingarten) have not met their burden. Defendant Weingarten may, however, assert qualified immunity as an affirmative defense in her answer and, if appropriate, raise the issue in a future motion for judgment on the pleadings or for summary judgment.

*     *     *

In sum, I find that Plaintiff's Complaint against State Defendants in their official capacities is barred under the Eleventh Amendment. Furthermore, to the extent Plaintiff's Complaint is construed as asserting claims against State Defendants in their individual capacities, I find that the Judge Defendants, as well as Defendants Howard and Barracano, are entitled to absolute judicial or quasi-judicial immunity. However, I find that Defendant Weingarten is not entitled to absolute immunity from suit in her individual capacity for alleged interference with the filing of a citizen's complaint.

Accordingly, for the reasons set forth above, Defendant's motion is **GRANTED** in part and **DENIED** in part. Plaintiff's Complaint is **dismissed with prejudice** as to the following defendants, regardless of whether they are being sued in their official or individual capacities: Judge Fasciale; Judge Mawla; Judge Rose; Judge Rahill; Judge Shanahan; Judge Bury; Judge Qasim; Judge Rogers; Probation Officer Howard; and Probation Officer Barracano. This case may proceed on the claim against Defendant Weingarten, but only to the extent Plaintiff is suing Defendant Weingarten in her individual capacity.[8]

---

Complaint-Warrant (CDR-2) or Complaint-Summons (CDR-1) shall be reviewed by a county prosecutor for approval or denial.").

[8]     Plaintiff has separately filed a motion to amend her complaint, wherein she seeks leave to name additional defendants. (*See* ECF No. 21.) Based upon the Court's preliminary review of that motion, it appears that Plaintiff has not attached a copy of a proposed amended complaint to her motion, as is required under the Court's Local Rules. *See* D.N.J. Civ. L.R. 15.1 (stating that "a party who seeks leave to amend a pleading shall do so by motion . . . and shall attach to the motion: (1) a copy of the proposed amended pleading"). Accordingly, Plaintiff's motion for leave to amend is **DENIED**. Plaintiff may file a renewed motion to amend, **within thirty (30) days of this Amended Letter Order**. Plaintiff is advised that she must attach a proposed amended pleading to any such motion.

**SO ORDERED**

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge