

Stephanie J. Messner- Pro Se
447 4th Ave.
Garwood, N.J. 07027
908-456-4417

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **STEPHANIE J. MESSNER** | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| **STATE OF NEW JERSEY UNION COUNTY** | : | **AMENDED** |
| **COMPLAINT** | | |
| **KARYN R. WEINGARTEN** (in her official | : | |
| capacity of Union County Assistant Union | : | Jury Trial Demanded |
| County Prosecutor), | : | |
| **SOMERSET COUNTY SUPERIOR COURT** | : | |
| **FAMILY PART- JUDGE HANY MAWLA** | : | 6/29/2020 |
| (in his official capacity of Presiding Judge | : | |
| of Superior Court Family Part in Somerset | : | |
| County), | : | |
| **SOMERSET COUNTY SUPERIOR COURT-** | : | |
| **FAMILY PART- JUDGE KEVIN SHANAHAN** | : | |
| (in his official capacity as Family Part Judge | : | |
| under Judge Hany Mawla (Presiding Judge | : | |
| of Somerset County Superior Court- Family | : | |
| Part), **SOMERSET COUNTY SUPERIOR** | : | |
| **COURT: KIMARIE RAHIll** (in her Official | : | |
| capacity serving as Presiding Judge of | : | |
| Somerset County following Judge Hany | : | |
| Mawla's appointment to Appellate Court) | : | |
| **JUDGE KATHY QASIM** (in her | : | |
| Official capacity serving as Family Part | : | |
| Judge of Somerset County) | : | |
| **SOMERSET COUNTY SUPERIOR COURT-** | : | |
| **FAMILY PART JUDGE BRADFORD BURY** | : | |
| (in his Official capacity serving as Family Part | : | |
| Judge of Somerset County | : | |
| **SOMERSET COUNTY SUPERIOR COURT-** | : | |
| **FAMILY PART JUDGE MICHAEL ROGERS** | : | |
| (in his Official capacity serving as Family Part | : | |

Judge of Somerset County                              :
**SOMERSET COUNTY PROBATION**                        :
**DEPARTMENT - CEDERIC HOWARD and**                  :
**NICOLE BARRACANO**                                  :
(in their Official capacity as Probation Officers) :
**NJ. APPELLATE DIVISION-   Appeal Judges**          :
**Hon. Lisa Rose and**                                :
**Hon. Douglas M. Fasciale**                          :
both in their Official Capacity of Appellate          :
Court Judges                                          :
**Borough of Garwood, Garwood NJ.**                   :
**Township of Franklin Somerset NJ.**                 :
**Garwood Court Administrator**                       :
**Noelle Jiminez**                                    :
**Franklin Twp Court Administrator**                  :
**Keila Martinez**                                    :
**Somerset County Assistant Prosecutor**             :
**AP Yoana Yankova** in her official capacity as     :
Assistant Prosecutor
**N.J. State Board of Psychological Examiners**  :
**Indira Nunez PhD- Executive Director**             :
**Dr. Michael Walker  PhD- Exec. Director**          :
and **John and Jane Doe 1-100**                      :

## COMPLAINT

**"Injustice anywhere is a threat to justice everywhere. We are caught in an inescapable network of mutuality, tied in a single garment of destiny. Whatever affects one directly, affects all indirectly."**

**— Martin Luther King Jr., Letter from the Birmingham Jail**

## Jurisdiction

1. This Court has jurisdiction over this matter under 28 U.S.C. §1331.  I, the Plaintiff, am maintaining this action under 42 U.S.C. §1983, on my own behalf until or unless a Substitution of Attorney is otherwise provided.  The State officials or officers, Union and Somerset Counties and individual Defendants in their individual and official capacity who deprived me, the Plaintiff, of Liberty, Due Process and Equal Protection under the color of law by depriving me as a parent who by Court Orders was designated as the legal Guardian and the Custodial parent (PPR) of my minor children without affording me even the minimal procedural protections guaranteed by the United States Constitution.

2. I am breaking to inform Your Honor that upon your dismissal of the Defendants based on Immunity, one of the Defendants, Presiding Judge Kimarie Rahill who by recent Court Order from the NJ Supreme Court signed by Chief Justice Stuart Rabner was reassigned to another position in the Somerset County Civil Division as of 6/6/2020 and the Assignment Judge Yolanda Ciccone "retired" from her position as Assignment Judge of Vicinage 13 (Somerset, Hunterdon and Warren Counties) to go work as the new County Prosecutor for Middlesex County.

3. On June 12, 2020, I was scheduled to testify as a witness before the NJ Senate in regards to Yolanda Ciccone and what had been transpiring in her court and an hour before the zoom hearing, I was notified by phone that the Probation Department and Kimarie Rahill (both Defendants in this case) has scheduled me for a hearing the following week by zoom to hear the adversary's cross motion for an upward increase in child support and more money for me to pay just like Judge Rahill did when directing Judge Bury to hear my case instead of her, telling him how to decide and then having her law clerk sit in on the hearing taking notes for her while Judge Bury imputed to me THOUSANDS OF DOLLARS in fraudulent and unjust funds for me to pay the Defendant. This most recent action of Kimarie Rahill on June 12, 2020, following Your Honor's dismissal of the Judges based on Immunity and on same day she was notified of her new position in the civil division, still signed herself as presiding judge when working with the Probation Department Christine Reilly to address the adversary's motion with the intent to impute more money for me to pay out. I took this as retaliation for bringing attention to this matter to the court and to the NJ Senators and intimidation of a witness.

4. Attached are the court Orders from Chief Justice Rabner and Kimarie Rahill signed the notice sent to my home on 6/16/2020 as the Presiding Judge of the Family Part when she is not to be anywhere near my case. It's important to point out that none of my motions that go back from 12/18/18 have been heard yet, vacating Judge Bury's order for me to pay fraudulent funds to the Defendant, nor the Change of Venue reconsideration. The behavior of Judges in my case deviated from the scope of their jobs, their actions. Allowing Judges to be excused based on Immunity is an assault to the Judiciary as a whole. It dismantles the public's perception and confidence in the Judiciary which is dare I say VITAL.

5. Judges who knowingly or should know by way of their education, violate laws, statutes, the United States Constitution, the oaths of office they took to uphold the laws of the United states and all their Judicial Canons and/or condone or participate as an accomplice in a crime should be waived of their rights of Immunity under the 11th Amendment and should be impeached.

6. Granting them Immunity when their actions are unlawful or outside the scope of their jobs which is LAW ENFORCEMENT undermines the intention and spirit of the law and what Judicial Immunity stands for. By allowing this behavior of the Judges to continue without harsh remedy and instead granting them Absolute Judicial

2

Immunity, instead of them being held to a higher standard than the public, and by all means their positions require and mandate it, they are held to a much LOWER STANDARD THAN THE PUBLIC. This sets a very dangerous precedent in our judiciary. The result would be that Judges would be more careless, not careful as you can see in this case alone. I am allowed to file criminal complaints against Judges but which prosecutor, Karyn Weingarten or Yoanna Yankova is going to allow me the opportunity to file the complaints and this is a violation of my civil rights and my civil rights trumps any attempt to be covered under the doctrine of QUALIFIED IMMUNITY if their action was in "good faith".

7. The doctrine of Qualified Immunity states, " Any officer who is not afforded absolute immunity may only attempt to assert qualified immunity. Qualified immunity is often called "good-faith immunity" meaning that officers are immune when exercising discretion in good faith. This defense is most often asserted by police officers and correctional officers. Furthermore, it only provides immunity from monetary damages, not injunctive relief. See Burns v. Reed, 500 U.S. 478, 487 (1991); see also Buckley v. Fitzsimmons, 509 U.S. 259, 271 (1993).

8. I hereby am litigating for myself and on behalf of any other mothers, fathers, parents who have in the past, the present or in the future would be deprived of their legal rights to legal guardianship of their children, their parental rights to custody of their children and for denial of their rights to protection guaranteed by the United States Constitution.

9. I am seeking injunctive relief by way of a Change in Venue, by the removal or impeachment of these Assistant Prosecutors from holding their positions or any public office for failure to protect the public by causing direct interference with the public policy of the entitlement of an American Citizen and/or a Citizen residing in the State of New Jersey to be able to file a criminal complaint for a criminal charge for the parental kidnapping of a child as delineated in the N.J.S.A 2C:13-4a Interference with Custody Statute and by blocking my rights to file this complaint is a denial of my civilian rights to be protected under the United States 14th Amendment. I am seeking a Federal investigation as to who directed the aforementioned prosecutors to send me back to Somerset County Family Court and not allow me to file my complaint to be heard before a judge.

10. I am seeking injunctive relief by way of a Federal investigation into the NJ. State Board of Psychological Examiners and the process of handling complaints. I want the Walsh investigation concluded and Dr. Walsh sanctioned accordingly with a loss of his license for the unethical behavior and harm done to myself and children so that he could no longer counsel one more child. It is not clear if Judge Hany Mawla blocked the investigation once the adversary informed him of my complaint which I have in transcript of the hearing.

11. [1]These inalienable rights under the United States Constitution are AMERICAN CITIZEN IMMUNITIES that should trump Absolute Judicial Immunity, Quasi Immunity, Qualified Immunity when an officer commits a crime or intentionally (discrimination) fails to execute a procedure that would protect the public and is also violating a citizens rights by not following public policy and procedure, the failure to abide by rules, court orders, statutes, US constitution, civil rights of an individual, group or community.  Granting Immunity in all cases without this consideration takes the power from the people and hands it over to law enforcement in a totalitarian form of local government.

12.  The officials in my case refuse to enforce and/or follow the laws and/or court orders.  My case is about law enforcement that does not enforce the law but co-conspires with select litigants in committing crimes.  In my case the crime is kidnapping.  Would a Judge receive Judicial Immunity if he gave the litigant the noose to hang around my neck? How about give the gun to the shooter to commit a crime. Because that is essentially what transpired here.  The gun was an action to intentionally look the other way, block a complaint against a criminal activity, block the investigation of complaints while the crime was committed, ignore the court orders and the victims rights in this case the victims are two children and me.

13. The United States Constitution delineated GUARANTEED AMERICAN CITIZEN IMMUNITIES include but are not limited to freedoms and unalienable rights American Citizens are entitled to and should be able to enjoy under the 1st Amendment, the right to freedom of speech whether spoken, written or otherwise, without fear of retaliation (as in Judge Kimarie Rahill), the 4th Amendment the right of people to be secure in their persons, houses, papers and against unreasonable searches and seizures shall not be violated and no warrants shall be issued upon probable cause (Judge Mawla ordering the opening of a sealed 10 year old DYFS case without cause).

14. The 14th Amendment that states, "All persons born or naturalized in the United States are citizens of the United States and No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the EQUAL PROTECTION OF THE LAWS.

15.  Herein within this matter all Defendants deprived me whether be by direct interference of custody by using, or in this case abusing their power of office as a Judge to facilitate and aid in the kidnapping of my children which is a crime **or** any person **who would otherwise** (when not committing a crime or engaged in unlawful activity or unlawful behavior) qualify for Absolute Judicial, Quasi or Qualified immunity under the law, supporting a person who was aiding in the crime

---

[1] Amended Complaint- Motion to add more Defendants pg.6

4

of kidnapping or any official who aided and abetted the crime which deprived me of my rights to the legal guardianship of my children, my rights to custody of my children as delineated by the physical COURT ORDERS in place, in which all Defendants listed in the above captioned matter DISREGARDED.

16. This is an Amended Complaint to include AP Karyn Weingarten of Union County Prosecutor's office, AP Yoanna Yankova of the Somerset County Prosecutor's office, Borough of Garwood in Union County, Garwood Court Administrator Kelia Martinez, Township of Franklin Court Administrator Noelle. Both Administrators refused to accept my complaint, and sent me to the police who was directed by Somerset County Assistant Prosecutor Yoana Yankova and Assistant Prosecutor Karyn Weingarten to "take the matter up in Somerset County family court." AP Weingarten and AP Yankova refused to respond to my inquiry as to why they are blocking me from filing a criminal complaint that should be able to be heard before a judge to determine probable cause same as Karyn Weingarten of Union County who also disregarded Court Orders related to child custody and also refused to respond.

17. This Amended Addendum is also with a request to add the NJ. State Board of Psychological Examiners and both Executive Directors Indira Nunez and Dr. Michael Walker who refuse to address and remedy a serious complaint on an additional third party co-conspirator, Dr. William F. Walsh of Metuchen, directly involved in the scheme of the premeditated kidnapping of my children. Dr. William F. Walsh admits on the record that his sessions with the children following the kidnapping and the nights before trial dates where he conditioned and gaslighted the children (to accomplish his clients agenda and keep the children from returning home to and complete the illegal transfer into new schools) was **the cause and effect** of the children changing their minds from I want to go home to my mother to I don't want to go home to my mother, complaints of sexual harassment of Plaintiff during forced sessions, and his statement in a text message to Plaintiff that "You only get to dictate procedure and content if you are the one paying for the sessions," that has been sitting in the Legal Department for going on 4 years while telling me the Plaintiff that the investigation is still ongoing.

18. There were numerous NJ state regulations and laws under the N.J. State Board that Dr. William F. Walsh was in violation and he needs to be held accountable. The law enforcement in this case from the beginning to the end was nil and for these reasons there should be no Immunity whatsoever for anyone that can not comply with the law they are serving in the capacity of "officials" or under the umbrella of the "state" employed to protect and serve the public please see the following web link. https://www.njconsumeraffairs.gov/regulations/Chapter-42-Board-of-Psychologic al-Examiners.pdf.

