Stephanie Messner
447 4th Ave
Garwood, NJ. 07027
908-456-5531

CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY

2023 MAY 22   P 1: 26

MESSNER

Plaintiff

v.

Weingarten et. al.

Defendant

United States District Court
District of New Jersey

**Opposition to counsel request to
dismiss or grant relief from subpoena**

Civil Action No:
3:19-cv-15752

May 22, 2023

Dear Honorable Shipp and/or Clerk,

   I am writing to oppose the request of counsel for the Judiciary to move to quash or release parties from

the DEMAND to produce documents and all material requested related to subpoenas that were issued by a

third party, enclosed.  Attached is my response to Counsel Susanna J. Morris Esq. with attachments for

her perusal as to clarify the need for such documents and to demonstrate that the issuance of the

subpoenas is relevant to the retaliation against me for filing and petitioning THIS court on THIS matter on

4/19/2023 and NOT to be confused with the Superior Court Family Division litigation in which there

have been no filings for at least the last four years since 2019.

   According to Federal Rules for Civil Procedure 45 Rule 45. Subpoena

(2) Command to Produce Materials or Permit Inspection.

(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served.

**If an objection is made, the following rules apply:

(B) When Permitted. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

   None of these the above meets the criteria for reasons counsel set forth.  This is not confidential information when it applies to ME and my rights to know how, why  and under what circumstances, communications etc. is used to retaliate against me and violate my civil rights.  The information I am asking for is information that they had used to retaliate against me, cause divergence of the mail by changing my addresses and my attorney's from within the court to cause a default, to have me incarcerated and deny me my rights.  The only thing their request serves is to conceal or prevent

transparency into the unjust actions of a few select individuals in official positions possessing authority.

It is a serious offense and violation of an American Citizen's rights to have them incarcerated and falsely imprisoned for no reason but to intimidate and prevent one from exercising their rights, either in malicious intent, or to create harm, threats or to get one "back in the saddle" or oppress and subdue a person. Please review my letter to counsel in further explanation and enforce parties to comply with subpoena.  Thank You.

Respectfully and Sincerely Yours,

Stephanie Messner

**Stephanie Messner**
447 4th Ave.
Garwood, NJ. 07027
908-456-5531
smesner09@gmail.com


22nd May 2023


**Susanna J. Morris, Esq.**
Richard J. Hughes Complex
P.O. Box 037
Trenton, NJ. 08625-0037


Dear Susanna J. Morris Esq.,

It is my sincerest regret that I have to meet you in this way and to sadly address these ongoing issues between the Somerset County Family Court (Vicinage 13) and the Somerset County Probation Department working together to harm me financially using my family court case to do so. It is important to note that members of the Probation Department are litigants in this case Messner v. Weingarten et. al. and Judge Bradford Bury and Judge Kevin Shanahan are specifically named as defendants and the dismissal against the previous litigants does not change that fact. Although there is a motion to dismiss, a dismissal of the entire case would mean that the Third Circuit will have the jurisdiction that it did not have before and so my petition to the Third Circuit is not over in order to appeal the application of the Eleventh Amendment for Judges that violate the law or are considered to aid and abet criminal activity or serve, not as equal blind Justices, but third party co-conspirators in the crime or indictable offenses such as the N.J.S.A. 2C:13-4a Interference with Custody Statute aka. Parental Kidnapping. This case is currently open and so the subpoena requested must be complied with.

It is in the public interest to enforce all court orders and that would mean Judge Julie Marino's Court Order of 10/20/2008 Court Order. It is not in the public interest for Justices to cherry pick which orders to enforce and which ones they don't when they have a favored litigant or litigant's attorney over the civil rights of the other party and just because anything I had filed in Somerset County was denied, it doesn't mean that it was based on equal protection and treatment of both parties, fair, just or adjudicated properly, in fact, many orders were issued in my absence and intentionally without my input leaving me completely out of the legal process. Motions I filed such as 12/18/18 were not heard but shelved, application for a decrease in my child support according to the termination of my child support obligation of one child by the Court Order of Hon. Kimarie Rahill 9/13/2019 was not addressed and later DENIED by Judge Bury and the "Impromptu hearing of

3/26/2019" before Judge Bradford Bury is one in which I was called cold by phone, while I'm in a gown at my doctors office for a "knee jerk" executed, so-called, hearing nobody knew about except for Judge Bury and George Gussis/Defendant where he said 99% of what he was going to do would not need me present or need my input or testimony and this is prejudicial and goes against a court that has taken vows to be a court of of equity.

I understand you represent the Judiciary and that you and the Judiciary object to the subpoena of information that I need to be provided however I need the information in order to determine or arrive at the reasoning for why Judge Bradford Bury issued an order for my arrest in the first place on 4/25/2023 and why on the early morning hours when the court opened on 5/1/2023 when I called and spoke to retired Captain Dickey at the Sheriff's Department, the probation department specifically Marie Holofacko, refused to acknowledge my overpayment of child support that included "arrears" that I made two weeks prior and refused to remove the bench warrant which resulted in public humiliation in front of my daughter, her new boyfriend and my neighbors, resulting in my incarceration and detainment in the Somerset County Jail for over 24 hours and being forced to go through an irradiating machine or else suffer "disciplinary action" without cause or informed consent in which I did not willfully consent to.

When I asked the law enforcement officials, "Why am I here?" not one person could tell me anything other than it had to do with child support and that they will put me on a plan. I said, " I am already on a plan, why am I here?" Nobody knew anything, even "Joe" the probation department official I spoke with who released me did not know but only that it was based on an order issued on 4/25/2023 by Judge Bradford Bury and for no good cause and told me to make a child support payment in two weeks.

<u>Make no mistake, this is not me "relitigating" family court issues but addressing the most recent issue of Judge Bradford Bury's retaliation and malicious vengeance toward me of what I believe is the 4/25/2023 arrest warrant issued in retaliation for me filing an answer on 4/19/2023 to the United States District Court in response to a letter that I received from the United States District Court on 4/5/2023 requiring me to do so. I had paid $608.00 on 4/12/2023 for child support plus arrears while I have been unemployed and Judge Bury and the Probation were made aware.</u>

It is for this reason I am requesting of the Probation Department and the Judiciary for information that is not confidential but it is about ME and I have a right to know what communications ex parte and non ex parte have been occurring to learn why actions are taken against me to cause me financial harm by using the probation department and the law enforcement to arrest and incarcerate me when I have been making payments on my child support and arrears that I am disputing are arrears.

Money's that are personal expenditures of another party disguised and imputed to me as child support arrears to dangle over my head with threatening and following through with arrest and detainment/incarceration for no reason.  This is a serious offense and action against me that can destroy my life.  I am sorry it seems inconvenient to produce the information that I need but it is information that has been used against me and used to incarcerate me and therefore it needs to be disclosed and produced by all involved in my case or for changing my addresses and my attorney's addresses from within the court to cause us to not receive our mail delivered by the post office to cause the divergence of Superior Court related mail and notices to be sent to fake and fraudulent addresses to cause us not to show up resulting in the GRANTING of requests in another party's (George G. Gussis Esq.) favor by DEFAULT.  It appears the Court is guided by one lawyer, George G. Gussis who sends personal emails to Judge Suh's personal email address, conducts ex parte communications and who received tax advice during the middle of our hearing from none other than Judge Bradford Bury and I have a right to those communications.

SUBPOENA INFORMATION NEEDED

The subpoena information is required to discover how on MAY 1st 2023, the probation department was able to demand from me $1200.00 on the morning of May 1st, 2023 and then when I stated that I just paid 608.00 on 4/12/23 and that I don't have $1200.00 then the demand was $600.00 from me in extortion for payment to withdraw a warrant for my arrest.  I told them that I don't have any money, I am unemployed and that I can pay $600.00 in two weeks but that was rejected by Marie Holovacko who refused to withdraw the arrest warrant….. Until the next day AFTER incarceration when I was ushered to receive a phone call from "Joe", at the probation department who stated that I am free to leave if I pay $360.00 in two weeks.  This couldn't be done over the phone when I called in the morning?

The Probation Department and Judge Bradford Bury knew I had paid the child support which included a payment on arrearages and another payment wasn't due for another two weeks which is when I said I would make the next payment and THAT was what the "negotiated" contingency was based on for my release and so **the purpose of refusing to withdraw the warrant for my arrest  was for the sole purpose to incarcerate me, which was was strictly to bully me, intimidate me, overpower and oppress me and cause me harm, intentional infliction of emotional distress and malicious prosecution** which demonstrates that the arrest had nothing to do with the money because I notified the sheriff's department, Captain Dickey the go between between me and Marie Holovacko of Probation, early that morning BEFORE the arrest, that I would pay $600.00 in two weeks and they rejected it and refused to withdraw the arrest warrant until I was arrested and then told me all i had to do was pay $360.00 in two weeks.  I am more than traumatized forever by this unwarranted and unjust action against me.

Judge Bury had made malicious threats to me before in the past on 3/26/2019 in his own words, **"I've got to do something to get her attention, maybe it starts with eliminating her parenting time"... with her children.** See attached excerpts from Impromptu Hearing of 3/26/2019, the hearing in which my address was changed to 7 Franklin St. Somerset, NJ., a cemetery, which is in itself chilling while threatening to do harm to me **"....until she gets the message."** He uses language stating that **"if she doesn't get into the saddle...."** I won't be able to see my children when trying to force me to pay a $5000.00 retainer and $360.00 per hour for a parent coordinator I could not afford and while I'm paying attorney fees to get the Defendant to comply with court orders and while I am in debt. The vitriol and hatred he has toward me, a woman he has never known personally, is made evident when he went to the extent of disregarding Judge Ballard's Court Order granting my order to show cause to obtain a second opinion by an orthopedic surgeon for an elective surgery planned on my child and Judge Bury overrode Judge Ballard's ORDER and gave power of attorney to the Defendant who could not read, write or understand medical procedures to carry out a general surgery performed on our child by a podiatrist, **not an orthopedic surgeon and he disregarded me as the joint decision making parent BY COURT ORDER** and the fact that I am an ANCC Certified Orthopedic Nurse requesting nothing more than a second opinion by an orthopedic surgeon who specializes in Orthopedics. **Judge Bury ordered the surgery by a PODIATRIST** and he is not a medical professional nor is he the parent to be able to make such a decision on a child that is not his. My child continues to suffer pain and immobility r/t this procedure. His unwarranted retribution and acrimonious hostility knows no bounds. So please don't judge me by the actions or rulings of the judiciary alone.

On May 1, 2023, Judge Bury had me arrested, incarcerated on a flawed erroneous pretense and all the cash I had in my pockets was confiscated in the amount of 197.65 and I was detained for over 24 hours in a dirty jail cell, not cleaned from the prior person, forced into an irradiating scanner that inflicts radiation upon my body, a procedure that I requested to opt out of but was threatened with disciplinary action if I did not comply and forced to undergo without informed consent and upon release I was ushered onto the street with no cash, no way home and still not understanding what just happened. This is not litigating the past orders of family court/matters, this is addressing a civil complaint and abuse of power of those in a position of authority that is used to harrass me and incarcerate me and it falls at the heels of my filing in this case on 4/19/2023.

The subpoena information is needed to find out how on May 1st, the Sheriff's department by way of Marie Holovacko demanded I pay $1200.00 to withdraw the warrant for my arrest and when I said that I didn't have the money to pay that, they reduced it to $600.00 and again I said that I couldn't pay.  No hearing was scheduled to determine what I could pay and they refused to withdraw the warrant. I need the

information to determine how, when and under what circumstances my child support obligation keeps going up, is changed without hearings and used to punish me at times that are in direct connection of my filings in the United States District Court and in direct connection with actions taken against me for testifying as a witness before the NJ State Senate on the morning of 6/12/2020 regarding Assignment Judge Ciccone of Vicinage 13.

IMPROMPTU HEARING OF 3/26/2019 before Judge Bury-

    This impromptu hearing involved the changing of addresses from within the court to cause a divergence of Superior Court related mail and notices to be sent to fake and phony addresses so that the uniformed parties would not show up at a hearing and all monies requested by favored party be granted to the remaining and aware party in attendance by default judgment.  My address was changed from within the courts from my address in Garwood to a fictitious address of 7 Franklin Street Somerset NJ. 08873, an address that doesn't exist but in a cemetery and my attorney's address was changed the first time to an old law firm he used to work at 10 years prior so that he would not get the notices and then his address was changed a SECOND time in which Judge Bury's order was sent to a location at an address that Jared Geist was unaware of, an address he never used or location he ever worked at.[1] Tampering with the mail is a FEDERAL OFFENSE against federal law subject to prosecution.

## USC Title 18 §1341. Frauds and swindles

    This would be considered a Federal Offense in violation of the US CODE TITLE 18 USC 1341: Frauds and swindles which states:  §1341. Frauds and swindles

**Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service,** or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, **or knowingly causes to be delivered by mail or such carrier**

---

[1] *My presence apparently wasn't going to matter anyway because Judge Bury on the record stated that 99% of what he was going to do wasn't going to require any input from me or testimony which is prejudicial, in favor of the favored defendant and denying me a proper hearing.  Transcript provided upon request.

**according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.**

Additional subpoena information is needed to find out who has access to my case for changing addresses from within the court which again directly involves Judge Bradford Bury in the IMPROMPTU hearing of 3/26/2019, a hearing that nobody else knew about except for Judge Bradford Bury, George G. Gussis attorney for the Defendant and the Defendant in my family court case. This hearing resulted in the Judge Bury ORDER of 4/12/2019 granting all of the defendant's requests for parochial school tuition, claimed overpayment of child support, etc. Key elements of the IMPROMPTU HEARING 3/26/2019 are as follows:

1.) Agreement was made by all parties that the next hearing would be April 1, 2019 because my attorney had a trial March 25-28.

2.) Letter from George Gussis, attorney for the adversary changed the date from April 1, 2019 to March 26 falsely stating that the 4/1/19 date was made in error.

3.) Someone in the court/probation department changed my address to 7 Franklin Street Somerset, NJ. 08873- a fictitious address adjacent to a church and in a cemetery (see transcript attached to back of letter).

4.) Someone in the court/probation department changed my attorney's address to a law firm he used to work at 10 years before.

5.) Someone in the court/probation department issued Judge Bury's 4/12/2019 Court Order to yet ANOTHER fake address to my attorney to an address he never used at a law firm he never worked in which would cause a running time of the clock in order to file an appeal of what Judge Bury was going to do in his new order.

6.) Judge Bury on 3/26/2019 acknowledged that his boss, Hon. Kimarie Rahill's law clerk was present for this Impromptu hearing, who was sitting behind my attorney the entire time taking notes. Jared Geist Esq. had to race to Somerville upon a knee jerk phone call to get down there. Judge Bury said he didn't need me there because 99% of what he was going to do wasn't going to need any testimony from me.

7.) Judge Bradford Bury on 3/26/2019 threatened to take away my parenting time with my child if I don't "get in the saddle" and pay for a parent coordinator with a $5,000.00 retainer, one that I could not afford and inflict harm on both me and my child "until she (me) gets the message," he states and goes on to say, "I've got to do something to get her attention" referring to inflicting harm on me by way of utilizing the withholding of my children from me unless I pay $350.00 per hour to a Parent Coordinator that I could not afford and my children did not and do not want to talk to. (Transcript excerpt attached to closing of letter).

It has been nationally and widely received and recognized that nobody, not even the President of the United States should be above the law and so I want to discuss your mention of court rules to be abided by because it appears to me that the Court Rules only apply to me and not the other parties involved in my case and the first one is Court Rule 5:6b on COLA increases that have been applied to my child support obligation to increase it without notice retroactively and annually and in violation of court rule 5:6b that states it is to be adjusted biennially **but instead is applied to me annually three times** the first applied "retroactively" to retroactive child support arrears that was imputed to me to pay for 7 months prior to the change of custody while I was the custodial parent and my children's father kidnapped our children as they were being withheld from me. The second time was in 2019 and the third time was 10/07/2020 as a part of Judge Suh's Order which took approximately $9,000.00 of what is claimed to be "Parochial School tuition", tuition request of the father that Judge Bury GRANTED that I pay to the father of my children in April 12, 2019 CO. It is important to note that Judge Suh imputed the parochial school tuition of nearly $9,000.00 to me as child support arrears without a hearing. In fact I made it known to her by way of probation and case management that I was unemployed and at no time did she or Judge Bury base their determination on my ability to pay which is the legal standard and practice. I have a right to subpoena any information that can tell me how it was possible that my child support gets increased in violation of Rule 5:6b at a whim and without hearings on my ability to pay. This isn't re-litigating, this is getting to the bottom of the rogue actions, retaliation and corruption at the Somerset County family court who do not follow their own rules, Court Orders and/or rules of the court nor legal standards of procedure. It affects me now in the present.

Judge Bury's Order of May 2, 2023 is current and not re-litigating, it says that

1.) I am under court order to pay $106.00 per week to support 2 children.

> One of my children is 22 and my child support obligation was terminated by the court on 9/13/2019 and no adjustment was made to lower my child support obligation despite my filing a motion for downward modification to decrease child support at that time. Judge Bury denied the entitled decrease to reflect my financial obligation is terminated for one child. See attached 4/12/2019 Court Order. The Court Order of Judge Mawla says that the calculation is $79.00 per week not $106.00.

2.) $50.00 weekly toward arrearages effective on 8/17/2016

> This is not true. I was court ordered to pay $79.00 per week. See Judge Mawla's court order of 7/25/2017 once the children were transferred from my custody to the father who committed the crime under N.J.S.A. 2C:13-4a Interference with Custody statute which prohibits parental kidnapping, he then placed the children into PUBLIC SCHOOLS. I was paid up to date and there were no arrearages that I owed prior to the 10/07/2020 Judge Suh

7

imputing $9000.00 of Parochial school tuition disguised as child support arrears.

3.) The probation department and I have an agreement that I pay on a monthly basis instead of weekly.

4.) In line 10 of Judge Bury court order it states that the court has NOT conducted an ability to pay hearing and why NOT? I have a right to know why there are no hearings for me, no motions I file heard, no consideration for me and my ability to pay and that means the $5000 retainer fee for parent coordinator +350/hr, increase of child support, COLA increases annually, parochial school tuition imputed as child support arrears. I can not afford parochial school either.

5.) In line 4 it states, "The obligor has the current ability to pay $557.65 toward the arrearages for the following reasons:  **The obligor works sporadically.**" How did he determine that without a hearing or any input from me?

6.) In addition to the regular court ordered payments, a lump sum of $360.00 must be paid by obligor by 5/16/2023. Nothing was contracted about paying anything more than $360.00 by 5/16/2023.

ARREARAGES- PAROCHIAL SCHOOL TUITION- IS NOT CHILD SUPPORT

This $9000.00 imputed to me as "child support arrears" was a personal expense of the father of my children for schools that he transferred them into prior to him taking the children at the end of summer "vacation time" and not returning them as per court order. I did not consent to the children being transferred into new schools, I had an attorney sent out letters on 6/28/2016 while the children were living with me as I was the custodial parent and a year before Judge Mawla transferred custody over to the children's father on 7/25/2017. I wrote letters contesting any illegal transfer of the children into the aforementioned schools and even filed a civil suit against the Diocese of Metuchen and the two schools in opposition to the schools accepting my children's transfer as I was the custodial parent and the decision was unilaterally made by my ex with his wife's participation which is in violation of the 10/20/2008 Hon. Julie Marino court order.

The reason why I am giving you this history is because I am being punished/incarcerated for being in child support arrears that I did not create nor was it for non payment of child support according to court orders. In fact, the parochial schools were used as a means to the ends by the father of the children to relocate the children to schools near his home that began on 5/21/2016 approximately 4 months before he petitioned the court for end of summer vacation time with a return date of 8/22/2016 and refused to return the children home to me but instead install them into the aforementioned schools. Once he was granted the transfer of custody, he placed the children back into public schools near his home.

I am going to attach Judge Bury's erroneous Order from May 2, 2023 as well as the other Orders pertinent to my family court case as well as a 12 page transcript before Assignment Judge Kevin Shanahan that circumvent the law and procedure of determining "Change of Circumstances" according to **Lepis v. Lepis**, 83 N.J. 139 (1980) and sent us down a path to hell and back from 8/15/2016 to current and from 2 court orders to 20.