19. The Board of Psychological Examiners protects the public by:
Ensuring that licensed psychologists meet the requirements set by law and regulations (Failed)

5

Investigating those who may have violated statutes and regulations governing the practice of psychology (Failed)

Requiring those practicing psychology to meet the standards for licensure and renew their licenses annually.

20. The N.J. State Board of Psychological Examiners has failed to perform their job to protect the public and to adhere to the standards of their job description while ensuring that they regard and my rights to legal execution and prosecution of my complaint while ensuring that my rights are protected under the 14th Amendment to have equal protection (not protection of Dr. Walsh's abuse of his authority serving in the capacity of a child custody evaluator that he has had little or no experience as and is not qualified for) and to have my complaint heard and addressed for reasons of complaints based on discrimination, harrassment, a complaint of sexual harassment by Dr. Walsh forcing me to read his clients diaries and discuss sex in what is to be a child custody evaluation, child maltreatment and emotional abuse and transitioning from a child custody evaluator into a treating therapist, forcing his opinions atop of the children's minds, refusing to accept the childrens wishes and force the children to adopt his own for his client and nothing was done to prevent Dr. William F. Walsh from hurting another family or children again and so I am suing on behalf of any future parents or individuals who suffered in the past, the present and will in the future in order to prevent this atrocity from ever happening again and that the Stateboard must be held accountable for addressing the complaints of the public and safeguarding them from corrupt psychologists.

21. The Defendants like the Judges are going to file that they are covered by the doctrine of qualified immunity grants government officials performing discretionary functions immunity from civil suits unless the plaintiff shows that the official violated "clearly established statutory or constitutional rights of which a reasonable person would have known".

## SUMMARY

22. I, the Plaintiff from here on in, is requesting relief to have my FD case moved out of Somerset County immediately to a county not connected in any way to Somerset County or adjacent to Somerset County (Vicinage 13) which also includes Union County. **Plaintiff seeks declaratory and injunctive relief under the Federal Rule of Civil Procedure 23 (a) and (b) (2) on behalf of all persons mothers and/or father's who have been or in the future will be deprived of child custody by Defendants without a prompt and full hearing;** and any parents or individuals who have been harmed by a Psychologist serving in the capacity as a child custody evaluator who did not qualify as a child custody evaluator who took part in the premeditated kidnapping of the children, interfered with custody and aided and abetting his client in the parental kidnapping, violated the NJ. Regulations and caused irreparable damage to the children and Plaintiff .

23. Plaintiff also seeks monetary damages against the State and County Defendants which under the color of law deprived me, the Plaintiff, of custody, parenting time and major medical and educational decision making of my two minor children without a prompt, full and equitable hearing, denying me my fundamental right to move with my children freely within the State of New Jersey to a better school system and better neighborhood without the threat of losing custody of my children, denying me my right to have an adjournment to seek legal representation which would have been equitable and blocking me from filing complaints and/or motions while "facilitating" the Parental kidnapping and withholding of the children from me, the custodial parent, unjustly, causing harm and irreparable damage to the children, my family and my ability to have a relationship with the children today and in the future while the father/Defendant in the case, who was in violation of all Court Orders and meets the criteria for probable cause to be prosecuted according to the N.J.S.A. 2C:13-4a Interference with custody statute gets a free pass from jail, from remedies and sanctions to motivate him to abide by the law, court orders and return the children to the custodial parent and instead of the Judge abiding by the law, court orders, court rules, statutes and moves to remedy the violations, he rewards the father for the parental kidnapping, with the transfer of legal custody and grants retroactive child support to the the father/Defendant, in violation of court orders, from the day he took the children from the custodial parent/Plaintiff thereby misapplying the retroactive child support statute which was meant for the payor facing a "change in circumstance" causing an inability to pay child support directing him/her to write a notice saying what the change of circumstance is e.g. disability, health related issues, inability to work etc. to lower the amount of payment retroactively from the date a motion is filed. Judge Mawla granted retroactive child support to begin accumulating from the day the father took the children with no intent to return them thereby acknowledging retroactive custody without or in violation of Court Orders and the father got rewarded for the Interference with custody, instead of being prosecuted and receiving jail-time and fines. Furthermore, Judge Mawla encourages the Interference with custody to continue under his final Court Order of 7/25/17 which makes a provision, a loophole for the father to continue to withhold the children from parenting time with the Plaintiff at will, randomly, at any time, thereby causing a violation of the Plaintiff's constitutional rights under the 14th Amendment to liberty, freedom, safety, parenting time, equal protection and due process.

24. The Defendant Judge Hany Mawla deprived me of my custody rights, he gave directives to my attorneys not to allow me to file motions (blocked my ability to have access to the legal process) which included Enforcement of Litigant's rights, Contempt of Court, Motion of dismissal for failure to comply with discovery which affected my ability to screen and file a motion to dismiss Dr. Walsh who was not qualified to serve as an "expert witness" in the capacity of a child custody evaluator and he refused to answer the questions delivering into his expertise in the pretrial interrogatories for Discovery was given to the Father and Dr. Walsh to complete but

was never answered. Judge Mawla disregarded this pretrial procedure and the need for Discovery and the need to be able to address Dr. Walsh's competency.

25. Judge Hany Mawla gave directives to the County Prosecutors offices to not allow me to file complaints in the municipalities outside his jurisdiction which both AP Karyn Weingarten from Union County and AP Yoana Yankova from Somerset County theN blocked my right to legal access to file civilian complaints in the municipal court and the opportunity to take my case before a judge.

26. Judge Mawla was made aware that I filed a complaint against Dr. Walsh PhD and Judge Mawla stated that it would take a couple months for the Board members to come to a conclusion and address my complaint however, the investigation went as far as the legal department and was never closed, it was just stopped and my complaint was never addressed and it is now 4 years.

27. This Deprivation of blocking my access to file motions within the Superior Court, not hearing my motions in the Family part to Enforce Litigant's rights, restricting my ability to move to a better neighborhood within the state of New Jersey, the NJ. State Board of Psychological examiners not addressing my very serious complaint against Dr. William F. Walsh and the Superior Court Judge Shanahan directed by Judge Mawla (who should have been the one hearing my case for a change of venue) denying my right to have an equitable hearing by not allowing  an adjournment to retain an attorney and be represented by legal counsel like the Defendant/Adversary are violations of my right to Due Process and Equal Protection clause which is in violation of the United States Constitution- the Fourteenth Amendment which pertains to this Jurisdiction.[2]

28. The Defendants in this case allowed the Interference with custody and the illegal withholding of the children from me, the custodial parent to continue for the duration of 11 months prior to transferring custody legally,  with no parenting time at all for the first three months and that continued all year with very restricted contact  and in which the children were immediately made to remove me as a contact from their emails, social networking sites, and phone numbers changed while under the control of the children's father and his wife who limited, restricted and monitored the children and their contact with me in an attempt to extricate me from the children's lives in what I call an act of "Parenticide" in which the children are made to detach from the  targeted parent and exclude them from their lives.

29. While being withheld from me, the children decompensated psychologically, mentally and emotionally by the alienation the father imposed and the court

---

[2] Judge Hany Mawla was the Presiding Judge and by court rule 4:3-2, motions for a CHANGE IN VENUE are to only be heard by the Assignment Judge or Presiding Judge. Judge Mawla, Judge Shanahan's boss, directed Judge Shanahan to hear both the change in venue and transfer of custody cross motion by the father.

8

allowed. They developed an irrational anger, hatred toward the Plaintiff directly related to the father and stepmother's coaching as per Dr. Walsh testimony on 9/27/2016 and the counseling sessions with Dr. Walsh before and during trial dates in which he stated that the children were told that they couldn't trust their own reality, that they were incapable of making safety decisions for themselves and for this reason, he stated, an adult/parent had to make decisions for them. This was when they expressed that they wanted to return home to their mother's care to go on vacation that was planned and he admitted that he was the CAUSE AND EFFECT of the children's changed attitudes toward me 180 degrees in my absentia and thus the children were irreparably harmed and are still currently being harmed as they are constantly thrust in the middle and used as weapons against me. The damages are cumulative and ongoing and because the trauma initially occurred while the children were still children it may take until adulthood to see the damage that has been caused while under the watch of the Court.

30. The officials especially Judge Hany Mawla, would argue that he has absolute Judicial immunity however, when a Judge departs from Judicial procedure, knowingly or in the context of "should know" by way of his position and education, violates the NJ statutes, court rules, adjudication process, refusing to follow case law that delegates the procedural framework that is the law by which a Judge is bound to abide by in order to provide an equitable hearing in adjudication or when a Judge pre-decides a case prior to adjudication, redefines the laws and/or knowingly misapplies them even to the extent of violating the very title nine N.J.S.A. 9:2-4 statute that the NJ State Legislature provides as the reasoning, procedural framework and standards that dictate as law that a Judge is bound by and if the Judge fails to protect under this law or abide by the law and make decisions that are not in the best interest of the children according to this law or statute by which a Judge must adjudicate and comply with in opposition to what the legislature defines as what is in the "Children's best interest standard", he/she must be held accountable because he/she knows the law and manipulated it to the benefit of Defendant/father in his favor when he knew by the statute guidelines that the Defendant's actions are illegal, criminal and were hurting the children and the Plaintiff.

31. In this case, Judge Hany Mawla sat back and allowed the father to change the children's schools on May 21, 2016 to ones closer to his house three months before 8/17/16 and then on that day of the hearing, granted the father the end of summer vacation time beginning on that day with a return date to the Plaintiff on 8/22/17 and when the father did not return the children, Judge Mawla allowed the withholding of the children from the Plaintiff, isolating the children from their mother, friends, mother's family and allowed this to continue for months with restricted contact with the Plaintiff. During this time Judge Mawla was denying the Plaintiff all of her multiple filings of emergent OTSC while allowing Dr. Walsh to continue to see the children before and around trial dates s/p the submission of his final evaluation report and then shifted the burden of proof on to the Plaintiff by adjudicating, not on her move from South Bound brook to Garwood NJ, the "change

9

in circumstance" by which Judge Shanahan opened the case but on the "self created" circumstance "self-created" by the father in this case of parental kidnapping thereby, deviating from the judicial framework and misplaced the blame on the children in what I call the "Scapegoat Phenomenon" for the violation of the Court Orders and not the adult who admitted that he was making these illegal decisions with his current wife, supported by his own expert witness testimony and making the children take the blame instead.  For these actions, the Judge should not only NOT be granted immunity but be impeached and brought up on criminal charges under the N.J.S.A. 2C:13-4a Interference with Custody statute as a third party co-conspirator and third party accomplice in the parental kidnapping of the children.

AMENDED COMPLAINT TO ADD DEFENDANTS- Use Exhibits from Pacer entry # 21 Wednesday March 25th, 2020 submission for the following.

32. A central element of the within lawsuit is the fact that I was illegally barred from pursuing 2C Criminal charges for Interference with Custody under New Jersey Statute 2C:13-4.

33. At the time of filing the complaint, with respect to this particular cause of action, I included only Defendant KARYN R. WEINGARTEN. This was because of the letter she sent wherein she acknowledged she was refusing to pursue the charges.

34. What I did not fully understand at the time was New Jersey Court Rule 7:2-1. Pursuant to New Jersey Court Rule 7:2-1 (b):"Acceptance of the Complaint: The Municipal Court Administrator or Deputy Court Administrator shall accept for filing EVERY complaint made by any person" **(Exhibit A)**

35. This is a formal process that involves me having a probable cause hearing in front of a municipal court judge on the record- not a back room sham process where I wait in a hallway and phone calls are made and then I am turned away.

36. Prior to the June 13, 2017 Karyn Weingarten letter, in the events leading up to it, I had physically appeared at both the Garwood Municipal Court and the Franklin Township Municipal Court multiple times. In all instances, I was rejected the ability to file my civilian complaint under 2C:13-4a Statute and this was in direct violation of New Jersey Court Rule 7:2-1(b).

37. In the case of Garwood, I filled out the form, attached my complaint to it and hand-delivered it in person to the Court Administrator for filing and the women at the window handed it right back to me and said that I had to "go to family court." This happened two times at the administrators window.

38. The blocking me from filing civilian complaint happened again on two more separate occasions by the Police Officers who refused to file the complaint after consulting with Captain Stoffer of the Garwood Police Department who at that time stated that he was directed by "the Assistant Prosecutor" (but refused to identify by name at the time later revealed to be AP Karyn Weingarten) to refuse to allow me to file the complaint and to direct me to take this up in Somerset County Family Court, adding that she, later identified as AP Weingarten, was not going to allow me to file a civilian complaint, that it was HER decision **(Exhibit D)**. AP Karyn Weingarten ordered these directives to the

Municipal Court and law enforcement without an opportunity to allow me to show probable cause in front of a Judge. Letters were written from my attorney Jared A. Geist to the Union County Prosecutor Grace Parks on 5/16/17 (Exhibit B) responded to by AP Karyn Weingarten **(Exhibit C)**.

39. Karyn Weingarten states in a response letter to my Attorney Jared A. Geist dated June 13, 2017 that only AFTER she spoke to Sgt. Walter Johnson Jr. and was informed of the conversation and voicemails that I had with him in which he informed me that he was going to be talking to *Judge Hany Mawla, himself, said that she made the decision to not allow me to file the complaint although she was aware "mindful" of the N.J.S.A. 2C:13-4a Interference with Custody Statute and considered the police reports but NOT the Court Orders **(Exhibit C)** and failed to act upon the violation of the Court Orders as it pertains to the N.J.S.A. 2C:13-4a Interference with Custody Statute.