CHANGE OF VENUE REQUEST - (Transcript of 8/19/2015 attached at the end)

Judge Shanahan, who was a lower court Judge for 8/19/2015 hearing for my request for a  Change in Venue and not the Presiding Judge Hany Mawla which is **violation of Court Rule 4:3-2 since only the Presiding or Assignment judges can make a ruling for such a request** but now in 2023 Judge Shanahan is the Assignment Judge of Vicinage 13, the same Judge that had in 2015, as a lower court judge started this nightmare. Judge Shanahan started this nightmare by both ruling to deny my request for a Change of Venue on behalf of his "boss" which was Hon. Hany Mawla, the presiding Judge at the time because he said his boss will not allow it and then by denying my request for first time adjournment to seek to acquire legal representation for a hearing that was scheduled only two weeks after a reply motion was submitted by the adversary requesting for a transfer of custody of the children over to the father.  Only after Judge Shanahan opened my case to trial in those 12 pages did he say, **"This Court's ruling, ma'am, will give you an opportunity to hire counsel and as -- I would assume you would want to be represented by counsel in such a hearing as this,  All right?"** He knew by having an attorney to represent me present at this hearing, it would have stopped any further and future proceedings because there was no change in circumstance, the Defendant did not meet the prima facie burden to rule in his favor and that is why my request for an adjournment to request to be represented by counsel for this particular hearing was DENIED.  Judge Shanahan understood the gravity of what he was doing to open this case up to trial and after a decade of me being court ordered custodial parent of my children and having been the primary caregiver all their lives.

Judge Shanahan, now the Assignment Judge of Vicinage 13, was seeking the logic and pleading with the adversary/attorney to give him something to go by, the legal argument. He completely vacated the legal standard of adjudication by way of Lepis v. Lepis in determining that a change of  circumstance existed to warrant opening this case to a trial, one that devastated me and the children.  The adversary George Gussis stated on transcript page 8 **"She can reside anywhere in Somerset County, but there's no reason for her to take the girls out of the county,"** stated George Gussis attorney for the Defendant.

9

MR. GUSSIS:  The other is distance, now in that agreement it was that if it was more than **15 miles apart, now she wants to move 20 miles apart** [2]

Judge Shanahan replied on transcript page 9, "THE COURT: **Mr. Gussis, I mean, that's just I mean where legally -- I mean give me some basis from which I could say that a move from Somerville -Somerset County to Union County is in and of itself against a child's best interest.**

MR. GUSSIS: Judge, it's --

THE COURT: **How could I possibly find that?**

MR. GUSSIS: Judge, it's not a geographical issue. It's a scholastic issue that's in their best interest. She --

THE COURT: Well, all right. If that's your argument, what are the special needs that the children have that are addressed -- being addressed in Somerset County that are not available in Union?

MR. GUSSIS: We don't know whether there will be, but the continuity -

THE COURT: An IEP can't be followed in Union County?

MR. GUSSIS: I'm not -- **I don't know whether it can be. I don't know.**

"I don't know?"  THAT does not meet the prima facie burden to rule in favor of the Defendant according to Lepis v. Lepis, and yet that is what sent me and the children down a dark rabbit hole we could never recover from.

At no time was it alleged that over the course of the children's lives and 10 years of being the custodial parent and primary caregiver, that I had been alleged to abuse my children or my children's father or committed any crime, lied, cheated or was a drug abuser or involved in any activity that would strip me away from my kids and I was discriminated against and punished for being a single mother who wanted to move to a better school system in Union County, move out of South Bound Brook and get married to my junior high school crush.  It was only when it was made known to the Defendant that I was planning to remarry that he wanted custody of the children.  This is an assault on women's rights and children's rights to prevent a woman from moving to another county in the State of New Jersey s/p divorce or separation and it has been unprecedented.  My parents were divorced and my father

---

[2] (Provision in CO of 9/15/2007 stated that if either party moved more than 15 miles apart driving would be shared 50/50 by Court Order instead of Defendant providing 100% of transportation.  *Note:  First George Gussis's argument was the distance, a geographical issue and when that didn't fly with the Court he changed it to IEP, educational needs and still he did not know if it made a difference.  This is NOT a change of circumstance according to Lepis v. Lepis  83 n.j. 139 1980).

lived in Somerset County and my mother moved to Middlesex County. How can a Judge rule that a woman can not move with her children out of the county in the State of New Jersey when the State legislature states that a custodial parent could?

Judge Shanahan completely circumvented the practice of what the legal standard is for demonstrating a burden of proof, making a prima facie case according to Lepis v. Lepis to determine if a "change in circumstance" existed to change another Judge's Court Order in order to open my case and force me into trial for the mere action that I made for literally moving from South Bound Brook, NJ. to Garwood NJ., from Somerset County to Union County 15 miles away from my children's father which a prior court order stated that I could do.

In this transcript **I was told that I am not allowed to move out of Somerset County, that I could move anywhere in Somerset County but that I am not allowed to move out of Somerset County.** You can see by the transcript how Judge Shanahan looked to the adversary's attorney for direction as to how he could say that there was a legal argument for demanding such a request. Judge Shanahan was angry and stated he didn't have the legal argument to say there was a change in circumstance and looked for the other attorney's direction, even pleading with the other attorney to give him a reason to open my case to start a trial to change custody from me to the father of the children. This is not adjudicating and now I have to file for a Change of Venue to be heard before Judge Shanahan who is also a direct Defendant in the United States District Court Case Messner v. Weingarten et. al. which is a case about violating an American Citizen's inalienable civil rights. The Judiciary will not change the venue out of Somerset County which is a violation of Court Rule 4:3-3.

RULE 4:3-3 - Change of Venue in the Superior Court(a) By Whom Ordered; Grounds. In actions in the Superior Court a change of venue **may be ordered by the Assignment Judge or the designee of the Assignment Judge** of the county in which venue is laid or by a judge of such county sitting in the Chancery Division, General Equity, or the presiding judge of the Family Part, or the designee of the Assignment Judge for the Special Civil Part, (1) if the venue is not laid in accordance with R. 4:3-2; or **(2) if there is a substantial doubt that a fair and impartial trial can be had in the county where venue is laid.**

Because the Superior Court of New Jersey- Family Division since 8/19/2015, will NOT allow me to move out of Somerset County without punishment or the consequence of stripping me of custody of my children and nor will they allow me to move my case or probation out of Somerset County, I have to petition alternative ways to ensure non-discrimination, fairness, equality, equity and Justice and social justice. I appreciate your kindness and consideration or reconsideration of this matter. Thank You kindly in advance. Please will you instruct all parties to comply with the subpoena so we can resolve these issues and for Judge Bury to recuse himself.

Attached is as follows:

1. Impromptu Hearing of 3/26/2019 excerpts - Judge Bradford Bury
2. Letter of Correction to Judge Bradford Bury re: 5/2/2023
3. Judge Bury Order of 5/2/2023
4. Table of Contents A-G (Court Orders, Geist Law letter to Prosecutor Park, Lyons letter 7/28/2016, flowsheet barchart of illegal transfer of children into parochial schools- Plaintiff's opposition, p. 16 Judge Bury $8,680.25 Parochial School tuition ordered.)
5. 8/19/2015 Shanahan transcript on Change of Venue

Respectfully Yours,

Stephanie Messner

*Impromptu Hearing   A of addresses*

1

```
 1                    SUPERIOR COURT OF NEW JERSEY
                      LAW DIVISION:  FAMILY
 2                    SOMERSET COUNTY
                      DOCKET NO. FD-18-340-01
 3      -------------------------------
 4      STEPHANIE MESSNER,
 5              Plaintiff,            TRANSCRIPT
 6        vs.                             OF
 7      MIKLOS HAJDU-NEMETH,         MOTION DECSIONS
 8              Defendant.
        -------------------------------
 9
                      PLACE: Somerset County Courthouse
10                           20 North Bridge Street
                             Somerville, New Jersey
11                    DATE:  March 26, 2019
12      BEFORE:
13        HONORABLE BRADFORD BURY, J.S.C.
14
        TRANSCRIPT ORDERED BY:
15        STEPHANIE J. MESSNER
          447 4th Avenue
16        Garwood, NJ 07027
17
        APPEARANCES:
18
          JARED GEIST, ESQ.
19        Geist Law
          For Plaintiff
20
          GEORGE G. GUSSIS, ESQ.
21        Law Office of George G. Gussis
          For Defendant
22
23                    PATRICIA A. BRILL, CCR-R
                      CERTIFIED COURT TRANSCRIBER
24                    patty.brill@gmail.com
25                    Sound Recording Operator: K. Tang
```

27

```
 1              Let me say this.  I feel like, visually,
 2  I'm a seesaw.  I could go either way with regard to
 3  this particular issue.  Because of the importance of
 4  parenting time in any case and my desire for mom to
 5  still continue to have a relationship with her
 6  daughters, but in particular the minor child,
 7  Alexandra, over whom the Court still has authority
 8  today, but without prejudice to any future application
 9  by the defendant, I'm not going to suspend her
10  parenting time even for midweek, not overnight
11  parenting time on the weekends, but it's with the
12  warning that if she doesn't get in the saddle and sign
13  up with that parenting coordinator and start doing
14  what's necessary for both parties to more effectively
15  co-parent through the assistance of the parenting
16  coordinator and the defendant has to come back on a
17  future application, then I may be so inclined to
18  suspend maybe at least some part of her parenting time
19  until she gets the message, so to speak, and starts
20  doing what she's supposed to do that's to the benefit
21  of ███████, and their -- and her parents.
22              Yes, sir?
23              MR. GUSSIS:  Judge, could you give a time
24  period to give her a second chance now to sign up?
25              THE COURT:  Well, if she doesn't do it
```

28

```
 1  within the next 30 days, then I mean that to me --
 2  enough's enough.  Okay?
 3              So I'm saying that, to me, would be a more
 4  than sufficient additional reasonable period of time to
 5  do so, and if it didn't happen and the defendant then
 6  filed a separate application in that regard, I would
 7  feel that that was a sufficient period of time in my
 8  mind.  Okay?
 9              And depending upon what I hear at the time
10  of the motion, but it's pretty much -- it's the same
11  that we're -- we are here today and she took no steps,
12  I've got to do something to get her attention, and
13  maybe it starts with eliminating midweek parenting
14  time.
15              Okay.  With regard to the request of the
16  defendant to permit the parties' daughters, plural --
17  that would be ████████and ███████ -- to address their
18  parenting issues that they have with the plaintiff, to
19  discuss same with the parenting coordinator, I first
20  indicate that this Court has no legal authority over
21  ███████.  She's an adult.  She's over 18 years of age.
22  She will make her own decisions with regard to when and
23  if she will -- I should say if and when she will have
24  interaction with her mom.
25              As to ███████, I will leave it to the
```

35

```
 1    proceeding.
 2              Go ahead, Kevin.
 3              THE COURT:  I have a commitment at 5:00,
 4    too.  But, of course.
 5              THE COURT:  You have a 5:00 appointment?
 6              MR. GEIST:  Yes, but it's okay.  So --
 7              THE COURT:  Okay.
 8              MR. GEIST:  I just meant there's no way we
 9    could go through all the --
10              THE COURT:  Regardless.  I'm just saying I
11    wouldn't do that in any case.  Rely upon counsel, rely
12    upon the -- the recording that only costs $10.
13              (Phone ringing.)
14              THE PLAINTIFF:  Hello?
15              THE COURT:  Hello, Ms. Messner?
16              THE PLAINTIFF:  Yes.
17              THE COURT:  Okay.  Now, for the record,
18    it's 4:22.
19              THE PLAINTIFF:  (Indiscernible) -- Judge
20    Bury?  You left ten messages on my phone --
21              THE COURT:  No.  I left three messages, not
22    ten messages.
23              THE PLAINTIFF:  Okay.
24              THE COURT:  Three.
25              THE PLAINTIFF:  I said -- I said three
```

36

```
 1    messages you left on my answering machine.
 2              I was in a doctor's appointment.  I've been
 3    sick all week.  I have a blood pressure of 150 over 101
 4    and a low-grade fever.
 5              I'm asking you why (indiscernible) a court
 6    date that I received no notice on, that as far as I was
 7    aware, there was a court date scheduled or supposed to
 8    be scheduled for April 1st.  (Indiscernible).
 9              THE COURT:  Ms. -- Ms. Messner --
10              THE PLAINTIFF:  Tell me where the
11    notification (indiscernible).  Aren't I supposed to be
12    notified that there was a hearing that was being --
13    (indiscernible).
14              THE COURT:  Ms. Messner -- Ms. Messner --
15    Ms. Messner, what's your home --
16              THE PLAINTIFF:  (Indiscernible).
17              THE COURT:  -- what's your home address,
18    ma'am?
19              THE PLAINTIFF:  My house address is 447 4th
20    Avenue, Garwood, New Jersey 07027.
21              THE COURT:  Ms. Messner, we've been sending
22    notices -- the Family Case Management has been sending
23    notices to you at 7 Franklin Street in Somerset, New
24    Jersey.  Okay?
25              You've gotten other notices for prior court
```

37
```
 1    appearances.  Mr. Geist was --
 2              THE PLAINTIFF:  Hold on.  Hold on.
 3              THE COURT:  Mr. Geist --
 4              THE PLAINTIFF:  Wait a second.  Wait a
 5    second.
 6              THE COURT:  You hold on a sec -- you hold
 7    on a second and let me finish.
 8              THE PLAINTIFF:  (Indiscernible).
 9              THE COURT:  Let me finish what I want to
10    say on the record about everybody getting notices for
11    today.  Okay?
12              Your attorney, Mr. Geist, was mailed a
13    notice on February 13, 2019, advising that this matter
14    was being heard today, not April 1st.  Today, March 26,
15    at 1:30 p.m., sent to him at his law office, 25 Main
16    Street, Suite 203, Geist Law, in Hackensack, New
17    Jersey, as was Mr. Gussis, the attorney for the
18    defendant, also on February 13, 2019.
19              Your attorney was on notice, and you were
20    sent a notice for today's date at 1:30 at 7 Franklin
21    Street in Somerset.
22              THE PLAINTIFF:  I don't (indiscernible) --
23              THE COURT:  And the defendant was sent the
24    same notice --
25              THE PLAINTIFF:  That's not my address.
```

38
```
 1              THE COURT:  -- at his address in Somerset.
 2              MR. GEIST:  If I may --
 3              THE PLAINTIFF:  That's not my address.  My
 4    address is not 7 Franklin in Somerset.  I live
 5    (indiscernible) since 2015, and I have notices from
 6    every other -- for every court date, and I was never
 7    got one from this one.  This one, I had to get in court
 8    the 1st.
 9              And, second of all, the (indiscernible) the
10    motion on December 18th, 2018 was supposed to be
11    addressed on February 5th.
12              Now we're dealing with transfer of custody
13    over to me because Miklos' bad cooperation and
14    inability to co-parent and because he's refusing me
15    makeup time and (indiscernible).
16              And I have a transcript of that hearing,
17    which I believe my attorney has to show you, and on
18    that transcript, it says (indiscernible) --
19              MR. GEIST:  Your Honor, if I may interrupt
20    my client.
21              THE COURT:  Yes.
22              THE PLAINTIFF:  (Indiscernible) --
23              THE COURT:  Your attorney -- your attorney,
24    Mr. Geist, is asking to speak.
25              Go ahead.
```

Judge
Bradford
Bury

Re:- Stephanie Messin
Child Support

STEPHANIE J. MESSNER
447 4TH AVE
GARWOOD, NJ. 07027
908-456-4417

---

| | |
|---|---|
| STEPHANIE MESSNER, | : Superior Court of New Jersey |
| | : Chancery Division – Family Part |
| Plaintiff, | : Somerset County |
| | : CIVIL ACTION |
| V. | : |
| MIKLOS HAJDU-NEMETH | : Docket:  FD-18-340-01 |
| | : |
| | : |
| Defendant | :   Letter of  Correction of May 2, 2023 Order |

---

5/12/2023

Dear Judge Bradford Bury,

I am writing to you to explain or clarify a perception of me and my actions that is not true so that I can work with you in resolving our differences and coming to a working relationship with the court and the court orders.  Attached, I enclosed the pertinent court orders of child support calculations.

The facts in this case have been misunderstood by you and Judge Suh in that you were led to believe that both children were in parochial school, Judge Mawla assumed it, you assumed it and Judge Suh based her decision on that same belief however the Order of Judge Julie Marino issued an Order on 10/20/2008 that stated that all major decisions regarding the children are to be made jointly and that did not occur when the Defendant in this case transferred the children into parochial schools on 5/21/2016 long before he actually petitioned the court for end of summer vacation time in a plan not to return the children and insert them into the schools that would allow the transfer **(Marino Order Exhibit D)**.  I tried to get the courts to enforce the court orders but there were no sanctions or motivation for the Defendant to return the children home to me.  I hired an attorney to help me file a civilian complaint or two in two counties Somerset and Union and to no avail **(See Geist Law letter to Parks Exhibit E).**

One of our daughters was in public school with an exceptional IEP, ALJ (Arthur L. Johnson in Clark) a school that services Garwood residents, where the children and I resided.  Once the father obtained legal custody by the transfer in the Judgement by Judge Mawla on 7/25/2017, he then removed them from the parochial schools, which served to be the means to the ends, and placed them into public schools.  I did not consent to the transfer and made it known, I was completely unaware until 6/28/2017 when the acceptance letter came to my address in Garwood and a letter from my attorney at the time was issued out to the Defendant **(Exhibit F).** The consequences the children suffered was irreparable and devastating and it began in school see flowsheets of schools in comparison **(Exhibit G).**  The arrearages referred to as child support arrears is actually parochial school tuition alleged that I owe for this time period and a decision made solely by the defendant and his wife and specifically excluded me and this is what I am being incarcerated for.

1

I am not going to address all of the inhumane, dehumanizing and horrific circumstance and position I was put in that could have been avoided by the phone calls that I made to the Somerset County sheriff's department on May 1st, 2023 at 8:30 am when the office opened because I was defamed, publicly humiliated, forced to go into an irradiating body scanner with no informed consent, it is too painful and I am traumatized. This could have all been avoided because on May 1st, I offered to pay my next child support payment in two weeks which had arrears attached and I had just paid the child support plus arrears in a 608.00 payment on April 12th, 2023 two weeks earlier. I have a payment plan with the probation department that I pay monthly, not weekly because I don't earn or receive money on that basis.

I am unemployed and I am in school. My family has been helping me out by loaning me money to get through school so that I can work in a job that I can do within the scope of my practice while addressing some ongoing health issues and physical disabilities. Judge Suh was fully aware I suffered some health related issues and that I was unemployed, the probation department was made aware that I was unemployed and I am claiming indigent status. The "arrears" that was imputed to me as child support arrears is not because I was not paying my child support, I was current and up to date at the time Judge Suh took the Parochial School tuition that is claimed that I owe, without any input from me and imputed to me as child support arrears, a subject that is being disputed. The Defendant could have sued me in a civil court if he believed I owed him this money but instead used the arm of the family court to do it.

Financially, I have had to file for bankruptcy which went through on March 17, 2023 which would have wiped out "parochial school tuition" had it not been imputed to me disguised as child support arrears. I am currently unemployed with no income coming in and the only work I have been able to perform in the past has been substitute school nursing. I am currently in school at Kean University to be able to get the education I need to be able to work. The following is facts:

1.) Judge Mawla's Judgement calculations were based on 5 years of tax records and W2's which stated that I owe $79.00 per week for two children.
2.) Judge Suh's Order states that based on the calculations I owe $95.00 per week
3.) The probation Department added $45.00 per week on arrearages
4.) Kimarie Rahill's order of 9/13/2019, one child has been emancipated and my child support obligation was terminated for one child and there was no adjustment made to reflect that lowered adjustment in cost to me.
5.) I am unemployed and there is no reason to increase my child support based on COLA but it has been done annually instead of biannually as Court Rule 5:6b states, nor has there been any warning or notices sent to me to be able to refute the increase as my own cost of living has gone up without my income going up.

Your Honor's recent Order of May 2, 2023 states that I must pay $106.00 for the support of 2 children and $50.00 per week toward arrearages. I can not afford that and how was that increased from $45.00 to $50.00 or the increase to 106.00 without notice or a hearing.

 The order states that it believes that these fees were effective 8/17/2016 and that is not true because the 9,000.00 of parochial school tuition was not in fact child support, nor should I or anyone else be forced to pay a personal expense of another human being by way of forcing it to be paid by disguising it as child support arrears which is what happened when Judge Suh ordered it as such.

 I should not be incarcerated for not being able to pay or afford to pay for parochial school tuition and although while disputing it, I have been making payments on it to the best that I can on a monthly, lump sum basis in good faith.