40. *Note: 1Judge Hany Mawla initiates at the very beginning of trial, the blocking of legal access by issuing verbal orders and directives to the Plaintiff's attorneys William Lemega and Terry Lyons of Lyons Associates P.C. to stand down and refrain from filing motions on behalf of the Plaintiff, that he is refusing to hear any and all motions pertaining to my case thereby blocking the plaintiff, from filing motions to protect her's and the children's rights that he knew were being violated by extensive isolation and withholding of the children by the father/ Defendant from the Plaintiff, in violation of all court orders related to Custody and Parenting time and an act of Domestic Violence with harm being done to the children all while shielding and protecting the Defendant/father in this case **(Exhibit E).** *Note: Judge Mawla's blocking of the Plaintiff's legal access caused her the inability to file motions to dismiss the case based on Incomplete Interrogatories, Failure to Comply with Discovery, Tampering with Discovery (the multiple Walsh reports, the edited 163 version submitted to the Plaintiff was a different version that cut out important [3] information (hidden from the Plaintiff) than admitted into evidence during trial, Enforcement of Litigant's rights, Contempt of Court, etc.).

41. The N.J.S.A. 2C:13-4a Interference with Custody Statute is an indictable offense and a charge that is not able to be heard and can NOT be heard in "family court" and only prosecuted in a civil, municipal court for what is a criminal charge and offense. This statute originates from The Code of Federal Regulations (CFR) which is the codification of the general and permanent rules and regulations (sometimes called administrative law) published in the Federal Register by the executive departments and agencies of the federal government of the United States. The CFR is divided into 50 titles that represent broad areas subject to federal regulation. According to 25 CFR § 11.405 Interference with custody.

42. (a) Custody of children. A person commits a misdemeanor if he or she knowingly or recklessly takes or entices any child under the age of 18 from the custody of his or her parent, guardian or other lawful custodian, when he or she has no privilege to do so. The N.J.S.A. 2C:13-4a Interference with Custody statute delineated one mandatory criteria for probable cause which is the evidence of having established COURT ORDERS related to Custody and Parenting time on the books. It is here that Karyn Weingarten serving in her

---

[3] Judge Hany Mawla, Presiding Judge of Superior Court of Somerset, Hunterdon and Warren Counties was the trial Judge hearing the Plaintiff's FD family court case in Somerset Family Court who received a promotion to the Appellate Division while "adjudicating" this case.

official capacity as Assistant Prosecutor used her position to block me from utilizing the legal process by prohibiting me from filing a civilian complaint and it is here she was acting beyond the scope of her job by interfering with the legal process, depriving me of my right to be heard before a Judge, failing to do her job as it pertains to upholding the law as it pertains to law enforcement or prosecute a criminal charge. Karyn Weingarten caused direct interference with my ability to exercise my legal and constitutional rights to due process and equal protection under the law, with total disregard for established Court Orders as it pertains to a criminal charge of Interference with Custody which is an indictable crime. I faxed her letters along with the Court Orders multiple times and was met with no response.

43. I was blocked again when I sought to pursue filing a complaint with the Garwood Police Department but was directed by Chief Wright of the Garwood Police Department who also stated that the police did not have permission to allow me to file a complaint because of AP Karyn Weingarten's directives and that I was directed to take this up with Somerset Family Court.

44. In the case of Franklin Township, it was a police officer on multiple occasions who rejected the complaint and refused to let me file it. In both instances this was after a little bit of discussion among the staff, one where my attorney, Jared A. Geist, now a municipal Judge himself, was present with my filing at the window of the Administrator at the Franklin Twp. municipal court who directed us to file charges with the Police Department but the police officers stated that it was their new policy directives from the AP Yankova at the Prosecutor's office to send me back to Somerset County Family Court. I wrote a letter with my Federal complaint attached to AP Yoana Yankova and once again I was met with no response **(Exhibit G).**

13. I have now obtained a police report from Franklin Township from July 23, 2019 which is attached hereto as Exhibit F. The report indicates that Somerset County Assistant Prosecutor Yankova interfered and instructed the charges to not go forward in violation of Rule 7:2-1(b). She must also be named as a Defendant.

Pursuant to the Court Rule, it is the Court Administrator who is ultimately responsible for enforcing the policy to accept every complaint.

14. Thus, I need to amend my complaint to include the following Defendants:

a) Borough of Garwood

b) Township of Franklin

c) Garwood Court Administrator Noelle Jiminez

d) Township of Franklin Court Administrator Keila Martinez

e) Somerset County Assistant Prosecutor Yankova

15. It is in the interests of justice to allow the complaint to be amended to add these five defendants. Their illegal actions were central to my underlying cause of action. There is clear evidence that they violated the Court Rule by refusing to accept my civilian complaint.

16. The complaint should be amended additionally for the legal reasons set forth hereinbelow.

LEGAL ARGUMENT

I. PLAINTIFF SHOULD BE GRANTED LEAVE TO FILE THE AMENDED
COMPLAINT UNDER RULE 15(a)(2) OF THE FEDERAL RULES OF CIVIL
PROCEDURE.
Plaintiff believes that she is entitled to amend the complaint in the instant matter as a
matter of course pursuant to the Federal Rules of Civil Procedure, particularly Rule
15(a)(1) of the Federal Rules of Civil Procedure, as set forth more fully above. However,
should the Court determine for some reason that Rule 15(a)(1) is unavailable to Plaintiff,
Plaintiff has alternatively requested that the Court grant Plaintiff leave to file
theAmended Complaint and Petition for Damages on the basis of Rule 15(a)(2) of the
Federal Rules of Civil Procedure.
A plaintiff's difficulty in learning before filing suit the identity and role of possible
defendants is not uncommon these days. Complex relationships in governmental,
corporate, and societal structures can be hard for a. plaintiff to unravel without the benefit
of discovery, which becomes available only after suit is filed. Examples include the
inability of plaintiffs to identify or correctly name the government officials, police, prison
guards, or corporate employees whose conduct injured them,1 or to identify the persons
or entities that engaged in a fraudulent scheme causing financial loss to the plaintiff.

Rule 15(c)(1)(C)(i) requires additionally that the party to be brought in "received such
notice of the action that it will not be prejudiced in defending on the merits."
Relevant to whether the party to be brought in will be prejudiced is whether the issues
raised by bringing in a new party will be similar and will require much the same
investigation and evidence as the claim against the original defendant. Where the same
defenses will be made by the new defendant as would be made by the original defendant,
prejudice will not be found. Roland v. McMonagle
In Barrow v. Wethersfield Police Department, plaintiff sought to add six named police
officers to his suit originally filed against the police department and "John Doe" officers.
The Court allowed the amendments as it should here.
Plaintiff avers that the policy of the Federal Rules of Civil Procedure is liberal in favor of
permitting amendment of pleadings, and respectfully submits that the trial court's
discretion is not broad enough to permit denial of leave to amend "unless there is a
substantial reason to do so." Dussouy v. Gulf Coast Investmt. Corp., 660 F. Supp. 2d 594,
598 (5th Cir. 1981). Further, leave to amend "shall be freely given when justice so
requires." F.R.C.P. art. 15(a). In fact, there is a bias in favor of granting leave to amend
such that, absent a "substantial reason" for denying leave such as undue delay, bad faith,
repeated failures to cure deficiencies, or undue prejudice to the opposing party, the
district court must entertain a presumption in favor of granting leave to amend. Mayeaux
v. La. Hlth. Svc. & Indem. Co., 376 F.3d 420 (5th Cir. 2004). Further, "[t]he Supreme
Court has explicitly disapproved of denying leave to amend without adequate
justification ..." Id. This presumption is so strong that the Fifth Circuit Court of Appeals
has indicated "the disfavor with which we view district court denials of amendments
without stated reasons[.]" Id.

A district court may deny leave to amend only where "plaintiffs' delay in seeking the amendment is undue, made in bad faith, prejudicial to the opposing party, or fails to cure the jurisdictional defect." Berkshire Fashions, Inc. v. M.V. Hakusan II, 954 F2d 874, 886 (3d Cir. 1992); see also Foman v. Davis, 371 U.S. 178, 182 (1962) (holding that it is an abuse of discretion to deny leave to amend absent a clear or declared reason of delay, bad faith, prejudice, or a repeated failure to cure a problem with the complaint); Cornell & Co. v. Occupational Safety & Health Review Comm'n, 573 F.2d 820, 823 (3d Cir.1978) ("prejudice to the non- moving party is the touchstone for the denial of an amendment."); Wright, Miller & Kane, 6A Fed.Prac. & Proc.Civ. 2d § 1495 (3d ed.) (denial of leave to amend is appropriate only where "the objecting party [is] put to some serious disadvantage."). The non-moving party bears the burden not just of claiming prejudice – but of actually showing "substantial or undue prejudice." Heyl & Paterson International, Inc. v. F.D. Rich Housing, Inc., 663 F.2d 419, 426 (3d Cir.1981).

Significantly for this motion, courts do not find prejudice if the "amendment plaintiff seeks would not alter the claims originally asserted in any way, [and] thus no additional burden of defense would fall on defendants." Kiser v. General Elec. Corp., 831 F.2d 423 (3d Cir. 1987) at 428 (internal citations omitted).

Granting leave to Plaintiffs in the instant matter will not cause any undue delay of any issue on the Court's docket, nor would it prejudice the opposing parties.

WHEREFORE, Mover and Plaintiff herein, pray that they be granted leave to file the Amended Complaint and Petition for Damages to include the following four defendants:
a) Borough of Garwood
b) Township of Franklin
c) Garwood Court Administrator Noelle Jiminez
d) Township of Franklin Court Administrator Keila Martinez
e) Somerset Assistant Prosecutor Yankova

This should be so ordered as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), or alternatively, pursuant to Federal Rule of Civil Procedure 15(a)(2).

## BACKGROUND

45. The first violation of my Constitutional rights begins with restricting my move within the State of New Jersey see below followed by denying my requests for legal representation see excerpt of the transcript of the hearing before Judge Shanahan on 8/19/15 as
follows...

Mr. Gussis: "She wants to move 20 miles apart." "She can reside anywhere in Somerset County, but there's no reason for her to take the girls out of the County."

Court: Mr. Gussis, I mean that's just...I mean where legally.... I mean give me some basis from which I could say that a move from Somerville...Somerset County to

Union County is in and of itself AGAINST a child's best interest?" "How could I possibly find that?" (8/19/2015 Transcript- Judge Kevin Shanahan-,p.8,20-25 p.9,1-7). The Court moved forward ordering plenary hearing departing from judicial procedure as in the Supreme Court ruling *Lepis v. Lepis, 83 N.J. 139 (1980).*

This case presents a situation wherein on 7/2/2015, the Plaintiff filed for a Change in Venue with no other requests for parenting time or child support modifications and in return was served on 8/4/2015 a response that Defendant cross-motioned for transfer of custody of the children. Simply put, Appellant moved from Somerset to Union County and upon request for "vacation time", Respondent took the children 8/17/16 and refused to return them indefinitely. The Court erred in finding the move a prima facie change of circumstances and both the lower Court and Appellate Court erred by allowing the self-help that Respondent engaged in and rewarded him with a transfer of custody and retroactive child support back to 8/17/16.

The Plaintiff sought legal representation due to a "consequence of magnitude" which involved potentially losing custody of their children but was unable to get an appointment so she faxed a letter to Erica Carmen on 8/12/15 to request an adjournment of a hearing scheduled on 8/19/15. Her faxed request was denied and her verbal requests were ignored throughout the hearing before Hon. Kevin Shanahan on 8/19/15 (Transcript p.11,22-25, p.12,1-2).

 Without being allowed an adjournment or to be represented by Counsel, the plenary hearing was ordered even though Respondent never met his burden of a prima facie change of circumstances. The Appellant was denied a reasonable adjournment to obtain Counsel of her choosing.

 The Defendant/motion/Presiding Judge Mawla knew there were Court Orders in place designating me the custodial parent PPR since 2007, knows the N.J.S.A. 9:2-4 title nine statute by which he is to adjudicate based on this legal standard and he knows the criteria the legislation set for parameters of what constitutes the Best Interest of the Children standard and he not only permitted the violation of the Court Orders and nullifying his own but permitted the violation of my parental rights and the rights of the children  according to the statute which is a harmful deviation from the standard.

Judge Hany Mawla was aware that the father in this case, had a history of domestic violence, had admitted been peeping into my windows of my second story apartment by use of his scoped boom truck which constitutes stalking  under N.J.S.A. Domestic Violence Act, had admitted to entering my home multiple times without my knowledge and/or consent  in violation of the civil restraints applied to him in the 9/17/2007 Court Order barring him from my home, had been Court Ordered to 6 months of anger management classes, was in violation of the Court Orders by taking the children for "vacation time" and never returning them and that at the commencement of the child custody hearings, the Father's wife who's forensic test

15

scores indicated a moderately severe mental disorder purchased firearms, a .22 caliber glock and a .22 caliber rifle. What is concerning is that she tested positive for Bipolar 1 with Psychotic features, paranoid personality disorder, narcissistic personality style, grandiose, vindictive, malicious and in fact the forensic outsourced testing that was done by his own expert witness. This explains some of the behaviors that indicate no regard for authority or mine and the children's rights and welfare. The refusal to co-parent on any level and the interference with custody, violation of court orders and use the children as weapons, scapegoats etc. would disqualify the defendant and his wife from the transfer of custody of the children over to them but Judge Mawla ignored the facts in this case and even refused my petitions and requests, expert witness recommendations for therapy for the children that they need. The eldest child in her testimony stated she needs to get rid of her anger but Judge Mawla ignored her needs and did so because he stated that I didn't go to therapy however, he ignored the billing I provided as evidenced that I went prior to and for more sessions than the children did before the Defendant stopped bringing them.