2

Judge Mawla, in his Judgement ordered me to pay 79.00 per week and that was the final order according to 5 years of tax returns and W2 so the Defendant's testimony that he based his calculations with no tax returns or w2 was a lie. Although the court recognizes that I am only liable for child support on one child, my child support obligation never goes down, but it keeps going up even though I am indigent and unemployed and recently went through bankruptcy.  This is not something one does when they are "sporadically employed" and deemed to have the ability to pay.

You stated on page 2 of the order that I have the ability to pay 557.65 toward the arrears because I work sporadically and that is not correct because I can not afford that and I am unemployed.  The contract that I agreed on was 360.00 but it was not explained to me that this was in addition to the regular child support payment and yesterday I paid $500.00 which is all I had.  The cash that was in my pocket of $197.65 jail account should not have been confiscated, that was not part of the agreement and I was left with no money for groceries, a way home or gas or the $100.00 that was supposed to go toward the next child support payment.

Can you explain why the child support was increased and is so high, why it doesn't reflect my obligation for one child, how the probation determined that I could pay 45.00 per week on the arrears **(See Appendix page 50-51)** and why you increased the 45.00 per week to 50.00 per week without a hearing or any input from me.  I can not afford it and can I please have the order to state that my payments are to be made monthly like the father of my children had his payment plan set up.

It is important to note that I have had to pay out of pocket expenses for both children that the Defendant is obligated by Judge Mawla's Order to pay 75% but he has yet to pay 1 penny in fact, he hasn't coparented or spoke one word to me about the children since 2/15/2018 as his wife refuses to allow him to communicate with me on any level.  I am more than supporting my children and in many ways. The children, now adults, state that they are unaware that I am paying child support, they don't receive the benefits of it from their father or stepmother that they are aware of, that they are made to have to work for their keep, pay for their own clothes, food, necessities, educational needs.   Please work with me in regards to this matter.

If I am incarcerated, it negatively affects my reputation, my character, my ability to work, and will no doubt do irreparable damage and harm not only me but the children.  The effects are forever lasting and once the harm is done, you can't put the toothpaste back into the tube.  You can not undo the harm.  If I am in jail, the children get nothing.


Thank You in Advance,


Respectfully Yours,

Stephanie Messner

3

**MESSNER STEPHANIE J**

Plaintiff ☐ Obligee* / ☒ Obligor*

vs.

**HAJDUNEMETH MIKLOS J**

Defendant ☒ Obligee* / ☐ Obligor*

**Superior Court of New Jersey
Chancery Division, Family Part**

**SOMERSET COUNTY**
Docket **FD-18-000340-01**
Probation Account Number **CS22560884A**

**Civil Action
Order for Relief to Litigant -
Enforcement of Litigant's Rights**

☐ Ability to Comply Hearing
☐ Subsequent Review Hearing
☒ Negotiated Settlement
☐ Administrative Order

With appearance by:

☐ Obligee
☒ Obligor
☐ IV-D Attorney
☒ **SOMERSET COUNTY** Probation Division

☐ Attorney for Obligee
☐ Attorney for Obligor

_____

_____

**Marie Holovacko, SrPO**

THIS MATTER having come before the Court on this **02** day of **MAY, 2023,**

☐ AND the court having conducted an Ability to Comply Hearing on

AND the Court having considered the evidence and arguments presented, and having found that:

    1. The Obligor is under a Court Order to pay:
        $ **106.00** per **WEEKLY** for the support of **2** child(ren),
        $ **0** per  for spousal support and
        $ **50.00** per **WEEKLY** toward arrearages
        effective **08/17/2016** .

    2. The Obligor has failed to make payments and owes arrearages totaling $**9,763.58** as of **05/02/2023**
        due to the Obligee and/or County Welfare;

☐ 3. For the limited purpose of obtaining counsel for this emergent hearing, the court has determined the Obligor is:

    ☐ Indigent and does not have the ability to provide their own counsel;

    ☐ not Indigent and has the ability to provide their own counsel or waives their right to counsel;

    ☐ for the following reasons as set forth on the record:

*Obligee - Person receiving support / Obligor - Person paying support





Failure to make the lump sum payment(s) as ordered may result in the issuance of a bench warrant for the arrest of the Obligor.

[x] 7. Effective **05/02/2023** missing **2** payment(s) or more, within the next 12 months, may result in the issuance of a warrant.

[ ] 8. An employment search must be conducted by the Obligor. Written records of at least contacts per week must be presented to the Probation Division. If employed, proof of income and the full name and address of employer must be provided immediately to the Probation Division. Failure to comply may result in the issuance of a bench warrant.

[ ] 9. The Obligor **is hereby noticed** to appear before this court on at [ ] am/ [ ] pm in  for further review and possible modification of the child support obligation. The**SOMERSET COUNTY** Family Division shall serve notice to the Obligee and other interested parties, if any, in this matter.

[x] 10. **It is further ORDERED:**

It is a negotiated settlement. The court has not conducted an ability to pay and accepts the settlement reached with Somerset Probation. Failure to comply with the agreement may result in a future warrant being issued. The obligor had $197.65 in jail account and that will be paid to this case.

All provisions of any prior Orders in this matter, not in conflict with this Order, shall remain in full force and effect.

*Bradford Bury*

**05/02/2023**
Date

**BRADFORD BURY** , J.S.C.



[X] 4. The Obligor has the current ability to pay $**557.65** toward the arrearages for the following reasons:
The obligor works sporadically,

[ ] 5. The Obligor has the ability to comply with the order and willfully refuses to do so.

    [ ] a. Incarceration **is not necessary** at this time for the following reasons:

        [ ] The Obligor has custody of the child(ren) on this order;

        [ ] The Obligee is no longer the custodial parent/guardian on this order. The child now is in the custody of
        ;

        [ ] Other reasons as set forth on the record:

    [ ] b. Incarceration **is necessary** to coerce compliance for the following reasons:

        [ ] The Obligor is employed and has been employed for.

        [ ] The Obligor has a source of income from and /or assets from.

        [ ] The Obligor is willfully underemployed because: (Enter background information to support the court's finding. Can include, but is not limited to education, technical or trade skills, work history, no medical limitations.)

        [ ] Other reasons as set forth on the record:

**It is hereby ORDERED** on this **02** day of **MAY, 2023,**

[ ] 1. The Obligor be incarcerated in the County Jail until the Obligor pays $ to be applied to said arrears or until further Order of this Court. The Court will review the Obligor's incarceration on if the above release payment has not been paid and the Obligor remains incarcerated.

[X] 2. The Obligor be released from custody in this matter;

[X] 3. The support-related bench warrant currently issued in this matter is discharged;

[ ] 4. Payments shall be made by Income Withholding on current and future income sources, including:

    **Name of income source**        **Address of income source**

    The Obligor must make payments any time that the full amount of support and arrears is not withheld from their income source.

[ ] 5. The guidelines were completed on child support cases, or the parties consented for alimony cases and the support obligation is modified as follows:
Child support obligation:
$ per effective [ ] Allocated/ [ ] Unallocated
Spousal/Alimony obligation:
$ per effective
Medical support obligation:
$ per effective
Arrears payback:
$ per effective

[X] 6. In addition to regular court ordered payments, a lump sum payment(s) of:
$ **360.00** must be paid by the Obligor by**05/16/2023**
$ must be paid by the Obligor by
$. must be paid by the Obligor by



CS702,89336906

351\MARIE,HOLOVACKO\CS22560884A\22560888



# **TABLE OF CONTENTS**

A.) COURT ORDER 10/07/2020- PGS 1-11

B.) COURT ORDER 4/12/2019- PGS 12-20

C.) COURT ORDER 7/25/2017 - PGS 21-32

D.) COURT ORDER 10/20/2008- PGS 33-40

E.) GEIST LAW letter 5/16/2017 to Prosecutor Parks- Interference with Custody request to file Complaints for parental kidnapping of children pgs. 41-43

F.) LYONS & ASSOCIATES 6/28/2016 letter opposing the transfer of children from PUBLIC SCHOOL into alternate schools, children residing with Ms. Messner, the custodial parent since 2008 via Court Order  issued by Judge Julie Marino 10/20/2008 and all of their natural lives. Pg. 44-46

G.) Flowsheet and Bar chart of decline of child's academic progress after the unilateral transfer of children by Defendant from PUBLIC SCHOOL with IEP, CASE MANAGER, STUDY SESSIONS into Bishop Ahr, IEP without the appropriate accommodations, no case manager, no study sessions or extra help.[1]

---

[1] The Public High School ALJ- Arthur L. Johnson services Garwood residents which the children and I were legally and one child was evaluated by Children's Hospital of Mountainside and tested, fitted with an excellent IEP at the public school which had a plan, under observation by a case manager and study classes, extra help and study sessions that was best suited for the child who had a 504 and IEP.  For the first time she was able to become an honor student and was very proud of herself under the public school system guidance in contrast to what occurred with the illegal and unauthorized unilateral transfer of the children out of their schools and into the new schools with only an unsigned letter and a large check from the Defendant.



PREPARED BY THE COURT

CERTIFIED
TO BE
A TRUE COPY

OCT 7 2020

STEPHANIE MESSNER,

Plaintiff,

v.

MIKLOS HAJDU-NEMETH,

Defendant.

SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION-FAMILY PART
SOMERSET COUNTY

DOCKET NO.: FD-18-340-01

CIVIL ACTION

ORDER

THIS MATTER having been opened to the Court on a motion filed by plaintiff, Stephanie Messner (Jared Geist, Esq. appearing) and opposed by George Gussis, P.A., attorneys for defendant, Miklos Hajdu-Nemeth (George Gussis, Esq. appearing), and defendant having filed cross-motions which were opposed by plaintiff; and the Court having considered the pleadings and supporting papers, and for good cause shown;

IT IS on the 7th day of OCTOBER 2020, ORDERED as follows:

1.      Plaintiff's request to vacate the April 12, 2019 Order is DENIED.

2.      Defendant's request to deny plaintiff's motion to vacate the April 12, 2019 Order is GRANTED.

3.      Defendant's request to find plaintiff in violation of litigant's rights for failure to comply with the July 25, 2017 Judgment and April 12, 2019 Order is GRANTED, in part, and DENIED, in part.

        a.   Defendant's request to hold plaintiff in violation of litigant's rights for failure to provide proof of life insurance is GRANTED.

b. Defendant's request to hold plaintiff in violation of litigant's rights for failure to pay her 25% share of parochial school tuitions in the amount of $8,680.25 is GRANTED.

c. Defendant's request to hold plaintiff in violation of litigant's rights for failure to cease discussing the litigation with or disparaging the defendant to the parties' daughters is DENIED.

d. Defendant's request to hold plaintiff in violation of litigant's rights for failure to file a complete Case Information Statement within sixty (60) days is DENIED as moot.

4.    Defendant's request to suspend plaintiff's parenting time with the parties' daughters until she addresses her perceived parenting issues to the parenting coordinator as provided in the July 25, 2017 Judgment and modified by the April 12, 2019 Order is DENIED.

5.    Defendant's request to allow the parties' daughters to address their parenting issues with plaintiff to the Parenting Coordinator, with the cost to be shared equally by the parties, is GRANTED in part, and same shall be at the discretion of the Parenting Coordinator as to Alexandria only.  The court has no authority as to Olivia as she is now 20 years of age.

6.    Defendant's request to recalculate child support and impute plaintiff's income at $80,210 is GRANTED as modified.  Plaintiff's income for recalculation purposes shall be $50,883.  Plaintiff's child support obligation shall be $95 per week pursuant to the Child Support Guidelines.

7.    Defendant's request to compel plaintiff to bring her child support arrears current within sixty days of this Order is GRANTED.  Plaintiff shall pay $274.93 to the Probation Department within sixty (60) days.

2

8.     Defendant's request to compel plaintiff to pay all parochial school tuition as directed in the July 25, 2017 Judgment is GRANTED.

9.     Defendant's request to compel plaintiff to pay 25% of the parochial school tuition for the years 2017, 2018, and 2019 is GRANTED.  The amount of $8,680.25 shall be added to plaintiff's child support arrears.

10.     Defendant's request to compel plaintiff to contribute toward Olivia's college expenses is DENIED.

11.     Defendant's request for counsel fees is DENIED.

12.     Plaintiff shall serve a copy of this order on all parties within seven (7) days of receipt of an executed copy of same.

The reasons underlying this decision are attached hereto and incorporated herein.

HON. HAEKYOUNG SUH, P.J.F.P.

[ ]   Unopposed

[X]   Opposed

Custody/Parenting Time Compliance Requirement

If this order contains any provision concerning custody and/or parenting time, both parties are advised: Failure to comply with the custody provisions of this court order may subject you to criminal penalties under N.J.S.A. 2C:13-4, "Interference with Custody." Such criminal penalties include, but are not limited to, imprisonment, probation, and/or fines.

Si usted deja de cumplir con las clausulas de custodia de esta orden del tribunal, puede estar sujeto (sujeta) a castigos criminales conforme a N.J.S.A. 2C:13-4, "Interference with Custody (Obstruccion de la Custodia)." Dichos castigos criminales incluyen pero no se limitan a encarcelamiento, libertad, multas o una combinacion de los tres.

3

## CHILD SUPPORT GUIDELINES - SOLE PARENTING WORKSHEET

Case Name:
**MESSNER STEPHANIE J**          **HAJDUNEMETH MIKLOS J**
                   vs.
**Plaintiff**          **Defendant**

Custodial Parent is the : ☐ Plaintiff  ☒ Defendant

County : 018-SOMERSET COUNTY
Case ID : CS22560884A
Docket #: FD-18-000340-01
Number of Children:  1

| All amounts must be weekly | CUSTODIAL | NON-CUSTODIAL | COMBINED |
|---|---|---|---|
| 1. Gross Taxable Income | $ 2,878.00 | $ 979.00 | |
| 1a. Mandatory Retirement Contributions *(non-taxable)* | -$ 0.00 | -$ 0.00 | |
| 1b. Tax-Deductible Alimony Paid *(Current and/or Past Relationships)* | -$ 0.00 | -$ 0.00 | |
| 1c. Taxable Alimony Received *(Current and/or Past Relationships)* | +$ 0.00 | +$ 0.00 | |
| 2. Adjusted Gross Taxable Income ((L1 - L1a - L1b) + L1c) | $ 2,878.00 | $ 979.00 | |
| 2a. Federal, State and Local Income Tax Withholding | $ 842.00 | $ 187.00 | |
| 2b. Mandatory Union Dues | -$ 0.00 | -$ 0.00 | |
| 2c. Child Support Orders for Other Dependents | -$ 0.00 | -$ 0.00 | |
| 2d. Other Dependent Deduction (from L14 of a separate worksheet) | -$ 0.00 | -$ 0.00 | |
| 3. Net Taxable Income (L2 - L2a - L2b - L2c - L2d) | $ 2,036.00 | $ 792.00 | |
| 4. Non - Taxable Income *(source: )* | +$ 0.00 | +$ 0.00 | |
| 4a. Non-Tax-Deductible Alimony Paid *(Current and/or Past Relationships)* | -$ 0.00 | -$ 0.00 | |
| 4b. Non-Taxable Alimony Received *(Current and/or Past Relationships)* | +$ 0.00 | +$ 0.00 | |
| 5. Government (Non-Means Tested) Benefits for the Child | +$ 0.00 | +$ 0.00 | |
| 6. Net Income (L3 + L4 - L4a + L4b + L5) | $ 2,036.00 | $ 792.00 | $ 2,828.00 |
| 7. Each Parent's Share of Income (L6 Each Parent / L8 Combined) | 0.72 | 0.28 | 1.00 |
| 8. Basic Child Support Amount (From Appendix IX-F Schedules) | | | $ 422.00 |
| 9. Net Work Related Child Care (From Appendix IX-E Worksheet) | | | +$ 0.00 |
| 10. Child's Share of Health Insurance Premium | | | +$ 1.00 |
| 11. Unreimbursed Health Care Expenses over $250/child/year | | | +$ 0.00 |
| 12. Court-Approved Extraordinary Expenses | | | +$ 0.00 |
| 13. Total Child Support Amount (L8 + L9 + L10 + L11 + L12) | | | $ 423.00 |
| 14. Each Parent's Share of the Support Obligation (L7 x L13) | $ 305.00 | $ 118.00 | |
| 15. Government Benefits for the Child Based on Contribution of NCP | | -$ 0.00 | |
| 16. Net Work-Related Child Care Paid | . | -$ 0.00 | |
| 17. Health Insurance Premium for the Child Paid | | -$ 1.00 | |
| 18. Unreimbursed Health Care Expenses Paid (>$250/child/year) | | -$ 0.00 | |
| 19. Court-Approved Extraordinary Expenses Paid | | -$ 0.00 | |
| 20. Adjustment for Parenting Time Expenses (L8 x L20b for Non-Custodial Parent x 0.37). *Note: Not presumptive in some low income situations (see App.IX-A., ¶13). .* | | -$ 22.00 | |
| 20a. Number of Overnights with Each parent | 313 | 52 | 365 |
| 20b. Each Parent's Share of Overnights with the Child (L20a for Parent / L20a Combined) | 0.86 | 0.14 | 1.00 |



## CHILD SUPPORT GUIDELINES - SOLE PARENTING WORKSHEET - PAGE 2

| All amounts must be weekly | CUSTODIAL | NON-CUSTODIAL | COMBINED |
|---|---|---|---|
| 21. Net Child Support Obligation (L14 - L15 - L16 - L17 - L18 - L19 - L20) | | $ 95.00 | |
| *If there is no adjustment for other dependents, go to line 25* | | | |
| 22. Child Support Order WITH Other Dependent Deduction (L2d) and Child Support Orders for Other Dependents (L2c) | | | |
| 23. Child Support Order WITHOUT Other Dependent Deduction and Child Support Orders for Other Dependents | | | |
| 24. Adjusted Child Support Order ((L22 + L23) / 2) | | | |
| 25. Self-Support Reserve Test: (L6 - L21 or L24 for NCP; L6 - L14 for CP); If L25 for NCP is greater than 105% of the federal poverty guideline for one person (*pg*) or L25 for CP is less than *pg* , enter L21 or L24 amount on L27. If NCP L25 is less than the *pg* and CP L25 is greater than the *pg* , go to L26. | $ 1,731.00 | $ 697.00 | |
| 26. Obligor Parent's Maximum Child Support Obligation (L6 NCP income - 105% of federal poverty guideline for one person). Enter result here and on Line 27. | | | |
| 27. Child Support Order | | $ 95.00 | |

## COMMENTS, REBUTTALS, AND JUSTIFICATION FOR DEVIATIONS

1. The child support order for this case [x] was [ ] was not based on the child support guidelines award.

2. If different from the child support guidelines award (line 27), enter amount ordered: $ 0.00

3. The child support guidelines were not used or the guidelines award was adjusted because:

4. The following court approved extraordinary expenses were added to the basic support obligation on Line 19:

| 5. Custodial Taxes: | [X] App IX-H | [ ] Circ E | [ ] Other | # Eligible Dependents: 1 | Marital: Single |
|---|---|---|---|---|---|
| Non-Custodial Taxes: | [X] App IX-H | [ ] Circ E | [ ] Other | # Eligible Dependents : 0 | Marital: Single |

| Prepared By: | Title: | Date: |
|---|---|---|
| PATRICK DEVINE | JUDICIARY LAW CLERK | 10/07/2020 |



SUPERIOR COURT OF NEW JERSEY
Chancery Division–Family Part

## Uniform Summary Support Order

| PLAINTIFF | VS | DEFENDANT |
|---|---|---|
| STEPHANIE MESSNER | | MIKLOS HAJDU-NEMETH |

☑ Obligor  ☐ Obligee    ☐ Obligor  ☑ Obligee

| HEARING DATE | WELFARE / U.I.F.S.A. # |
|---|---|
| 10 /07 / 2020 | |

COUNTY: Somerset

DOCKET # FD-18-340-01

CS# 22560884A

**CERTIFIED TO BE A TRUE COPY**

With appearance by: ☐ PL  ☑ Atty for PL _Jared Geist, Esq._    ☐ DEF  ☑ Atty for DEF _George Gussis, Esq._

☐ IV-D Atty _____    ☐ County Probation Division

This matter having been opened to the court by: ☑ Plaintiff  ☐ Defendant  ☐ County Welfare Agency  ☐ Probation Division  ☐ Family Division

for an ORDER for: ☐ Paternity  ☑ Support  ☐ Visitation  ☐ Custody  ☑ Enforcement  ☑ Modification / Increase / Decrease

1.  State with Continuing Exclusive Jurisdiction: _____

| CHILD'S NAME | BIRTH DATE | | CHILD'S NAME | BIRTH DATE |
|---|---|---|---|---|
| 2A.  Alexandra Hajdu-Nemeth | 11/02/2004 | 2D. | | |
| 2B. | | 2E. | OCT 7 2020 | |
| 2C. | | 2F. | | |

3.  ☐   PATERNITY of child(ren) (# above) _____ is hereby established and an ORDER of paternity is hereby entered.