The mental Disorders flagged in the forensic testing that Judge Mawla ignored include Antisocial Personality Disorder, Narcissist Personality Disorder, Bipolar 1 with Psychotic features, Mood cycling Disorder, Narcissist Personality Disorder, Turbulent Personality Disorder but Judge Mawla ignored the test results and Dr. Franklin's PhD's testimony and cross examination testifying that the behaviors of the Father in this case demonstrate the criteria to indicate that the testing was accurate and show that the Father's inability to co-parent would disqualify him from being awarded custody of the children and yet without any merit or cause, the motion Judge Mawla allowed the children to remain in restricted contact and isolation from me in the care of the step mother who Dr. Walsh stated on 11/1/16, had perceived slights against me, purchased firearms, a .22 caliber glock and a .22 caliber rifle at the commencement of the child custody hearings and the children's mental state and attitude changed from I love my mother, I sort of miss my mother, I hate my mother to "she (me) is not my mother anymore" all in my absence and while being withheld by the father and stepmother who meet the criteria for probable cause under the N.J.S.A. 2C:13-4a- Interference with Custody Statute.

I only saw the children a few weekends during the course of nearly a year with no parenting time and trial was delayed for no known reason, which is in violation of the title nine statute of what is in the best interest of the child **9:2-4 - Custody of child; rights of both parents considered** 9:2-4 and my Constitutional rights to have a prompt hearing and enforcing the court orders to protect my rights and to provide a remedy to motivate the father to return the children.

The continued interference with custody following these visits with the children continued resulting in multiple police calls and interventions and reports by the Garwood Police in Union County however the Defendant continued to interfere with

custody by picking the children up at their schools early ahead of me and refuse to return them home.

Union County Assistant prosecutor Karyn R. Weingarten issuing her verbal directives to the Garwood Police instructing them to deny me the legal access to be able to file a civilian complaint under the 2C:13-4a Interference with Custody statute. This deprived me under the U.S.C. 14th Amendment my rights to be protected.  She stated her reasoning was her review of police reports (not court orders) and talks with Sgt. Johnson in the Sheriff's department who informed me he was informed by Judge Mawla that this was to be considered a "custody dispute."

 The Legislature finds and declares that it is in the public policy of this State to assure minor children of frequent and continuing contact with both parents after the parents have separated or dissolved their marriage and that it is in the public interest to encourage parents to share the rights and responsibilities of child rearing in order to effect this policy.  In any proceeding involving the custody of a minor child, the rights of both parents shall be equal.

The Defendants In this case demonstrate that they in fact did, violate my rights to due Process and equal protection under the color of law while blocking my access to filing a civilian complaint at the municipal level in two Counties for a 2C charge that carries a consequence of jail time and fines which is N.J.S.A. Interference with Custody statute modeled after the Federal's international law that prohibits, recognizes and finds that Parental kidnapping is a crime.  In my case, there was a protection of the father and of Judge Mawla's decision without acknowledging the facts or  abiding by the COURT ORDERS in which each person listed as a Defendant had no regard for, no regard to me or our children's rights.  We were not treated equal and this case was not equitable as evidenced by the 11/1/2016 hearing, pm session when Judge Hany Mawla stated, "Sanctioning the Defendant (father) the Court sees this as more violence than not in terms of enforcing the Court Orders or the Plaintiff's (and children's rights) to parenting time." What is important is that this statement was made prior to either party testifying and the only thing Judge Mawla knew was that the father was a man and the mother/me/the Plaintiff was a woman which is a discrimination based on gender and is a violation of my constitutional under the equal protection clause of the 14th Amendment.

In addition, at the same time, Judge Mawla stated he was denying the father's Order to Show cause for child support relief because he stated that he already enforced the Court Order of 10/20/2008 where I was designated the Custodial Parent on 9/27/16 where he ordered that child support must be paid and the Order of 10/20/2008 enforced.  On 11/1/16 Judge Mawla stated that to grant the father the relief now would not only predict the "fait accompli" that he was predeciding the case prior to adjudication and it would also nullify his Order of 9/27/16. enforcing the Court Order of 10/20/2008 but on 1/3/17, when the Probation Department was coming after the father for arrears in the thousands, the Defendant/father's attorney

17

wrote a letter to Judge Mawla reminding him that the father should not be punished and so Judge Mawla stopped the probation department from pursuing the Defendant/father and granted the relief requested by ordering that no disbursement of any funds that would be deposited into the account would be disbursed to me and to stand down and not enforce actions against the father, further evidence of violating my rights, children's rights, the Court Orders.

The Blocking of motions/verbal directives being issued to officials serving in the capacity of law enforcement to stand down is a demonstration of the abuse of power by over-reaching into the Union and Somerset Counties municipal/criminal jurisdiction, referring to my case as a "custody dispute" and instructing them that he is going to be the one to deal with my matter and to send me back to family court. Calling this case a "custody dispute" is highly inappropriate when by multiple Court Orders, I already had legal custody of both children with Court Orders on the books and directing my attorneys not to allow me to file motions stating that he is not going to hear any motions and will deal with all issues at the plenary hearing in which there was no date for not only delayed trial further and caused the children to be in isolation longer but it blocked me from the ability to file to dismiss the case based on the violation of pretrial discovery of submitted insufficient interrogatories, Enforcement of litigant's rights, Contempt of Court or even to file to have a witness like Dr. Walsh or Judge Mawla recused.

Judge Mawla's statement," The Court views sanctioning the Defendant as more violence than not in terms of enforcing the Court Orders or the Plaintiff's rights to parenting time," was made in response to another Order to Show cause filed by me to return the children and to sanction the Father in parenting time after it was proven during the am session, that the Father's expert witness, Dr. William F. Walsh, who was serving in the capacity of a child custody evaluator was coaching/counseling the children after his final evaluation report was submitted thereby a violation of the Board of Psychological examiners state regulations governing serving in this capacity and is currently under a State Investigation with the New Jersey State Board of Psychological Examiners that is still pending in the Legal department.

During the 11/1/16 am session, Dr. Walsh admitted that his counseling sessions, which were conducted after the children on 8/19, 9/26, were taken and withheld from me indefinitely on 8/17/16 by the father, that he and his counseling of the children was the cause and effect of the children changing their minds from wanting to return home to their mother to not wanting to return home. Dr. Walsh stated in a text to me on 7/5/16, "You can only dictate procedure and content if you are the one willing to pay for the sessions," he testified that he did not know the statute very well if at all or have much experience as a child custody evaluator. He violated the protocol for administration of the tests by issuing the father an outdated test from 1994 and reading him the questions thus lowering the clinical scores and administering everyone else the 2015 MCMI lV version. Judge Mawla was aware of

18

these procedural errors, conditions created in the children by coaching from Dr. Walsh and the Father/stepmother in testimony given by Dr. Walsh on 9/27/16 but disregarded the evidence. Judge Mawla eventually by Court Order of 7/25/2017 transferred custody of the children from the Plaintiff to the father/Defendant in this case.

## PARTIES

46.    **Stephanie Messner**- Plaintiff, mother of two daughters O.H. born 9/13/2000 now 18 years old and A.H. born 11/2/2004 now 14 years old.  It is important to note that the children were only 14 and 10 years old at the time of the first violation of statutory procedure and violation of Due Process by both Judge Hany Mawla and Judge Kevin Shanahan that deprived the Plaintiff her civil rights to request for an adjournment to hire or be represented by counsel in a case where the father of the children (who was represented by counsel at the time) was seeking a transfer of custody of the children because she moved from South Bound Brook to Garwood New Jersey.

47. **Defendants, Union County and Somerset County** ("County Defendants") are subdivisions of the State of New Jersey and are a "person" in all respects within the meaning of 42 U.S.C. §1983.  County defendants participate fully in enforcing Superior Court Orders through a variety of county agencies including law enforcement agencies, child welfare agencies and county visitation offices.

48. Individual Defendants sued in their official capacity are officials tasked with administration and enforcing New Jersey Law, and are sued in their capacity as administrators tasked with enforcing policies which deny plaintiff's constitutional rights under color of law; they are persons within the meaning of 42 U.S.C. § 1983 with respect to declarative and injunctive relief sought in this case.  Individuals employed by state or county with a purpose of carrying out tasks such as processing complaints to be accepted, filed and presented before a judge to determine probable cause.

49. The State Board of Psychological Examiners- Executive Director Endira Nunez, Dr. Michael Walker Phd and their board members are serving in the capacity to monitor, regulate and sanction or punish violations of the Regulations for psychologists performing in their professional roles.  According to the Division of Consumer Affairs the board's purpose is " To protect the health, safety and welfare of the people of New Jersey. To regulate the practice of psychology. To ensure that licensed psychologists practice professionally and ethically. "

50. **John and Jane Doe 1-100** refer to any entities or individuals that may need to be included in this case such as other public servants, officials and individuals that may need to be included at a later time.

## STATEMENT OF FACTS

51. The parties Miklos Hajdu-Nemeth and Stephanie Messner  FD-18-340-1 had a long-term premarital engagement in which two children, Olivia, DOB 09/13/00 and Alexandra DOB, 11/02/2004 and were born. The Plaintiff ended the relationship, the father (Defendant in FD case) has a history of Domestic Violence was Court Ordered to do 6 months of anger management classes. The Respondent viewed the Appellant's refusal to reunite as "rejection." When thinking about the Plaintiff talking to other men, the Respondent lamented, "It makes me jealous."

52. The Plaintiff was designated the custodial parent of the children since 2007 and another Court Order on parenting time and custody was issued dated 10/20/2008 designating the Plaintiff as the custodial parent (PPR) and the Defendant (PAR)., During the course of nearly a decade, the Plaintiff demonstrated that she could co-parent, involve the father/Defendant and foster the relationship between him and the children while being a single parent.

53. It is important to correct and clarify at this time that this case is being misrepresented as being a "CUSTODY DISPUTE" when in fact it is not because this is not a new divorce, there are Court Orders as early as 2007 designating the Plaintiff as the custodial parent of the children.  This case involved a request by the Defendant for a "CHANGE/TRANSFER" of custody in which the Defendant had to meet the burden of proof of what harm was being caused to the children as a result of my move from South Bound Brook in Somerset County to Garwood in Union County and that burden was never met.

54. In  September of 2007 and October of 2008 Court Orders were issued designating the Plaintiff as the PPR, custodial parent of the two children.  A Decade later in 2014 when the Appellant planned to marry, the Respondent became irate and began a campaign to turn the children against her during his parenting time while sending the Plaintiff text messages threatening to take the children from her.  She filed for a Change in Venue to where she and the children were residing now in Union County and his response was a request to the Court for transfer of custody of the children over to him.

55. The Respondent stated, "I didn't think David (Mr. Beyers) would work out with Stephanie". He refused the Appellant's requests to sign to renew the children's passports which were about to expire and needed to involve the children to participate in the wedding which involved a cruise ship.

56. On 8/3/2015, Miklos Hajdu-Nemeth  filed for custody of the children based on the Plaintiff's move from South Bound Brook New Jersey to Garwood, New Jersey and that it affected his ability to have parenting time with the children based on her move from South Bound Brook NJ to Garwood NJ.

57. I was served on 8/4/2015 with the motion for a change of custody of the children. I
    had not been able to obtain an appointment or retain legal counsel during that week
    and so on 8/12/2015, I faxed a written request to Somerset County Family Court:
    Attn: case manager Erica Carmen for an adjournment of a court hearing dated
    8/19/2015 for the purpose of seeking to be represented by legal counsel but Judge
    Kevin Shanahan denied my requests both the written and during the 8/19/2015
    hearing.  This was a violation of my Constitutional rights under the 14th
    Amendment for Due Process in that this hearing was not equitable. The Defendant
    was represented by legal counsel and I was not. I am not a lawyer or understand
    what a "significant change in circumstances" meant or the case law that determines
    if a prima facie case was presented or made at the time of the Judge's ruling. Had I
    been represented, it would argued that there had been no change in circumstance
    that affected or harmed the children or the parties resulting from a move within the
    state from one county to another and the case would have been dismissed.

58. Judge Shanahan stated on the record that there was no legal argument for his ruling
    but ruled it anyway.  Any statement that I made about the Court Order being
    outdated was due to the defendant refusing to make his parenting time and not
    because there was a need to change custody and had I been represented, I would not
    have made that statement in a way that it could be used against me or misconstrued.

59. According to the New Jersey Family court rule 4:3-3, the Presiding Judge or
    Assignment Judge are the only Judges allowed to be hearing any cases involving
    requests for a Change in Venue which would have been Judge Hany Mawla in this
    case, however, he deferred my request for a change in venue over to Judge Kevin
    Shanahan who made a ruling to deny my request in Judge Hany Mawla's behalf
    while also denying my written faxed request for an adjournment to seek to hire legal
    counsel and then ignored my multiple requests to be represented by legal counsel
    for the hearing before him on 8/19/2015.

60. The Court Rule for hearing on a Change in Venue was to be heard only by a
    Presiding Judge which was Judge Hany Mawla at the time however, he instructed
    Judge Kevin Shanahan to decide for him and who DENIED her request for a Change
    in Venue and simultaneously ruled that there was a "change of circumstance"
    although he also stated that he had no legal argument to do so, to open this case to
    best interest analysis and mediation and if that was unsuccessful to trial for the
    reasons "the children were older" at 10 and 14 years old and the "Plaintiff moved."