4.  ☐   A Certificate of Parentage has been filed for child(ren) # _____ above.

5.  ☑   IT IS HEREBY ORDERED THAT: The obligor shall pay support to the New Jersey Family Support Payment Center in the amount of:

| $95.00 | + | | + | | = | $95.00 | payable | Weekly | effective | 10/07/2020 |
|---|---|---|---|---|---|---|---|---|---|---|
| Child Support | | Spousal Support | | Arrears Payment | | Total | | Frequency | | Date |

NOTE: Child support is subject to a biennial cost-of-living adjustment in accordance with R. 5:6B

6.  ☐   Child Support Guidelines Order   ☐ Deviation reason: _____

6A. ☐   Worksheet attached.

7.  ☑   Support order shall be administered and enforced by the Probation Division in the county of Venue, _Somerset_ County.

8.  ☐   ARREARS calculated at establishment hearing are based upon amounts and effective date noted above and total $ ____

9.  ☑   ARREARS indicated in the records of the Probation Division, are $ _274.93_ as of _10_ / _02_ / _2020_ .

10. ☑   GROSS WEEKLY INCOMES of the parties, as defined by the Child Support Guidelines, upon which this ORDER is based:

OBLIGEE $ _2,878_     OBLIGOR $ _979_

11. ☐   INCOME WITHHOLDING is hereby ORDERED on current and future income sources, including:
Name of income source:        Address of income source:

OBLIGOR SHALL, however, make payments AT ANY TIME that the full amount of support and arrears is not withheld.

12. ☑   Medical Support coverage as available at reasonable cost shall be provided for the ☑ child(ren)  ☐ spouse,
by   ☐ Obligor     Obligee ☑     ☐ Both
The parties shall pay unreimbursable health care expenses of the child(ren) which exceed $250.00 per child per year as follows:
_____ % Obligor   _____ % Obligee
*Pursuant to R 5:6A the obligee shall be responsible for the first $250.00 per child per year.*
If coverage is available, Medical Insurance I.D. card(s) as proof of coverage for the child(ren)/spouse shall be provided immediately upon availability to the Probation Division by the:
☐ Obligee        ☐ Obligor

12A. ☐ Insurance currently provided by a non-party: _____

12B. ☐ Health insurance benefits are to be paid directly to the health care provider by the insurer.

DOCKET# FD-18-340-01          CS# 22560884A          HEARING DATE 10 /07 / 2020    PAGE 2 OF 2

| | |
|---|---|
| 13. ☐ | **GENETIC TESTING** to assist the court in determining paternity of the child(ren) (#_____ ) is hereby ORDERED. The county welfare agency or the foreign jurisdiction in the county of residence of the child shall bear the cost of said testing, without prejudice to final allocation of said costs. If defendant is later adjudicated the father of said child(ren), defendant shall reimburse the welfare agency for the costs of said tests,  and pay child support retroactive to ___/___/___. |
| 13A. ☐ | Issues of reimbursement reserved.                    13B. ☐ Issue of retroactive order reserved. |
| 14. ☐ | This matter is hereby **RELISTED** for a hearing on ___/___/___ before _____. A copy of this ORDER shall serve as the summons for the hearings.  No further notice for appearance shall be given.  Failure to appear may result in a default order, bench warrant, or dismissal.  Reason for relist: |
| 15. ☐ | AN **EMPLOYMENT SEARCH** MUST BE CONDUCTED BY THE OBLIGOR.  Written records of at least #_____ employment contacts per week must be presented to the Probation Division.  If employed, proof of income and the full name and address of employer must be provided immediately to the Probation Division. |
| 16. ☐ | **SERVICE** upon which this order is based: |

Personal Service    ☐Certified Mail:          ☐Refused           ☐Regular Mail (not returned)

Date: ___/___/___    ☐Signed by: _____   ☐Returned Unclaimed   ☐Other:

| | |
|---|---|
| 17. ☐ | A **BENCH WARRANT** for the arrest of the obligor is hereby ORDERED.  The obligor was properly served with notice for court appearance on ___/___/___, and failed to appear. (Service noted above.)  An amount of $_____ shall be required for release. |
| 18. ☐ | **EFFECTIVE** ___/___/___ FUTURE MISSED PAYMENT(S) numbering _____ or more may result in the issuance of a warrant, without further notice. |
| 19. ☐ | A **LUMP SUM PAYMENT OF** $_____ must be made by the obligor by ___/___/___, or a bench warrant may be issued without further notice. |
| 20. ☐ | This complaint / motion is hereby **DISMISSED**: (reason) _____ |
| 21. ☐ | Order of Support is hereby **TERMINATED** effective ___/___/___, as _____. Arrears accrued prior to effective date, if any, shall be paid at the rate and frequency noted on page number one of this ORDER. |
| 22. ☐ | THIS ORDER IS ENTERED BY **DEFAULT**.  The ☐obligor ☐obligee was properly served to appear for a hearing on ___/___/___ and failed to appear.        22A. ☐ Affidavit of Non-Military Service is filed. |
| 23. ☑ | It is further ORDERED: _____ |

Plaintiff shall provide proof of life insurance. Plaintiff's child support arrears are increased by $8,680.25 to reflect her 25% share of parochial school tuition. Alexandra shall address her parenting issues with plaintiff to the parenting coordinator, cost to be shared equally by the parties, at the discretion of the parenting coordinator. Plaintiff shall pay $274.93 in arrears within sixty (60) days of this Order.

**EXCEPT AS PROVIDED HEREIN, ALL PRIOR ORDERS OF THE COURT REMAIN IN FULL FORCE AND EFFECT.**

I hereby declare that I understand all provisions of this ORDER recommended by a Hearing Officer and I waive my right to an immediate appeal to a Superior Court Judge:

PLAINTIFF STEPHANIE MESSNER _____   DEFENDANT MIKLOS HAJDU-NEMETH _____

ATTORNEY FOR PLAINTIFF Jared Geist, Esq. ____   ATTORNEY FOR DEFENDANT George Gussis, Esq. ___

| | |
|---|---|
| 24. ☐ | **INTAKE CONFERENCE** BY AUTHORIZED COURT STAFF: |
| 25. ☐ | The parties request the termination of all Title IV-D services and consent to direct payment of support.  They are advised that all monitoring, collection, enforcement and location services available under Title IV-D of the Social Security Act are no longer in effect.  I understand I may reapply for Title IV-D services. |

_____          _____
            obligee                                    obligor

| | |
|---|---|
| 26. ☐ | Copies provided at hearing to ☐obligee ☐obligor    26A. ☑Copies to be mailed to ☑obligee ☑obligor |

TAKE NOTICE THAT THE NEW JERSEY UNIFORM SUPPORT NOTICES WHICH ARE PROVIDED IN APPENDIX XVI OF THE RULES OF COURT, AND WHICH FOLLOW, ARE INCORPORATED INTO THIS ORDER BY REFERENCE AND ARE BINDING ON ALL PARTIES.

So Recommended to the Court by the Hearing Officer:

Date 10 / 07 / 2020    H.O.          Signature

So Ordered by the Court:

Date 10 / 07 / 2020    Judge Haekyoung Suh, P.J.F.P.    Signature _____ J.S.C.

UNIFORM SUMMARY SUPPORT ORDER (R. 5:7-4)

## NEW JERSEY UNIFORM SUPPORT NOTICES

**PURSUANT TO R. 5:7-4(f), TAKE NOTICE THAT THE FOLLOWING PROVISIONS ARE TO BE CONSIDERED PART OF THIS ORDER AND ARE BINDING ON ALL PARTIES:**

1. You must continue to make all payments until the court order is changed by another court order.

2. You must file a **WRITTEN** request to the Family Division in the county in which the order was entered in order for the court to consider a change in the support order. Contact the Family or Probation Division to find out how to do this. It is important that you request a change as soon as possible after your income or the child(ren)'s status changes. In most cases, if you delay making your request, and you are the obligor, you will have to pay the original amount of support until the date of your written request.

3. Payments must be made directly to the New Jersey Family Support Payment Center, P.O. Box 4880, Trenton, NJ 08650, unless the court directs otherwise. Payments may be made by money order, check, direct debit from your checking account, or credit card. Gifts, other purchases, or in-kind payments made directly to the obligee or child(ren) will not fulfill the support obligation. Credit for payments made directly to the obligee or child(ren) may not be given without a court order.

4. No payment or installment of an order for child support, or those portions of an order that are allocated for child support, shall be retroactively modified by the court except for the period during which the party seeking relief has pending an application for modification as provided in *N.J.S.A.* 2A:17-56.23a. (*R.* 5:7-4(e)).

5. The amount of child support and/or the addition of a health care coverage provision in Title IV-D cases shall be subject to review at least once every three years, on written request by either party to the Division of Family Development, P.O. Box 716, Trenton, NJ 08625-0716, as appropriate, or upon application to the court. (*N.J.S.A.* 2A: 17-56.9a; *R.* 5:7-4(e)).

6. In accordance with *N.J.S.A.* 2A:34-23b, the custodial parent may require the non-custodial parent's health care coverage provider to make payments directly to the health care provider by submitting a copy of the relevant sections of the order to the insurer. (*R.* 5:7-4(e)).

7. Social Security numbers are collected and used in accordance with section 205 of the Social Security Act (42 *U.S.C.* 405). Disclosure of an individual's Social Security number for Title IV-D purposes is mandatory. Social Security numbers are used to obtain income, employment, and benefit information on individuals through computer matching programs with federal and state agencies, and such information is used to establish and enforce child support under Title IV-D of the Social Security Act (42 *U.S.C.* 651 et seq.). Any person who willfully and with the intent to deceive, uses a Social Security number obtained on the basis of false information provided to Social Security Administration **or** provides a false or inaccurate Social Security number is subject to a fine or imprisonment. (42 *U.S.C.* 408(7); *R.* 5:7-4(e)).

9

8. The United States Secretary of State is required to refuse to issue or renew a passport to any person certified as owing a child support arrearage exceeding the statutory amount. In addition, the U.S. Secretary of State may take action to revoke, restrict or limit a passport previously issued to an individual owing such a child support arrearage. (42 *U.S.C.* 652(k)).

9. Failure to appear for a hearing to establish or to enforce an order, or failure to comply with the support provisions of this order may result in incarceration. The obligee and obligor shall notify the appropriate Probation Division of any changes in address, employment status, health care coverage, or a change in the address or status of the child(ren). Changes must be reported in writing to the Probation Division within 10 days of the change. Not providing this information is a violation of this Order. The last address you give to Probation will be used to send you notices. If you fail to appear, a default order may be entered against you or a warrant may be issued for your arrest (*R.* 5:7-4(e)).

10. Any payment or installment for child support shall be fully enforceable and entitled to full faith and credit and shall be a judgment by operation of law on or after the date it is due (*N.J.S.A.* 2A:17-56.23a). Any non-payment of child support you owe has the effect of a lien against your property. This child support lien may affect your ability to obtain credit or to sell your property. Failure to remit timely payment automatically results in the entry of a judgment against the obligor and post-judgment interest may be charged. Judgments [also] accrue interest at the rate prescribed by Rule 4:42- 11(a). (*R.* 5:7-4(e), 5:7-5(g)). Before the satisfaction of the child support judgment, any party to whom the child support is owed has the right to request assessment of post-judgment interest on child support judgments.

11. All child support obligations are payable by income withholding unless otherwise ordered. If immediate income withholding is not required when an order is entered or modified, the child support provisions of the order may be subject to income withholding when the amount due becomes equal to, or in excess of the amount of support due for 14 days. The withholding is effective against the obligor's current and future income from all sources authorized by law. (*R.* 5:7-4(e), *R.* 5:7-5).

12. The occupational, recreational, and professional licenses, including a license to practice law, held or applied for by the obligor may be denied, suspended or revoked if: 1) a child support arrearage accumulates that is equal to or exceeds the amount set by statute, or 2) the obligor fails to provide health care coverage for the child as ordered by the court, or 3) a warrant for the obligor's arrest has been issued by the court for obligor's failure to pay child support as ordered, or for obligor's failure to appear at a hearing to establish paternity or child support, or for obligor's failure to appear at a child support hearing to enforce a child support order and said warrant remains outstanding. (*R.* 5:7-4(e)).

13. The driver's license held or applied for by the obligor may be denied, suspended, or revoked if 1) a child support arrearage accumulates that is equal to or exceeds the amount set by statute, or 2) the obligor fails to provide health care coverage for the child as ordered by the court. The driver's license held or applied for by the obligor shall be denied, suspended, or revoked if the court issues a warrant for the obligor's arrest for failure to pay child support as ordered, or for failure to appear at a hearing to establish paternity or child support, or for failure to appear at a child support hearing to enforce a child support order and said warrant remains outstanding. (*R.* 5:7-4(e)).

---

14. The name of any delinquent obligor and the amount of overdue child support owed will be reported to consumer credit reporting agencies as a debt owed by the obligor, subject to all procedural due process required under State law. (*N.J.S.A.* 2A: 17-56.21).

15. Child support arrears may be reported to the Internal Revenue Service and the State Division of Taxation. Tax refunds/homestead rebates due the obligor may be taken to pay arrears (*N.J.S.A.* 2A:17-56.16).

16. Child support arrears shall be paid from the net proceeds of any lawsuit, settlement, civil judgment, civil arbitration award, inheritance or workers' compensation award to a prevailing party or beneficiary before any monies are disbursed. (*N.J.S.A.* 2A:17-56.23b).

17. Periodic or lump sum payments from State or local agencies, including lotteries, unemployment compensation, workers' compensation or other benefits, may be seized or intercepted to satisfy child support arrearages. (*N.J.S.A.* 2A:17-56.53).

18. If you owe past due child support, your public or private retirement benefits, and assets held in financial institutions may be attached to satisfy child support arrearages. (*N.J.S.A.* 2A:17-56.53).

19. A person under a child support obligation, who willfully fails to provide support, may be subject to criminal penalties under State and Federal law. Such criminal penalties may include imprisonment and/or fines. (*N.J.S.A.* 2C:24-5; *N.J.S.A.* 2C:62-1; 18 *U.S.C.A.* 22).

20. If this order contains any provision concerning custody and/or parenting time, both parties are advised: Failure to comply with the custody provisions of this court order may subject you to criminal penalties under *N.J.S.A.* 2C:13-4, **Interference with Custody**. Such criminal penalties include, but are not limited to, imprisonment, probation, and/or fines.
Si esta orden contiene alguna disposición con respecto a la custodia o el horario de las visitas paternas o maternas, se informa a ambas partes que: De no cumplir con las disposiciones de esta orden judicial sobre la custodia, pueden estar sujetas a las penalidades establecidas para esa conducta penal en *N.J.S.A.* 2C:13-4, **Interferencia con la Custodia (Interference with Custody)**. Tales penalidades incluyen encarcelamiento, libertad a prueba y multas, pero no se limitan a las penas mencionadas.

# B

04/12/2019  11:01   000000000000          FJT                                    PAGE  02/09

CERTIFIED TO BE A
TRUE COPY

**FILED**

APR 1 2 2019

BRADFORD M. BURY
J.S.C.

PREPARED BY THE COURT

STEPHANIE J. MESSNER

        Plaintiff

    vs.

MIKLOS J. HAJDUNEMETH

        Defendant.

SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION:FAMILY PART
SOMERSET COUNTY
DOCKET NO. FD-18-340-01

    Civil Action

    ORDER

Defendant appeared in Court with counsel. Counsel for Plaintiff was present. Plaintiff did not initially appear, however, she appeared via Polycom at the time the Court's decision was being rendered. The Court hereinafter addresses the remaining reliefs sought by Plaintiff under the Motion filed December 18, 2018, not addressed in the February 5, 2019 Order, as well as Defendant's cross-application.

IT IS on this _____13th_____ day of APRIL, 2019, HEREBY ORDERED AS FOLLOWS:

1. Plaintiff's request to vacate the COLA increase imposed after 1 year rather than 2 years is DENIED.

2. Plaintiff's request to grant a COLA increase credit and same to be paid by Defendant by check is DENIED.

3. Defendant's request to decrease child support is DENIED.

4. Plaintiff's request for make-up parenting time is DENIED. Any parenting time issues shall be addressed by the Parenting Coordinator.

13

5. Plaintiff's request to hold Defendant in contempt of Court for violation of the Children and Plaintiff's rights to liberal parenting time is DENIED.

6. Plaintiff's request to restrain Defendant from interfering, withholding or showing up during Plaintiff's parenting time is DENIED.

7. Defendant's request to hold Plaintiff in Violation of Litigant's Rights for failure to comply with the Judgment of 7/25/17 for failure to pay child support pursuant to paragraph 9 is DENIED.

8. Defendant's request to hold Plaintiff in Violation of Litigant's Rights for failure to provide income documentation pursuant to paragraph 10 of the Judgment dated 7/25/17 is GRANTED.

9. Defendant's request to hold Plaintiff in Violation of Litigant's Rights for failure to pay parochial school tuition pursuant to Paragraph 7 of the Judgment dated 7/25/17 is GRANTED.

10. 5.) Defendant's request to hold Plaintiff in Violation of Litigant's Rights for failure to address parenting issues to the Parenting Coordinator pursuant to paragraph 3 of the Judgment dated 7/25/17 is GRANTED

11. Defendant's request to hold Plaintiff in Violation of Litigant's Rights for failure to cease discussing the litigation with or disparaging the Defendant to the parties' daughter is DENIED.

12. Defendant's request to hold Plaintiff in Violation of Litigant's Rights for failure to file for their daughters' passports is GRANTED. Defendant may obtain a passport for Alexandra Hajdu-Nemeth (DOB 11/2/2004) without the consent of the Plaintiff, and Defendant is granted limited Power of Attorney on behalf of the Plaintiff for said purpose.

13. Defendant's request to suspend all of Plaintiff's parenting time with the parties' daughters until Plaintiff addresses her perceived parenting issues to the Parenting Coordinator as provided in the Judgment of the Court of 7/25/17 is DENIED.

14. Defendant's request to allow the parties' daughters to address their parenting issues with Plaintiff to the Parenting Coordinator with the cost to be shared equally by the parties is GRANTED, in part, and same shall be at the discretion of the Parenting Coordinator as to Alexandria only. The Court has no authority as to Olivia as she is now 18 years of age.

15. Defendant's request to restrain cellphone usage as to Alexandria is DENIED.

16. Defendant's request to recalculate child support is DENIED without prejudice subject to Paragraph 17.

17. Plaintiff shall file a complete updated Case Information Statement with all required attachments, including 2017 and 2018 income tax returns with W2s, 1099s, and K-1s by May 1, 2019 with a copy to Defendant.

18. Defendant's request to restrain Plaintiff from using out of network healthcare providers, except in emergent circumstances, is GRANTED.

19. Defendant's request to modify Paragraph 11 of the 07/25/17 Judgment to allow Defendant to claim both daughters as his legal dependents for tax purposes in any year where Plaintiff is not current with her child support obligation by December 31st is GRANTED.

20. Defendant's request for Plaintiff to reimburse Defendant the sum of $1,204.17 for his overpayment of child support while the Plaintiff was the PPR, within 30 days of this Order, is DENIED. However, this overpayment of $1,204.17 shall be added to the current arrears as of 3/26/19. Probation shall update and amend the Account accordingly.

15

21. Defendant's request to direct the Plaintiff to pay all arrears in full within sixty days is DENIED.

22. Defendant's request for Plaintiff to pay all parochial school tuition as provided for in the 7/25/17 Judgment in the amount of $8,680.25 for the 2017-2018 and 2018-2019 school year is GRANTED.

23. Defendant's request for Plaintiff to pay 50% of the parochial school tuition for the 2016-2017 year is DENIED.

24. Defendant's request to deny Plaintiff any makeup parenting time is subject to the Parenting Coordinator.

25. Defendant's request to relieve Olivia, as she is now 18 years of age, from complying with parenting time is GRANTED.

26. Defendant's request for counsel fees is DENIED.

27. The Court notes that the 7/25/17 Judgment entered by the Hon. Hany Mawla was affirmed by the Appellate Division in an Unpublished Opinion on February 20, 2019 (Docket No. A-5607).