61. Nine months later on 5/21/16, the Respondent premediated the transfer of the
    children into alternate schools without the Appellant's knowledge or consent and
    three months later at the end of summer, on August 17th, 2016, came to the court
    with "unclean hands" with requests for end of summer vacation with a return date
    agreed upon by both parties but refused to return the children home to the
    Appellant who was the custodial parent. According to the Law, *Baures vs. Lewis*,

*Lepis vs. Lepis*, the burden of proof lie with the Defendant to prove what harm was caused to the children by the Plaintiff's move from South Bound Brook, New Jersey to Garwood, New Jersey but on 8/17/2016 After the hearing before Judge Hany Mawla, who stated that the Defendant/father can take the children for what was to be some added "vacation time" at the end of summer, the Defendant/father refused to return the children to the custodial parent, Judge Hany Mawla, the presiding Judge, took over the case and shifted the burden of proof onto the Plaintiff to prove Parental Alienation vs. Estrangement and allowed the Defendant to withhold the children indefinitely which caused harm and irreparable damage to both the Plaintiff and the children's relationship and shifted the burden of proof with the Respondent's "self created" condition in the children which is "Alienation." This shift in burden is in itself a departure from standard procedure.

62. The Appellate Court affirmed Judge Mawla's decision to redefine the right of first refusal according to how the parties were already acting but this was during a "self created" change in violation of Court Orders by the Defendant/Father and the indefinite withholding of the children from the Plaintiff while substituting his wife in her place which was in violation of all the court orders, the Right of First Refusal clause in the 10/20/2008 court order and Parental Kidnapping/Interference with custody is both a statutory crime and a federal crime regarding the damage parental kidnapping causes the children by the criminal act of deprivation of both the Children and the Plaintiff's constitutional rights under the U.S.C. Fourteenth Amendment.

63. The children were parentally kidnapped on 8/17/2016 and withheld with no parenting time for the Plaintiff/mother but left in the custody of the stepmother who has been a driving force behind the acrimony between the parties and who also at the commencement of the child custody hearings purchased firearms, a .22 caliber glock and a .22 caliber rifle while instructing the children to severe their contact with their biological mother and start calling her "REAL MOM". (MCMI-IV TESTING 2015). The children were made to remove the Plaintiff from their social networking sites, email addresses were changed, new phones were given out and phone numbers and restricted and monitored contact with the Plaintiff/mother. This take over of the children caused alienation between the children and the Plaintiff as evidenced by text messages and reports of the children attitudes changing from, "I love you too mom" a week before they were taken to "I sort of miss my mom" on 10/10/2016 to "bottled up hatred" toward their mother to "She's not my mom anymore" all in the absence of the Plaintiff.

64. The judicial procedure established in the State of New Jersey as in *Lepis v. Lepis* was vacated and Judge Hany Mawla allowed a "self created change" and condition to be the subject matter and not the "change in circumstances" on which the case was opened.

65. Judge Mawla ignored Dr. Walsh, hired by the father/Defendant/ Respondent who was acting on behalf of the Respondent to secure custody of the children and admitted to being **the cause and effect** of Alexandra changing her mind about returning home to her mother/Appellant  followed by his admission on 9/27/16 of the Respondent coaching and instilling irrational fear onto the children about their safety on during this "vacation" time with the intent to complete the transfer of the children into the new schools and never return the children permanently which is both a Federal and Statutory crime.

66. The Plaintiff's argument in this case is highly supported by both Federal and state law.The Respondent and Counsel continue to misuse the term "relocation" to describe the Appellant's move to an adjoining county within the State of New Jersey.

67. The Fourteenth Amendment of the US Constitution Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.  Included is an individual's right to pursue liberty, which includes a right to remarry and/or move freely within the State of New Jersey.

68. When Mr. Beyers had proposed marriage and the Plaintiff accepted the marriage proposal, she didn't expect her move to Garwood or getting married to carry a consequence of losing custody of the children. The Respondent ignores the fact that according to the Child Relocation Act, enacted by the Senate and General Assembly of the State of New Jersey or R.S. 9:2-2, "relocation" definition #2 states, "Relocate" means a permanent move out of the State of New Jersey and specifically excludes intrastate moves."

69. The Plaintiff's motion presents an issue of Public importance and a danger to the precedent it sets as a blue-print for obtaining custody of a child using illegal means to be granted legal custody and this motion presents a valid argument that has deprived the Plaintiff of her constitutional and civil rights as a citizen of the United States of America to be protected by the law from a criminal act that would deprive her of her inalienable right to parent her own child or be protected by the Court Orders that have been set in place historically for over a DECADE which is the status quo and not misinterpreted as a reason for custody to change.

70. The Defendant/father in this case was not showing up for his parenting time and thus the Plaintiff had stated that there may be a reason for modification but certainly not to give the parent that was not willing to drive to make his parenting time, custody of the children as the Appellate court misconstrued but to adjust his time with the children according to what he was willing to and in agreement to changing which was a reduction of his parenting time midweek and Sunday's into

Mondays in which he stated on the record he did not want to do, he could not do and would not do because he did not like 5pm traffic and he did not want to drive from Somerset to Garwood to make his parenting time schedule.

71. FIRST JUDGE: JUDGE KEVIN SHANAHAN- SOMERSET COUNTY SUPERIOR COURT FAMILY PART- TO HEAR CHANGE OF VENUE (that by court rule has to be addressed by the Presiding Judge (Mawla) PLUS CROSS MOTION FOR A CHANGE OF CUSTODY

72. Judge Shanahan had no authority to rule on behalf of Judge Mawla for an application made for a Change in Venue.  Only, the Presiding Judge or assignment Judge can hear that case so the Plaintiff's case went unheard at the same time Judge Shanahan DENIED the Plaintiff's request for a change in venue for the reason he stated that Judge Mawla would never agree to it, he also denied the Plaintiff's requests for an adjournment to be able to hire and be represented by legal counsel which she requested both by written fax addressed to case manager Erica Carmen and multiple times during the hearing on 8/18/15.  After Judge Shanahan denied the Plaintiff's requests that would make the hearing equitable and fair, he remarkably stated," Where legally...give me some basis... how could I possibly find that?...How can I say that moving from one county to another is in itself AGAINST a child's best interest?" thereby an admission that he did not have the legal argument to make such a ruling that there was in fact, a CHANGE IN CIRCUMSTANCE that was harmful to the children which would warrant a hearing to determine a change in custody and this is what would have been successfully disputed had the Appellant been represented by legal counsel at that time as the Respondent was. The Appellant being refused an adjournment to hire legal counsel for this hearing was prejudiced. It was an injustice to her as it was not an equitable hearing as the denial of an adjournment to appear at this hearing with legal representation left her disadvantaged and handicapped as the Respondent had the benefit of legal representation and the Appellant did not have that same protection.

73. The 6th Amendment created in 1791 , dealing with criminal cases but nevertheless cases in which there is a "consequence of magnitude" in which one party is represented and the other is not could result in unfair rulings, punishments or decisions that carry a "consequence of magnitude "which include a loss of a driver's license or a fine of $800.00, in this case a loss of custody of the children, withholding the children from the Appellant for nearly a year, irreparable damage done to the relationship between the Appellant and the children, a new order that allows the interference with custody to continue and imputing THOUSANDS of dollars of child support while she was the custodial parent. Although the Respondent/George Gussis is right, there is no right to counsel in family law cases, a right to an adjournment to seek to be "represented by counsel in such a hearing" as Judge Shanahan stated should have been granted and the outcome of this case would have concluded much differently in fact custody would never have changed, the isolation of the children would never have occurred and the irreparable damage that

continues would not have developed or continue over the course of the long span of time that the children were withheld. To have one party represented and the other denied that same protection is a violation of Due Process under the U.S.C. 14th Amendment.

74. The ruling Judge Shanahan made determining a "significant change of circumstances" on 8/19/15 needed to show that the current court order should be modified because the move negatively affected the Children and there was no prima facie showing, it should have been what was to be adjudicated to meet the prima facie burden but was not and thus there was a departure from the judicial procedure. The Respondent made it clear that it was his "choice" not to make his parenting time because he did not want to drive, he didn't like 5pm traffic, a mere inconvenience for himself as the children were happy, loved both parents equally, were honor-roll students with friends and active in the community while residing in Garwood with the Plaintiff. It is not enough for a parent to show just a genuine change of circumstances under the statute. The parent must show that the undoing of the prior order would be in the best interests of the child.

75. To establish a prima facie case for modification of a custody arrangement, the moving party must show a substantial change in circumstances that affects the welfare of the child such that her best interests would be better served by modifying custody. *Mimkon v. Ford* , 66 N.J. 426, 438 (1975); *Hand* , supra, 391 N.J. Super. at 105; *Chen v. Heller* , 334 N.J. Super. 361, 380 (App. Div. 2000); *Sheehan v. Sheehan* , 51 N.J. Super. 276, 287 (App. Div.), certif. denied, 28 N.J. 147 (1958).

76. A judge must consider a request for modification in accordance with the procedural framework established by the Supreme Court in *Lepis v. Lepis*, 83 N.J. 139, 157-59 (1980). Under Lepis, the first question is whether the party seeking modification has made a prima facie showing of a substantial change in circumstances. Id. at 157; *Hand*, supra, 391 N.J. Super. at 105. If a prima facie showing is made, then *Lepis* requires the judge to consider whether discovery is needed and to define its scope. *Lepis*, supra, 83 N.J. at 157-58; R. 4:10-2; 7

77. R. 5:8-1 to -6. Following discovery, if there is a genuine dispute of fact regarding the welfare of the child, then a plenary hearing must be held. *Lepis*, supra, 83 N.J. at 159; Hand, supra, 391 N.J. Super. at 105.

78. Nowhere does the Judge state how this local move from South Bound Brook to Garwood NJ. negatively affects the children or the Respondent's ability to drive to make his parenting time. In regards to making his parenting time obligations, the Respondent states he just didn't want to drive, "I just don't want to go, that is all" *The Respondent's unwillingness to drive is not a reason to change custody. There is no current law or rule that states that Appellant needs permission from the Respondent to move within the state.

SECOND JUDGE- JUDGE MAWLA TAKES OVER AFTER LAST COURT HEARING ON 12/18/15 BEFORE JUDGE TOBER TO COMMENCE ON 8/17/2016, THEREBY DELAYING TRIAL 8 MONTHS WHILE HE WAS TRAINING FOR A PROMOTION TO THE APPELLATE COURT.

79. The trial date occurred on 8/17/2016 before Presiding Judge Hany Mawla whereas the Defendant/Respondent/father of the children requested some additional end of summer vacation time with the children. Judge Mawla granted it knowing from earlier submissions that the Defendant had registered the children into alternate schools and premeditated the takeover and transfer of the children.

80. From 8/17/2016, when the Respondent took the children after the hearing and withheld the children refusing to return them to their mother/custodial parent/Plaintiff, 7 Months went by before either party was able to testify and the children were withheld from the Appellant with no parenting time but a couple weekends in the course of nearly A YEAR.... prior to the "lengthy 9 days of trial" and prior to either parties testimony, Judge Mawla was making decisions favoring and protecting the Respondent at the expense of the Appellant's civil rights and parental rights by Court Order as well as the rights of the Children. During these 7 -8 months from 8/17/16- 3/28/17, to the first trial date of 3/28/17 Judge Mawla had already allowed the Respondent to withhold the children indefinitely in violation of all Court Orders, refuse to sanction or remedy the interference with custody or regard the need of protection for the Appellant and children's rights.

81. The Plaintiff/mother/Ms. Messner filed OTSC which were denied, any false allegations of abuse were investigated by the DCP&P and the investigation was dismissed against Ms. Messner with no substantiation of abuse or neglect.

DEFENDANT KAREN WEINGARTEN- ASSISTANT COUNTY PROSECUTOR UNION COUNTY

82. KAREN WEINGARTEN- UNION COUNTY PROSECUTOR'S OFFICE directs the police to not allow me to file civilian complaints in the municipal court. The Garwood police, Captain Stoffer and Chief Wright stated that they were not being instructed by Karen Weingarten not to allow me to file a civilian complaint because Sergeant Johnson from the Sheriff's department called Judge Mawla and was told that this was a custody dispute and that he was hearing the case and determining action at the future plenary hearing. This was not a new divorce, court orders were on the books and me, the Plaintiff was the custodial parent all of the children's lives and this was the status quo. Karen Weingarten, the County Prosecutor refused to respond to letters and exhibits of Court Orders that were faxed to her office on multiple occasions and met with no response. The Police continue to refuse to allow me to file under the N.J.S.A. 2C:13-4a Interference with custody statute.

83. The Franklin Twp. Police in Somerset County refuse to allow me to file stating that this is a civil case when I told them that this is a criminal charge, nevertheless they stated that they are aware that we have a court case pending and directed me to address the issues of Parental kidnapping in family Court with Judge Mawla.

84. Judge Hany Mawla gave verbal orders and directives to my attorneys that he refuses to address or hear any motions and not to file any motions in my behalf, these motions include my complaints of Interference with Custody, Enforcement of litigant's rights, Motions for dismissal due to Incomplete interrogatory submissions, Contempt of Court or motions to request another Judge or recuse one when there is evidence of impartiality etc.