BRADFORD M. BURY, J.S.C.

**CERTIFIED TO BE A TRUE COPY**

| Plaintiff | VS | Defendant | | *Superior Court of New Jersey* |
|---|---|---|---|---|
| STEPHANIE J. MESSNER | | MIKLOS J. HAJDUNEMETH | | *Chancery Division – Family Part* |

### Civil Action Order

| ☐ Obligor ■ Obligee | ☐ Obligor ☐ Obligee | County Somerset |
|---|---|---|

| Hearing Date | Welfare / U.I.F.S.A. # |
|---|---|

Docket # FD-18-340-01
CS # 22560884A

With appearance by: ☐ PL  ■ Atty for PL JARED A. GEIST, ESQ.   ■ DEF  ■ Atty for DEF GEORGE G. GUSSIS, P.A.
☐ IV-D Atty                    ☐ County Probation Division

This matter having been opened to the court by: ☐ Plaintiff ☐ Defendant ☐ County Welfare Agency ☐ Probation Division ☐ Family Division
for an ORDER for: ☐ Paternity ☐ Support ☐ Visitation ☐ Custody ☐ Enforcement ☑ Modification/Increase/Decrease
☐ Termination/Continuation ☐ Status Review

1. State with Continuing Exclusive Jurisdiction:

| Child's Name | Birth Date | | Child's Name | Birth Date |
|---|---|---|---|---|
| 2A. OLIVIA HAJDUNEMETH | 09/13/2000 | 2E. | **FILED** | |
| 2B. ALEXANDRA M. HAJDU-NEMETH | 11/02/2004 | 2F. | | |
| 2C. | | 2G. | **APR 12 2019** | |
| 2D. | | 2H. | **BRADFORD M. BURY** **J.S.C.** | |

3. ☐ PATERNITY of child(ren) (# above) _____ is hereby established and an ORDER of paternity is hereby entered.

4. ☐ A Certificate of Parentage has been filed for child(ren) # _____ above.

5. ☐ It is Hereby ORDERED That: The obligor shall pay support to the New Jersey Family Support Payment Center in the amount of:

| [ ] | + | [ ] | + | [ ] | = | [ ] | payable | [ ] | effective | [ ] |
|---|---|---|---|---|---|---|---|---|---|---|
| Child Support | | Spousal Support | | Arrears Payment | | Total | | Frequency | | Date |

NOTE: Child support is subject to a biennial cost-of-living adjustment in accordance with R. 5:6B

6. ☐ Child Support Guidelines Order  ☐ Deviation reason: _____

6A. ☐ Worksheet attached.

7. ☐ Support order shall be administered and enforced by the Probation Division in the county of Venue, _____

8. ☐ ARREARS calculated at establishment hearing are based upon amounts and effective date noted above and total $ _____

9. ■ ARREARS indicated in the records of the Probation Division, are $ 2,985.34  as of 03/26/2019

10. ☐ GROSS WEEKLY INCOMES of the parties, as defined by the Child Support Guidelines, upon which this ORDER is based:
OBLIGEE $ _____   OBLIGOR $ _____

11. ☐ INCOME WITHHOLDING is hereby ORDERED on current and future income sources, including:
Name of Income Source: _____   Address of Income Source: _____

OBLIGOR SHALL, however, make payments AT ANY TIME that the full amount of support and arrears is not withheld.

12. ☐ Medical Support coverage as available at reasonable cost shall be provided for the ☐ child(ren) ☐ spouse,
by ☐ Obligor  ☐ Obligee  ☐ Both
The parties shall pay unreimbursable health care expenses of the child(ren) which exceed $250.00 per child per year as follows:
____% Obligor        ____% Obligee
*Pursuant to R 5:6A the obligee shall be responsible for the first $250.00 per child per year.*
If coverage is available, Medical Insurance I.D. card(s) as proof of coverage for the child(ren)/spouse shall be provided immediately
upon availability to the Probation Division by the:
☐ Obligee  ☐ Obligor

12A. ☐ Insurance currently provided by a non-party: _____

12B. ☐ Health insurance benefits are to be paid directly to the health care provider by the insurer.

13. ☐ GENETIC TESTING to assist the court in determining paternity of the child(ren) (#_____) is hereby ORDERED.
The county welfare agency or the foreign jurisdiction in the county of residence of the child shall bear the cost of said testing, without
prejudice to final allocation of said costs. If defendant is later adjudicated the father of said child(ren), defendant shall reimburse the
welfare agency for the costs of said tests, and pay child support retroactive to _____

13A. ☐ Issues of reimbursement reserved.          13B. ☐ Issue of retroactive order reserved.

Effective: 02/01/2017, CN 10284                                        page 1 of 2

| DOCKET #FD-18-340-01 | CS# 22560884A | Hearing Date | Page 2 of 2 |
|---|---|---|---|

**14.** ☐ This matter is hereby RELISTED for a hearing on _____ before _____. A copy of this ORDER shall serve as the summons for the hearings. No further notice for appearance shall be given. Failure to appear may result in a default order, bench warrant, or dismissal. Reason for relist:

**15.** ☐ AN EMPLOYMENT SEARCH MUST BE CONDUCTED BY THE OBLIGOR. Written records of at least # ____ employment contacts per week must be presented to the Probation Division. If employed, proof of income and the full name and address of employer must be provided immediately to the Probation Division.

**16.** ☐ SERVICE upon which this order is based:
Personal Service ☐ Certified Mail: ☐ Refused ☐ Diligent Effort
Date: _____ ☐ Signed by: _____ ☐ Returned Unclaimed ☐ Regular Mail (not returned)
☐ Other _____

**17.** ☐ A BENCH WARRANT for the arrest of the obligor is hereby ORDERED. The obligor was properly served with notice for court appearance on _____, and failed to appear. (Service noted above). An amount of $ _____ shall be required for release.
☐ THE OBLIGOR IS HEREBY INCARCERATED in the _____ County Jail until the obligor pays $ _____ or until further notice of this court. The obligor was found to be not indigent and had the ability to pay the support order for reasons indicated below.

**18.** ☐ EFFECTIVE _____ FUTURE MISSED PAYMENT(S) numbering _____ or more may result in the issuance of a warrant, without further notice.

**19.** ☐ A LUMP SUM PAYMENT OF $ _____ must be made by the obligor by _____ or a bench warrant may be issued without further notice.

**20.** ☐ This complaint / motion is hereby DISMISSED: (reason) _____

**21.** ☐ Order of Support is hereby TERMINATED effective _____, as _____
Arrears accrued prior to effective date, if any, shall be paid at the rate and frequency noted on page number one of this ORDER.

**22.** ☐ THIS ORDER IS ENTERED BY DEFAULT. The ☐ obligor ☐ obligee was properly served to appear for a hearing on _____ and failed to appear.  22A. ☐ Affidavit of Non-Military Service is filed.

**23.** ■ It is further ORDERED:
Defendant's request for Plaintiff to reimburse Defendant the sum of $1,204.17 for his overpayment of child support while the Plaintiff was the PPR, within 30 days of this Order is DENIED. However, this overpayment of $1,204.17 shall be added to the current arrears as of 3/26/19. See also Order of the Hon. Bradford M. Bury, J.S.C. dated April 12, 2019 and filed simultaneously herewith.

### Except as Provided Herein, All Prior Orders of the Court Remain in Full Force and Effect.

I hereby declare that I understand all provisions of this ORDER recommended by a Hearing Officer and I waive my right to an immediate appeal to a Superior Court Judge:

Plaintiff _____   Defendant _____

Attorney for Plaintiff _____   Attorney for Defendant _____

**24.** ☐ INTAKE CONFERENCE BY AUTHORIZED COURT STAFF:
☐ PROBATION PREPARED CHILD SUPPORT ORDER

**25.** ☐ The parties request the termination of all Title IV-D services and consent to direct payment of support. They are advised that all monitoring, collection, enforcement and location services available under Title IV-D of the Social Security Act are no longer in effect. I understand I may reapply for Title IV-D services.

_____ obligee            _____ obligor

**26.** ☐ Copies provided at hearing to ☐ obligee ☐ obligor   **26A.** ☐ Copies to be mailed to ☐ obligee ☐ obligor

**TAKE NOTICE that the attached New Jersey Uniform Support Notices are incorporated into this Order by reference and are binding on all parties.**

So Recommended to the Court by the Hearing Officer:

Date: __ / __ / __   H.O. _____   Signature _____

So Ordered by the Court:

Date: 04 / 12 / 2019   Judge BRADFORD M. BURY, J.S.C.   Signature *Bradford Bury* J.S.C.

Effective: 02/01/2017, CN 10284                                   page 2 of 2

18

Case 3:19-cv-15752-RK-RLS Document 49 Filed 05/22/23 Page 46 of 89 PageID: 4770



New Jersey Judiciary

# New Jersey Uniform Support Notices

**TAKE NOTICE that the following provisions are to be considered part of this order and are binding on all parties:**

1. You must continue to make all payments until this court order is changed by another court order. The obligee and obligor shall notify the appropriate Probation Division of any change of address, employment status and health care coverage for themselves and the child(ren) within 10 days of the change. Notices are sent to the last address provided. Not providing this information is a violation of this Order. (R. 5:7-4A(d)).

2. Child support shall terminate by operation of law when a child marries, dies or enters military service. Child support shall also terminate on the child's 19th birthday unless another age is specified in a court order, which shall not extend beyond the child's 23rd birthday. (N.J.S.A. 2A:17-56.67et seq.).

3. You must file a motion or application to the Family Division in the county in which the order was entered in order for the court to consider a change in the support order. Contact the Family or Probation Division for instructions. It is important to request a change as soon as possible after your income or the child(ren)'s status changes. In most cases, if you delay making your request and you are the obligor, you will have to pay the original amount of support until the date of your written request.

4. Payments must be made to the New Jersey Family Support Payment Center, P.O. Box 4880, Trenton, NJ 08650, unless the court directs otherwise. (R. 5:7-4(d)). Payments may be made by money order, check, direct debit from your checking account, or credit card. Gifts, other purchases, or in-kind payments made directly to the obligee or child(ren) will not fulfill the support obligation. Credit for payments made directly to the obligee or child(ren) may not be given without a court order.

5. No payment or installment for child support, or those portions of an order that are allocated for child support, shall be retroactively modified by the court except for the period during which the party seeking relief has pending an application for modification as provided in N.J.S.A. 2A:17-56.23a. (R. 5:7-4A(d)).

6. The amount of child support and/or the addition of a health care coverage provision in cases receiving services under Title IV-D of the Social Security Act shall be subject to review at least once every three years, on written request by either party to the Division of Family Development, P.O. Box 716, Trenton, NJ 08625-0716, as appropriate, or upon motion or application to the court. (N.J.S.A. 2A: 17-56.9a; R. 5:7-4A(d)).

7. In accordance with N.J.S.A. 2A:34-23b, the custodial parent may require the non-custodial parent's health care coverage provider to make payments directly to the health care provider by submitting a copy of the relevant sections of the order to the insurer. (R. 5:7-4A(d)).

8. Social Security numbers are collected and used in accordance with section 205 of the Social Security Act (42 U.S.C. 405) to obtain individual's income, employment, and benefit information through computer matching programs with federal and state agencies, and such information is used to establish and enforce child support under Title IV-D of the Social Security Act (42 U.S.C. 651 et seq.). Disclosure of an individual's Social Security number for Title IV-D purposes is mandatory. (R. 5:7-4A(d)).

9. The United States Secretary of State shall refuse to issue or renew a passport to any person certified as owing a child support arrearage exceeding the statutory amount. In addition, the U.S. Secretary of State may take action to revoke, restrict or limit a passport previously issued to an individual owing such a child support arrearage. (42 U.S.C. 652(k)).

10. Failure to appear for a hearing to establish or to enforce an order, or failure to comply with the support provisions of this order may result in incarceration. If you fail to appear, a default order may be entered against you or a warrant may be issued for your arrest (R. 5:7-4A(d)).

11. Any payment or installment for child support shall be fully enforceable and entitled to full faith and credit and shall be a judgment by operation of law on and after the date it is due (N.J.S.A. 2A: 17-56.23.a; R. 5:7-4A(d)). Any non-payment of child support has the effect of a lien against your property. This lien may affect your ability to obtain credit or to sell your property. Failure to remit timely payment automatically results in the entry of a judgment against the obligor and post-judgment interest may be charged. Any party to whom the child support is owed has the right to request assessment of post-judgment interest at the rate prescribed by Rule 4:42-11(a) before the judgment may be satisfied. (R. 5:7-4A(d)).

<u>New Jersey Uniform Support Notices</u>

12. In accordance with *N.J.S.A.* 2A:17-56.7 et seq., the child support provisions of a court order are subject to income withholding on the effective date of the order unless the parties agree, in writing, to an alternative arrangement or either party shows and the court finds good cause to establish an alternative arrangement. The income withholding is effective upon all types of income including wages from current and future employment. (*R.* 5:7-4A(a)(3)). The child support provisions of the order are subject to income withholding when a child support arrearage has accrued in an amount equal to or in excess of the amount of support payable for 14 days. The withholding is effective against the obligor's current and future income from all sources authorized by law. (*R.* 5:7-4A(b)).

13. Any occupational, recreational, and professional licenses, including a license to practice law, held or applied for by the obligor may be denied, suspended or revoked if:

   1) a child support arrearage accumulates that is equal to or exceeds the amount set by statute, or

   2) the obligor fails to provide health care coverage for the child as ordered by the court, or

   3) a warrant for the obligor's arrest has been issued by the court for obligor's failure to pay child support as ordered, or for obligor's failure to appear at a hearing to establish paternity or child support, or for obligor's failure to appear at a child support hearing to enforce a child support order and said warrant remains outstanding. (*R.* 5:7-5).

14. The driver's license held or applied for by the obligor may be denied, suspended, or revoked if

   1) a child support arrearage accumulates that is equal to or exceeds the amount set by statute, or

   2) the obligor fails to provide health care coverage for the child as ordered by the court. The driver's license held or applied for by the obligor shall be denied, suspended, or revoked if the court issues a warrant for the obligor's arrest for failure to pay child support as ordered, or for failure to appear at a hearing to establish paternity or child support, or for failure to appear at a child support hearing to enforce a child support order and said warrant remains outstanding. (*R.* 5:7-5).

15. The name of any delinquent obligor and the amount of overdue child support owed will be reported to consumer credit reporting agencies as a debt owed by the obligor, subject to all procedural due process required under State law. (*N.J.S.A.* 2A: 17-56.21).

16. Child support arrears may be reported to the Internal Revenue Service and the State Division of Taxation. Tax refunds and homestead rebates due the obligor may be taken to pay arrears (*N.J.S.A.* 2A:17-56.16).

17. Child support arrears shall be paid from the net proceeds of any lawsuit, settlement, civil judgment, civil arbitration award, inheritance or workers' compensation award to a prevailing party or beneficiary before any monies are disbursed. (*N.J.S.A.* 2A:17-56.23b).

18. Periodic or lump sum payments from State or local agencies, including lotteries, unemployment compensation, workers' compensation or other benefits, may be seized or intercepted to satisfy child support arrearages. (*N.J.S.A.* 2A:17-56.53).

19. If you owe past due child support, your public or private retirement benefits, and assets held in financial institutions may be attached to satisfy child support arrearages. (*N.J.S.A.* 2A:17-56.53).

20. A person under a child support obligation, who willfully fails to provide support, may be subject to criminal penalties under State and Federal law. Such criminal penalties may include imprisonment and/or fines. (*N.J.S.A.* 2C:24-5; *N.J.S.A.* 2C:62-1; 18 *U.S.C.A.* 22).

21. If this order contains any provision concerning custody and/or parenting time, both parties are advised: Failure to comply with the custody provisions of this court order may subject you to criminal penalties under *N.J.S.A.* 2C:13-4, **Interference with Custody.** Such criminal penalties include, but are not limited to, imprisonment, probation, and/or fines.
   Si usted deja de cumplir con las clausulas de custodia de esta orden del tribunal, puede estar sujeto (sujeta) a castigos criminales conforme a *N.J.S.A.* 2C:13-4, **Interference with Custody,** (Obstruccion de la Custodia). Dichos castigos criminales incluyen pero no se limitan a encarcelamiento, libertad, multas o una combinacion de los tres.

# C





F I L E D

JUL 2 5 2017

HANY A. MAWLA
JUDGES CHAMBERS
SOMERSET COUNTY COURT HOUSE

<u>PREPARED BY THE COURT</u>

|  |  |  |
|---|---|---|
| STEPHANIE MESSNER, | : | SUPERIOR COURT OF NEW JERSEY |
| | : | CHANCERY DIVISION-FAMILY PART |
| Plaintiff, | : | SOMERSET COUNTY |
| | : | |
| v. | : | Docket No: FD-18-340-01 |
| | : | |
| MIKLOS HADJU-NEMETH, | : | Civil Action |
| | : | **JUDGMENT** |
| Defendant. | : | |

     **THIS MATTER** having been opened to the Court by Lyons & Associates, attorneys for plaintiff, Stephanie Messner, (William P. Lemega, Esq. appearing); and by George G. Gussis, P.A., attorneys for the defendant, Miklos Hadju-Nemeth, (George G. Gussis, Esq. appearing); and the Court having tried the matter on August 17, September 27, November 1, 2016 and March 28, March 29, April 5, June 20 and June 21, 2017; and having considered the testimony, evidence and pleadings; and for good cause shown;

     **IT IS HEREBY ORDERED AND ADJUDGED** on this _25th_ day of July, 2017, as follows:

     1. Defendant is designated parent of primary residence of Olivia R. Hadju-Nemeth and Alexandra Hadju-Nemeth. Plaintiff is designated parent of alternate residence.

     2. Commencing July 31, 2017, plaintiff's parenting time shall be as follows: every Tuesday and Thursday commencing after school until 8:30 p.m. and every other weekend from Friday after school until Monday drop off at school. Plaintiff's weekend parenting time shall commence August



4, 2017. Plaintiff shall do all of the transportation for the children except when there is no school, in which case the parties shall share in the transportation with defendant taking the children to plaintiff's home at the start of her parenting time and plaintiff dropping them off at defendant's home at the conclusion of parenting time. When there is no school, parenting time shall begin at the same time as school ends and drop off on Mondays shall be at the same time as the school day begins. Plaintiff shall assure the children attend their regularly scheduled activities during her parenting time. If the children fail to attend parenting time or defendant withholds them, defendant shall lose one day of parenting time for each day of parenting time denied to plaintiff.

3. Amy Shimalla, Esq. of Shimalla, Wechsler, Lepp, & D'Onofrio, L.L.P. ((908) 753-3833) is hereby appointed as parenting time coordinator. The parties shall share in the cost of the parenting coordinator equally. The parenting coordinator's primary task shall be to assure plaintiff's parenting time as well as any other issue the parties wish the parenting coordinator to address.

4. The right of first refusal set forth in paragraph 6 of the parties' October 20, 2008 consent order is hereby clarified to mean that it shall be exercised unless a step-parent, defined as defendant's wife and plaintiff's fiancé, is available to watch the children.

5. All other aspects of the parties' October 20, 2008 consent order unaltered by this judgment shall remain in full force and effect.

6. Neither party shall discuss this litigation with or disparage the other party to the children.

7. If Olivia and Alexandra remain in parochial school, the parties shall bear the cost of the tuition and all expenses agreed upon for the children that fall outside of Note 8 of Appendix IX-A of the Child Support Guidelines as well as unreimbursed medical expenses in excess of $250.00 per year per child as follows: 25% plaintiff/75% defendant.

8. Effective August 17, 2016, defendant's child support obligation is terminated.

9.   Effective August 17, 2016, plaintiff shall pay to defendant $79.00 per week in child support pursuant to the attached Child Support Guidelines, Exhibit A.  Child support shall be payable through Probation.  Any child support arrears on account with Probation before August 17, 2016 shall remain payable to plaintiff.

10.   Each party shall maintain $100,000 in life insurance naming the children as equal beneficiaries and the other party as trustee.  The parties shall exchange proof of procurement of the life insurance policy, death benefit amount, and beneficiary/trustee information within 30 days hereof.

11.   Plaintiff shall claim Alexandra as a dependent deduction on her tax returns and defendant Olivia.  When a child emancipates, the parties shall alternate the dependent deduction with defendant claiming the remaining child in the first year after the emancipation occurs.