85. Judge Mawla disregarded all of the Court Orders including his own Court Orders enforcing the 10/20/2008 Court order which recognized the Plaintiff as the custodial parent.  He refused to say or admit that Miklos/Defendant/Respondent was in violation of the Court Orders and instead, put the blame on the scapegoat children who were 10 and 14 at the time, saying that they could make parenting time and custody decisions because they were older and mature while disregarding that they were under the control of the adults around them and conditioned by Dr. Walsh who admitted to being the cause and effect of the children refusing to return to their mother.

86. Judge Mawla, although he regards Dr. Franklin PhD as being the most credible, he also disregarded Dr. Franklin  PhD 4 hours of testimony and 4 hours of cross examination as a professional witness to the children before and after they were taken and abducted being withheld from their mother, the Plaintiff, the drastic changes in their mental health, behavior and his diagnosis of PARENTAL ALIENATION and harm to the children.

87. Judge Mawla ignored all the times that the Plaintiff attended the Court Ordered therapy and the Defendant had the children stop thereby refusing to Order the much needed therapy that all the expert witnesses testified that the children needed because he stated that I did not go which was false, I went more times than the children before the Defendant Miklos stopped the children from going .

88. Judge Mawla issues new Court Order transferring custody to the Defendant blaming the Plaintiff as the cause of "estrangement" without any supporting evidence and creates a loophole for the Defendant to continue interfering with custody which violates the criminal NJ statute and the Plaintiff's parental rights and the children's rights to parenting time with the Plaintiff.  In the Order he also redefines the RIGHT OF FIRST REFUSAL clause to expand to third parties, the very thing it is designed to prevent.

89. *Troxel v. Granville:* 530 U.S. 57 (2000),  a U.S. Supreme Court before Sandra Day O'Connor, William Hubbs Rehnquist, Ruth Bader Ginsburg and Stephen G. Breyer

27

states that the Due Process Clause prevents the government from intruding on fundamental rights and liberty interests, one of which is the liberty interest that parents have in controlling the care and custody of their children. "The state may not give rights to any third party to challenge any decision by a parent regarding visitation with that parent's child in state courts.

90. Giving a state court judge the discretion to determine the best interests of the child in these situations violates due process, especially when there is no allegation that the parent is unfit. It is reasonable to presume that parents will act in the best interests of their children, so the state should not interfere and take that role away from them." To be put simply, this ruling states that there is a fundamental right under the Fourteenth Amendment for a parent to oversee the care, custody, and control of a child.

3rd JUDGE KATHY QASIM- 2/20/208

"The public interest dictates that the Family Part must enforce its own orders" ~ Hon. Kathy Qasim~

91. Judge Kathy Qasim states that the Public Interest dictates that the family part enforce their own orders and she provides the N.J.S.A. Interference with Custody statute as part of her response in her Orders warning the public about the consequences of violation of the statute however on 2/20/2018, Judge Kathy Qasim unjustly adopts Judge Mawla's redefinition of the RIGHT OF FIRST REFUSAL clause expansion to include third parties by granting superior custody rights to the stepmother over the Plaintiffs parental rights as the PAR, JOINT CUSTODIAL AND BIOLOGICAL PARENT.  This expansion to the stepmother while the father of the children is inpatient hospitalized for several months is a violation of this U.S. Supreme Court ruling of *Troxel v. Granville* 530 U.S. 57 (2000) and a violation of the Plaintiff's constitutional rights under the 14th Amendment.

92. Judge Kathy Qasim- First Judge to hear OTSC on a motion filed on 2/20/2018  after the father, now custodial parent by Judge Mawla's 7/25/2017 Court Order DENIES Plaintiff/Joint custodial parent, Stephanie Messner temporary custody of the children after the Father, newly appointed custodial parent is inpatient hospitalized for "several months" because she states without any hearing and only relying on ex parte communication from the Adversary, that "the Plaintiff doesn't like the new custody arrangement" without fact finding, pausing to schedule a hearing or delving into the emergent matter demonstrating prejudice against the Plaintiff/Mother/Stephanie Messner in favor of Defendant/Father of the children/Miklos Hajdu-Nemeth without so much as a hearing on the "change in circumstance" which was emergent, leaving the children in the custody of the third party step parent  as the custodial parent granting the third party superior rights over the biological parent because of the new Court Order that redefines RIGHT OF FIRST REFUSAL clause to expand to third parties which is contradicted by Troxel vs.

28

Granville that protects a parent's constitutional rights under the 14th Amendment to specifically exclude third parties from any custody rights to the children.

APPELLATE COURT JUDGES
HONORABLE LISA ROSE and HONORABLE DOUG FACIALE

93. Recap, Honorable Judge Shanahan on 8/19/15 admitted that he had no legal argument for his decision yet Hon. Lisa Rose and Hon. Doug Faciale of the Appellate Division supported Judge Shanahan's decision that there was a legitimate change of circumstance, in which they determined was the children's maturation at the ages of then, 10 and 14 years old and my residential move from one adjacent county to the next in the State of New Jersey was a reason to modify the custody order. If they really believed that this was true, why couldn't Judge Shanahan prove, show or say that this move from South Bound Brook to Garwood, New Jersey is NOT in the child's best interest? Furthermore, why didn't Judge Hany Mawla vacate this belief while addressing the custody factors, in fact he ordered me to do twice the driving that the father of the children stated he couldn't do "at all" and lastly why was this "change of circumstance" vacated, not adjudicated and replaced with the "self-created" change in circumstance created by the father when he kidnapped the children and Judge Mawla shifted the burden of proof which was the fathers on to me the Plaintiff to prove Parental Alienation vs. Estrangement? These Judges stated that losing custody of the children is not a consequence of magnitude which the direction of the children's lives, the relationship between the children and the Plaintiff, the quality of the education of the children and their futures are worth far more than a drivers licence and/or an $800.00 fine.

94. Not only was Judge Mawla's adjudication process a departure from judicial procedure which Hon. Lisa Rose and Hon. Doug Faciale ignored in the Appellate process of adjudication or review which would have vacated Judge Mawla's order but the Appellate Division Judges ignored my rights as the custodial parent to the custody of the children, the emergent nature of seeking relief by denying a Stay of Judge Mawla's order which contains a loophole for allowing and legalizing the continued interference with custody by the father depriving the children and I of parenting time which continues to date.

95. The Appellate Court Judges Hon. Lisa Rose and Hon. Doug Faciale ignored all the procedural errors of the lower court which included allowing to be entered into evidence multiple versions of Dr. Walsh reports that were not included in discovery, incomplete interrogatories, blocking of my ability to file motions to enforce litigants rights, to request a dismissal based on the incomplete interrogatories which were crucial to determining Dr. Walsh ability and qualifications to be able to serve in the capacity of a child custody evaluator, omission of the pathological forensic testing results of the father and his wife and her purchase of firearms at the commencement of the child custody hearings that was not factored in by Judge Mawla while addressing the child custody factors, redefining the clause of Right of First Refusal to

29

be extended to third parties which is in violation of my constitutional rights as a parent supported by a U.S. Supreme Court ruling in Troxel vs. Granville. The Appellate Court allowed the redefining "relocation" to mean moving within the state in contradiction to the N.J. Child relocation act specifically excludes intrastate moves which violates my Constitutional rights under the 14th Amendment.

96. There were more errors by the Lower Court that the Appellate court did not acknowledge but the blatant violation of the Appellate Division is that they did not recognize my Constitutional rights to the custody of my children, the court orders designating me as the custodial parent, the fact that I was vehemently opposing the children "residing" anywhere else but our home as per court order. The Appellate Court ignored my requests to seek to hire legal counsel to be represented by counsel like the Defendant/father in this case and misstated in their decision posted and is accessible online, that I was seeking pro-bono attorneys. They ignored my petitions for relief to hold the father accountable for being in violation of the court orders, requests for remedies and bring the children back home as per Court Order. They ignored the parental kidnapping and adopted the scapegoat phenomenon by the lower court shifting the blame not on the parent in violation of the Court Orders but on the children! They ignored the counseling and coaching sessions by Dr. Walsh the father's expert witness who admitted being the cause and effect of changing the children's minds from wanting to return to their mother to stating they don't want to return. Dr. Walsh whom I filed a complaint with the NJ. State Board of Psychological Examiners for his violations of the state's laws of regulations that govern his practice and causing harm to the children has not been dismissed but is currently in the legal division and they denied my filing for a STAY on Judge Mawla's order which creates a loophole for a parent to get away with the withholding of the children on the other parents parenting time. The interfering with custody and parenting time is both a state and federal crime.

97. The Appellate Court's denial of a STAY was legally blocking me from filing any additional motions with the court because my requests were the subject of the Appeal and so I had to wait until the Appeal was heard while having to put up with more violations of my parental rights and those rights of the children which violates both the childrens' rights as well as my constitutional rights.

98. The Appellate Court accepted Judge Mawla's reasoning to redefine the Right of First Refusal to include third parties because they stated that Judge Mawla went by "how the parties were already acting" in the father's/Defendant's self created condition while in violation of the Court Orders, the Plaintiff's rights to parenting time and while the children were being withheld in isolation from their mother for nearly a year and so to restate the facts, the Appellate Court failed to consider that this decision of Judge Hany Mawla to expand THE RIGHT OF FIRST REFUSAL clause was based on the father's withholding of the children denying me and the children any parenting time and this decision and the support thereof grants third parties superior custody rights above the biological parent which is another violation of my

30

Constitutional rights under the 14th Amendment which supports my rights to due process and equal protection under the law.

JUDGE KIMARIE RAHILL- PRESIDING JUDGE SOMERSET COUNTY FOLLOWING JUDGE HANY MAWLA PROMOTION TO THE APPELLATE DIVISION

99. I just learned that Judge Kimarie Rahill was supposed to be the Judge hearing my case all along after Judge Mawla left. This recent discovery involving my case led me to trying to figure out how I ended up having my case heard before Judge Bradford Bury in the first place, a Judge who refused to hear my motions, refuse to allow me to talk, refuse any input from me, refuse me my rights to a hearing and a Judge who has been moved around in three counties, (Hunterdon, Union and Somerset) in two years!. Judge Bury imputed me thousands of dollars in fraudulent funds without a hearing or any input from me, who under his watch mine and my addresses were changed from within the court multiple times while the dates of our hearing was changed from what we agreed on and this needs to be investigated.

100.    According to the Acting Administrative Director of the NJ Courts, Glenn A. Grant, J.A.D. phone number 609-815-2900, ext. 55350 in his DIRECTIVE #07-17 which Supersedes Directive #14-83 in an updated policy for issuing Uniform Docket numbers and Statistics for the Family Division, case assignments are supposed to be divided among Judges randomly by case number endings. He explained how a docket gets its number and it is as follows: F* (Docket type code) -_____ county code_____- sequential case number_____- Court year_____- (and regional code is optional) My case number is FD-18- 340-01.  According to the New Jersey Courts for Somerset/Hunterdon/Warren Vicinage an updated notice to Somerset and Hunterdon Bar Associations- Family sections was issued on January 4th, 2019, if you follow this directive according to the list of Judges and who would be assigned my case, it would have been Judge Rahill who was assigned to hear Post Judgement Motions with docket numbers ending in 9 and 0 which means neither Judge Qasim, Rodgers, Ballard nor Judge Bury should have ever heard my case and why Judge Rahill appointed the newly assigned Judge, brought in from Union County, Judge Bradford Bury to hear my case remains unknown as well as the reasons why Judge Bradford Bury has been reassigned to three different counties in two years. Judge Kimarie Rahill assigned my case to Judge Bury when she knew it should have been before none other than Judge Kimarie Rahill all along, this is a departure from the rules of the court to make sure assignments are fair and random. Judge Rahill knows this list well because this notice to the Bar Associations and is online at www.njcourts.com is signed by HER with her phone number and email address at Kimarie.Rahill@njcourts.gov with her phone number at 908-332-7700 ext. 13630.

101.    There are other questions about Judge Kimarie Rahills involvement behind the scenes involving my case such as her law clerk sitting in on the "impromptu" hearing before Judge Bury on 3/26/2016 and Judge Bury making a false statement

31

on the record identifying the person sitting in on my hearing as Judge Rahills law clerk, "here on a different matter" when no other matter was discussed and there was no reason for Judge Rahill's law clerk to be sitting in on the "impromptu" hearing other than for the purpose of Judge Rahill's law clerk's supervision of Judge Bury to report back to Judge Rahill.

102.    This hearing was a last minute and unexpected hearing for this 3/26/19 Court date that involved the Adversary, George G. Gussis Esq. making false statements that the court date of 4/1/19 was scheduled in error and then changing the dates to a date the Adversary knew my attorney stated on the record on 2/5/19, that he couldn't be there to the date 3/26/19 that neither my attorney and I received notification from the court for because some person employed by the court, who had access to my file mysterious changed both mine and my attorney's mailing addresses to fake ones within the court system to make sure we would not be informed and not show up thereby pushing forward the adversary's agenda and impute me thousands of dollars in fraudulent funds attached to my child support arrears. I was treated horribly during this hearing by which occurred with me being at my doctors office and over the phone.

103.    Because of how I was treated by Judge Bury and because he was requesting the court to go off record during my hearing multiple times at his convenience, I was advised by Elizabeth Raimondo, the Somerset County Court's Ombudsman 908-332-7700 x13240. at the courthouse to write a letter to Presiding Judge Rahill requesting the "Smart Court" back-up recording of what took place at that hearing as well as addressing the issue of the changing of mine and my attorney's addresses and documents showing the Court date we had scheduled was in fact 4/1/19 not 3/26/19.