12.   Within 15 days hereof, the parties shall complete and file the children's passport renewal applications.

13.   Plaintiff's request for college contribution is denied without prejudice.

14.   Plaintiff's request for reimbursement for automobile related expenses between 2010 and 2016 and all such expenses in paragraph 8 of the parties' September 17, 2007 order going forward is denied.

15.   Plaintiff's request for counsel fees is denied.

16.   Defendant's request for counsel fees is denied.

17.   The findings of fact and conclusions of law were set forth on the record on this date.

18.   The parties shall make arrangements with the Family Division to retrieve their respective documents which were marked into evidence within 45 days hereof or the evidence will be destroyed.

24

19.  Any and all issues not addressed herein are dismissed with prejudice.

_____
HANY A. MAWLA, J.S.C.

I hereby certify this to be
A true and correct copy.

Acting Deputy Clerk, Superior Court

4

25

## CHILD SUPPORT GUIDELINES – SOLE PARENTING WORKSHEET

| Case Name: | | County : SOMERSET |
|---|---|---|
| **Stephanie Messner**      VS.      **Miklos J. Hadju-Nemeth** | | Case ID : |
| Plaintiff      Defendant | | Docket #: FD-18-340-01 |
| Custodial Parent is the : Plaintiff X Defendant | | Number of Children:(Listed) 2 |

| *All amounts must be weekly* | CUSTODIAL | NON-CUSTODIAL | COMBINED |
|---|---|---|---|
| 1 Gross Taxable Income | $ 2275 | $ 702 | |
| 1a. Mandatory Retirement Contributions *(non-taxable)* | -$ 0 | -$ 0 | |
| 1b Alimony Paid *(Current and/or Past Relationships)* | -$ 0 | -$ 0 | |
| 1c. Alimony Received *(Current and/or Past Relationships)* | +$ 0 | +$ 0 | |
| 2. Adjusted Gross Taxable Income ((L1-L1a-L1b)+L1c) | $ 2275 | $ 702 | |
| 2a. Federal, State and Local Income Tax Withholding | $ 535 | $ 108 | |
| 2b. Mandatory Union Dues | -$ 0 | -$ 0 | |
| 2c. Child Support Orders for Other Dependents | -$ 0 | -$ 0 | |
| 2d. Other Dependent Deduction (from a seperate worksheet) | -$ 0 | -$ 0 | |
| 3. Net Taxable Income (L2-L2a-L2b-L2c-L2d) | $ 1740 | $ 594 | |
| 4. Non - Taxable Income *(source )* | +$ 0 | +$ 0 | |
| 5. Government (Non-Means Tested) Benefits for the Child | +$ 0 | +$ 0 | |
| 6. Net Income (L3+L4+L5) | $ 1740 | $ 594 | $ 2334 |
| 7. Each Parent's Share of Income (L6 Each Parent/L6 Combined) | 0.75 | 0.25 | 1 |
| 8. Basic Child Support Amount (From Appendix IX-F Schedules) | | | $ 462 (12 yo adj : 14.60 %) |
| 9. Net Work-Related Child Care (From Appendix IX-E Worksheet) | | | +$ 0 |
| 10. Child's Share of Health Insurance Premium | | | +$ 0 |
| 11. Unreimbursed Health Care Expenses over $250/child/year | | | +$ 0 |
| 12. Court-Approved Extraordinary Expenses | | | +$ 0 |
| 13. Total Child Support Amount (L8+L9+L10+L11+L12) | | | $ 462 |
| 14. Each Parent's Share of the Support Obligation (L7 x L13) | $ 346 | $ 115 | |
| 15. Government Benefits for the Child Based on Contribution of NCP | | -$ 0 | |
| 16. Net Work-Related Child Care Paid | | -$ 0 | |
| 17. Health Insurance Premium for the Child Paid | | -$ 0 | |
| 18. Unreimbursed Health Care Expenses Paid (>$250/child/year) | | -$ 0 | |
| 19. Court-Approved Extraordinary Expenses Paid | | -$ 0 | |
| 20. Adjustment for Parenting Time Expenses (L8 x L20b for Non-Custodial Parent x 0.37). *Note: Not presumptive in some low income situations (see App.IX-A., 13).* | | ⊙ -$ 36 calculated (L7*%time*0.37) or ○ -$ 0 Court over-ride | |
| 20a. Number of Overnights with Each parent | 287 | 78 | 365 |
| 20b. Each Parent's Share of Overnights with the Child (L20a for Parent / L20a Combined) | 0.79 | 0.21 | 1 |
| 21. Net Child Support Obligation (L14-L15-L16-L17-L18-L19-L20) | | $ 79 | |

EXHIBIT A

| | | CUSTODIAL | NON-CUSTODIAL | COMBINED |
|---|---|---|---|---|
| *All amounts must be weekly* | | | | |
| *If there is no adjustment for other dependents, go to line 25.* | | | | |
| 22. Child Support Order WITH Other Dependent Deduction (L24) and Child Support Orders for Other Dependents (L2c) | | | $ 0 | |
| 23. Child Support Order WITHOUT Other-Dependent Deduction | | | $ 0 | |
| 24. Adjusted Child Support Order ((L22 + L23) / 2) | | | $ 0 | |
| 25. Self-Support Reserve Test (L6 - L21 or L24 for NCP; L6 - L14 for CP). If L25 for NCP is greater than 105% of the federal poverty guideline for one person (pg) or L25 for CP is less than pg, enter L21 or L24 amount on L27.If L25 for NCP is less than the pg and L25 for CP income is greater than the *pg*, go to L26. (The *pg* for Tax Year 2017 is 244) | | $ 1394 | $ 515 | |
| 26. Obligor Parent's Maximum Child Support Obligation (L6 NCP income - 105% of federal poverty guideline for one person). Enter result here and on Line 27. | | | | |
| 27. Child Support Order | | | $ 79 | |

### COMMENTS, REBUTTALS, AND JUSTIFICATION FOR DEVIATIONS

1. The child support order for this case ⊙ was ○ was not based on the child support guidelines award.

2. If different from the child support guidelines award (line 27), enter amount ordered: $ 0

3. The child support guidelines were not used or the guidelines award was adjusted because:

2 child(ren) in this case are age twelve or older and the basic child support amount is adjusted by 14.6%

4. The following court approved extraordinary expenses were added to the basic support obligation on Line 19:

| 5. Taxes | IX-H | CircE | Other | | Allow's | | Marital Status | |
|---|---|---|---|---|---|---|---|---|
| CP: | | X | Other | | 4 | | Single<br>X Married<br>HoH | |
| NCP: | X | | Other | | 4 | | X Single<br>Married<br>HoH | |

| Prepared By: JHD | Title: | Date:<br>2017-07-24 |
|---|---|---|

27

| *PLAINTIFF* | VS | *DEFENDANT* | SUPERIOR COURT OF NEW JERSEY |
|---|---|---|---|

Stephanie Messner

Miklos Hadju-Nemeth

*Chancery Division-Family Part*

# Uniform Summary Support Order

☑ *Obligor*  ☐ *Obligee*     ☐ *Obligor*  ☑ *Obligee*

COUNTY: Somerset

| HEARING DATE | WELFARE / U.I.F.S.A. # |
|---|---|
| 07  / 25  / 2017 | |

DOCKET # FD-18-340-01

CS#

FILED  JUL 2 5 2017

With appearance by: ☐ PL  ☑ Atty for PL William P. Lemega, Esq.   ☐ DEF  ☑ Atty for DEF George G. Gussis, Esq.

JANY A. MAWLA  JUDGE'S CHAMBERS  SOMERSET COUNTY COURT HOUSE

☐ IV-D Atty _____   ☐ County Probation Division

This matter having been opened to the court by: ☑ Plaintiff ☑ Defendant ☐ County Welfare Agency ☐ Probation Division ☐ Family Division

for an ORDER for: ☐ Paternity ☐ Support ☐ Visitation ☐ Custody ☐ Enforcement ☐ Modification / Increase / Decrease

1.  State with Continuing Exclusive Jurisdiction:

| CHILD'S NAME | BIRTH DATE | CHILD'S NAME | BIRTH DATE |
|---|---|---|---|
| 2A. Olivia R. Hadju-Nemeth | 09/13/2000 | 2D. | |
| 2B. Alexandra Hadju-Nemeth | 11/02/2004 | 2E. | |
| 2C. | | 2F. | |

3.  ☐  PATERNITY of child(ren) (# above) _____ is hereby established and an ORDER of paternity is hereby entered.

4.  ☐  A Certificate of Parentage has been filed for child(ren) # _____ above.

5.  ☐  IT IS HEREBY ORDERED THAT: The obligor shall pay support to the New Jersey Family Support Payment Center in the amount of:

| $79.00 | + | $0.00 | + | | = | $79.00 | payable | weekly | effective | 08/17/2016 |
|---|---|---|---|---|---|---|---|---|---|---|
| Child Support | | Spousal Support | | Arrears Payment | | Total | | Frequency | | Date |

**NOTE: Child support is subject to a biennial cost-of-living adjustment in accordance with R. 5:6B**

6.  ☑  Child Support Guidelines Order  ☐ Deviation reason: _____

6A. ☑  Worksheet attached.

7.  ☑  Support order shall be administered and enforced by the Probation Division in the county of Venue, _____ County.

8.  ☐  ARREARS calculated at establishment hearing are based upon amounts and effective date noted above and total $ _____.

9.  ☐  ARREARS indicated in the records of the Probation Division, are $ _____ as of ___ / ___ / ___.

10. ☐  GROSS WEEKLY INCOMES of the parties, as defined by the Child Support Guidelines, upon which this ORDER is based:
    OBLIGEE $ _____     OBLIGOR $ _____

11. ☐  INCOME WITHHOLDING is hereby ORDERED on current and future income sources, including:
    Name of income source: _____     Address of income source: _____

    OBLIGOR SHALL, however, make payments AT ANY TIME that the full amount of support and arrears is not withheld.

12. ☐  Medical Support coverage as available at reasonable cost shall be provided for the ☐ child(ren)  ☐ spouse,
    by  Obligor ☐   Obligee ☐   Both ☐
    The parties shall pay unreimbursable health care expenses of the child(ren) which exceed $250.00 per child per year as follows:
    _____ % Obligor   _____ % Obligee
    *Pursuant to R 5:6A the obligee shall be responsible for the first $250.00 per child per year.*
    If coverage is available, Medical Insurance I.D. card(s) as proof of coverage for the child(ren)/spouse shall be provided immediately upon availability to the Probation Division by the:
    ☐ Obligee   ☐ Obligor

12A. ☐  Insurance currently provided by a non-party: _____

12B. ☐  Health insurance benefits are to be paid directly to the health care provider by the insurer.

| DOCKET# FD-18-340-01 | CS# _____ | HEARING DATE 07 / 25 / 2017 | PAGE 2 OF 2 |

| 13. ☐ | GENETIC TESTING to assist the court in determining paternity of the child(ren) (#_____) is hereby ORDERED. The county welfare agency or the foreign jurisdiction in the county of residence of the child shall bear the cost of said testing, without prejudice to final allocation of said costs. If defendant is later adjudicated the father of said child(ren), defendant shall reimburse the welfare agency for the costs of said tests, and pay child support retroactive to ___/___/___. |
|---|---|
| 13A. ☐ | Issues of reimbursement reserved.      13B. ☐ Issue of retroactive order reserved. |
| 14. ☐ | This matter is hereby RELISTED for a hearing on ___/___/___ before _____. A copy of this ORDER shall serve as the summons for the hearings. No further notice for appearance shall be given. Failure to appear may result in a default order, bench warrant, or dismissal. Reason for relist: |
| 15. ☐ | AN EMPLOYMENT SEARCH MUST BE CONDUCTED BY THE OBLIGOR. Written records of at least #_____ employment contacts per week must be presented to the Probation Division. If employed, proof of income and the full name and address of employer must be provided immediately to the Probation Division. |
| 16. ☐ | SERVICE upon which this order is based: |

16.
Personal Service    ☐Certified Mail:      ☐Refused      ☐Regular Mail (not returned)
Date: ___/___/___    ☐Signed by: _____    ☐Returned Unclaimed    ☐Other:

| 17. ☐ | A BENCH WARRANT for the arrest of the obligor is hereby ORDERED. The obligor was properly served with notice for court appearance on ___/___/___, and failed to appear. (Service noted above). An amount of $ _____ shall be required for release. |
|---|---|
| 18. ☐ | EFFECTIVE ___/___/___ FUTURE MISSED PAYMENT(S) numbering _____ or more may result in the issuance of a warrant, without further notice. |
| 19. ☐ | A LUMP SUM PAYMENT OF $_____ must be made by the obligor by ___/___/___, or a bench warrant may be issued without further notice. |
| 20. ☐ | This complaint / motion is hereby DISMISSED: (reason) _____ |
| 21. ☐ | Order of Support is hereby TERMINATED effective ___/___/___, as _____. Arrears accrued prior to effective date, if any, shall be paid at the rate and frequency noted on page number one of this ORDER. |
| 22. ☐ | THIS ORDER IS ENTERED BY DEFAULT. The ☐obligor ☐obligee was properly served to appear for a hearing on ___/___/___ and failed to appear.    22A. ☐ Affidavit of Non-Military Service is filed. |
| 23. ☐ | It is further ORDERED: _____<br>Child support shall be paid pursuant to the terms of the Judgment entered on July 25, 2017 _____<br>_____<br>_____<br>_____<br>_____ |

**EXCEPT AS PROVIDED HEREIN, ALL PRIOR ORDERS OF THE COURT REMAIN IN FULL FORCE AND EFFECT.**

I hereby declare that I understand all provisions of this ORDER recommended by a Hearing Officer and I waive my right to an immediate appeal to a Superior Court Judge:

PLAINTIFF Stephanie Messner      DEFENDANT Miklos Hadju-Nemeth

ATTORNEY FOR PLAINTIFF William P. Lemega, Esq.      ATTORNEY FOR DEFENDANT George G. Gussis, Esq.

| 24. ☐ | INTAKE CONFERENCE BY AUTHORIZED COURT STAFF: |
|---|---|
| 25. ☐ | The parties request the termination of all Title IV-D services and consent to direct payment of support. They are advised that all monitoring, collection, enforcement and location services available under Title IV-D of the Social Security Act are no longer in effect. I understand I may reapply for Title IV-D services. |

_____ obligee                _____ obligor

| 26. ☐ | Copies provided at hearing to ☐obligee ☐obligor    26A. ☑Copies to be mailed to ☑obligee ☑obligor |

TAKE NOTICE THAT THE NEW JERSEY UNIFORM SUPPORT NOTICES WHICH ARE PROVIDED IN APPENDIX XVII OF THE RULES OF COURT, AND WHICH FOLLOW, ARE INCORPORATED INTO THIS ORDER BY REFERENCE AND ARE BINDING ON ALL PARTIES.

So Recommended to the Court by the Hearing Officer:

Date   /   /    H.O.        Signature

So Ordered by the Court:

Date 07 / 25 / 2017    Judge Honorable Hany A. Mawla, J.S.C.    Signature        J.S.C.

UNIFORM SUMMARY SUPPORT ORDER (*R*. 5:7-4)

### NEW JERSEY UNIFORM SUPPORT NOTICES

**PURSUANT TO R. 5:7-4(f), TAKE NOTICE THAT THE FOLLOWING PROVISIONS ARE TO BE CONSIDERED PART OF THIS ORDER AND ARE BINDING ON ALL PARTIES:**

1. You must continue to make all payments until the court order is changed by another court order.

2. You must file a **WRITTEN** request to the Family Division in the county in which the order was entered in order for the court to consider a change in the support order. Contact the Family or Probation Division to find out how to do this. It is important that you request a change as soon as possible after your income or the child(ren)'s status changes.  In most cases, if you delay making your request, and you are the obligor, you will have to pay the original amount of support until the date of your written request.

3. Payments must be made directly to the New Jersey Family Support Payment Center, P.O. Box 4880, Trenton, NJ 08650, unless the court directs otherwise. Payments may be made by money order, check, direct debit from your checking account, or credit card. Gifts, other purchases, or in-kind payments made directly to the obligee or child(ren) will not fulfill the support obligation. Credit for payments made directly to the obligee or child(ren) may not be given without a court order.

4. No payment or installment of an order for child support, or those portions of an order that are allocated for child support, shall be retroactively modified by the court except for the period during which the party seeking relief has pending an application for modification as provided in *N.J.S.A.* 2A:17-56.23a. (*R*. 5:7-4(e)).

5. The amount of child support and/or the addition of a health care coverage provision in Title IV-D cases shall be subject to review at least once every three years, on written request by either party to the Division of Family Development, P.O. Box 716, Trenton, NJ 08625-0716, as appropriate, or upon application to the court. (*N.J.S.A.* 2A: 17-56.9a; *R*. 5:7-4(e)).

6. In accordance with *N.J.S.A.* 2A:34-23b, the custodial parent may require the non-custodial parent's health care coverage provider to make payments directly to the health care provider by submitting a copy of the relevant sections of the order to the insurer. (*R*. 5:7-4(e)).

7. Social Security numbers are collected and used in accordance with section 205 of the Social Security Act (42 *U.S.C.* 405). Disclosure of an individual's Social Security number for Title IV-D purposes is mandatory. Social Security numbers are used to obtain income, employment, and benefit information on individuals through computer matching programs with federal and state agencies, and such information is used to establish and enforce child support under Title IV-D of the Social Security Act (42 *U.S.C.* 651 et seq.). Any person who willfully and with the intent to deceive, uses a Social Security number obtained on the basis of false information provided to Social Security Administration or provides a false or inaccurate Social Security number is subject to a fine or imprisonment. (42 *U.S.C.* 408(7); *R*. 5:7-4(e)).



8. The United States Secretary of State is required to refuse to issue or renew a passport to any person certified as owing a child support arrearage exceeding the statutory amount. In addition, the U.S. Secretary of State may take action to revoke, restrict or limit a passport previously issued to an individual owing such a child support arrearage. (42 *U.S.C.* 652(k)).

9. Failure to appear for a hearing to establish or to enforce an order, or failure to comply with the support provisions of this order may result in incarceration. The obligee and obligor shall notify the appropriate Probation Division of any changes in address, employment status, health care coverage, or a change in the address or status of the child(ren). Changes must be reported in writing to the Probation Division within 10 days of the change. Not providing this information is a violation of this Order. The last address you give to Probation will be used to send you notices. If you fail to appear, a default order may be entered against you or a warrant may be issued for your arrest (*R.* 5:7-4(e)).

10. Any payment or installment for child support shall be fully enforceable and entitled to full faith and credit and shall be a judgment by operation of law on or after the date it is due (*N.J.S.A.* 2A:17-56.23a). Any non-payment of child support you owe has the effect of a lien against your property. This child support lien may affect your ability to obtain credit or to sell your property. Failure to remit timely payment automatically results in the entry of a judgment against the obligor and post-judgment interest may be charged. Judgments [also] accrue interest at the rate prescribed by Rule 4:42- 11(a). (*R.* 5:7-4(e), 5:7-5(g)). Before the satisfaction of the child support judgment, any party to whom the child support is owed has the right to request assessment of post-judgment interest on child support judgments.

11. All child support obligations are payable by income withholding unless otherwise ordered. If immediate income withholding is not required when an order is entered or modified, the child support provisions of the order may be subject to income withholding when the amount due becomes equal to, or in excess of the amount of support due for 14 days. The withholding is effective against the obligor's current and future income from all sources authorized by law. (*R.* 5:7-4(e), *R.* 5:7-5).

12. The occupational, recreational, and professional licenses, including a license to practice law, held or applied for by the obligor may be denied, suspended or revoked if: 1) a child support arrearage accumulates that is equal to or exceeds the amount set by statute, or 2) the obligor fails to provide health care coverage for the child as ordered by the court, or 3) a warrant for the obligor's arrest has been issued by the court for obligor's failure to pay child support as ordered, or for obligor's failure to appear at a hearing to establish paternity or child support, or for obligor's failure to appear at a child support hearing to enforce a child support order and said warrant remains outstanding. (*R.* 5:7-4(e)).

13. The driver's license held or applied for by the obligor may be denied, suspended, or revoked if 1) a child support arrearage accumulates that is equal to or exceeds the amount set by statute, or 2) the obligor fails to provide health care coverage for the child as ordered by the court. The driver's license held or applied for by the obligor shall be denied, suspended, or revoked if the court issues a warrant for the obligor's arrest for failure to pay child support as ordered, or for failure to appear at a hearing to establish paternity or child support, or for failure to appear at a child support hearing to enforce a child support order and said warrant remains outstanding. (*R.* 5:7-4(e)).