104.    I wrote Judge Rahill and faxed the letter on 4/4/19 to her chambers requesting the audio, smart court recording. On 4/15/19 I received two notices from the Court. One was an UNSIGNED LETTER from Judge Rahill's chambers sending me back my letter with attachments refusing my requests and on the same date I received from my attorney, Jared A. Geist an order from Judge Bury that was sent to yet another changed address to Jared's former employer at an office he never worked at or address he never used. This new order imputed me thousands of dollars in fraudulent funds, granting the adversary nearly all his financial requests. I sent another letter to Judge Rahill on 6/19/19 requesting her to confirm if she was the author of the unsigned letter. I asked this question multiple times, multiple ways and informed her of Judge Bury's three week late Order and addressing more changing of our addresses from within the Court and although she sent a signed letter back stating that she would address the issues, she refused to answer the question as to whether or not she was the author of the UNSIGNED LETTER. This is a big deal to me and I explained to her that the last time I was in receipt of an unsigned letter was when the anonymous letter was accompanying some test scores to illegally transfer my children to alternate schools in the premeditated parental

kidnapping of the children. Because Judge Rahill would not acknowledge herself as the author of the unsigned letter, I am inclined to believe it was her law clerk who was the one sitting in on my hearing with Judge Bury on 3/26/19.

105. This needs to be investigated as it subjected me to legal abuse and bullying while violating my rights to custody, parenting time, to make medical decisions for my children who were taken for surgical procedures without my knowledge or consent and Judge Bury Ordered an "elective surgery" for my youngest daughter denying my request for a second medical opinion and an updated MRI because the Podiatrist was going by an MRI over a year old.

106. Judge Bury's DENIAL of my request as a parent with Joint Custodial rights and decision making was a violation of my Constitutional right under the 14th Amendment and supported by U.S. Supreme Court caselaw e.g. Troxel v. Granville. On February 5, 2019, Judge Bury was informed that the new MRI appointment was scheduled two days later and he could have given me some time alloted to get a second opinion by an Orthopedic surgeon after the updated MRI was done but he denied me my rights entirely .

6th JUDGE BRADFORD BURY-

107. Judge Bradford Bury, denies Plaintiff's parental rights as a parent and as per the Court Order of 10/20/2008 with regard to Joint Decision making on major medical and educational decisions. Judge Bury ignored my complaints that I had learned that Miklos/Defendant had taken our youngest child A.H. for general surgical procedure that required her to be put under general and local anesthesia at RWJ University Hospital in New Brunswick, in fact he stated that this surgery was considered day to day decision making allowed by the court and stated that this was not "real surgery". He refused to accept the operative report that I wanted to give to him to see even though I had an additional copy for the Adversary.

108. Judge Bury had DENIED my OTSC submitted on 12/7/18 that the Defendant is engaging the children in harmful acts against her, spying and diverting her emails, screenshots of her phone for him and instructed her to file as a motion in which she submitted on 12/18/18 which was never heard, not even to date as her complaint was ignored, never heard but requests were DENIED without a proper hearing. The Plaintiff has a constitutional right to be heard.

109. On 2/5/2019, which was the date set to hear the Plaintiff's 12/18/18 motion, Judge Bury, addresses only the issue of a surgery the Defendant scheduled for their youngest daughter A.H. without involving the Plaintiff until after receiving her motion of 12/18/18 filed in the court. Judge Bury proceded on the surgery topic only without a proper hearing on the matter or allowing the Plaintiff to submit documents into evidence while depriving the Plaintiff of Joint decision making

under the Joint custody agreement of 10/20/2008 by overriding her authority of making JOINT DECISION MAKING with the custodial parent by simply stating that her input "DOESN'T MATTER" when she stated that the father historically depended on her input to make medical decisions for the children, that he couldn't read, write or speak or understand what the Doctors were saying and ORDERED an "elective" surgery by a Podiatrist for the minor child that he had no knowledge about nor the consequences of the surgery and overruled Judge Ballard's Order to stop the surgery until further notice with no factual evidence that this surgery was needed given the risks and denied the Plaintiff her request to obtain a SECOND MEDICAL OPINION which was offered to the Defendant/father /Miklos who refused but was denied to the Plaintiff/mother who requested a second opinion by an Orthopedic surgeon.

110.    In fact the Plaintiff had Judge Bradford Bury read aloud the transcript in which the father stated on the record that he historically depended on the Plaintiff to talk to the doctors and explain to him in a language he understands, but Judge Bury disregarded it and denied the Plaintiff's request for a second medical opinion on 2/5/19. This violates the conditions of the Joint Custody agreement which states that the parties shall make decisions regarding the medical welfare and major educational decisions JOINTLY. At the end of the 2/5/19 hearing all parties agreed to continue to address my motion filed on 12/18/18 on the next scheduled court date 4/1/2019. (3/26/2019 transcript).

111.    While 4/1/19 was agreed upon for a court hearing by all parties and my attorney Jared Geist specifically stated on the record that he will not be available the last week of March which included March 26th.  The adversary later changed the court date of 4/1/19 stating that the 4/1/19 date was made in error and  changed the new court date to 3/26/2019 then mysteriously my address and my attorneys addresses were changed in the computer system internally at the Court that caused a divergence of Superior Court related mail carried by the Post Office to be delivered that was meant for us to receive.  My address was changed to a fake address on 7 Franklin Street in Somerset that doesn't even exist and Jared's was changed not once but twice for the Court Appearance on 3/26/19 his address was changed to Garces and Grabler at the firm's Newark address at a location Jared used to work at. The actual Court Order issued three weeks later on 4/12/19 by Judge Bury was sent to Jared Geist at Garces and Grabler New Brunswick address, an address he never used and a location he never worked at.

112.    On March 26, 2019, I had been out of work sick all week and was still ill, I had a doctor's appointment to obtain medical clearance for a day to return back to work. I was notified the night before by Jared that I had to be in Court for this impromptu hearing before Judge Bury.  I was not prepared, Jared was not prepared and rushed down to the Court. Judge Bury was pacing the floor, yelling in the Court that I was not there referring to me as "whackamole" His inappropriateness in Court, dates and addresses changed, he refused to address motion of 12/18/19 and what it was

34

about and was calling me up at my Doctor's appointment implying that I was dodging the Court date in a harrassing and menacing manner.

113.   Judge Bury's actions violate the Plaintiff's rights to Due Process and violate the Equal Protection Clause of the 14th Amendment which include not allowing me to speak, not allowing Jared to speak on my behalf, only accepting the Adversaries submissions and pleadings, not having possession of my documents and submissions, failing to protect mine and the childrens' rights to parenting time, failing to hold the Defendant accountable for violation of court orders by withholding the children without granting any make up time, while condemning me for not being able to pay for the retainer of the Parent Coordinator and delegating the task of "adjudication" to an unqualified person who is serving in the capacity of a Parent Coordinator while refusing to uphold the stipulations delineated in the Court Order of 7/25/2017 as well as the 10/20/2008 Court Order unaltered by the 7/25/2017 Court Order.

114.   Judge Bury is also in violation because he punished me for being in arrears by not allowing me to claim one of the children on my taxes for as long as I am in arrears and by granting Miklos temporary power of attorney to obtain the children's passports and surgery without my input or a hearing.

115.   Judge Bury retaliates against me for filing in the Supreme Court. One of the very first things Judge Bury said to me on 3/26/2019, when I reached him by phone was that he was made aware by the Adversary in a letter (that we never received-exparte communication) that I had now filed in the Supreme Court and without explanation beforehand stated on the record that he was not going to need any testimony from me because 99% of this hearing was not going to need any testimony thereby refusing to address my motion that he stated he was going to address on 2/5/19. *It is important to note that this is another way the Court is blocking me from legal access to prohibit me from addressing my complaints. Judge Bury just doesn't allow me to be heard and that is a violation of my rights.

116.   Judge Bury's abrupt reverse of course from his earlier decision to take testimony and a plenary hearing on 4/1/19 is retaliation for my filing at the Supreme Court being brought to his attention by the Adversary in ex parte communication and he punished me accordingly and financially without a hearing while threatening to take away mine and the children's rights to midweek parenting time.

117.   On 4/4/2019, I faxed a letter to Presiding Judge Kimarie Rahill as advised by the Court's Ombudsman with a request to obtain the backup recording of an unanticipated and unexpected hearing before Judge Bradford Bury on 3/26/19 afternoon session beginning around 2pm where he was calling me by phone while I was still very ill and at my doctors office to obtain medical clearance for a date to return to work.

118.    To recap, an impromptu hearing without prior notification to me was conducted on 3/26/19 after the anticipated and agreed upon date was changed by George Gussis who knowingly gave false information to the court that the 4/1/19 hearing date was an error in which it was NOT.  At this hearing, I was treated horribly and my credibility attacked for not being present on 3/26/19 for no good reason.  There would be no reason for me to dodge a court date or not appear to hear my own filing of motion 12/18/18 which is what Judge Bury stated was on the agenda on 2/5/19 . It doesn't make sense that I would avoid a hearing on 3/26/19 that I was committed to attend one week later on 4/1/19 as all parties agreed to on 2/5/19.  It doesn't explain as to why I was treated with contempt, accused of playing games and called a "whack-a-mole."

119.    This hearing was conducted absent my presence in which I was supposed to testify to address my complaint filed 12/18/18 and have my 28+ exhibits to demonstrate the Defendant's willful withholding of the children, refusal to give up one of his parenting days in exchange like the 7/25/17 Court order states as well as the Defendant engaging the children in harmful acts against me which include engaging them in going through my computers, providing him with access to my email accounts, stealing a computer from my home for him to go through and other horrendous illegal activities and violations of my personal rights and belongings on my parenting time.

120.    This hearing moved forward without my presence, which was requested by my attorney and only fair to me.  As a result of by absence, the hearing only addressing the adversary's requests were heard and not my complaint holding the Defendant responsible for violation of Court Orders and willful refusal to co-parent or communicate that I filed first as an OTSC ON 12/7/2019 and then as a motion on 12/18/19.

121.    The transcripts of 2/5/19 and 3/26/19 prove that none of my complaint was addressed nor my exhibits and that it was unjust for Judge Bury to state that he found no evidence that the Defendant was withholding the children on my parenting time or showing up on my parenting time or violation of Court Orders.  In fact, Judge Bury stated on the record that he doesn't need me there (on 3/26/19), that 99% of the hearing will not need testimony, which aligns with the Adversary's agenda.

122.    No order was issued at this time on 3/26/2019, however I have the transcript in which there were certain things that the Defendant requested that Judge Bury denied refusing to hear my reasons for opposition because at the time he stated that he was DENYING the request, that he inexplicably GRANTED three weeks later on 4/12/18 without a hearing or any input from me such as the $1200.00+ fraudulent "overpayment of child support" the Defendant and his attorney George Gussis falsely claimed.

123.   I don't know why it took Judge Bury three weeks to issue an ORDER nor do I know why, what caused him to change his mind or when this change of mind occurred but he changed his position from 3/26/2019 hearing date and the date of issuing the ORDER on 4/12/2019 which included imputing thousand + dollars to me in fraudulent funds to be attached to my child support arrears without fact finding and only relying on the Adversary and this was done between 3/26/19 and 4/12/19.

124.   Coincidently, I sent a letter to Presiding Judge Kimarie Rahill on 4/4/19, with the following attachments and in return, I received my paperwork mailed back from Judge Rahill's chambers with an UNSIGNED letter.  I sent a fax and certified mail to Judge Rahill asking Hon. Rahill to please confirm that she is in fact, the author of the unsigned letter and that it was her who sent my paperwork back and I requested her to answer in writing with a request for her signature.  She did write back that she would investigate the matter of the illegal changing of mine and my attorney's addresses within the court as well as Judge Bury's radical change in his order without a hearing once again denying me my right to a fair and equitable hearing or a right to be heard or to dispute a matter.

125.   What is alarming is that the adversary, George Gussis falsely wrote to the Court that the April 1st date was a mistake and CHANGED THE COURT DATE (although he agreed to April 1st, 2019 on the record) and **around the same time** some person employed within this Court system, who has access to my file, the ability to change or alter addresses in the computer system and who was working between the dates of 2/5/2019 and 3/26/2019 had changed BOTH mine AND my attorneys addresses with the intent that we would not be present for this new court date. It was by a stroke of luck that Jared Geist was able to make it but was unprepared and without me present.  Not only was my address changed to an address that doesn't even exist but also Court notices were sent to Jared's former employer Garces and Grabler at the Newark address in opposition to what Judge Bury stated on the record that they went to Jared Geists Hackensack address.

126.   What is even MORE disturbing is that after I had to fill out forms to change back my address to the proper one, my Garwood address which is the address I had received all my other notices and Jared corrected his address with the Court to remove his former work address in Newark, THREE WEEKS LATER Judge Bury's ORDER dated 4/12/2019 was sent to Jared A. Geist granting the Defendant in this case monies to be paid by me in the THOUSANDS of fraudulent funds that he originally DENIED on 3/26/2019 and the order was sent to not Jared Geist at his Hackensack address but Garces and Grabler at their New Brunswick address, an office Jared Geist never worked at and an address he never used.  Changing addresses without consent and tampering with the mail that is delivered by utilization of the Post Office is a Federal Offense and I will find out how that pertains to employees of the Court changing the addresses without consent, permission of knowledge of the victims causing a divergence of Superior Court related mail on

legal matters causing us to not be informed of Court dates, hearings and such that resulted in financial harm as I was not able to be there to see the documents being presented or have input, object and my attorney was denied his request to have me present.