14. The name of any delinquent obligor and the amount of overdue child support owed will be reported to consumer credit reporting agencies as a debt owed by the obligor, subject to all procedural due process required under State law. (*N.J.S.A.* 2A: 17-56.21).

15. Child support arrears may be reported to the Internal Revenue Service and the State Division of Taxation. Tax refunds/homestead rebates due the obligor may be taken to pay arrears (*N.J.S.A.* 2A:17-56.16).

16. Child support arrears shall be paid from the net proceeds of any lawsuit, settlement, civil judgment, civil arbitration award, inheritance or workers' compensation award to a prevailing party or beneficiary before any monies are disbursed. (*N.J.S.A.* 2A:17-56.23b).

17. Periodic or lump sum payments from State or local agencies, including lotteries, unemployment compensation, workers' compensation or other benefits, may be seized or intercepted to satisfy child support arrearages. (*N.J.S.A.* 2A:17-56.53).

18. If you owe past due child support, your public or private retirement benefits, and assets held in financial institutions may be attached to satisfy child support arrearages. (*N.J.S.A.* 2A:17-56.53).

19. A person under a child support obligation, who willfully fails to provide support, may be subject to criminal penalties under State and Federal law. Such criminal penalties may include imprisonment and/or fines. (*N.J.S.A.* 2C:24-5; *N.J.S.A.* 2C:62-1; 18 *U.S.C.A.* 22).

20. If this order contains any provision concerning custody and/or parenting time, both parties are advised: Failure to comply with the custody provisions of this court order may subject you to criminal penalties under *N.J.S.A.* 2C:13-4, **Interference with Custody**. Such criminal penalties include, but are not limited to, imprisonment, probation, and/or fines.
Si esta orden contiene alguna disposición con respecto a la custodia o el horario de las visitas paternas o maternas, se informa a ambas partes que: De no cumplir con las disposiciones de esta orden judicial sobre la custodia, pueden estar sujetas a las penalidades establecidas para esa conducta penal en *N.J.S.A. 2C:13-4,* **Interferencia con la Custodia (Interference with Custody)**. Tales penalidades incluyen encarcelamiento, libertad a prueba y multas, pero no se limitan a las penas mencionadas.



# D



ORIGINAL

STEVEN R. LANE
A Professional Corporation
991 Route 22 West
P.O. Box 8539
Somerville, NJ 08876
(908) 253-9333
Attorney for Plaintiff

FILED

OCT 2 0 2008

JULIE M. MARINO
JUDGE'S CHAMBERS
SOMERSET COUNTY COURTHOUSE

| | |
|---|---|
| STEPHANIE MESSNER ,<br><br>Plaintiff,<br><br>v.<br><br>MIKLOS HAJDU-NEMETH,<br><br>Defendant. | : Superior Court of New Jersey<br>: Chancery Division - Family Part<br>: Somerset  County<br>:<br>: Docket: FD-18-340-01<br>:<br>:       Civil Action<br>:    CONSENT ORDER<br>: |

THIS MATTER having been opened to the Court upon the Complaint of the Plaintiff,

the Plaintiff now represented by Steven R. Lane, A Professional Corporation (Steven R. Lane,

Esq. and Daniel J. Lane, Esq. appearing) and upon the Answer and Counter-Claim of the

Defendant being represented by George G. Gussis, A Professional Corporation (George G.

Gussis appearing) and the parties having resolved the following issues by way of settlement, and

the settlement having been placed on the record, and the consent of the parties and their attorneys

being appended hereto, and good cause having been shown;

IT IS on this   20th   day of Oct. , 2008 ORDERED as follows:

1. The parties shall share joint legal custody of the minor children born of their

relationship, ~~Olivia Rosanna Hajdu-Nemeth~~ age 8 (Born September 13, 2000), and ~~A~~

~~Margaret Hajdu-Nemeth~~ age 3 (Born November 2, 2004).  The parties shall confer regarding all

major decisions concerning the children's health, education and welfare which decisions shall be

made jointly, except in the case of emergency, in which case the other party shall be notified as

soon as possible by the party who is entrusted with the care of the children at that time.  The day-

34

to-day, ordinary, routine decisions shall be made by the parent in whose care the children are in at that time.

2.  Both parties shall have unlimited access to any and all records and information pertaining to the two (2) children born of the relationship, including but not limited to educational records and personnel, medical, dental, mental health records and providers, as well as notification of all treatment, etc.

3.  The Plaintiff shall have residential/physical custody of the parties' children and shall be designated the Parent of Primary Residence (PPR).  The Defendant shall be designated the Parent of Alternate Residence (PAR).

4.  The parties have agreed to the following Parenting Time schedule for the Defendant:

a) **Thursdays**: After School until 7:30 p.m.

b) **Alternating Weekends**: The parties disagree as to whether Defendant's parenting time shall extend  through Monday morning.  The parties agree that each party shall have the right to submit a Certification on this issue by October 6, 2008 and that the Court shall rule on said issue thereafter.

c) In the event that Olivia and/or Alexandra are sick prior to Defendant exercising his scheduled parenting time, Plaintiff reserves the right to keep the sick/ill child(ren) home with her.

5.  The parties shall share holidays/school recesses with the children born of their relationship as follows:

a) **Summer**: The Parties shall each have two weeks of uninterrupted parenting time with the children during the summer.  The Parties agree that these two weeks may be taken consecutively or separately.  The parties shall inform each other of

35

their respective two week Summer parenting time periods by the first of May each and every year. If either party plans on taking the children on a vacation during their Summer parenting time, then that party shall provide the other party in writing with the vacation itinerary, airline, flight schedules, flight numbers and emergency contact information as well as the address and phone number where the children will be staying. Defendant wishes to extend his summer parenting time schedule in the summer so that his Thursday week night parenting time extends through Friday morning. Plaintiff wishes to keep the summer parenting time the same as the rest of the year except for the agreed upon uninterrupted two weeks of summer parenting time referenced above. The parties agree that each party has a right to submit a Certification on this issue by October 6, 2008 and that the Court shall rule on said issue thereafter.

b) **Winter and Spring Recess**: The parties agree to divide the children's Winter and Spring Recess from School on a 50/50 basis. The Plaintiff and Defendant are unable to agree upon a Winter and Spring Break parenting time schedule. The Plaintiff wishes to share each break each year on a 50/50 basis. The Defendant wishes for the parties to alternate Winter and Spring Break each year. The parties agree that each party shall have the right to submit a Certification regarding this issue by October 6, 2008 and that the Court shall rule on said issue thereafter.

c) **The Children's Birthdays**: The children shall spend their birthdays with the parent with whom they normally would be having parenting time

d) **Mothers Day and Fathers Day**: The children shall spend Mothers Day with the Plaintiff and Fathers Day with the Defendant.

3

e) **Memorial Day:** The children shall spend Memorial Day with Plaintiff in even numbered years and with the Defendant in odd numbered years unless otherwise agreed upon by the parties.

f) **Fourth of July** The children shall spend the Fourth of July with the Defendant each and every year unless otherwise agreed upon by the parties.

g) **Labor Day:** The children shall spend Labor Day each and every year with the Plaintiff unless otherwise agreed upon by the parties.

h) **Columbus Day:** The children shall spend Columbus Day with the Plaintiff in odd numbered years and with the Defendant in even numbered years unless otherwise agreed upon by the parties.

i) **Thanksgiving:** The children shall spend Thanksgiving Day (Thursday) with the Plaintiff in odd numbered years and with the Defendant in even numbered years unless otherwise agreed upon by the parties.

j) **New Years Eve/Day:** The children shall spend New Years Eve with the Defendant and New Years Day with the Plaintiff in even numbered years. The New Years Eve and New Years Day parenting time schedule shall be reversed in odd numbered years. The parties agree that the New Years Day parenting time shall begin at 9:00 a.m. and end at 6:00 p.m.

k) **Easter:** The children shall spend Easter with the Plaintiff in even numbered years and with the Defendant in odd numbered years unless otherwise agreed upon by the parties.

l) **Christmas:** Unless otherwise agreed upon by the parties, in even numbered years the children shall spend Christmas eve and Christmas morning until 9:00

27

a.m. with the Plaintiff and Christmas day until 7:30 p.m. with the Defendant. The Christmas parenting time schedule shall be reversed in odd numbered years.

6. If either party is unavailable to exercise his/her parenting time with the Children, the other party has the right of first refusal for child care.

7. In the event that a babysitter is necessary to care for the children, neither party shall hire a male babysitter.

8. The parties shall take all necessary and appropriate steps to ensure the safety of the children including but not limited to appropriate safety gear for swimming (e.g. "Swimmies"), and bike riding (e.g. bicycle helmet).

9. The parties shall insure that the children are always wearing seatbelts while traveling in an automobile.

10. The parties shall ensure that each child shall have their own bed at Plaintiff's residence and at Defendant's residence.

11. Each party shall have reasonable and liberal telephone access subject to bed time, homework, and other commitments/obligations.

12. The parties agree that all existing activities for the children are "agreed upon" activities. The parties further agree that neither party shall enroll the children in any new activities without the agreement of the other party which agreement shall not be unreasonably withheld. The Parties shall ensure and make arrangements so that the children attend/participate in all agreed upon activities the children are in his or her care.

13. Each party has the right to attend all agreed upon activities for the Children.

14. Each Party shall provide the other party with notification of all of the Children's activities.

38

15. While the parties reside within 15 miles of each other, the Defendant shall provide all parenting time transportation. If the parties reside more than 15 miles from each other, the parties shall share the parenting time transportation on a 50/50 basis, the specific terms of which to be arranged between the parties.

16. Each party shall have the right to obtain a Comparative Market Analysis or Valuation of the property located at 174 Jefferson Street, Somerset, New Jersey, prepared by a licensed Real Estate professional.

17. A Case Management Status Conference shall occur on October 20, 2008. The Plaintiff may appear by telephone in order to avoid missing work.

Julie M. Marino, A.J.S.C.

,J.S.C.

COPY SENT

6

39

We hereby consent to the form

and entry of the within order.


STEVEN R. LANE, P.C.



Steven R. Lane  Daniel J. Lane

Attorney for Plaintiff



Stephanie Messner

Plaintiff



GEORGE G. GUSSIS, P.C.



George G. Gussis

Attorney for Defendant



Mikos Hajdu-Nemeth

Defendant

7

40

# E





# GEIST LAW

Jared A. Geist, Esq. • 25 Main Street - Suite 203 • Hackensack, NJ 07601
Phone: 201.870.1488 • Fax: 201.812.9659 • email: jared@geistlegal.com

*Admitted in: New Jersey, Michigan United States Federal Court Districts of New Jersey and Michigan*
*United States Court of Appeals for the 3rd Circuit*

May 16, 2017

VIA FAX (908)-289-1267
AND REGULAR MAIL
Prosecutor Grace H. Park, Esq.
Union County Prosecutor's Office
32 Rahway Avenue, Elizabeth, NJ, 07202

RE: Stephanie Messner

Dear Prosecutor Park:

Please be advised that I represent Ms. Stephanie Messner in regard to civil litigation against the Archdiocese of Metuchen. Along with this, I have also assisted her in her efforts of attempting to file a civilian complaint under N.J.S.A. 2C:13-4, Interference with custody against the father of her children, Miklos Hadju-Nemeth. To be clear, this is not a typical "custody dispute" as the Garwood Police have often referred to the circumstance as. There is already a Court Order granting Ms. Messner custody and designating her as the Parent of Primary Residence. The family Court (Judge Mawla in Somerset County) has also specifically stated that the Order is to by complied with and followed and that Ms. Messner is to have her parenting time.

Unfortunately, the Order has not been complied with after a lengthy history in family Court and Ms. Messner has turned to the Garwood Police for enforcement. She has attempted to exercise her rights to file a civilian complaint under N.J.S.A. 2C:13-4, but because it is indictable, the Garwood Police say they cannot process a civilian complaint under this statute unless approved by the Union County Prosecutor's office. She has been denied access to filing and thus has not even been able to proceed to a Probable Cause Hearing before the Municipal Judge.

The purpose of this letter is to formally request the ability to file a civilian complaint. I would be happy to meet with a member of your office with Ms. Messner to discuss this and

42

present the proofs, which show clear interference with custody and obstruction/elimination of almost all of Ms. Messner's parenting time. We look forward to hearing from you.

Respectfully Submitted,

JARED A. GEIST, ESQ.

43

# F





# LYONS
## &ASSOCIATES, P.C.

**William P. Lemega**

Hamon Building
76 East Main Street, 2nd Floor
Somerville, New Jersey 08876
www.lyonspc.com

william.lemega@lyonspc.com
t.908.575.9777
f.908.575.7711

June 28, 2016

**<u>VIA FACSIMILE ONLY</u>**
George G. Gussis, Esq.
George G. Gussis, P.A.
83 Morris Street, P.O. Box 152
New Brunswick, New Jersey 08902

    **RE: MESSNER v. HAJDU-NEMETH**
       **DOCKET NO:  FD-18-340-01**

Dear Mr. Gussis:

  As you aware, this office represents the Plaintiff, Stephanie Messner, with respect to the above-referenced matter.  I am writing this letter with regard to recent alarming correspondence that was received by the parties' daughter Olivia from Bishop George Ahr High School in Edison, New Jersey informing her that she has been accepted as a transfer student to Bishop George Ahr High School starting this Fall.

  Paragraph 1 of the October 20, 2008 Court Order states that the parties shall share joint legal custody of the minor children and shall confer regarding all major decisions concerning the childrens' health, education and welfare which decisions shall be made jointly. Ms. Messner was not even aware that an application had been submitted on Olivia's behalf.

  Paragraph 3 of the October 20, 2008 Court Order states that Ms. Messner shall have residential/physical custody of the parties' children and shall be designated the Parent of Primary Residence (PPR). As such, the children are to attend school where the PPR resides. Bishop George Ahr High School is not that school.

  Your client filed an application with the Court to modify/change custody. That application has been set for a plenary hearing which has yet to be adjudicated. Until such time that said application has been adjudicated, all prior court orders remain in full force and effect. As such, your client's recent unilateral actions are a clear violation of prior court order.



Please instruct your client to cease all enrollment activities from hereon forward. If he fails to do so he will continue to be in further violation of Court Order and Ms. Messner will be entitled to additional remedies on violation of orders relating to parenting time as per <u>R.</u> 5:3-7(a).

In addition, with regard to your client's recent application to modify custody and parenting time, as per N.J.S.A. 9:2-4(c), the parents' ability to agree, communicate and cooperate in matters relating to the child will be taken into account. Your client's recent action is a clear illustration of his inability and refusal to do just that.

Thank you.

Very truly yours,
LYONS & ASSOCIATES, P.C.

William P. Lemega, Esq.

WPL/encl.
cc:     Stephanie Messner (via electronic mail)
        Dr. Franklin (via electronic mail)

46

# G

47







# Gmail

## CS22560884A RE: Unpostmarked civil action notice to apply payment on arrears of $45.00 per week

Stephanie Messner <smessner09@gmail.com>
To: Christine Reilly <Christine.Reilly@njcourts.gov>
Cc: Jared Geist <jaredgeist@gmail.com>, Jared Geist <Jared@geistlegal.com>, Erica.Carman@njcourts.gov,
"michael.bowden@njcourts.gov" <michael.bowden@njcourts.gov>, christian.chavez@njcourts.gov

Tue, Nov 24, 2020 at 2:51 PM

Dear Christine Reilly and Matthew Carbo,

I just received a letter with an unmarked envelope last Wednesday giving me notice that as of "the post mark on the notice" income withholding will take effect on my wages.  It states that that there are "child support arrears" which in actual is the court ordered payment requested by the defendant in parochial school fees that he falsely states I owe him and unjustly applied to my child support as child support arrears.

Had I had the opportunity to have a hearing on the matter and give testimony, I would have made it clear that in my care as the custodial parent of both children while they were residing together in our home, ⬛⬛⬛was doing well at a public school Arthur L. Johnson in Clark with a stellar IEP and honor roll student and Varsity Cheerleader and WAS NOT attending a private or parochial school as Judge Suh stated and based her decision on and Alexandra was a stellar student and a track star at her school at the time that the Defendant secretly enrolled them into alternate schools closer to his home on 5/21/16, three months before he kidnapped our children on 8/17/2016.  This action of the Defendant was in criminal violation of the N.J.S.A. 2C:13-4a Interference with custody statute with a consequence of jail time and fines AND of the 10/20/2008 Court Order by Judge Julie Marino and violates not only the custody and parenting time agreement but 1.) the clause in the first paragraph that all major decisions on education and healthcare should be made jointly.

The Defendant states on the transcript/record that he left me out of that decision making process and made this decision solely with his wife who helped him write the "unsigned letter" to transfer the children since he states he is completely illiterate and so she had to help him.  He states that I was left completely out of the process and had no idea of this unilateral transfer in violation of the court orders and criminal statute.

Judge Suh was made aware that I have not been employed, that I suffered a car accident on 6/25/2020 and have been injured and out of work, unable to work, stand, sit for very long and am suffering in pain.  This is a CHANGE IN CIRCUMSTANCE that altered the status quo of my ability to afford an increase in child support and yet there was no hearing to address that fact.  I have sustained injuries that are being treated by doctors, physiologists, chiropractors, pain management and possibly require neurosurgery.  This was not able to be addressed although everyone including Judge Suh was made aware and yet there was no hearing or consideration.

This ARREARS imputed to me occurred in a decision that Judge Suh made without so much as a hearing, without exchange of proofs, without receipts or any input from me and my child support obligation never was adjusted according to the court order by Kimarie Rahill for the time that our eldest daughter was deemed emancipated and with that, my obligation for her portion of child support was over as of 9/13/2019.  I paid in excess an additional year of child support for her that I did not owe.

I am writing to contest the increase in child support, the application of a COLA increase scheduled for April for 1.) My child support was just increased due to a recalculation and not subject for any other increase for 2 years according to the 5 b. COLA increase rule and 2.) I have had a decrease in income, a change in circumstance and am in the process of filing for disability.

I am contesting the addition of $45.00 per week that I owe for these arrears I was put in for schools that the Defendant used to transfer the children into, closer to his house three months before kidnapping the children.  Not only because this decision was not made jointly and subject to appeal of the entire order but because I can not afford both the increase in child support AND the addition of $45.00 per week on the arrears.  Judge Suh never addressed the payment on the arrears in her ORDER and there was no probation hearing also to address the arrears.

I have tried to call the probation department but have been unsuccessful on reaching a live human to talk to.  Please accept this email as the letter required to prompt a hearing or address this issue in a conference with my lawyer Jared A. Geist present to at least negotiate the payment until a STAY of the order is in place.  Thank you for your time and consideration.