127.   I did not receive any notification by the Court. My attorney Jared Geist did not receive proper notification by the Court but only a fax in which the adversary was attempting to change the hearing date from April 1st to an earlier date, misleading the Court to believe that the April first date was an error of the Court and not a date he agreed on.

128.   It is important to note that when I called in to Judge Bury, he was attacking my credibility and stating that he was, "with certainty" positive that I received notification from the court because he "knows" notification went out to my address on "7 Franklin street, Somerset, New Jersey," stated Judge Bury. I have NEVER lived at this address and when I looked up this address, it doesn't even exist. In fact, I checked in with the Family part desk and asked which address they had for me and I was told, "7 Franklin Street, Somerset, NJ." I had to fill out a formal form to change it back to my Garwood address. This means that between 2/5/19 and March 26, 2019 approximately 6 weeks, someone had to physically change my address to an invalid one internally. As far as I have been made aware, 7 Franklin Street in Somerset would be located in a cemetery!    I believe an investigation needs to be conducted into this matter and I requested it to begin with Honorable Kimarie Rahill as the Presiding Judge when I wrote her a letter to please look into this matter in addition to my request of Honorable Kimarie Rahill to please confirm that she was the author of the unsigned letter sent out to me with all my attachments that I received on 4/15/19 along with Judge Bury's Order issued and sent out to me the same day.. I had asked the Presiding Judge Kimarie Rahill to send me a signed letter stating that she in fact, is the author of the UNSIGNED letter that I received from her Honor's chambers on 4/15/19 along with my corresponding documents that I sent to her on 4/4/2019. Although Hon. Kimarie Rahill responded and signed her name stating that she would look into the matter, she never answered the question as to if she was the author of the unsigned letter and this speaks Volumes, it makes me wonder if it wasn't her Clerk that had been coming into my hearing with Judge Bury on 3/26/19..

129.   The transcripts of 2/5/19 and 3/26/19 prove that none of my complaint was addressed nor my exhibits and that it was unjust for Judge Bury to state that he found no evidence that the Defendant was withholding the children on my parenting time or showing up on my parenting time or violation of Court Orders. In fact, Judge Bury stated on the record that he doesn't need me there (on 3/26/19), that 99% of the hearing will not need testimony, which aligns with the Adversary's agenda.

130.   No order was issued at this time on 3/26/2019, however I have the transcript in which there were certain things that the Defendant requested that Judge Bury denied refusing to hear my reasons for opposition because at the time he stated that he was DENYING the request, that he inexplicably GRANTED three weeks later on 4/12/18 without a hearing or any input from me such as the $1200.00+ fraudulent "overpayment of child support" the Defendant and his attorney George Gussis falsely claimed.

**FEDERAL OFFENSE- TAMPERING WITH THE MAIL- CHANGING OF ADDRESSES TO DIVERT COURT HEARING NOTICES ADDRESSED WITH PRESIDING JUDGE KIMARIE RAHILL**

131.   Title 18 U.S. Code § 1342 Fictitious names and addresses:  Under this Federal U.S. code, Whoever, for the purpose of conducting, promoting, or carrying on by means of the Postal Service, any scheme or device mentioned in section 1341 of this title or any other unlawful business, uses or assumes, or requests to be addressed by, any fictitious, false, or assumed title, name, or address or a name other than his own proper name, or takes or receives from any post office or authorized depository of mail matter, any letter, postal card, package, or other mail matter addressed to any such fictitious, false, or assumed title, name, or address, or a name other than his own proper name, shall be fined under this title or imprisoned not more than five years, or both.
(June 25, 1948, ch. 645, 62 Stat. 763; Pub. L. 91–375, § 6(j)(12), Aug. 12, 1970, 84 Stat. 778; Pub. L. 103–322, title XXXIII, § 330016(1)(H), Sept. 13, 1994, 108 Stat. 2147.)

132.   Title 18 U.S. Code § 1341: Frauds and Swindles:  Under this Federal U.S. code, whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or imitated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.

133.   I am not an attorney so I am unsure what the consequence is of an attorney, court official, Judge or law clerk or persons employed by the New Jersey Superior

Court who tampers with a litigants addresses for the purpose of sending mail to fictitious addresses for the purpose of diversion of the mail so that the litigants miss the court notices informing them of a hearing to the adversary's benefit but it must be the same or worse because this matter is tampering with Superior Court related mail and I request this matter be investigated.

7TH JUDGE MICHAEL ROGERS

134.    ORDERS ME TO PAY MIKLOS/DEFENDANT $1,000.00 BECAUSE HE SAYS, "MIKLOS LOOKS LIKE HE NEEDS IT." and disregarding that I had been making my child support payments on time demonstrating prejudice and a violation of my right to equal protection under the law. Judge Rogers did not have a full hearing to determine any additional monies to be paid to Defendant were just and fair and Miklos temporarily in a wheelchair does not constitute merit to award additional money. This violates the equal protection clause of the 14th Amendment.

CEDERIC HOWARD and NICOLE BARRACANO- SOMERSET COUNTY PROBATION OFFICER/DEPARTMENT

135.    As of September 1, 1998, child support orders are subject to a cost of living otherwise known as COLA increase EVERY TWO YEARS. The child support COLA is pursuant to Court rule 5:6B of Cost of Living adjustments for Child support orders however, Cederic Howard the probation officer managing this case has improperly imputed me unfair COLA increases in violation to the Court Rules by increasing my child support and applying the COLA increase at only the one year benchmark, Judge Bury refused to address this misapplication of the law and court rule because he states, "it's a nominal amount of money," but as it pertains to the Federal level these application imputing me unjust funds, causing me unjust financial harm in violation of the court rules has violated my rights to equal protection by singling me out and treating me very differently than the other American and New Jersey citizens in addition, the Probation Department has treated Miklos who was in arrears over 9 thousand dollars in 2017 very differently by ignoring him being in arrears over 9 thousand dollars. Nicole Barracao was the Child Support enforcement hearing officer that heard my case on 4/17/18 who refused to allow me and my attorney to talk and who was trying to punish me for being in arrears, the arrears that Judge Mawla ordered "retroactively" while I was the custodial parent. I wasn't in arrears because I wasn't paying child support and yet Nicole Barracano treated me like a criminal and ordered me to pay an additional $1,000.00 even though I was ahead of my payment plan. This ended up going upstairs before Judge Rogers who then ruled that I had to pay the $1,000.00 because the Defendant "looked like he needed it."

136.    The probation department which Cederic Howard has allowed Miklos/defendant/father to get away with being over 9,000.00 in arrears without any action but pursued me in a witch hunt by placing levies on my bank accounts,

garnish my taxes, threatened me with jail time, notified my credit agencies and caused me financial harm even though he is aware that I was in arrears not because I didn't pay child support but because I was put in arrears while I was the custodial parent by the Courts Order of 7/25/2017 that was imputed to me retroactively in child support 11 months  from the time the Defendant Miklos kidnapped the children in which the NJ statute for Retroactive Child support was misapplied.  In March of 2018, Cedric Howard and the Probation Department placed levies on my bank accounts while I was out of state with the children visiting their grandparents in florida for no reason other than the adversary timing it to cause me hardship.  I had to file OTSC while in florida unable to access funds.  Cedric Howard was made aware that I had been making my weekly payments according to the Court Order and that in fact, I was ahead of my payment schedule and not behind and yet both him and Judge Bury violated my rights to equal protection under the 14th Amendment.

137.    Currently, there is a Court date pending for 8/20/19 before Judge Ballard with a motion to vacate the Order of Judge Bury dated 4/12/19 however, it is very unlikely based on the past that it would be adjudicated without predjudice since already there is a discrimination in that it is Judge Rahill who is supposed to hear my case but deferred it to Judge Ballard. One must ask why she won't put her name on adjudicating this case when it is delegated by the court that to be random she is assigned all cases and obligated to hearing all post judgements ending in 0.

138.    Parental Kidnapping or Interference with custody is a crime, both Statutory and Federal and is addressed by the Federal Government, which recognizes the act of Parental Kidnapping as an illegal activity but only intervenes when it is International because the Federal Government leaves the States in Power of their own jurisdiction to carry their own statutes to address this crime at the State level. According to the Department of Justice (DOJ) website, the reasoning for the criminalization of the Interference with custody remains the same in principle whether it is Statutory (within the states) or Federal (International) which is the deprivation of both the parent's fundamental rights under the U.S.C Fourteenth Amendment which protects the parent's rights to be able to parent and care for their children and the children's rights to have that same liberty to be free from harm and to be able to have a relationship with both parents.

139.    To withhold parenting time from a parent is a violation of both the parent and child's rights, which also causes irreparable damage that the DOJ recognizes as harm to the children. According to the D.O.J. website,  Every year, situations of international parental kidnapping are reported in the United States.  It is common for the removal of a child to occur during a heated or emotional marital dispute, in the early stages of separation or divorce, or in the waiting period for a court custody order or agreement.  International parental kidnappings of U.S. children have been reported in countries all over the world, including Australia, Brazil, Canada, Colombia, Germany, India, Japan, Mexico, the Philippines, and the United Kingdom.

140.    Child victims of international parental kidnapping are often taken from a familiar environment and suddenly isolated from their community, family, and friends.  They may miss months or even years of schooling.  The child may be moved to multiple locations in order to stay hidden or out of reach of the parent remaining in the United States.  In some cases, the child's name, birth date, and physical appearance are altered or concealed to hide identity.

141.    In addition, the tense and unfavorable situation between the parents may be emotionally troubling to a child.  Kidnapped children are at high risk for long-term psychological problems including anxiety, eating disorders, nightmares, mood swings, sleep disturbances, and aggressive behavior.  As adults, child victims of international parental kidnapping may struggle with identity, relationships, and family issues.

142.    **Legal Hurdles and the Return of a Kidnapped Child to the United States**
Under federal law, prosecutors may investigate and prosecute the parent who kidnapped the child, however, prosecutors generally have no control over the custodial decisions affecting the child or whether foreign authorities will order the return of the child."

https://www.justice.gov/criminal-ceos/international-parental-kidnapping

**The DOJ states, "Child Custody and Visitation Matters"**
With the exception of international parental kidnapping, child custody and visitation matters are handled by local and state authorities, and not by the  federal government.  The matters are governed by the relevant state family court system and human services agency.  Therefore, child custody or visitation issues should be reported to state or local law enforcement authorities or a state judicial officer but what happens when the state ignores their own policies, legislation and State Laws  and court orders and these acts of neglect or departure from Judicial process and their owns of office in which they vow to uphold the laws of the land and our United States Constitution or when their acts or failure to act causes the violation the Constitutional rights of an American citizen?  In the name of Justice, this case must be taken seriously.

Attached in the original submission are 12 pages of Case Law supporting my arguments that protect a parents rights to custody and parenting time and all other supporting documents, which include transcripts and evidence of all accounts and in support of my certification herein, can be furnished during discovery or otherwise requested by the court or Defendant's involved.
Thank You for taking the time and consideration regarding this matter.

Respectfully Yours,

Stephanie Messner

43

## CERTIFICATION

I certify that my statement is true to the best of my knowledge and I understand that I am
subject to punishment and penalties under the law.

Stephanie Messner



## SUPREME COURT OF NEW JERSEY

It is ORDERED that effective June 6 and until further order, **Superior Court Judge Kimarie Rahill** is hereby assigned to the Superior Court, Civil Division, Somerset County (Vicinage 13); this will amend the 2019-2020 General Assignment Order dated July 8, 2019.

Chief Justice

Dated:   June 1, 2020

## SUPREME COURT OF NEW JERSEY

It is ORDERED that effective June 6 through June 30, 2020, **Superior Court Judge Haekyoung Suh** is hereby designated as Acting Family Presiding Judge for Vicinage 13 (Somerset/Hunterdon/Warren Counties); and

It is FURTHER ORDERED that effective July 1, 2020, **Judge Suh** is designated as **Family Presiding Judge** for Vicinage 13 (Somerset/Hunterdon/Warren Counties);

This will amend the 2019-2020 General Assignment Order dated July 8, 2019.

Chief Justice

Dated:  June 1, 2020

## SUPREME COURT OF NEW JERSEY

It is ORDERED that effective June 6, 2020 through June 30, 2020, **Superior Court Judge Thomas C. Miller** is hereby designated as Acting Assignment Judge for Vicinage 13 (Somerset/Hunterdon/Warren Counties); and

It is FURTHER ORDERED that effective July 1, 2020, **Judge Miller** is designated as **Assignment Judge** for Vicinage 13 (Somerset/Hunterdon/Warren Counties);

This will amend the 2019-2020 General Assignment Order dated July 8, 2019.

Chief Justice

Dated:   June 1, 2020

# SUPREME COURT OF NEW JERSEY

It is ORDERED that effective June 6, 2020 **Superior Court Judge Kevin M. Shanahan** is assigned to the Superior Court, Civil Division, Somerset County (Vicinage 13); and

It is FURTHER ORDERED that effective June 6 through June 30, 2020, **Judge Shanahan** is hereby designated as Acting Civil Presiding Judge for Vicinage 13 (Somerset/Hunterdon/Warren Counties); and

It is FURTHER ORDERED that effective July 1, 2020, **Judge Shanahan** is designated as **Civil Presiding Judge** for Vicinage 13 (Somerset/Hunterdon/Warren Counties);

This will amend the 2019-2020 General Assignment Order dated July 8, 2019.

Chief Justice

Dated:   June 1, 2020