Sincerely Yours,

Stephanie Messner
908-456-4417

---

**Stephanie Messner** <smessner09@gmail.com>
To: Stephanie Messner <Smessner09@gmail.com>                    Wed, Sep 1, 2021 at 12:02 PM

---

**Stephanie Messner** <smessner09@gmail.com>
To: Stephanie Messner <Smessner09@gmail.com>                    Thu, May 4, 2023 at 12:40 AM


---------- Forwarded message ----------
From: **Stephanie Messner** <smessner09@gmail.com>
Date: Tue, Nov 24, 2020 at 2:51 PM
Subject: CS22560884A RE: Unpostmarked civil action notice to apply payment on arrears of $45.00 per week
To: Christine Reilly <Christine.Reilly@njcourts.gov>
CC: Jared Geist <jaredgeist@gmail.com>, Jared Geist <Jared@geistlegal.com>, <Erica.Carman@njcourts.gov>, michael.bowden@njcourts.gov <michael.bowden@njcourts.gov>, <christian.chavez@njcourts.gov>

1

```
1                    SUPERIOR COURT OF NEW JERSEY
                     LAW DIVISION:   FAMILY
2                    SOMERSET COUNTY
                     DOCKET NO. FM-18-340-01
3

4     -----------------------------
      STEPHANIE J. MESSNER,
5
             Plaintiff,
6                                        TRANSCRIPT
        vs.
7                                            OF
      MIKLOS HAJDU-NEMETH,
8                                   MOTION AND CROSS MOTION
             Defendant.
9     -----------------------------

10
                        PLACE: Somerset County Courthouse
11                             20 North Bridge Street
                               Somerville, New Jersey
12                      DATE:  August 19, 2015

13    BEFORE:
          HONORABLE KEVIN SHANAHAN, J.S.C.
14

15    TRANSCRIPT ORDERED BY:
          STEPHANIE MESSNER
16
      APPEARANCES:
17
      STEPHANIE J. MESSNER
18    Plaintiff Pro Se

19    GEORGE G. GUSSIS, ESQ.
      Law Office of George G. Gussis
20    For Defendant

21
                        PATRICIA A. BRILL, C.S.R.
22                      9 ASPEN DRIVE
                        HILLSBOROUGH, NEW JERSEY 08844
23
                        Sound Recording Operator:
24                      Kevin Tang

25
```

2

1                        I N D E X

2

3    PROCEEDING                          PAGE

4

5    Motion Hearing                        3

6

7    Parties Sworn                         3

8

9    Motion for Change of Venue

10      By Ms. Messner                     4

11      By Mr. Gussis                      5

12      Judge's Decision                   5

13

14   Cross Motion for Residential Custody

15      By Mr. Gussis                     5/15

16      By Ms. Messner                     11

17      Judge's Decision                   17

18

19

20

21

22

23

24

25

Motions

3

1       THE COURT:  All right.  The first matter is
2   going to be number 10 on the list, Messner versus Hajdu
3   Nemeth.
4       Mr. Allen, are you in that case?
5       (The Court addresses a different matter.)
6       THE COURT:  That's FD-18-340-01.
7       Counsel, can I have your appearance,
8   please?
9       MR. GUSSIS:  Your Honor, George Gussis on
10  behalf of Miklos Hajdu-Nemeth.
11      THE COURT:  Ma'am, I thought -- are you
12  represented by counsel?
13      MS. MESSNER:  No, your Honor.
14      THE COURT:  All right.  This is a -- would
15  the parties stand, raise your right hand and face the
16  clerk?
17  S T E P H A N I E    M E S S N E R, sworn or affirmed.
18  M I K L O S    H A J D U-N E M E T H, sworn or affirmed.
19      THE COURT CLERK:  Starting with the
20  plaintiff, state your full name and spell your last
21  name.
22      MS. MESSNER:  My name is Stephanie Messner,
23  M-E-S-S-N-E-R.
24      THE COURT CLERK:  And defendant.
25      THE DEFENDANT:  My name is Miklos

Motions

4

1   Hajdu-Nemeth.
2       THE COURT CLERK:  And spell your last name.
3       THE DEFENDANT:  H-A-J-D-U hyphen Nemeth,
4   N-E-N-E-T-H.
5       THE COURT CLERK:  Thank you.  You may be
6   seated.
7       THE COURT:  All right.  Counsel, this is --
8       Ma'am, this is your application seeking a
9   change of venue to Union County.  Why is it that you
10  want that to happen, ma'am?
11      MS. MESSNER:  Okay.  I had moved to Union
12  County back in April, and I had the children enrolled
13  in schools in Union County.
14      Because of the nature of the discord that I
15  have in -- with the defendant as far as parenting time
16  and bringing the children home on time, I knew that
17  there could be a possibility that I would have to
18  change or modify the original custody order of 2008,
19  which extended Sunday nights into Monday.
20      That document is outdated and so I wanted
21  -- I knew I would have to get an attorney possibly in
22  Union County.  So I felt that if I applied -- if I
23  needed to do that, that I'd be able to do so with an
24  attorney in Union County from which I live.
25      THE COURT:  Ma'am, the problem is that --

Motions

5

1    Well, counsel, your client still lives in
2    Somerset?
3    MR. GUSSIS:  Judge, yes, he does, and he's
4    lived there all his life.
5    THE COURT:  The problem, ma'am, is that
6    under our rules, the Court can't do that.  The matter
7    was opened in Somerset County.  One of the parties
8    resides in Somerset County, and a change of venue can
9    only be effectuated by an order from the presiding
10   judge of Somerset County with the consent of any other
11   county's presiding judge.  And my presiding judge is
12   not going to do that.  I'm -- that's just -- that's not
13   how it works.
14   So I'm going to have to deny your
15   application for a change of venue.
16   There's a request by -- a cross-motion by
17   the defendant.  Counsel, what do you have to tell me
18   with regard to -- in support of that?
19   MR. GUSSIS:  Judge, with regard to the
20   cross motion, there are two daughters that they have.
21   The oldest, Oliva, is going to be 15 years old this
22   coming month.
23   She had, as we indicated in our
24   certification, she has problems with her schooling, and
25   she graduated from the eighth grade barely, and so

Motions

6

1    they're concerned that she remain here where her father
2    and his family and his present wife can be sure that
3    she gets the proper structure and instruction, because
4    they also had her tutoring -- tutored for which they
5    paid themselves without any contribution from Ms.
6    Messner.
7    The other is is that she took the daughter
8    out of parochial school.  The youngest one is 10 years
9    old.  She will be 11 this -- I believe it's November,
10   and she has not had the opportunity to complete
11   parochial school there.
12   So what we asked for was a change of the
13   custodial parent so that he becomes the parent of
14   primary residence and the children can continue in
15   school here.
16   Now, when she made her application for a
17   change of venue, she misstated her reason.  She said
18   that it was because her doctors are up there and she
19   was employed there.
20   But in the answer to the cross-motion, she
21   candidly admitted now she's moving in with the
22   boyfriend that she has presently.  We don't think
23   that's sufficient reason to take the girls out of this
24   county and that we do not know how long that
25   relationship is going to be because it has not been

7

1    more than maybe a year-and-a-half or two years.
2          So he's concerned because here, where they
3    have -- they're close to the girls physically, even
4    though she had moved to Bound Brook after she moved out
5    of the residence where he still lives, because it was
6    his premarital residence that they had moved into after
7    they had their second child.
8          So the criteria that he's asking the Court
9    to consider is what's in the best interest of the
10   girls, and there's really no basis for changing it.
11   Oliva now is going to be in a school with all strange
12   kids, and so he would like to keep them here in this
13   county.
14         Now, she said because of the discord she's
15   had -- I have to tell you frankly, I've been involved
16   in this matter from the beginning, and the discord she
17   created, she would make -- she is -- and she has a
18   certification where she's concerned that he's
19   alienating the children from her.  But, in fact, that
20   wasn't the case.  She has done everything to keep them
21   from him in terms of parenting.  We went through two DV
22   trials here in front of Judge Marino.
23         Besides that, there's a provision in the
24   consent order that they signed -- and I gave you the
25   transcript also of the hearing at that time, and in

8

1    that transcript, she had agreed that she would discuss
2    -- and they would work together on the major decisions.
3    She completely ignores them and she goes barreling on
4    her way.
5          So, presently, that's exactly what she's
6    done this time, and we just believe that it's not in
7    their daughter's best interest, and so we've asked for
8    that modification and other relief.
9          The other is the distance now in that
10   agreement was that if it was more than 15 miles apart
11   -- now, she wants to move 20 miles apart, but she
12   doesn't want to contribute to the transportation of the
13   girls at all.
14         She also denied him while they were here
15   his right of first refusal in the event that she was
16   working and she could not have parenting time with the
17   children.
18         So we believe that this is another attempt
19   by her to keep their daughters from him.  That's why we
20   don't want any change of where they reside.  She can
21   reside anywhere in Somerset County, but there's no
22   reason for her to take the girls out of the county.
23         THE COURT:  Mr. Gussis, I mean, that's just
24   -- I mean where legally -- I mean give me some basis
25   from which I could say that a move from Somerville --

Motions

9

1   Somerset County to Union County is in and of itself
2   against a child's best interest.
3                 MR. GUSSIS:  Judge, it's --
4                 THE COURT:  How could I possibly find that?
5                 MR. GUSSIS:  Judge, it's not a geographical
6   issue.  It's a scholastic issue that's in their best
7   interest.  She --
8                 THE COURT:  Well, all right.  If that's
9   your argument, what are the special needs that the
10  children have that are addressed -- being addressed in
11  Somerset County that are not available in Union?
12                MR. GUSSIS:  We don't know whether they
13  will be, but the continuity -- Oliva has an IEP here,
14  and the IEP should be something that should be followed
15  by the people who instituted it, and, presently, she
16  couldn't get into a parochial school there.  My client
17  --
18                THE COURT:  An IEP can't be followed in
19  Union County?
20                MR. GUSSIS:  I'm not -- I don't know
21  whether it can be.  But you now what -- you know how an
22  IEP comes about.  They have to have a child study team
23  and everything.
24                The child study team was here.  So they
25  have to go through a whole thing.  It may be another

Motions

10

1   year, and Oliva already had -- almost flunked.  She
2   came out with a 70 average in her class work.  She
3   would have flunked.
4                 We attached to these papers the letters
5   from the school indicating their concerns with Oliva
6   and that was while she was the parent of primary
7   custody, Judge.
8                 MS. MESSNER:  Your Honor, may I --
9                 THE COURT:  Ma'am, one rule.  One person
10  speaks at the time.
11                Go ahead, Mr. Gussis.
12                MR. GUSSIS:  So the other thing is that
13  there was no reason.  The continuity for Oliva -- or
14  Alexandra, she's the younger child, she should be able
15  to complete in parochial school.
16                I think the only reason that she moved
17  there is because of the distance to separate them from
18  her father.  She does not want -- for example, on the
19  right of first refusal, she doesn't want the father to
20  have the right of first refusal when she puts the
21  children with caregivers that are not her.
22                I mean, this isn't because of the fact that
23  she's moving in with her boyfriend.  It's because of
24  the fact that he -- that despite the order, until he
25  remarried in 2012, he always had more parenting time

Motions

11

1  than the consent order had because he was available to
2  have it. He's there. He works in the county, and he
3  lives in the county. She lived in the county, and then
4  she moved to a different community.
5        THE COURT: Well --
6        MR. GUSSIS: He even has made concessions.
7  He hasn't made it difficult for her.
8        For example, the transcript -- if you read
9  the transcript, Judge --
10       THE COURT: I did.
11       MR. GUSSIS: -- it says in it that she's
12 not to have the children with a male caregiver. She
13 does that because she had a male caregiver that's in
14 whose house she was, and she would leave the girls with
15 him.
16       Sometimes she would leave the girls
17 completely without any supervision. These girls now
18 are -- well, at least the oldest one is going to be 15.
19 That's a very tender age.
20       THE COURT: Now, ma'am. What do you have
21 to tell me?
22       MS. MESSNER: All right. The first thing I
23 would like to do is I did try to postpone this hearing
24 so that I could find attorney representation because I
25 felt by the nature of his cross-motion, he's seeking

Motions

12

1  custody of the children.
2        THE COURT: He certainly is.
3        MS. MESSNER: What I answer to him is that
4  I have documentation, I have evidence that I supplied
5  the Court as well as the defendant which shows that I
6  had gotten Oliva a neuro psycho evaluation back in
7  spring break. I also had her do a three-day EEG and I
8  also had an educational evaluation.
9        In the neuro psycho evaluation -- I have
10 exhibits, okay? -- that shows that the reason that
11 Oliva is having problems in school is due to the side
12 effect of a high dose of medication that she's on.
13 Okay?
14       So with that, Clark instituted an IP -- IEP
15 program. It's already in place for her, and I attached
16 it to one of the exhibits too. Okay?
17       So she has an IEP. I worked with the
18 school, that they have a study skills course fit into
19 her schedule. Oliva did graduate from St. Mathias
20 School, and she would have to go to a new school anyhow
21 where she would not know anybody. Okay?
22       As far as the school system, I also have
23 documentation in the exhibits that also show the
24 quality of the education and college-readiness on their
25 score. It's reported by the US News, and the report is

Motions

13

```
 1    higher in Clark than it is in Franklin Township, and
 2    based on the attention that she would be able to get in
 3    Clark, it's much better for her than it would be in
 4    Somerset County.
 5           I had moved to Union County.  The defendant
 6    was aware over a year-and-a-half ago.  I have evidence
 7    that supports that he knew.  I have text messages that
 8    show that he knew.
 9           He also had already been paying -- and I
10    have documentation of the checks.  I have text messages
11    that go back as far as last year.  Oliva went to a
12    freshman-for-a-day back in October.  I have that
13    evidence here for Union Catholic, because we did want
14    to have her continue with parochial school.
15           The thing is is that because Oliva has
16    special needs, the Union Catholic school was the only
17    parochial school that offered her a freshman
18    foundations program, but they put her on the waiting
19    list.  So I had to find alternative needs.
20           Now, my boyfriend, quote-unquote, is
21    somebody that I've known for 33 years.  Him and I are
22    getting engaged to be married, and I didn't move in
23    there.  He's been very supportive.  We live in an area
24    in Garwood.  It's right between -- three houses from
25    Westfield in one direction and across the street from
```

Motions

14

```
 1    Cranford.  It's a beautiful area.  It's the first time
 2    that the children would ever be in a neighborhood where
 3    they can ride their bikes safely.  They can go out to
 4    the stores and even work.
 5           My daughter Oliva was -- we just took a
 6    walk around the block to a bunch of stores that, you
 7    know, had for -- help-wanted signs, and she was excited
 8    about the possibility of being able to walk to work and
 9    back.
10           I am doing what's in the best interest of
11    the children.  But if this is going to get into where
12    they're going to try to take the custody from me, then
13    I would like to have legal representation.
14           MR. GUSSIS:  Judge --
15           MS. MESSNER:  Oh, and I just would further
16    add, as far as the first right refusal, this has been a
17    bone of contention.  I was the one that had it in the
18    document of October 20th, 2008, about the male
19    baby-sitters because at that time the defendant did not
20    have a girlfriend to leave his children with.  Okay?
21           So what he was doing was he was leaving
22    them with a guy Marty over in Upstate New York when he
23    was skiing, and he would leave them with different men
24    and people and girlfriends.  And so what I did is I had
25    that clause because the children were so young.
```

Motions

15

1   I also had it put in there the right of
2   first refusal because the defendant historically has
3   left my children with everybody else other than him.
4   And in one of his statements in his motion,
5   he wants the first right of refusal to be extended to
6   his wife, and in his documentation, all he keeps
7   talking about is his extended family and how that's
8   what's in the best interest of his children.
9   No where does he say what he has
10  contributed emotionally, you know, or with time with
11  the children.
12  THE COURT:  All right.
13  MR. GUSSIS:  Judge, may I address that last
14  --
15  THE COURT:  Sure.  Go ahead.
16  MR. GUSSIS:  First of all, Mr. Hajdu-Nemeth
17  lived for many years on Cedar Drove Lane, where his
18  mother is.  When he's not available as the caregiver at
19  that time that she's referring to, his mother cared for
20  those children, and she didn't have any problem with
21  that when she was living with him.
22  She has a problem now if the girls live
23  with him because he has remarried.  That's her problem,
24  and that should not have anything to do with the girls.
25  His present wife helps them with their homework.  He

Motions

16

1   helps them with their homework.
2   Oliva, in all the time that she's been the
3   custodial parent, has had academic problems because
4   when they went to school for a meeting -- and as is in
5   the certification -- they offered that Oliva should
6   come to their house every day after school and they
7   would help her with the homework and she refused.  She
8   said, "I'm the mother.  She's not going to be there."
9   That's what it is.  It's a tug of war.  And that
10  shouldn't be it.  That shouldn't be it at all.
11  If he had custodial -- custody of the
12  children, residential custody, she could have quality
13  time with the children.  He never denied her that.
14  He's always accommodated that.
15  In fact, she's going on vacation on his
16  parenting time.  She could have had her vacation on her
17  parenting time, and he hasn't objected to that.
18  He has done everything he can to
19  accommodate.  He has -- she has -- he has not left
20  these girls with a series of different men.  It was
21  her, and it was her landlord in the house that she
22  lived in for the last five years.
23  She -- when she filed this motion on there,
24  she said two things.  She said two things.  She said
25  it's because of my job and because of the doctors I go

Motions

17

1    to.
2              When she filed the certification in
3    opposition to what she said, she never makes one
4    reference to that.  It was a lie then.  She lied then,
5    and she's lying now.
6              THE COURT:  All right.  All right.
7              MS. MESSNER:  Your Honor, may I speak?
8              THE COURT:  Now -- I've heard enough.
9    Everyone sit down.
10            All right.  This is an application by the
11    plaintiff to change venue.  Defendant currently resides
12    in Somerset County.  As I indicated, that must be
13    denied.
14            There's a cross application by the
15    defendant for a host of things.  The defendant is
16    requesting a number -- as I said, a number of things.
17    The most important is a change of residential custody
18    of the parties' two children; Oliva born -- date of
19    birth, September 13th, 2000, and Alexandra, date of
20    birth, 11-2-2004, naming the defendant the parent of
21    primary residence.
22            The support of this application essentially
23    is -- at least based upon the facts that I have in
24    front of me -- that the plaintiff has moved from
25    Somerville to Union and that that move in and of itself

Motions

18

1    with the intendant change of school, et al, would be
2    not in the best interest of the children.
3            The second application is to hold the
4    plaintiff in violation of litigant's rights for failure
5    to follow the right of first refusal, which is
6    contained in the October 20th, 2008 order.
7            The third -- the next is to ask the Court
8    to interview both parties.  The next is to direct the
9    plaintiff to consult with the defendant prior to
10    enrolling the child in any activity.
11            And then there's an application to direct
12    the plaintiff to be responsible for the first $250,000
13    a year in unreimbursed medical expenses, then to
14    recalculate child support and impute an income to the
15    plaintiff.
16            The next is to direct the parent whose
17    parenting time is ending to drop off the child at the
18    other parent's residence for parenting time; a request
19    to claim the child as a tax dependent, and to direct
20    the plaintiff to obtain secondary health insurance for
21    the children and for the -- all counsel fees.
22            The facts of this matter are that the
23    children -- Oliva, as I said, was born in 2000, now
24    aged 15, Alexandra born in 2004, now aged 11 -- were
25    respectively 8 and 3 at the time of the entry of the

Motions

19

1  court order in October of 2008 by Judge Marino.  That
2  consent order dealt with custody and visitation.
3           It's clear to the Court that there's been a
4  significant change of circumstance since the entry of
5  that order which would require the Court to enter at
6  least a new visitation order.
7           There's been an application by the
8  defendant for a change of custody based upon the
9  changed circumstance.  Plaintiff has moved.  The
10 children are older.  Therefore, I'm going to set the
11 matter down for a plenary hearing on the issue of
12 custody and visitation.
13          I am first going to direct the parties to
14 go to mediation.  If mediation is unsuccessful, the
15 Family Division will schedule the matter for a case
16 management conference, subsequent to which there will
17 be a plenary hearing.
18          MR. GUSSIS:  Judge, will you interview the
19 girls as we've requested?
20          THE COURT:  Well, let me just indicate one
21 thing to you.  My last day in the Family Division is
22 next Friday -- a week from Monday.  So, obviously, I'm
23 not going to be doing this plenary hearing.
24          I'm not going to saddle the judge that's
25 going to do the plenary hearing with that decision or

Motions

20

1  any time periods with regard to the discovery which is
2  required.
3           I assume the parties are going to want a
4  best interest analysis, etcetera, etcetera, etcetera,
5  and that should be addressed by the judge who is going
6  to hear the matter.  Hopefully, the parties will
7  resolve the matter at mediation and make that
8  unsuccessful (phonetics).
9           This Court's ruling, ma'am, will give you
10 an opportunity to hire counsel and as -- I would assume
11 you would want to be represented by counsel in such a
12 hearing.  All right?
13          FAMILY CASE WORKER:  Do you want mediation
14 to be done initially, or you just want it to --
15          THE COURT:  No.  First.  Mediation first.
16          FAMILY CASE WORKER:  First, okay.
17          THE COURT:  Only if the mediation is
18 unsuccessful --
19          MR. GUSSIS:  That's through the Somerset
20 County Probation Department?
21          THE COURT:  Yes.  All right?
22          Thank you very much.  You can have a seat
23 in the back.
24          MR. GUSSIS:  Judge, thank you.
25          THE COURT:  You'll get a copy of the order.

Motions

21

1
2
3                          CERTIFICATE
4
5
6              I, PATRICIA A. BRILL, C.S.R., the assigned
7     transcriber, do hereby certify the foregoing transcript
8     of proceedings on  August 19, 2015, Digital Index
9     Number from 2:01:59 to 2:25:04, is prepared in full
10    compliance with the current Transcript Format for
11    Judicial Proceedings and is a true and accurate
12    compressed transcript of the proceedings as recorded.
13
14
15
16                        _____
17                        /s/ PATRICIA A. BRILL, C.S.R.
18                            AOC NUMBER 470
19
20
21
22    Date: August 29, 2015
23
24
25