**YOU CAN NOW RETRIEVE A COPY OF THIS INVOICE ONLINE AT WWW.SERVED.COM-- CLICK ON MY ACCOUNT!**

**Guaranteed Subpoena Service, Inc.**
P.O. Box 2248 - Union, New Jersey 07083
(908) 687-0056   (800) 672-1952
Fax: (908) 688-0885 Tax ID 22-2393485
www.Served.com

**YOU CAN NOW PRINT A RECEIPT ONLINE AS A PAYMENT CONFIRMATION FOR YOUR RECORD. SAVE A STAMP, TIME AND EFFORT AND PAY THIS INVOICE ONLINE! YOU MAY USE VISA, MASTERCARD, AMERICAN EXPRESS, DISCOVER OR EVEN A PAYPAL ACCOUNT!**



# INVOICE

STEPHANIE J. MESSNER, PRO SE
STEPHANIE J. MESSNER, PRO SE
447 4TH AVE.
GARWOOD NJ 07027

INVOICE #:     20230505112813
AMOUNT DUE:    $80.00
DUE DATE:      6/4/2023

**PAID**

**WE RESERVE THE RIGHT TO CHARGE 18% APR INTEREST (0.049315% DPR PAST THE DUE DATE) ON ALL UNPAID BALANCES.**

Tear along the perforation and keep the middle stub for your records! Return the bottom stub with your payment. Thank you for your business!

AMOUNT DUE: **$80.00**      INVOICE#: 20230505112813          INVOICE DATE:  **5/5/2023**
ATTORNEY:               STEPHANIE J. MESSNER, PRO SE
FIRM:                   STEPHANIE J. MESSNER, PRO SE
PLAINTIFF:              STEPHANIE MESSNER
DEFENDANT:              WEINGARTEN, ET AL
DOCKET#:                3 19 CV 15752 MAS RLS                  CLAIM#:
ENTITY SERVED:          SOMERSET COUNTY JAIL, ATTN: DEPUTY WARDEN KIM WILLIANS
SERVED WITH:            SUBPOENA TO PRODUCE,
SERVED DATE:            5/5/2023                  COURT DATE:              5/4/2023

| | | |
|---|---|---|
| ATTENDANCE FEE: | $0.00 | PAYMENT SENT ON: |
| SERVICE FEE: | $75.00 | |
| MILEAGE FEE: | $0.00 | AMOUNT PAID: |
| PRIORITY FEE: | $0.00 | |
| PICKUP FEE: | $0.00 | [ ] CHECK |
| INCORRECT ADDRESS FEE: | $0.00 | [ ] VISA |
| DOCUSIGN FEE: | $5.00 | [ ] MASTERCARD |
| CASH ATTACHED: | $0.00 | [ ] DISCOVER |
| WAIT TIME 0.00 | $0.00 | [ ] AMERICAN EXPRESS |
| VIDEO/MISC. FEE: | $0.00 | |
| TOTAL: | **$80.00** | CARD/CHECK#: |

Tear along the perforation and keep the middle stub for your records! Return the bottom stub with your payment. Thank you for your business!

**EFFECTIVE JULY 1, 2022, ALL NO-SERVES WILL RESULT IN AN AUTOMATIC AFFIDAVIT OF DUE DILIGENCE. PLEASE CHECK LATEST PRICING ON OUR WEBSITE.**

STEPHANIE J. MESSNER, PRO SE
447 4TH AVE.
GARWOOD NJ 07027

For the fastest resolution to your billing inquiry, email us at:
**Billing@Served.com**

**GUARANTEED SUBPOENA SERVICE, INC.**
**WWW.SERVED.COM**
P.O. BOX 2248
UNION, NJ 07083

INVOICE #:      20230505112813
AMOUNT DUE:     $80.00
DUE DATE:       6/4/2023

**PAID**

[ ] CHECK

[ ] Visa  [ ] MasterCard  [ ] Discover  [ ] American Express

CARD #: |_|_|_|_|_|_|_|_|_|_|_|_|_|_|_|

EXPIRATION: |_|_| / |_|_|

SIGNATURE: _____

20230505112813

**\*\*\* To Pay Online Go To "My Account" \*\*\***

AO 88 (11/91) Subpoena in a Civil Case

**PROOF OF SERVICE**

20230505112813

| **SERVED** | DATE:<br>5/5/2023 12:48 PM | PLACE:<br>40 GROVE ST.   SOMERVILLE NJ 08876 |
|---|---|---|

| SERVED ON:   **SOMERSET COUNTY JAIL, ATTN: DEPUTY WARDEN KIM WILLIANS**<br>ACCEPTED BY: **LT. CARRUBE**<br>RELATIONSHIP/TITLE: **POLICE OFFICER** | MANNER OF SERVICE: RULE 45, FEDERAL CIVIL RULE<br>SERVING: **SUBPOENA TO PRODUCE,** |
|---|---|

| SERVED BY | **NUNO VEIGA** | TITLE | **PROCESS SERVER** |
|---|---|---|---|

---

**DECLARATION OF SERVER**

Description of Person Receiving Document(s):

SEX:M___   AGE:36-50   HEIGHT: 5'4"-5'8"___   WEIGHT: 161-200 LBS.___   SKIN:WHITE___   HAIR:BALD___   OTHER:___

[X] To the best of my knowledge, said person was not engaged in the U.S. Military at the time of service.
I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in this Certification of Service is true and correct.

Docusign Court Approved E-Signature
*NUNO VEIGA*
3055D55EDE224B4_____ L.S.

SIGNATURE OF NUNO VEIGA
GUARANTEED SUBPOENA SERVICE, INC.
2009 MORRIS AVENUE
UNION, NJ 07083

EXECUTED ON:   5/5/2023 12:48 PM

ATTORNEY:      STEPHANIE J. MESSNER, PRO SE
PLAINTIFF:      STEPHANIE MESSNER
DEFENDANT:   WEINGARTEN, ET AL
VENUE:           DISTRICT
DOCKET:         3 19 CV 15752 MAS RLS
FEE:               0.00

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS
  (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but not limited to, lost earnings and a reasonable attorney's fee.
  (2)(A)  A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
  (B)  Subject to paragraph (d)(2) of this rule,  person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.
  (3)(A) On timely motion, the court by which a subpoena is issued shall quash or modify the subpoena if it
  (i) fails to allow reasonable time for compliance;
  (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person,

except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
  (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
  (iv) subjects a person to undue burden.

(B) If a subpoena
  (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
  (ii) requires disclosure of an unretained expert's opinion or information not describing specific events of occurrences in dispute and resulting from the expert's study made not at the request of any party, or
  (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assure that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
  (1)  A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
  (2)  When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

**YOU CAN NOW RETRIEVE A COPY OF THIS INVOICE ONLINE AT WWW.SERVED.COM-- CLICK ON MY ACCOUNT!**

YOU CAN NOW PRINT A RECEIPT ONLINE AS A PAYMENT CONFIRMATION FOR YOUR RECORD. SAVE A STAMP, TIME AND EFFORT AND PAY THIS INVOICE ONLINE! YOU MAY USE VISA, MASTERCARD, AMERICAN EXPRESS, DISCOVER OR EVEN A PAYPAL ACCOUNT!



**Guaranteed Subpoena Service, Inc.**
P.O. Box 2248 - Union, New Jersey 07083
(908) 687-0056   (800) 672-1952
Fax: (908) 688-0885 Tax ID 22-2393485
www.Served.com

# Paid

## INVOICE

STEPHANIE J. MESSNER, PRO SE
STEPHANIE J. MESSNER, PRO SE
447 4TH AVE.
GARWOOD NJ 07027

| | |
|---|---|
| INVOICE #: | **20230505110150** |
| AMOUNT DUE: | **$80.00** |
| DUE DATE: | **6/8/2023** |

**WE RESERVE THE RIGHT TO CHARGE 18% APR INTEREST (0.049315% DPR PAST THE DUE DATE) ON ALL UNPAID BALANCES.**

Tear along the perforation and keep the middle stub for your records! Return the bottom stub with your payment. Thank you for your business!

| | | | |
|---|---|---|---|
| AMOUNT DUE: **$80.00** | INVOICE#: 20230505110150 | INVOICE DATE: **5/9/2023** | |
| ATTORNEY: | STEPHANIE J. MESSNER, PRO SE | | |
| FIRM: | STEPHANIE J. MESSNER, PRO SE | | |
| PLAINTIFF: | STEPHANIE MESSNER | | |
| DEFENDANT: | WEINGARTEN, ET AL | | |
| DOCKET#: | 3 19 CV 15752 MAS RLS | CLAIM#: | |
| ENTITY SERVED: | SOMERSET COUNTY JAIL, ATTN: WARDEN PAUL A. KAMINSKI | | |
| SERVED WITH: | SUBPOENA TO PRODUCE, | | |
| SERVED DATE: | **5/8/2023** | COURT DATE: | 5/4/2023 |

| | | |
|---|---|---|
| ATTENDANCE FEE: | $0.00 | PAYMENT SENT ON: |___|___| / |___|___| / |___|___| |
| SERVICE FEE: | $75.00 | |
| MILEAGE FEE: | $0.00 | AMOUNT PAID: |___|___|___| , |___|___|___| . |___|___| |
| PRIORITY FEE: | $0.00 | |
| PICKUP FEE: | $0.00 | [ ] CHECK |
| INCORRECT ADDRESS FEE: | $0.00 | [ ] VISA |
| DOCUSIGN FEE: | $5.00 | [ ] MASTERCARD |
| CASH ATTACHED: | $0.00 | [ ] DISCOVER |
| WAIT TIME 0.00 | $0.00 | [ ] AMERICAN EXPRESS |
| VIDEO/MISC. FEE: | $0.00 | |
| TOTAL: | **$80.00** | CARD/CHECK#: |___|___|___|___|___|___|___|___|___|___|___|___|___|___|___|___|___| |

Tear along the perforation and keep the middle stub for your records! Return the bottom stub with your payment. Thank you for your business!

**EFFECTIVE JULY 1, 2022, ALL NO-SERVES WILL RESULT IN AN AUTOMATIC AFFIDAVIT OF DUE DILIGENCE. PLEASE CHECK LATEST PRICING ON OUR WEBSITE.**

STEPHANIE J. MESSNER, PRO SE
447 4TH AVE.
GARWOOD NJ 07027

| | |
|---|---|
| INVOICE #: | **20230505110150** |
| AMOUNT DUE: | **$80.00** |
| DUE DATE: | **6/8/2023** |

For the fastest resolution to your billing inquiry, email us at:
**Billing@Served.com**

GUARANTEED SUBPOENA SERVICE, INC.
**WWW.SERVED.COM**
P.O. BOX 2248
UNION, NJ 07083

[ ] CHECK

[ ] Visa   [ ] MasterCard   [ ] Discover   [ ] American Express

CARD #: |___|___|___|___|___|___|___|___|___|___|___|___|___|___|___|___|

EXPIRATION: |___|___| / |___|___|

SIGNATURE: _____

||||||||||||||||||||||||||||||||||
20230505110150

*** To Pay Online Go To "My Account" ***

AO 88 (11/91) Subpoena in a Civil Case

## PROOF OF SERVICE

20230505110150

| **SERVED** | DATE:<br>5/8/2023 12:53 PM | PLACE:<br>**20 GROVE ST SOMERVILLE NJ** |

| SERVED ON: **SOMERSET COUNTY JAIL, ATTN: WARDEN PAUL A. KAMINSKI**<br>ACCEPTED BY: **J. MURRAY**<br>RELATIONSHIP/TITLE: **POLICE OFFICER** | MANNER OF SERVICE: RULE 45, FEDERAL CIVIL RULE<br>SERVING: **SUBPOENA TO PRODUCE,** |

| SERVED BY<br>**NUNO VEIGA** | TITLE<br>**PROCESS SERVER** |

## DECLARATION OF SERVER

Description of Person Receiving Document(s):

SEX: M   AGE: 36-50   HEIGHT: OVER 6'   WEIGHT: OVER 200 LBS.   SKIN: WHITE   HAIR: GRAY   OTHER:

[X] To the best of my knowledge, said person was not engaged in the U.S. Military at the time of service.
I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in this Certification of Service is true and correct.

DocuSigned by:
Docusign Court Approved E-Signature
*NUNO VEIGA*
2F31D867B0D44E6...                                    L.S.

SIGNATURE OF NUNO VEIGA
GUARANTEED SUBPOENA SERVICE, INC.
2009 MORRIS AVENUE
UNION, NJ 07083

EXECUTED ON:   5/8/2023 12:53 PM

| ATTORNEY: | STEPHANIE J. MESSNER, PRO SE |
| PLAINTIFF: | STEPHANIE MESSNER |
| DEFENDANT: | WEINGARTEN, ET AL |
| VENUE: | DISTRICT |
| DOCKET: | 3 19 CV 15752 MAS RLS |
| FEE: | 0.00 |

| Attempts |
| --- |
| 5/5/2023 12:49:46 PM |
| 5/5/2023 12:57:14 PM |

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but not limited to, lost earnings and a reasonable attorney's fee.
(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.
(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person,

except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events of occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assure that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

# TABLE OF CONTENTS
## 6/5/2023

1.) Judge Bury 2/5/2019 transcript excerpts all parties agree to 4/1/2019 hearing to address downward modification of child support filed by Stephanie Messner to reflect that one child has been legally emancipated on 9/13/2019 by Court Order issued by Hon. Kimarie Rahill and 12/18/18 modification of 7/25/2017 Court Order.........................................1-4

2.) Our Family Wizard 2/12/2019 email retrieved on 3/26/2019 reflecting hearing date 4/1/2019...........................................................................5

3.) George G. Gussis attorney for Defendant email 2/19/2019 changes the date of the hearing All parties agreed to stating that the 4/1/2019 hearing date was made in error and Changed it to the date he knew Jared Geist Esq. representing Ms. Messner stated that He could not attend due to a previous trial scheduling..............................................6

4.) Court Address Change form completed by Ms. Messner to change her address from the Changed address from within the court 7 Franklin Street Somerset, NJ, an address that doesn't exist and one she never used located in a cemetery back to her known Garwood Address.........................................................................................................7

5.) 5/8/2019 email from Gisela Manon to Jared A. Geist Esq. forwarding Judge Bury's 4/12/2019 Court Order "mail we received in our New Brunswick Office" to the address of Garces, Grabler & Lebrocq P.C. a division of Garces and Grabler that Jared Geist had never worked at and an address he never used (second time change of address.................................................................................................8-10

6.) Presiding Judge Rahill Downward modification of Child Support r/t Court Order 9/13/2019 terminating Ms. Messner child support obligation for one child.......................11

7.) Judge Robert Ballard 1/29/2019 Court Order GRANTING Ms. Messner's OTSC to obtain Second opinion from orthopedic surgeon and current MRI before a generalized invasive Surgery on a minor child. (Judge Bury overrode Judge Ballards Order and ordered Surgery on minor child without a second opinion and by a podiatrist not an orthopedic surgeon.)........................................................................................................12-15

8.) 4/4/2019- Letter from Ms. Messner to Presiding Judge Kimarie Rahill with a request Of the back up recording of the hearing before Judge Bradford Bury for the "IMPROMPTU HEARING" where he was ordering clerk to go on and off the record at his convenience steering a narrative, this letter was addressing the fraudulent changed address of Ms. Messner to 7 Franklin Street and two additional changed addresses to Jared Geist Esq. that was done from within the court so that we would not appear, not receive notices or court orders limiting time to appeal or be prepared for the hearing that was scheduled for 4/1/2019 but changed by George Gussis adversary fraudulently stating that the date we all agreed on was made in error, with the intent to change it to a date he knew that Jared Geist could not be present for which was 3/26/2019.......................................16-19

9.) IMPROMPTU HEARING of 3/26/2019, the hearing only one party was aware of Judge Bradford Bury and the adversary party of favor George G. Gussis Esq. the lawyer Who changed the hearing date on false pretenses to cause a divergence of Superior Court Related mail to go to phony addresses in order to cause a favorable win by default and without any input from the Plaintiff, Ms. Messner............................................ 20-52

2/5/2019
Transcript
Judge Berry

93
```
 1          Number four -- plaintiff's application for
 2 compensatory time and any other relief not addressed
 3 today which is the subject of her 12-18-18
 4 modification application shall be addressed at the
 5 time of hearing on defendant's cross-modification
 6 application.  I know we call it a cross-motion in all
 7 of the dockets, but the FD, they use that
 8 terminology -- comma, just filed yesterday, comma, on a
 9 date to be scheduled by the court.
10          Unless, Maria, you want to give that date
11 right now.
12          COURT STAFF:  Judge, your availability
13 (indiscernible).
14          THE COURT:  It won't be until March.
15          COURT STAFF:  Near the end of March.
16          THE COURT:  Near the end of March.
17          COURT STAFF:  March 25th, Judge?  Or March
18 26th?  If counsel want to check their schedules now.
19          MR. GEIST:  Your Honor?
20          THE COURT:  25 or 26?
21          MR. GEIST:  My only conflict that week is I
22 have a two-day plenary hearing in Essex County on March
23 25 and 26th.  I'm available the rest of that week on the
24 27th, 28 or 29.
25          THE COURT:  Monday and Tuesdays are the
```

94
```
 1 days that we're relegated to FD docket.
 2          MR. GEIST:  If I could ask for the
 3 following Monday and Tuesday, April 1st or 2nd?
 4          THE COURT:  We can.  Okay.
 5          Mr. Gussis, it's Monday or Tuesday --
 6          MR. GUSSIS:  April Fool's Day is fine,
 7 Judge.
 8          THE COURT:  April 1st, it shall be.  Okay.
 9          Maria, I'm only going to ask that -- maybe
10 we should set this for like 11 a.m. so we can get
11 started in the morning, and to the extent that we're
12 not finished, then I know we'll have sufficient time in
13 the afternoon to complete it.  Okay?
14          But I don't want you coming in at 8:30,
15 because I know we're not going to get started right
16 away.
17          MR. GEIST:  Thank you.
18          THE COURT:  So make it 11.
19          MR. GEIST:  Thank you.
20          THE COURT:  Okay?
21          COURT STAFF:  Judge, can I just ask -- I
22 know this is his cross-app, but since it's two months
23 away, is there anything else that we can address on
24 that day regarding the parenting coordinator?  Are
25 there any other deadlines that your Honor is going to
```

95
```
 1 put in place?
 2          THE COURT:  I just gave you a deadline for
 3 the parenting coordinator.
 4          COURT STAFF:  Correct.
 5          THE COURT:  Right.
```

1

```
 1                        SUPERIOR COURT OF NEW JERSEY
                         LAW DIVISION:  FAMILY
 2                       SOMERSET COUNTY
                         DOCKET NO. FD-18-340-01
 3
     ------------------------------
 4   STEPHANIE J. MESSNER,

 5              Plaintiff,          AUDIO TRANSCRIPT

 6      vs.                             OF

 7   MIKLOS HAJDU-NEMETH,            MOTIONS

 8              Defendant.
     ------------------------------
 9
                         PLACE: Somerset County Courthouse
10                              20 North Bridge Street
                                Somerville, New Jersey
11                       DATE:  February 5, 2019

12   BEFORE:
         HONORABLE BRADFORD BURY, J.S.C.
13

14   TRANSCRIPT ORDERED BY:
         STEPHANIE J. MESSNER
15       447 4TH Avenue
         Garwood, NJ 07027
16
     APPEARANCES:
17
         JARED GEIST, ESQ.
18       Law Office of Jared Geist
         For Plaintiff
19
         GEORGE G. GUSSIS, ESQ.
20       Law Office of George G. Gussis
         For Defendant
21
22                       PATRICIA A. BRILL, C.S.R.
                         Certified Court Transcriber
23                       patty.brill@gmail.com
                         908-963-9258
24
                         Sound Recording Operator:
25                       Kevin Tang
```

93

1          Number four, plaintiff's application for
2    compensatory time and any other relief not addressed
3    today, which is the subject of her 12-18-18
4    modification application, shall be addressed at the
5    time of hearing on defendant's cross-modification
6    application.  I know we call it a cross-motion in all
7    of the dockets, but the FD, they use that
8    terminology -- comma, just filed yesterday, comma, on a
9    date to be scheduled by the court.
10         Unless, Maria, you want to give that date
11   right now.
12         COURT STAFF:  Judge, your availability
13   (indiscernible).
14         THE COURT:  It won't be until March.
15         COURT STAFF:  Near the end of March.
16         THE COURT:  Near the end of March.
17         COURT STAFF:  March 25th, Judge?  Or March
18   26th?  If counsel want to check their schedules now.
19         MR. GEIST:  Your Honor?
20         THE COURT:  25 or 26?
21         MR. GEIST:  My only conflict that week is I
22   have a two-day plenary hearing in Essex County on March
23   25 and 26th.  I'm available the rest of that week, the
24   27th, 28 or 29.
25         THE COURT:  Monday and Tuesdays are the

94

1    days that we're relegated to FD docket.
2         MR. GEIST:  If I could ask for the
3    following Monday and Tuesday, April 1st or 2nd?
4         THE COURT:  We can.  Okay.
5         Mr. Gussis, it's Monday or Tuesday.
6         MR. GUSSIS:  April Fool's Day is fine,
7    Judge.
8         THE COURT:  April 1st it shall be.  Okay.
9         Maria, I'm only going to ask that -- maybe
10   we should set this for like 11 a.m. so we can get
11   started in the morning, and to the extent that we're
12   not finished, then I know we'll have sufficient time in
13   the afternoon to complete it.  Okay?
14         But I don't want you coming in at 8:30,
15   because I know we're not going to get started right
16   away.
17         MR. GEIST:  Thank you.
18         THE COURT:  So make it 11.
19         MR. GEIST:  Thank you.
20         THE COURT:  Okay?
21         COURT STAFF:  Judge, can I just ask -- I
22   know this is his cross-app, but since it's two months
23   away, is there anything else that we can address on
24   that day regarding the parenting coordinator?  Are
25   there any other deadlines that your Honor is going to

101

1    Thank you.
2              THE COURT CLERK:  You're welcome.
3              THE COURT:  No problem.
4              Okay.  All right.
5
6              * * * (End of Proceeding) * * *
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

102

1
2
3
4                    CERTIFICATE
5
6
7         I, PATRICIA A. BRILL, C.S.R., the assigned
8    transcriber, do hereby certify the foregoing transcript
9    of proceedings on February 5, 2019, Digital Index
10   Number from 2:41:15 to 4:43:48, is prepared in full
11   compliance with the current Transcript Format for
12   Judicial Proceedings and is a true and accurate
13   compressed transcript of the proceedings as recorded.
14
15
16
17
18              /S/PATRICIA A. BRILL, C.S.R.
19              AOC NUMBER 470
20
21
22
23   Date: February 15, 2019
24
25

# Message Report

The OurFamilyWizard® website
1302 2nd St NE Suite 200
Minneapolis, MN 55413
http://www.OurFamilyWizard.com
Info@OurFamilyWizard.com



*Stephanie Messner generated this report on 03/26/19 at 01:22 PM. All times are listed in America/New_York timezone.*

| | |
|---|---|
| **Message:** | 1 of 1 |
| **Date:** | 02/12/2019 9:05 AM |
| **From:** | Miklos Jancsi Hajdu-Nemeth |
| **To:** | Stephanie Messner (First View: 02/12/2019 10:10 AM) |
| **Subject:** | Alex's surgery doctor bill |

There is a $2700 Dr. Bill for Alex's ankle surgery divided into two you owe $1350 and I pay the other half. As I explained before everything will be settled in court about your parenting time on April first.

5

Close   **1-page-fax-from-_7328460282**
PDF - 17 KB



---

02/19/2019   10:35 GEORGE GUSSIS                    (FAX)7328460282        P.001/001

## GEORGE G. GUSSIS, P.A.
ATTORNEY AT LAW
THE ALBION BUILDING
63 MORRIS STREET
NEW BRUNSWICK, N.J. 08901

GEORGE G. GUSSIS

TEL   732-846-3111                                              MAILING ADDRESS
FAX   732-846-0282         February 19, 2019                    P.O. BOX 152
                                                                08903-0152

ALSO VIA FAX # 908-332-7696
Maria Schirripa, Court Supervisor
Superior Court of New Jersey – Family Part
20 North Bridge Street
Somerville, NJ 08876

        Re:   **Messner v. Hadju-Nemeth**
              **Docket No.: FD-18-340-01**
              **CS22560884A**

Dear Ms. Schirripa:

This is to confirm that, pursuant to my office's teleconference with you earlier this morning, the correct date for the Hearing scheduled in the above captioned matter is March 26, 2019 at 1:30 p.m. This will further confirm that the Hearing scheduled for April 1, 2019 at 11:00 a.m. was scheduled in error. By a copy of this letter I am advising my adversary of same.

                              Respectfully,

                              GEORGE G. GUSSIS, P.A.


                              BY:_____
                                   GEORGE G. GUSSIS, ESQUIRE

GGG:ep
Cc:   Jared Geist, Esq. *via fax 201-812-9659*
      Miklos Hajdu-Nemeth *via email*

---



6

# ADDRESS CHANGE FORM

Name of person changing address: Stephanie Messner

Name of other party in case: Hardu-Nemeth

Docket Number: FD - 18 - 340 - 01

Date of Birth: 9, 9, 1970

Old Address: 124 Jerome Ave

City: South Bound Brook   State: NJ   Zip: 08880

SINCE 4/20/15

New Address: 147 4th Ave Garwood NJ

City: Garwood   State: NJ   Zip: 07027

Home phone: ( 908 ) 456 - 4417

Work Phone: ( ___ ) ___ - ___

Cell Phone: ( ___ ) ___ - ___

SIGNATURE: Stephanie Messn   DATE: 3/29/2019

7 Franklin Street was never an address I ever lived at. Nor is it a valid address anywhere in Somerset NJ.

7

 **Gmail**

Stephanie Messner

# **Fwd: Mail we received in our New Brunswick Office**

1 message

**Jared Geist** <jaredgeist@gmail.com>                                    Tue, May 21, 2019 at 7:55 PM
To: smessner09@gmail.com

Sent from my iPhone

Begin forwarded message:

> **From:** "Gisela A. Manon" <gamanon@garcesgrabler.com>
> **Date:** May 8, 2019 at 4:00:54 PM EDT
> **To:** "jaredgeist@gmail.com" <jaredgeist@gmail.com>
> **Subject: Mail we received in our New Brunswick Office**
>
> Jared:
>
> Attached is mail we received in our New Brunswick office.  Please update your address.
>
> Sincerely,
>
> Gisela A. Manon
>
> Legal Assistant to Arlindo B. Araujo, Esq.
>
> GARCES, GRABLER & LEBROCQ, P.C.
>
> 235 Livingston Avenue
>
> New Brunswick, NJ 08901
>
> (732) 317-0700
>
> Fax: (732) 640-2090
>
> gamanon@garcesgrabler.com

**SKM_558e19050816160.pdf**

Gmail - Fwd: Box have received... from our New Brunswick Office
Case 3:19-cv-15752-RK-RLS    Document 50-1    Filed 06/09/23    Page 14 of 57 PageID: 4829
6/5/23, 9:54 AM

 560K



☰   M Gmail          🔍  JAREDGEIST@GMAIL.COM

**Compose**

**Inbox**                    1,719          Fwd: Mail we received in our New Bruns

Starred
                                           **J**   **Jared Geist** <jaredgeist@gmail.com>
Snoozed                                            to me

Sent

**Drafts**                    175                 Sent from my iPhone

More                                              Begin forwarded message:

Labels                                            **From:** "Gisela A. Manon" <gamanon@garcesgrabler.com>
                                                  **Date:** May 8, 2019 at 4:00:54 PM EDT
Notes                                             **To:** "jaredgeist@gmail.com" <jaredgeist@gmail.com>
                                                  **Subject: Mail we received in our New Brunswick Office**

                                                  Jared:

                                                  Attached is mail we received in our New Brunswick office.  Pl

                                                  Sincerely,
                                                  Gisela A. Manon
                                                  Legal Assistant to Arlindo B. Araujo, Esq.
                                                  GARCES, GRABLER & LEBROCQ, P.C.
                                                  235 Livingston Avenue
                                                  New Brunswick, NJ 08901
                                                  (732) 317-0700
                                                  Fax: (732) 640-2090
                                                  gamanon@garcesgrabler.com

                                              **One attachment** · Scanned by Gmail

# SUPERIOR COURT OF NEW JERSEY:

**CHANCERY DIVISION, FAMILY PART**
**SOMERSET COUNTY**
PO BOX 3000
NO.BRIDGE HIGH STREET
SOMERVILLE, NJ 08876-1262
Website: http://www.njcourtsonline.com

**(877)655-4371**
Fax:

**MESSNER STEPHANIE J**

Plaintiff

vs.

**HAJDUNEMETH MIKLOS J**

Defendant

Docket No: **FD-18-000340-01**

Case ID: **CS22560884A**

**STEPHANIE J. MESSNER**
**447 4TH AVE**
**GARWOOD, NJ 07027-1008 US**

## CIVIL ACTION SUMMONS FOR HEARING FOR MODIFICATION

The attached complaint for <u>DOWNWARD MOD FOR CS  ENF EXISTING ORDER</u> has been filed.

You are hereby summoned to appear in the Chancery Division, Family Part of the Superior Court of New Jersey at SOMERSET COUNTY COURTHOUSE 20 N BRIDGE ST, MAIN CRTHSE COURT RM 302, 3RD FL SOMERVILLE NJ 08876, before JUDGE BRADFORD M BURY, on 02/05/2019 at 08:30 AM.

You must bring with you the following:

- [ ]  A copy of this notice
- [x]  Last three (3) pay stubs and/or proof of other income
- [x]  Most recent Federal (IRS) tax return
- [x]  Proof of health insurance coverage for child(ren) named in complaint
- [ ]  Most recent Completed Case Information Statement (CIS) (enclosed)
- [ ]  Verification of child's full-time enrollment in high school or college/post-secondary institution
  - Letter from school on letterhead confirming current full-time enrollment status
  - Copy of official current full-time enrollment certificate
- [ ]  Verification of child's physical or mental disability
  - Federal or State eligibility determination letter
  - Proof of Federal or State benefits received due to the child's disability
  - Court ordered determination of the child's disability

**FAILURE TO APPEAR AT THE DATE, TIME, AND PLACE SHOWN ON THIS SUMMONS MAY RESULT IN THE ENTRY OF A JUDGMENT BY DEFAULT AGAINST YOU FOR THE RELIEF(S) REQUESTED OR A BENCH WARRANT MAY BE ISSUED FOR YOUR ARREST.**

Although not required, you may bring an attorney. You may contact the NJSBA Lawyer Referral Service or Legal Services of New Jersey for assistance.

If you have any questions, please call Customer Service at (877)655-4371.

The following is attached:

- [x] Complaint that has been filed
- [ ] CIS

01/07/2019
Date

**KIMARIE RAHILL**
Presiding Judge, Family Part

*** PLEASE NOTIFY COURT OF DISABILITY ACCOMODATION NEEDS ***





CS523,66251167

355\MARIA.CAMPBELL\CS22560884A\22560868



FILED

JAN 2 9 2019

Robert A. Ballard, Jr. , J.S.C.,
CHAMBERS

**PREPARED BY THE COURT**

| | |
|---|---|
| **STEPHANIE MESSNER,** | SUPERIOR COURT OF NEW JERSEY |
| Plaintiff, | CHANCERY DIVISION-FAMILY PART |
| | SOMERSET COUNTY |
| v. | DOCKET NO.: FD-18-340-01 |
| **MIKLOS HAJDU-NEMETH,** | **CIVIL ACTION** |
| Defendant. | **AMENDED ORDER TO SHOW CAUSE** |

THIS MATTER having been brought to the court on January 17, 2019, by way of an emergent application filed by Jared Geist, Esq. (Geist Law LLC) on behalf of Plaintiff, Stephanie Messner, seeking emergent relief pursuant to R. 4:52-1, based on the facts set forth in Plaintiff's Certification filed therewith; and it appearing that George Gussis, Esq. on behalf of Defendant, Miklos Hajdu-Nemeth, having been served with a copy of this application; the court having read and considered the supporting papers; and finding that the Plaintiff has not demonstrated by clear and convincing evidence that immediate and irreparable harm is likely to result;

IT IS on the 29th day of January, 2019 ORDERED as follows:

1.  **ORDERED** that Plaintiff's Order to Show Cause is GRANTED as the request is deemed emergent; and it is further

2.  **ORDERED** that Plaintiff's request to cease any and all surgeries for the minor child unless it is a life threatening non planned situation is GRANTED; and it is further

12

3.   **ORDERED** that Plaintiff's request to mandate that Plaintiff be informed and involved in decision making process prior to surgeries being scheduled for the minor children is GRANTED; and it is further

4.   **ORDERED** that Plaintiff's request to require Defendant to provide to Plaintiff all medical providers and appointments for the minor children including allowing access to the records is GRANTED; and it is further

5.   A copy of this Order to Show Cause, along with this Order, Statement of Reasons and any supporting affidavits or certifications submitted in support of this application shall be served by Plaintiff upon the Defendant and/or his attorneys within **3 days** of the date hereof, in accordance with R. 4:4-3 and R. 4:4-4.

2.   **ORDERED** that all other Orders shall continue in full force and effect.

3.   **ORDERED** that the plaintiff shall serve a copy of this Order on all interested parties, within three (3) days of the date hereof.

HON. ROBERT A BALLARD, JR. J.S.C.

2

13

## Statement of Reasons Pursuant to R. 1:6-2

Plaintiff files this instant application requesting emergent relief to restrain Defendant from moving forward with any surgeries involving the parties' minor children and keeping Plaintiff involved in the medical decisions involving the children. Plaintiff certifies that she became aware on January 5, 2019 of an intention for the parties' daughter, Alexandra, to have surgery on her foot. On that day, she was told by four people during Alexandra's basketball game that Alexandra had been scheduled for surgery the prior day. Plaintiff certifies that she was subsequently informed that the surgery was scheduled by Defendant but never occurred. According to Plaintiff's certification, the surgery would involve opening the back of Alexandra's foot to cut away tissue and tendons. Plaintiff further alleges in her certification that when she confronted Alexandra regarding the surgery, she was told, "My ankle hurts, I want surgery, you have no say, it's my choice". Subsequently, the Court received further information from Plaintiff stating that she was present where the surgery has been rescheduled for February 4, 2019.

The issue before the Court is whether to grant the requests for emergent relief restraining the Defendant from having custody of the minor children. In order to grant such extraordinary relief, the movant must demonstrate that (1) the preliminary restraints are necessary to prevent irreparable harm; (2) the legal rights underlying the claims are settled; (3) the material facts are uncontroverted and demonstrate a reasonable probability of ultimate success on the merits; and (4) the relative hardship to the parties in granting or denying relief favors granting the relief. *Crowe v. DeGioia*, 90 N.J. 126, 132-34 (1982). The Court must find clear and convincing evidence that an injunction is warranted under these standards. *Am. Employers' Ins. Co. v. Elf Atochem North Am.*, 280 N.J. Super. 601, 610-611 n8 (App. Div. 1995) (citing *Dolan v. DeCapua*, 16 N.J. 599, 614 (1954)). The irreparable harm must be imminent, concrete, non-

3

14

speculative, and the harm must occur in the near, not distant future. *Subcarrier Communications v. Day*, 299 N.J. Super. 634, 639 (App. Div. 1997).

In the present case, the Plaintiff's emergent application does meet the standard of emergency as set forth in Crowe. Joint legal custody involves parties agreeing and consulting with one another for the important educational and medical aspects of their children's lives. Here, Plaintiff alleges that Defendant has usurped her advice and consent as to the best interests of their child. In particular, it is immediate and irreparable for the parties' daughter to have surgery without the agreement of Plaintiff or the Court to determine the best interests of her health and safety. As such, Defendant may not unilaterally schedule this surgical procedure and the surgery must be delayed. The Court notes that the parties are scheduled for a hearing before the Honorable Bradford M. Bury, J.S.C. on February 5, 2019. These issues are more appropriate and may be addressed before Judge Bury at that hearing.

### Custody/Parenting Time Compliance Requirement

If this order contains any provision concerning custody and/or parenting time, both parties are advised: Failure to comply with the custody provisions of this court order may subject you to criminal penalties under N.J.S.A. 2C:13-4, "Interference with Custody." Such criminal penalties include, but are not limited to, imprisonment, probation, and/or fines.

Si usted deja de cumplir con las clausulas de custodia de esta orden del tribunal, puede estar sujeto (sujeta) a castigos criminales conforme a N.J.S.A. 2C:13-4, "Interference with Custody (Obstruccion de la Custodia)." Dichos castigos criminales incluyen pero no se limitan a encarcelamiento, libertad, multas o una combinacion de los tres.

15

Stephanie J. Messner
447 4th Ave.
Garwood, NJ. 07027
908-456-4417


To: Somerset County Superior Court — Family Part
    20 Bridge Street
    Somerville, NJ. 08876

Attn:  Honorable Presiding Judge Kimarie Rahill

RE:  FD-18-340-01   MESSNER VS. HAJDU-NEMETH


4/4/19

Dear Judge Rahill,

This letter is a request to you for the backup recording of
a hearing before Judge Bradford Bury on 3/26/19 afternoon
session beginning around 2pm.  The reason for such a
request is that Judge Bury requested the audio of the
record to be turned off on multiple occasions while the
hearing was in progress so he could talk off the record at
his convenience and this is inappropriate because the
record doesn't accurately represent what was happening in
this courtroom hearing.

During this time Judge Bury had been making derogatory
comments about me while I was not present as I was not
properly informed of this hearing date, which on 2/5/19
hearing was scheduled to be on April 1st, 2019.

I did not receive any notification by the Court.  My
attorney Jared Geist did not receive proper notification by
the Court but only an email in which the adversary was
attempting to change the hearing date from April 1st to an
earlier date, misleading the Court to believe that the
April first date was an error of the Court and not a date
he agreed on.  It is important to note that when I called
in to Judge Bury, he was bullying me and attacking my
credibility and stating that he was, "with certainty"
positive that I received notification from the court
because he "knows" notification went out to my address on
"7 Franklin street, Somerset, New Jersey," stated Judge
Bury.  I have NEVER lived at this address and when I looked

16

up this address, it doesn't even exist.  In fact, I checked
in with the Family part desk and asked which address they
had for me and I was told, "7 Franklin Street, Somerset,
NJ."  I had to fill out a formal form to change it back to
my Garwood address.  This means that between 2/5/19 and
March 26, 2019 approximately 6 weeks, someone had to
physically change my address to an invalid one internally.
As far as I have been made aware, 7 Franklin Street in
Somerset would be located in a cemetery!

I obtained the transcript from 2/5/19 in which April 1st,
2019 date was agreed upon by all parties and Judge Bury's
behavior was extremely troubling to me as he was calling me
repeatedly while I was being examined by my doctor, sick
with influenza and a severe lower respiratory infection,
implying that I am dodging court, lying all the while
making fun of me in front of the adversary and my ex who
also has a history of domestic violence and abuse toward
me.  I am appalled that Judge Bury would resort to name
calling in the court in front of the adversary is and
should be reprimanded as I view this as harassment and
abusive.

What is deeply concerning is that Judge Bury's outrageous
behavior was inappropriate toward me who was ill,
assaulting my credibility on the record, calling me names
and repeatedly calling my cell phone multiple times in a
row while I was in the doctors.  Judge Bury even suggested
that my attorney call my doctors and then suggested he call
me from his cell phone stating that if my attorney calls
me, maybe I will answer implying that I am a liar and
intentionally dodging his calls.

He then proceeded without me being present and refused my
attorney's requests that he needs me to be present.  I
could not see what documents were being presented but he
never did hear my motion that I filed on 12/18/18, which
stemmed from an OTSC that he directed me to file as a
motion.  He denied all the relief I requested without going
through my motion and my complaints and he did this 2 times
first being the 2/5/19 date.

I not given but one days notice of this hearing, I was
sick, had been out of work for a week, had a doctors
appointment and my parenting time with my daughter and
couldn't be present and Judge Bury never addressed my
complaint before the court only addressing part of my
requests but not my complaint that raised serious issues

2  17

regarding the children's welfare resulting in one severed relationship, the Defendant's plan of a severance of the other child once she turns 18, surgeries for our daughter occurring without informing me, the car crash, injury, seizures, concussions and hospitalizations of our other daughter without informing or including me even in emergency situations, the Defendant's inability to co-parent and enmeshing the children into the litigation.

There is nothing I had ever done or said to make this man who is a sitting Judge behave like this toward me. But he stated on 2/5/19 that he was not inclined to hear my complaints and allegations of the Defendant because he stated these complaints would have been born out during 9 days of trial before Judge Mawla and this is not representing a Court of Equity in which I provided a binder of texts, exhibits, documents to demonstrate that my complaints are valid and should be addressed, not ignored completely.

I have only been before Judge Bury the one time in which I did have to interrupt him to provide correct information because there were false allegations and assumptions going on the record and that still stand to be corrected as he refused me my parental right to request and obtain an updated MRI and a second opinion for a major surgery on my daughters foot which he has no way of determining that this surgery is in her best interest if the podiatrist who is not an orthopedic surgeon, like Judge Bury claimed, certainly couldn't say with certainty, never mind all of the risks involved and in addition, Troxel Vs. Granville upholding and protecting the 14th Constitutional Amendment-case-law states that the state may not use the best interest of the child standard to override a parent's Constitutional and fundamental rights to make decisions both medical and educational for their children.  In this case I was not asking for anything more than any other responsible parent would ask for.

Enclosed you will find a few documents which include…
1.) excerpt from transcript on 2/5/19 scheduling hearing date on 4/1/19
2.) George Gussis Esq. letter misinforming, misleading and lying to the Court in attempt to change the date from 4/1/19 to earlier in March.
3.) Form I filled out to change the fake address back to my current Garwood address that I have received all notification from the Court since 2015.

3

4.)   Defendant's OFW email recognizing the Court date was
      set for 4/1/19

From the outside looking in, it would appear that Mr.
Gussis wouldn't have minded and could have even
orchestrated me missing the 3/26/19 Court Date due to a
suspect fake address for me which was changed at the
Court, with no proper notification sent or received to
me, in order to push his requests through in my absence
which is what he essentially did but for the Court's
denial of his requests to further alienate me from our
children by requesting of the court to not allowing me
parenting time at all which has caused Parental
Alienation by his client back from 8/17/16, one severed
mother/child relationship and the continuation of
extricating me from both of the children's lives.

This letter also serves as notification that we are moving
forward with a motion for Recusal of Judge Bradford Bury
for many reasons other than his malicious behavior toward
me in the past two hearings, which were the only two
hearings before him.

I, with the utmost regard, respectfully request and
petition of Your Honor, the backup, forensic Smart Court
recording of the 3/26/19 hearing.

Thank You in Advance.


Respectfully Yours,


Stephanie J. Messner

4

```
                                                                    1

 1                          SUPERIOR COURT OF NEW JERSEY
                            LAW DIVISION:  FAMILY
 2                          SOMERSET COUNTY
                            DOCKET NO. FD-18-340-01
 3       ------------------------------
 4       STEPHANIE MESSNER,

 5              Plaintiff,              TRANSCRIPT

 6          vs.                            OF

 7       MIKLOS HAJDU-NEMETH,          MOTION DECSIONS

 8              Defendant.
         ------------------------------
 9
                            PLACE: Somerset County Courthouse
10                                 20 North Bridge Street
                                   Somerville, New Jersey
11                          DATE:  March 26, 2019

12       BEFORE:

13          HONORABLE BRADFORD BURY, J.S.C.

14
         TRANSCRIPT ORDERED BY:
15          STEPHANIE J. MESSNER
            447 4th Avenue
16          Garwood, NJ 07027

17
         APPEARANCES:
18
            JARED GEIST, ESQ.
19          Geist Law
            For Plaintiff
20
            GEORGE G. GUSSIS, ESQ.
21          Law Office of George G. Gussis
            For Defendant
22
23                          PATRICIA A. BRILL, CCR-R
                            CERTIFIED COURT TRANSCRIBER
24                          patty.brill@gmail.com

25                          Sound Recording Operator: K. Tang
```

20

2

1                           I N D E X

2     PROCEEDING                                    PAGE

3     Motion Decisions                                3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

```
 1              THE COURT:  Will the attorneys please come
 2    forward, along with Mr. Hadju-Nemeth, on Messner versus
 3    Hajdu-Nemeth, Docket FD-18-340-01?
 4              And let's get Ms. Messner on the phone,
 5    please.
 6              THE COURT CLERK:  Yes, Judge.
 7              COURT STAFF:  Do you have your client's
 8    phone number?
 9              MR. GEIST:  I do. 908-456-4417.
10              THE COURT:  Good afternoon, counsel.
11              MR. GEIST:  Good afternoon.
12              THE COURT:  All right.
13              (Phone ringing).
14              (Whereupon a discussion was held off the
15    record between the Court and staff.)
16              RECORDING:  "Hello.  Nobody's around to
17    answer your call.  Please leave your message at the
18    tone, and someone will get back to you as soon as
19    possible.  Thank you."
20              RECORDING:  "Record your message after the
21    tone.  Simply hang up when done, or for delivery
22    option, please the pound sign."
23              THE COURT:  Hello, Ms. Messner.  This is
24    Judge Bradford Bury in Somerset County Superior Court.
25              You were provided a courtesy today to be
```

4

```
 1    able to appear via a Polycon for the reasons where -- I
 2    guess we will eventually place on the record through
 3    your counsel, Mr. Geist.
 4              We're going to call you back, but you're
 5    expected to participate in this proceeding.  So we're
 6    going to hang up now and call you back, and/or I'll
 7    have your counsel reach out to you through his phone.
 8    Thank you.
 9              Mr. Geist, you told your client to be
10    available; right?
11              MR. GEIST:  Yes.  I wanted to place a
12    little background before I really get started on that.
13              My client, I did tell her to be available.
14    She told me at 2:30 she had to pick the minor daughter
15    up.  But then she was going to drop her off somewhere.
16    She didn't tell me where she was dropping her daughter
17    off, but she said she was then going to go to a
18    doctor's appointment after that.
19              There's a lot of other things I wanted to
20    state, but I know we're -- not really having entered
21    appearances yet or anything --
22              THE COURT:  Right.
23              MR. GEIST:  But she also told -- she
24    provided me with an earlier doctor's note that
25    basically said she was out of work until March 21st,
```

5

1    which was five days ago.
2              You know, I have been in communication with
3    her, and I wanted to put some of that exactly on the
4    record.
5              But she then told me she was going back to
6    the doctor's after she dropped her daughter off.  I
7    guess she was picking her daughter up from school at
8    2:30 and was concerned if the phone call came in then,
9    that her daughter would be in the car with her.
10             But now it's, you know, 3:00.
11             THE COURT:  Right.  Well, where was she
12   taking the parties' daughter to?
13             MR. GEIST:  She didn't --
14             THE COURT:  Where was she taking -- this is
15   Alexandra or Olivia?
16             MR. GEIST:  That would be --
17             THE COURT:  Alexandra; right?
18             MR. GEIST:  And -- I don't know.
19             THE COURT:  Okay.
20             MR. GEIST:  Maybe Mr. Hadju-Nemeth would
21   know more than --
22             THE COURT:  Yes, sir?
23             THE DEFENDANT:  Therapy.  Alex has therapy.
24             THE COURT:  Okay.
25             THE DEFENDANT:  She had ankle surgery.

6

1              THE COURT:  Well, then --
2              MR. GEIST:  I don't know if there's any way
3    to --
4              THE COURT:  PT, as in physical therapy.
5              THE DEFENDANT:  Yes.
6              THE COURT:  Right.
7              MR. GEIST:  I don't know if there's any way
8    to have a brief conference --
9              THE COURT:  I'm well --
10             MR. GEIST:  -- with your Honor --
11             THE COURT:  I'm well aware of the surgery
12   issue.  We're going to wait for the Appellate Division
13   on an emergent app.
14             All right.  Let's everybody calm down.  Sit
15   down.  Let's make a second phone call.
16             THE COURT CLERK:  Okay.
17             THE COURT:  Okay?  If she doesn't pick up,
18   I'm going to ask you to get your cell phone.  Please
19   call her.  You can do that right here in the courtroom.
20   So maybe if she recognizes your number, she'll respond
21   to that.  She may not be responding necessarily to this
22   number that she sees here.
23             (Phone ringing.)
24             RECORDING:  "Hello.  Nobody is around to
25   answer your call.  Please leave a message at the tone

7

1    and we will get back to you as soon as possible.  Thank
2    you."
3                  RECORDING:  "Record your message after the
4    tone.  Simply hang up when done, or for delivery
5    option, press the pound sign."
6                  THE COURT:  Hello again, Ms. Messner.  This
7    is Judge Bury, Somerset County Superior Court.
8                  It's now about three minutes after 3.  I'm
9    leaving a second voicemail message.  My understanding
10   is that you were taking Alexandra after school -- a
11   pickup at 2:30, to therapy at 3.  Therefore, you should
12   be available.  I'm sure it's her session, not your
13   session, for her physical therapy.
14                 I'm going to have your attorney call you
15   right now on his cell phone, and then we expect you
16   again to participate, at least today, via Polycom.  And
17   that will conclude this call.  Thank you.
18                 Give it a shot, Mr. Geist.
19                 MR. GUSSIS:  Judge, before he calls, I
20   would like to place something on the record.
21                 THE COURT:  All right.  Let's do this then
22   -- my point is this.  We don't even have her on the
23   Polycom yet.
24                 Go ahead and take -- you want to enter
25   appearances.  Go ahead, Mr. Geist.

8

1                  MR. GEIST:  I will enter my appearance.
2    I'd almost rather have a quick conference with your
3    Honor if you don't mind.  There might be ways to
4    resolve this a little bit.
5                  But my appearance is Jared Geist,
6    Hackensack, New Jersey, on behalf of Ms. Messner, who,
7    as we know, is not here, the plaintiff.
8                  THE COURT:  Thank you, sir.
9                  MR. GUSSIS:  Your Honor, George Gussis is
10   on behalf of the defendant, Miklos Hajdu-Nemeth.
11                 THE COURT:  All right.  Who, for the
12   record, is present here in court.
13                 MR. GUSSIS:  And he is present in court.
14                 THE COURT:  Yes.
15                 A suggestion on in-chambers conference?
16   Yes, no, maybe?
17                 MR. GUSSIS:  Before, Judge, I would like to
18   place something on the record.
19                 THE COURT:  Go ahead.
20                 MR. GUSSIS:  Ms. Messner never had any
21   intentions of appearing today.  She sent her daughter a
22   text message this morning that she had to work.  I have
23   the text messages.
24                 She then told her daughter that work was
25   canceled and she would pick her up after 2:30.  If she

24

9

1  had work, she would have picked her up after 8:00.
2          So she had no intentions of being here
3  today, and I have the text messages.  I'd like to share
4  -- give a copy to Mr. Geist, so when he speaks to her
5  on the phone, he tells her that.  And I have a copy for
6  the Court.
7          THE COURT:  All right.  Mr. Geist, go ahead
8  and take a look at that and --
9          MR. GEIST:  Yeah.  Obviously, I haven't
10  seen it before.  I did want to still have a conference
11  for a few reasons.  And, you know, if we go on the
12  record, I can explain --
13          THE COURT:  Okay.
14          MR. GEIST:  -- other things.
15          But Mr. Gussis wrote a letter to me that
16  was a couple hours ago, shortly after I got a call from
17  you to appear, and I wanted to discuss that letter that
18  he wrote.  You know, it wouldn't be more than a
19  five-minute conference.  But I'd like --
20          THE COURT:  You're talking about the letter
21  of today's date.  I received --
22          MR. GEIST:  Yes.  Basic --
23          THE COURT:  -- from Mr. Gussis.
24          MR. GEIST:  And in there, he makes a
25  suggestion about -- that he wasn't requesting oral

10

1  argument; if I was.  And I was basically --  told Mr.
2  Gussis I wasn't requesting oral argument.
3          THE COURT:  All right.
4          MR. GEIST:  I know this is the FV calendar,
5  but --
6          THE COURT:  Let's go -- let's go in
7  chambers for a short conference.  All right?  We're
8  going to come back out, and then we can address further
9  the text messages that Mr. Gussis has provided to
10  plaintiff's counsel and the Court.
11          Bear with me a moment, as I just review an
12  order from the last matter that we just did.
13          (Whereupon a discussion was held off the
14  record between the Court and staff on a different
15  matter.)
16          THE COURT:  Okay.  Kevin, we're going to go
17  off the record.
18          THE COURT CLERK:  Sure.
19          THE COURT:  Excuse us, Mr. Hadju-Nemeth,
20  for a little bit while the attorneys and the Court go
21  in chambers, and we'll be back out momentarily.  Okay?
22          THE DEFENDANT:  Uh-huh.
23          THE COURT CLERK:  Off record.
24          (Whereupon a short recess is taken.)
25          THE COURT:  All right.  Welcome back to the

11
```
1    Superior Court of Somerset County.  We continue on the
2    matter of Stephanie Messner versus Miklos Hajdu-Nemeth,
3    Docket FD-18-340-01.  We return from an in-chambers
4    conference.  Both counsel are present, along with the
5    defendant.
6                    And I ask plaintiff's counsel whether or
7    not he's had -- has he been able to connect with his
8    client, Ms. Messner.
9                    MR. GEIST:  Your Honor, I briefly did.  She
10   told me she was unavailable.  She told me exactly that
11   there was this physical therapy appointment that she
12   didn't know about, is what she told me.
13                   So she had to cancel the physical therapy
14   appointment, and she was actually at a doctor now for
15   herself and was unavailable to speak and participate.
16   And that's exactly what I was told.
17                   So that's pretty much verbatim, the
18   discussion I had.  I don't know what else I can add to
19   it.  Obviously, we had this conversation on record --
20   off the record in chambers, and if we're proceeding,
21   there's other things I would say just generally about
22   the timeline of all of this.
23                   But that was the conversation since our
24   in-chambers that took place.
25                   THE COURT:  Okay.
```

12
```
1                    MR. GUSSIS:  Mr. --
2                    THE COURT:  Yes, Mr. Gussis.
3                    MR. GUSSIS:  Mr. Hajdu-Nemeth tells me that
4    she has the full schedule, because all the physical
5    therapy sessions are as scheduled --
6                    THE COURT:  Okay.  For the record, we're
7    talking about Alexandra, the daughter's --
8                    MR. GUSSIS:  Right.
9                    THE COURT:  -- physical therapy sessions
10   following her ankle surgery, which was the subject
11   matter of the last appearance --
12                   THE DEFENDANT:  Correct.
13                   THE COURT:  -- here in court, which was
14   also the subject matter of an emergent application for
15   leave to appeal to the Appellate Division, which was
16   denied, and that there was no discussion about Ms.
17   Messner's personal health in any way impeding her
18   ability to be here today.
19                   And now we're being told that the physical
20   therapy session is not occurring?  That it was, in
21   fact, canceled?
22                   MR. GUSSIS:  Correct.  She canceled it.
23   And these physical therapy sessions are on a sheet and
24   they're done periodically, and she knew that it was on
25   her parenting time.
```

13

```
 1              THE COURT:  Well, I'm saying then that
 2    makes no sense in terms of why the plaintiff isn't --
 3    is not available.
 4              Where is the plaintiff in terms of a
 5    medical doctor for any illness that she may have.
 6    Where is she?
 7              MR. GEIST:  Your Honor, she had previously
 8    text messaged a doctor's note that I shared with Mr.
 9    Gussis earlier in the hallway.  I don't know if that's
10    where she was.  She didn't specify that.  So I don't
11    want to represent anything that I don't know.
12              THE COURT:  Is that for --
13              MR. GEIST:  She told me --
14              THE COURT:  Is that for today?  Or is --
15              MR. GEIST:  No.
16              THE COURT:  -- it a prior?
17              MR. GEIST:  It was a prior.  It was a prior
18    one, your Honor.  It was a prior one, and I don't know
19    where she -- she just told me she was at her doctor's
20    office, is what she conveyed.
21              THE COURT:  Well, you know, I'm feeling --
22              MR. GEIST:  So --
23              THE COURT:  I'm feeling a bit suspicious
24    with regard to her unavailability and even by
25    telephone.  I mean, it's one thing that she's not here,
```

14

```
 1    and I'm not pleased with that because, as we did note
 2    in chambers, this application on the plaintiff's side
 3    was filed by her pro se.
 4              All the court notices that have been going
 5    out are going to her.  She knew about today's date, you
 6    know, far enough in advance, number one, and, number
 7    two, to the extent that there may have been a little
 8    confusion with regard to whether it was going to be
 9    April 1st versus March 26th, per your letter, counsel,
10    concerning your availability -- fortunately, the matter
11    -- another matter that you had freed up; you know,
12    resolved itself.  So you freed up, Mr. Geist, for this
13    afternoon, and you're here.  So there's really no
14    excuse, as I see it, on the plaintiff's part.
15              If she's in an examination room or if she
16    was receiving some type of medical treatment, well, of
17    course, you take out that half hour, whatever the block
18    of time might be, as far as her availability goes.
19              But it seems like to me we're engaged in a
20    little hide and seek or that game down at the -- at the
21    arcades and on the boardwalks when our kids were little
22    called Whac-A-Mole.  You know?  And that's -- that's
23    what I feel like I'm doing here with regard to her,
24    popping up when she feels like it.
25              So I think I'm going to have our court
```

15

1    clerk try to get her one more time on the line.  I've
2    left two messages.  If she's available and she picks
3    up, then she can participate and proceed.
4            Otherwise, her attorney is here.  You're
5    familiar with the issues, and we're going to address
6    the issues, because 99 percent of what we're going to
7    do doesn't require any testimony.
8            MR. GEIST:  Understood.
9            THE COURT:  Okay.  Mr. Gussis, are you
10   ready to proceed regardless of whether or not the
11   plaintiff is available by phone?
12           MR. GUSSIS:  Yes, your Honor, I am.
13           THE COURT:  All right.
14           (Phone ringing.)
15           THE COURT:  For the record, Judge Rahill's
16   law clerk is coming in.
17           (Whereupon a discussion was held off the
18   record between the Court and staff on a different
19   matter.)
20           RECORDING:  "Hello.  Nobody is around to
21   answer your call.  Please leave a message at the tone
22   and somebody will get back to you as soon as possible.
23   Thank you."
24           RECORDING:  "Record your message after the
25   tone.  Simply hang up when done, or for delivery

16

1    option, press the pound sign."
2            THE COURT:  Hello, Ms. Messner.  This is
3    Judge Bury again in the Somerset County Superior Court.
4    It's now three minutes to 4.  You were scheduled to
5    appear today at 1:30.
6            Your attorney has conveyed to the Court
7    some text messages or conversation that you've had in
8    the interim.  You indicate you're at some undisclosed
9    physician's office and addressing issues, allegedly,
10   with regard to your own health.  I don't have any
11   verification with regard to same.
12           It seems to me that you should have been
13   present in court or, at a minimum, available via
14   Polycom, and we were willing to accommodate you.
15           Matters here that are remaining, in
16   particular on the defendant's cross-motion, do not
17   require any testimony, and your attorney and Mr.
18   Gussis, on behalf of defendant, are prepared to go
19   forward, and so I'm going to go forward with the
20   matter, and an order will be are entered, and a copy
21   will be provided to your attorney, who will forward
22   same to you.
23           Should you get this call and then opt to
24   participate, communicate with your attorney, call him
25   or text him, and he'll let us know, and we will then

28

```
                                                        17
 1      dial you back up at that time.
 2              Okay.  Thank you, Kevin.
 3              All right.  Did she indicate to you the
 4      name of the doctor's office that she's at?
 5              MR. GEIST:  No.  The prior letter may have
 6      had it, but she didn't say that's where she was, your
 7      Honor.  So she didn't.
 8              THE COURT:  And she had some type of a
 9      respiratory issue?
10              MR. GEIST:  She -- the letter I had
11      previously seen --
12              THE COURT:  No.  But today, your last --
13              MR. GEIST:  No.  I didn't have any letter
14      from today.  The letter I previously saw was a couple
15      weeks ago.
16              THE COURT:  It was a text message today
17      between her, this --
18              MR. GEIST:  I don't even believe it
19      mentions respiratory.  She, she --
20              THE COURT:  No.  But I'm saying --
21              MR. GEIST:  I called her in the hallway.
22              THE COURT:  But your -- the communication
23      you just referenced a moment ago --
24              MR. GEIST:  Yeah.
25              THE COURT:  Was that a phone --
```

```
                                                        18
 1              MR. GEIST:  Phone.
 2              THE COURT:  -- conversation?
 3              MR. GEIST:  Yes.
 4              THE COURT:  Okay.
 5              MR. GEIST:  Yes.
 6              THE COURT:  And so she didn't tell you what
 7      doctor's office that she was at.
 8              MR. GEIST:  No, your Honor.
 9              THE COURT:  But it was for her personally.
10              MR. GEIST:  She specifically said it was
11      for her personally, and that the physical therapy
12      appointment, she said, she canceled because she didn't
13      know about it.  That's what she said.
14              MR. GUSSIS:  Judge, she did pick Alexandra
15      up and she took her to her home.  Just so you're aware
16      of that.  She did do the pickup, as she said in the
17      text --
18              THE COURT:  Well, today is a Tuesday, which
19      is her customary --
20              MR. GUSSIS:  Right.
21              THE COURT:  -- parenting time day.
22              MR. GUSSIS:  Right.
23              THE COURT:  Well, all right.  So let's go
24      through the relief that was requested by the plaintiff
25      and then go on to the cross-motion, an application of
```

29

19

1    the defendant.
2            So plaintiff requests that the COLA
3    increase that was utilized in this case and was entered
4    after a one-year wait period rather than the customary
5    two-year biannual review, the Court is going to deny
6    same in light of the nominal amount that impacts the
7    amount of the child support.
8            Again, Mr. Gussis, which is presently how
9    much per week?
10           MR. GUSSIS:   Three dollars, Judge.  It was
11   --
12           THE COURT:   No, no, no.  I mean, three
13   dollars was the increase on top of the --
14           MR. GUSSIS:   82.
15           MR. GEIST:   I think 82 --
16           THE COURT:   82.
17           MR. GEIST:   -- into 85.
18           MR. GUSSIS:   So it's 82.
19           THE COURT:   82.  It's right in your
20   pleadings, sir.  It's on page 1 of your pleadings,
21   paragraph 1.  Current order is 82 per week.  Thank you.
22           The second point of relief then intertwined
23   is a credit to plaintiff, the COLA increase, to be paid
24   back in the form of a check for -- oh, that's it -- of
25   course denied in light of the denial on point one.

20

1            Number three, seeking to decrease child
2    support payments.  The plaintiff has failed to even
3    comply with the requirements of the Judgment of Divorce
4    concerning a financial documentation as to income and
5    assets, case information statement, etcetera.
6            So on what basis can she legitimately seek
7    such relief when she has not complied with the prior
8    judgment and the necessity for updated current
9    financials?  Therefore, it's denied without prejudice.
10           Number four point of relief is to enforce
11   makeup parenting time.  All of the issues with regard
12   to parenting time, on both sides, is really supposed to
13   be driven through the tunnel, so to speak, of the
14   parent coordinator.  Everything is supposed to be
15   funneled through the PC, and that hasn't happened since
16   the initial parenting coordinator has been off the
17   scene for a good three-plus years; right?  Ms.
18   Shimalla.
19           And my last order, which is February 5,
20   2019, appointed Laurie Poppe to serve in that capacity
21   as the successor parent coordinator if, by February 12,
22   2019, the parties could not agree upon the new parent
23   coordinator.
24           And I've been advised by virtue of letter
25   of Mr. Gussis, dated March 26, 2019, that plaintiff,

30

21

1 Ms. Messner, has not engaged Ms. Poppe as required
2 under my order, and the defendant has reached out and
3 performed his responsibilities with regard thereto.
4          Is that correct, Mr. Gussis?
5          MR. GUSSIS:  That's correct, your Honor.
6          THE COURT:  Okay.  Mr. Nemeth --
7          THE DEFENDANT:  That's correct.
8          THE COURT:  -- you've done it.  Okay?
9          And so you have no information from your
10 client or Ms. Poppe to confirm that she's done her job
11 so to speak.
12          MR. GEIST:  Your Honor, I can say I spoke
13 with her yesterday in reminding of this court date and
14 the confusion and everything I went over in chambers
15 with the April 1st and everything else, and I can
16 confirm that she had not engaged with Ms. Poppe.
17          She mentioned a lot of communication on
18 Family Wizard.  She had mentioned --
19          THE COURT:  Yes.  We should note for the
20 record in a positive -- on a positive note that the
21 Court ordered the parties to now communicate through
22 Family Wizard except for emergencies, and the exception
23 is noted in the order, and the parties are now doing
24 that.
25          MR. GEIST:  And, as I mentioned in

22

1 chambers, she mentioned a financial issue of not being
2 able to pay for the services.
3          I suggested to Ms. Messner that a lot of
4 these issues that she's bringing up -- you know, she's
5 making allegations of makeup parenting time and loss of
6 parenting time and loss of parenting time after the
7 surgery -- would be issues that the parent coordinator
8 could hopefully assist her with.  So that's the
9 communication that I had.
10          THE COURT:  Okay.  On the financial front,
11 at the time that the Court was appointing the successor
12 parent coordinator in the absence of agreement by the
13 parties and -- I further ordered that -- it says:
14 Parties will share the cost on a 50/50 basis, which is
15 consistent with the July 25, 2017 Judgment of Divorce
16 from Judge Mawla.
17          I didn't hear Bo Peep from the plaintiff
18 with regard to any inability to pay.  So her comments
19 to you most recently with regard to same, I am
20 rejecting because she never raised that issue at the
21 time of the February 5, 2019, and I am not aware of any
22 economic change of circumstances in the interim, which
23 would remove her ability to pay and/or impair her
24 ability to pay.
25          Okay.  So denied as to her request to

31

23

1    enforce makeup parenting time.  She and defendant may
2    address such issues with the parent coordinator, and
3    the parent coordinator will adjudicate -- with quotes
4    around that word -- accordingly.  Will assist the
5    parties accordingly.
6            Number five, hold the defendant in contempt
7    of court for continued violations of the children and
8    plaintiff's rights to liberal parenting time, I don't
9    find by a preponderance of the credible, reliable
10   material and relevant documentary evidence in the
11   pleadings and/or anything as to which the parties
12   testified at the prior proceeding which would suggest
13   any such willful violation on defendant's part.
14           And, once again, this is part and parcel of
15   taking these parenting-time issues through the parent
16   coordinator, and that's not happening on plaintiff's
17   side of the equation.
18           Number six is seeking intervention to
19   restrain the defendant from interfering or withholding
20   or showing up on plaintiff's parenting time.
21           Again, this is a parent coordinator issue,
22   and the plaintiff has not demonstrated to this Court's
23   satisfaction that the defendant is in any way
24   interfering or withholding or showing up -- withholding
25   parenting time and/or showing up on plaintiff's

24

1    parenting time and intruding upon her private parenting
2    time with the kids.
3            Number seven, grant plaintiff makeup time
4    as per the July 25, 2017 court order, quote, hour-
5    for-hour, day-for-day, unquote.  Once again, this
6    circles back and is tied into the parent coordinator
7    issue and should be addressed accordingly.
8            Now, going onto the cross application of
9    the defendant, he requests that the plaintiff be held
10   in violation of litigant's rights for failure to comply
11   with the Judgment of Divorce dated July 25, 2017 in a
12   specific number of areas.
13           First, failure to pay child support
14   pursuant to paragraph 9.  The plaintiff may be in
15   arrears with regard to child support.  It's
16   approximately in the $3,000 range, but she is actively
17   paying child support.  And given the amount of the
18   arrears presently due and owing, I don't find either,
19   A, a willful failure to pay at all, and I do not find a
20   substantial amount of arrears having accrued because of
21   large gaps in time of any payment whatsoever.
22           With regard to the failure to provide
23   income documentation pursuant to paragraph 10 of the
24   JOD, I do find her to be in violation of litigant's
25   rights because she has not complied with same in -- as



25

```
 1    I've noted in some earlier comments touching upon
 2    plaintiff's requested relief.
 3              Failure to pay parochial school tuition
 4    pursuant to paragraph 7 of the JOD, she has not done
 5    so.  Therefore, I find her to be in violation of
 6    litigant's rights as to same.
 7              Failure to address are parenting issues to
 8    the parenting coordinator pursuant to paragraph 3, yes,
 9    she's also in violation thereof, and particularly, most
10    recently, by the simple failure to even sign the
11    retainer agreement with Ms. Poppe and pay her 50
12    percent share of the required retainer regardless of
13    whatever the past history may or may not have been with
14    the parenting coordinator, Ms. Shimalla.
15              With regard to failure to cease, discuss
16    the litigation with or disparaging the defendant to the
17    parties' daughters, I'm not satisfied by a
18    preponderance of the evidence that that is so.  I'm not
19    saying it hasn't occurred to a certain degree.  But
20    from the perspective of violation of litigant's rights,
21    I'm going to respectfully deny that request.
22              With regard to the failure to file for
23    their daughters -- it was both daughters originally.
24    Now, given the passage of time, the oldest daughter,
25    Olivia, has aged out.  She's over 18.  So it's
```

26

```
 1    irrelevant as to her.
 2              But it is true with regard to her failure
 3    to execute the necessary passport application papers
 4    provided to her and/or sign them herself and supply
 5    them to the defendant at least as it relates to
 6    Alexandra, the youngest daughter, who is now
 7    14-and-a-half, and so I do find her to be in violation
 8    of litigant's rights as to that allegation.
 9              And to avoid further orders concerning
10    enforcement that are kind of getting on a carousel and
11    going around and around with nothing getting
12    accomplished, I am going to grant the defendant limited
13    power-of-attorney on behalf of the plaintiff, and
14    neither her consent nor written authorization is
15    necessary for him to obtain a passport on behalf of
16    Alexandra, and he may do so forthwith.
17              As I said, Olivia is over 18 years of age.
18    She can apply for and obtain a passport for herself as
19    she may choose as a legal adult.
20              The next point of relief on the defense
21    side is a request to suspend all the plaintiff's
22    parenting time with the parties' daughter until the
23    plaintiff addresses her perceived parenting issues with
24    the parenting coordinator as provided in the judgment
25    of 7-25-17.
```

33

27

```
 1              Let me say this.  I feel like, visually,
 2   I'm a seesaw.  I could go either way with regard to
 3   this particular issue.  Because of the importance of
 4   parenting time in any case and my desire for mom to
 5   still continue to have a relationship with her
 6   daughters, but in particular the minor child,
 7   Alexandra, over whom the Court still has authority
 8   today, but without prejudice to any future application
 9   by the defendant, I'm not going to suspend her
10   parenting time even for midweek, not overnight
11   parenting time on the weekends, but it's with the
12   warning that if she doesn't get in the saddle and sign
13   up with that parenting coordinator and start doing
14   what's necessary for both parties to more effectively
15   co-parent through the assistance of the parenting
16   coordinator and the defendant has to come back on a
17   future application, then I may be so inclined to
18   suspend maybe at least some part of her parenting time
19   until she gets the message, so to speak, and starts
20   doing what she's supposed to do that's to the benefit
21   of Alexandra and their -- and her parents.
22              Yes, sir?
23              MR. GUSSIS:  Judge, could you give a time
24   period to give her a second chance now to sign up?
25              THE COURT:  Well, if she doesn't do it
```

28

```
 1   within the next 30 days, then I mean that to me --
 2   enough's enough.  Okay?
 3              So I'm saying that, to me, would be a more
 4   than sufficient additional reasonable period of time to
 5   do so, and if it didn't happen and the defendant then
 6   filed a separate application in that regard, I would
 7   feel that that was a sufficient period of time in my
 8   mind.  Okay?
 9              And depending upon what I hear at the time
10   of the motion, but it's pretty much -- it's the same
11   that we're -- we are here today and she took no steps,
12   I've got to do something to get her attention, and
13   maybe it starts with eliminating midweek parenting
14   time.
15              Okay.  With regard to the request of the
16   defendant to permit the parties' daughters, plural --
17   that would be Olivia and Alexandra -- to address their
18   parenting issues that they have with the plaintiff, to
19   discuss same with the parenting coordinator, I first
20   indicate that this Court has no legal authority over
21   Olivia.  She's an adult.  She's over 18 years of age.
22   She will make her own decisions with regard to when and
23   if she will -- I should say if and when she will have
24   interaction with her mom.
25              As to Alexandra, I will leave it to the
```

34

29

1   discretion of the parent coordinator as to whether or
2   not she would like to speak with Alexandra about any
3   issues Alexandra has with either parent in formulating
4   recommendations for the parents and Alexandra as it
5   relates to parenting time.
6           The next point of relief is to restrain the
7   plaintiff from taking the cell phones of, in this case
8   Alexandra only or interfering with their recording
9   of any conversations that plaintiff has with, in this
10  case, Alexandra.
11          I don't see any reason why Alexandra
12  shouldn't be permitted to keep her cell phone -- I mean
13  absent mom removing it from her for purposes of any,
14  you know, disciplinary reasons.  Sometimes we do that
15  with our children, take away their electronics.
16          As far as recording, I really don't like
17  any child recording a parent unless they're recording
18  behavior which is what I would consider to be
19  outrageous, abusive or would demonstrate some type of
20  neglect.
21          So, I mean, in short, I'm going to deny
22  your request with regard to any absolute restraint, and
23  you have my comments on the record with regard to the
24  boundaries within which customary use of the cell phone
25  should be made available to Alexandra.

30

1           The next point of relief is to recalculate
2   child support by imputing income to the plaintiff
3   pursuant to the New Jersey Department of Labor's mean
4   wage income of $80,210, which is the Schedule O
5   attached to defendant's pleadings.  At this point in
6   time, I don't have an updated case information
7   statement from the plaintiff and tax returns.  So I'm
8   simply going to deny that without prejudice.
9           But I'm going to, as I get further down
10  these points of relief, order her to provide an updated
11  case information statement with certain tax returns and
12  related attachments, and we'll get to that in a moment.
13          The next point of relief is to restrain the
14  plaintiff, except in emergent circumstances, from
15  utilizing out-of-network health care providers, and
16  that's granted.
17          Next one is modifying paragraph 11 of the
18  7-25-17 judgment to allow the defendant to claim both
19  daughters as his legal dependents for tax purposes in
20  any year where plaintiff is not current in her child
21  support by December 31.
22          I will grant that, but I do note, with the
23  recent change in the tax law, there may or may not be a
24  benefit to you, sir.  It's my understanding from a
25  recent seminar that it's only available for children

35

31

```
 1    under 17 years of age.  So go talk to your accountant,
 2    and this is not -- I'm not giving tax advice --
 3                 THE DEFENDANT:  No.  I gotcha.
 4                 THE COURT:  But to the extent it's
 5    available to you, eligible to you, to whatever extent
 6    you may be assisting for college -- you know, that's
 7    another separate tax deduction, and you get a different
 8    form from the college in that regard.  To the extent
 9    you're assisting on college, you'll be able to take
10    advantage of that tax benefit also.
11                 But you may claim both as your dependents
12    if mom is not current with her child support by
13    December 31 of each tax year.
14                 Okay.  Next item is directing the plaintiff
15    to pay defendant $1,204.17 for his overpayment of child
16    support while the plaintiff was the parent of -- you
17    meant alternate residence?  Because you say primary
18    residence.
19                 MR. GUSSIS:  Well, she was still primary
20    residence.
21                 MR. GEIST:  Your Honor, my client --
22                 MR. GUSSIS:  But she didn't have custody of
23    the children.
24                 MR. GEIST:  -- previously had custody.
25                 MR. GUSSIS:  They were with him.
```

32

```
 1                 MR. GEIST:  My client previously had
 2    custody before Judge Mawla's order --
 3                 THE COURT:  Oh, of course.
 4                 MR. GEIST:  -- and was receiving child
 5    support from the defendant.
 6                 THE COURT:  Okay.
 7                 MR. GEIST:  That it was essentially
 8    retroactively --
 9                 THE COURT:  He --
10                 MR. GEIST:  -- modified.
11                 THE COURT:  Right, because -- because there
12    was not a new order entered.  It was a de facto dad was
13    the PPR; mom was the PAR at an earlier point in time.
14    It became de jure by virtue of a subsequent
15    order/judgment.
16                 And so there was a time period wherein dad
17    should have been receiving child support from mom
18    rather than the other way around and that's -- now, I
19    have it correctly right -- stating, Mr. --
20                 MR. GEIST:  You have it correct.  My client
21    would want me -- because I have discussed this, not
22    just yesterday, but I've discussed this throughout my
23    involvement in the other matters.
24                 I know my client would want me to state
25    that her position was there was a court order that she
```

36

33
1   was supposed to have the children during that time, and
2   at the time, the defendant was essentially in violation
3   of that court order because it wasn't changed until
4   Judge Mawla's judgment.
5            So it would be rewarding -- even though he
6   did physically have the children, there's no dispute of
7   that, her strong position on that would be he's
8   essentially being awarded for self-help by taking the
9   children when the order said she was supposed to have
10  the children, and then Judge Mawla's judgment changed
11  it retroactively.
12            Just to add that --
13            THE COURT:  But the date to which he
14  changed it retroactively --
15            MR. GEIST:  I think it was --
16            THE COURT:  -- triggers the 12-04-17.  Is
17  that the point?
18            MR. GEIST:  I mean, it basically triggers
19  it to the date that he filed the motion; right?  The
20  date that he filed the motion asking for the --
21            THE COURT:  Well, but Judge Mawla should
22  have set the effective date.  Whatever the effective
23  date was should be the controlling date.  So --
24            MR. GUSSIS:  And that's what created this
25  overpayment.

34
1            THE COURT:  Okay.
2            MR. GUSSIS:  And the Probation Department
3   had confirmed the overpayment.
4            THE COURT:  Okay.  Noella (phonetics), you
5   were standing.  Was there something that you wanted to
6   add to that?
7            COURT STAFF:  Yes, Judge.  A probation
8   officer from Family Case Management just advised me
9   that Ms. Messner is on the phone with him.
10            THE COURT:  Okay.  Let's dial -- is she --
11  she's available or she's trying to call in or --
12            COURT STAFF:  No.  I can actually let him
13  know that we're going to --
14            THE COURT:  We'll call her right now.
15            COURT STAFF:  -- call her.
16            THE COURT:  We'll call her now.  Call her
17  now.
18            And, obviously, Mr. Geist, I'm going to
19  advise her that I'm not going to go back and --
20            MR. GEIST:  Of course.
21            THE COURT:  -- and summarize what we
22  already did up to this point in time.  It would be up
23  to you to do that, or she can get --
24            MR. GEIST:  Of course.
25            THE COURT:  -- for $10 a disc from the

31

35

```
1    proceeding.
2              Go ahead, Kevin.
3              THE COURT:  I have a commitment at 5:00,
4    too.  But, of course.
5              THE COURT:  You have a 5:00 appointment?
6              MR. GEIST:  Yes, but it's okay.  So --
7              THE COURT:  Okay.
8              MR. GEIST:  I just meant there's no way we
9    could go through all the --
10             THE COURT:  Regardless.  I'm just saying I
11   wouldn't do that in any case.  Rely upon counsel, rely
12   upon the -- the recording that only costs $10.
13             (Phone ringing.)
14             THE PLAINTIFF:  Hello?
15             THE COURT:  Hello, Ms. Messner?
16             THE PLAINTIFF:  Yes.
17             THE COURT:  Okay.  Now, for the record,
18   it's 4:22.
19             THE PLAINTIFF:  (Indiscernible) -- Judge
20   Bury?  You left ten messages on my phone --
21             THE COURT:  No.  I left three messages, not
22   ten messages.
23             THE PLAINTIFF:  Okay.
24             THE COURT:  Three.
25             THE PLAINTIFF:  I said -- I said three
```

36

```
1    messages you left on my answering machine.
2              I was in a doctor's appointment.  I've been
3    sick all week.  I have a blood pressure of 150 over 101
4    and a low-grade fever.
5              I'm asking you why (indiscernible) a court
6    date that I received no notice on, that as far as I was
7    aware, there was a court date scheduled or supposed to
8    be scheduled for April 1st.  (Indiscernible).
9              THE COURT:  Ms. -- Ms. Messner --
10             THE PLAINTIFF:  Tell me where the
11   notification (indiscernible).  Aren't I supposed to be
12   notified that there was a hearing that was being --
13   (indiscernible).
14             THE COURT:  Ms. Messner -- Ms. Messner --
15   Ms. Messner, what's your home --
16             THE PLAINTIFF:  (Indiscernible).
17             THE COURT:  -- what's your home address,
18   ma'am?
19             THE PLAINTIFF:  My house address is 447 4th
20   Avenue, Garwood, New Jersey 07027.
21             THE COURT:  Ms. Messner, we've been sending
22   notices -- the Family Case Management has been sending
23   notices to you at 7 Franklin Street in Somerset, New
24   Jersey.  Okay?
25             You've gotten other notices for prior court
```

38

37

```
 1    appearances.  Mr. Geist was --
 2              THE PLAINTIFF:  Hold on.  Hold on.
 3              THE COURT:  Mr. Geist --
 4              THE PLAINTIFF:  Wait a second.  Wait a
 5    second.
 6              THE COURT:  You hold on a sec -- you hold
 7    on a second and let me finish.
 8              THE PLAINTIFF:  (Indiscernible).
 9              THE COURT:  Let me finish what I want to
10    say on the record about everybody getting notices for
11    today.  Okay?
12              Your attorney, Mr. Geist, was mailed a
13    notice on February 13, 2019, advising that this matter
14    was being heard today, not April 1st.  Today, March 26,
15    at 1:30 p.m., sent to him at his law office, 25 Main
16    Street, Suite 203, Geist Law, in Hackensack, New
17    Jersey, as was Mr. Gussis, the attorney for the
18    defendant, also on February 13, 2019.
19              Your attorney was on notice, and you were
20    sent a notice for today's date at 1:30 at 7 Franklin
21    Street in Somerset.
22              THE PLAINTIFF:  I don't (indiscernible) --
23              THE COURT:  And the defendant was sent the
24    same notice --
25              THE PLAINTIFF:  That's not my address.
```

38

```
 1              THE COURT:  -- at his address in Somerset.
 2              MR. GEIST:  If I may --
 3              THE PLAINTIFF:  That's not my address.  My
 4    address is not 7 Franklin in Somerset.  I live
 5    (indiscernible) since 2015, and I have notices from
 6    every other -- for every court date, and I was never
 7    got one from this one.  This one, I had to get in court
 8    the 1st.
 9              And, second of all, the (indiscernible) the
10    motion on December 18th, 2018 was supposed to be
11    addressed on February 5th.
12              Now we're dealing with transfer of custody
13    over to me because Miklos' bad cooperation and
14    inability to co-parent and because he's refusing me
15    makeup time and (indiscernible).
16              And I have a transcript of that hearing,
17    which I believe my attorney has to show you, and on
18    that transcript, it says (indiscernible) --
19              MR. GEIST:  Your Honor, if I may interrupt
20    my client.
21              THE COURT:  Yes.
22              THE PLAINTIFF:  (Indiscernible) --
23              THE COURT:  Your attorney -- your attorney,
24    Mr. Geist, is asking to speak.
25              Go ahead.
```

39

1          MR. GEIST:  Your Honor, I just wanted to
2   clarify the record on a couple of things.  Obviously,
3   Ms. Messner doesn't know what happened prior, where we
4   went through and addressed some of -- or most of all of
5   what was in her motion that wasn't addressed the last
6   time.
7          But I just wanted to state for the record,
8   in regard to the services, an Officer of the Court, and
9   as I communicated in chambers to your Honor, that I --
10  despite the mailing that your Honor listed, I don't
11  know for whatever reason why, but I did not receive
12  that court notice.  I did receive a fax from Mr.
13  Gussis, a couple-sentence fax as I indicated,
14  mentioning this date.
15         My office's calendar did have it for April
16  1st, as I explained in the letter I sent to your Honor,
17  and I had that plenary hearing.  I was away last week.
18  I had the plenary hearing.  It did get settled.  I'm
19  here today.
20         And Mr. Gussis' letter was really my
21  information on that, but I, for whatever reason -- I
22  don't know if it matters, but for whatever reason, I
23  wanted to state that about the court notice.
24         And last night is when I was basically
25  having the conversation with Ms. Messner, straightening

40

1   that out, and my office had made some --
2          THE COURT:  Yesterday, when you spoke with
3   her, you were expecting her to appear today; correct?
4          MR. GEIST:  That was the information, your
5   Honor.
6          THE COURT:  Correct.  And then -- and then
7   --
8          MR. GEIST:  I just wanted to clarify that
9   --
10         THE COURT:  And then --
11         MR. GEIST:  What?
12         THE COURT:  -- she had a medical issue
13  today that she alleges.
14         THE PLAINTIFF:  Your Honor, I
15  (indiscernible) --
16         MR. GEIST:  She -- she told me about --
17         THE PLAINTIFF:  (Indiscernible) --
18         MR. GEIST:  She gave me a doctor's note
19  yesterday from March 21st.
20         THE PLAINTIFF:  (Indiscernible) supposed to
21  go to work (indiscernible) with no income coming in.
22         THE COURT:  You have no income?
23         THE PLAINTIFF:  (Indiscernible) --
24         THE COURT:  I'm sorry.  You said you have
25  no --

40

41

```
 1                THE PLAINTIFF:  If I don't -- if I don't
 2    work, I don't get paid.  I don't get sick days.  I
 3    don't have those kind of benefits.  So I was out of
 4    work for like a week -- for a week now and a half with
 5    no income coming in.
 6                And so I only learned about this hearing --
 7    it was late last night, and I had a doctor's
 8    appointment to get medical clearance.  I'm on
 9    antibiotics.  I am sick.  There's one doctor's note
10    (indiscernible), and I have another one that has to
11    (indiscernible).
12                I'm asking your Honor for an adjournment so
13    that I could be there to face you and to face Miklos,
14    because this case is going to Miklos' motion, his
15    cross-motion, where he wants me to pay this medical
16    bill.
17                Do you know on the -- when I left the one
18    hearing on February 5th, your Honor, do you know I had
19    to find out from one of my patients early in the
20    morning that my daughter, oldest daughter, was in a car
21    crash --
22                THE COURT:  Ms. -- Ms. Messner --
23                THE PLAINTIFF:  -- and I find out
24    (indiscernible) --
25                THE COURT:  Ms. Messner, there is no -- Ms.
```

42

```
 1    Messner, there's no request for reimbursement of
 2    medical expenses in the defendant's motion.  There's no
 3    request for that.
 4                There's a request for you to comply with
 5    the Judgment of Divorce from July 25th, 2017 about
 6    things such as, first and foremost, sign up for the
 7    parenting coordinator.  I've already ordered you to do
 8    that back on --
 9                THE PLAINTIFF:  I know.  I don't have the
10    money right now.
11                THE COURT:  -- on February -- on February
12    5, 2019.  There's no request -- there's a request --
13                THE PLAINTIFF:  (Indiscernible).  I don't
14    -- you can't get milk from a stone.  I don't have the
15    money.  She wants a $5,000 retainer.
16                I asked Miklos -- I've been asking him and
17    his attorney for a doctor (indiscernible), who worked
18    with me to help me be able to pay for a parenting
19    coordinator, who's a medical professional.
20                I get no response from the attorney, from
21    Mr. Gussis.  I get no response from Miklos.  Okay?  No
22    response.  That is the status quo of the co-parenting.
23    Okay?
24                So even if we had a co-parent -- a parent
25    coordinator, I don't know how that would help when he's
```

43

```
 1   refusing to even talk.  I have messages on the Wizard.
 2   I'm inviting you to please go onto the Wizard so you
 3   can see the level of acrimony of Miklos trying to
 4   extricate me from our children.  I -- I'm begging you
 5   to go on it.
 6               THE COURT:  Okay.
 7               THE PLAINTIFF:  I paid for that, your
 8   Honor.
 9               THE COURT:  Ma'am --
10               THE PLAINTIFF:  I paid for that, for his
11   too, for a year.
12               THE COURT:  Okay.  Ma'am, here's what we're
13   doing.  Okay?  I'm continuing with the hearing.  I'm
14   going down through the remainder of the relief.  There
15   are -- these are uncontroverted facts -- okay?
16               THE PLAINTIFF:  Uh-huh.
17               THE COURT:  -- based upon the pleadings
18   that have been filed by the parties.  I don't need
19   testimony with regard to any of these issues.  Okay?
20   Your attorney --
21               THE PLAINTIFF:  Well --
22               THE COURT:  -- will be able to summarize
23   for you -- and there will be an order with regard to
24   what I've ordered up to this point in time.  You
25   continue on the line and listen to the remainder of the
```

44

```
 1   hearing.
 2               For $10, you're able to get a disc of the
 3   proceeding, and you can hear everything that was said
 4   up to this point in time.
 5               If you decide that you want -- you're
 6   unsatisfied with any aspect of today's order --
 7               THE PLAINTIFF:  (Coughing.)
 8               THE COURT:  -- you are capable of filing a
 9   motion for reconsideration, which you must do within 20
10   days.
11               THE PLAINTIFF:  All right.
12               THE COURT:  To whatever extent you may or
13   may not -- okay? -- be at a doctor's office and/or
14   receiving any medical treatment, it would be
15   appropriate in such a case that you provide medical
16   documentation with regard to same.  Okay?  Your
17   attorney will discuss that with you.
18               THE PLAINTIFF:  Okay.
19               THE COURT:  Now, moving onto the next point
20   of relief --
21               THE PLAINTIFF:  Well, I just want to ask
22   one thing before you go on.
23               My complaint and my motion that I had filed
24   on 12-18-18 was never addressed.  Now, when am I going
25   to get a hearing (indiscernible) --
```

42

45

```
 1              THE COURT:  It's been addressed earlier --
 2   ma'am, it's been addressed earlier today.  That's part
 3   of the relief that I've entered.  You will see it as
 4   part of the order.  Your attorney will summarize it for
 5   you later.  Okay?
 6              I am not going to repeat a half-an-hour or
 7   more worth of decision making --
 8              THE PLAINTIFF:  Right, but I have a right
 9   --
10              THE COURT:  -- up to this point in time.
11              THE PLAINTIFF:  -- to be there.  I have a
12   right to be there and face my accusers.  I have a right
13   to be there --
14              THE COURT:  There's no --
15              THE PLAINTIFF:  -- at any hearing that
16   involves --
17              THE COURT:  There's no testimony that's
18   being taken from the defendant with regard to these
19   issues.  They're uncon --
20              THE PLAINTIFF:  Well, there should be --
21              THE COURT:  Okay.
22              THE PLAINTIFF:  -- because he's --
23              THE COURT:  Ma'am --
24              THE PLAINTIFF:  There should be, your Honor
25   --
```

46

```
 1              THE COURT:  Ma'am --
 2              THE PLAINTIFF:  I don't want to argue with
 3   you, your Honor.  I'm respectfully asking you that I be
 4   able to address that motion since -- so that I don't
 5   have to repeat and refile another motion and so Miklos
 6   decided --
 7              THE DEFENDANT:  She won't stop.
 8              THE PLAINTIFF:  -- to punish me out of
 9   basic fundamental (indiscernible) of major medical
10   decisions, on major medical (indiscernible) --
11              THE COURT:  There are no medical decisions
12   -- there's no issue about medical decision-making
13   before the Court today.  That narrow --
14              THE PLAINTIFF:  (Indiscernible) --
15              THE COURT:  That narrow -- please let me
16   finish.
17              THE PLAINTIFF:  No.
18              THE COURT:  That narrow issue as it related
19   to surgery for Alexandra was already adjudicated at the
20   February 5, 2019 hearing.  You filed --
21              THE PLAINTIFF:  (Indiscernible).
22              THE COURT:  You filed an application --
23              THE PLAINTIFF:  (Indiscernible).
24              THE COURT:  Please stop talking the same
25   time I am.  I will allow you to respond.  Okay?  I'm
```

43

47
```
 1   setting forth on the record why you are incorrect with
 2   regard to issues of medical decision-making being
 3   decided here today.  Incorrect, wrong.  Decided on
 4   February 5, 2019.
 5               Your attorney asked for a stay of that
 6   decision to prevent Alexandra from having the surgery
 7   on her ankle, as I authorized.  He then filed, on an
 8   emergent-application basis, for leave to file an
 9   appeal, which was denied by the Appellate Division.
10               You now -- counsel has advised me through a
11   letter yesterday or today that you have requested and
12   had filed a petition for certification before our New
13   Jersey Supreme Court.
14               Before me today, there are no -- I repeat
15   -- no remaining medical or medical authorization issues
16   before this Court.
17               Now, what did you want to say --
18               THE PLAINTIFF:  What I --
19               THE COURT:  -- about that issue only.
20               THE PLAINTIFF:  What I would like to say
21   was all before the surgery.  That's all he wants.  He's
22   been making medical decisions without my knowledge
23   (indiscernible) --
24               MR. GEIST:  Your Honor, I would advise my
25   client not to continue along --
```

48
```
 1               THE PLAINTIFF:  (Indiscernible) --
 2               THE COURT:  -- this line, and I --
 3               THE PLAINTIFF:   -- and the joint custody
 4   agreement.
 5               MR. GEIST:  I would advise my client --
 6               THE PLAINTIFF:  He also (indiscernible) --
 7               MR. GEIST:  -- not to continue along this
 8   line.  I further --
 9               THE PLAINTIFF:  -- parochial high school.
10   That I'm upset (indiscernible) --
11               MR. GEIST:  I would further advise her --
12               THE PLAINTIFF:  Everything that he wants
13   that took place --
14               THE COURT:  Okay.  Ma'am --
15               MR. GEIST:  Yeah.  I --
16               THE PLAINTIFF:  (Indiscernible).
17               THE COURT:  Ma'am, your attorney is --
18               THE PLAINTIFF:  (Indiscernible).
19               THE COURT:  Your attorney -- okay.  So I've
20   now verified again there's no medical decision-making
21   issues before the Court today.  I have taken no
22   testimony --
23               THE PLAINTIFF:  What about Olivia's car
24   crash? --
25               THE COURT:  -- from the defendant.
```

49

```
 1              THE PLAINTIFF:  What about Olivia's car
 2    crash?
 3              MR. GEIST:  Your Honor --
 4              THE PLAINTIFF:  (Indiscernible) --
 5              THE COURT:  Olivia's car crash is not an
 6    issue before the Court today.  You are talking --
 7              THE PLAINTIFF:  Yes, it is.  It is --
 8              THE COURT:  It is not --
 9              THE PLAINTIFF:  You know why it is?
10    Because --
11              THE COURT:  It is not before the Court.
12    There is nothing --
13              THE PLAINTIFF:  (Indiscernible) --
14              MR. GEIST:  Your Honor, I would advise my
15    client to --
16              THE PLAINTIFF:  It is before the Court
17    because my motion that I filed states that this was --
18    one of the biggest complaints was he leaves me out of
19    any -- anything that's pertinent and relevant to the
20    welfare of our children, and that's a major medical
21    decision, when she was in-patient hospital with
22    seizures and he didn't tell -- let me know about it.  I
23    had to find out from a parent -- oh, not a parent.  My
24    daughter's wrestling coach, your Honor.  She's a -- my
25    patient.
```

50

```
 1              That is inappropriate, unacceptable.  That
 2    violates the joint custody agreement.
 3              THE COURT:  All right.
 4              THE PLAINTIFF:  If you think it's okay for
 5    --
 6              THE COURT:  If you -- if you think --
 7              THE PLAINTIFF:  -- to have my daughter in a
 8    car crash --
 9              THE COURT:  Ms. Messner --
10              THE PLAINTIFF:  -- and he doesn't tell
11    about it.
12              THE COURT:  If you think -- if you think
13    that there needs to be a change in medical decision-
14    making authority between you and the defendant, then
15    you need to file a motion before the court to address
16    same.
17              That is not -- I repeat.  That is not an
18    issue before this Court with regard to this hearing
19    today, nor --
20              THE PLAINTIFF:  What about the transfer of
21    custody?
22              THE COURT:  Ma'am, that's not -- there's no
23    transfer of custody issue here.
24              THE PLAINTIFF:  Yes.  That was my request.
25    That was --
```

51
```
1              THE COURT:  No.
2              THE PLAINTIFF:  That's what the 12-18-18
3     motion was about, transferring custody based on Mill
4     versus Frieberg (phonetics) and Nufrio --
5              THE COURT:  Okay.
6              THE PLAINTIFF:  -- versus Nufrio.  That was
7     certainly what I was trying to have adjudicated before
8     you on February 5th.
9              THE COURT:  Well, I'm not transferring
10    custody, ma'am.  There is no -- I'm not ordering a
11    plenary hearing.  There's no substantial and permanent
12    change with regard to the relationship of these
13    children to their parents, and anything that's going --
14             THE PLAINTIFF:  There is a significant
15    (indiscernible) --
16             THE COURT:  I do not --
17             MR. GEIST:  Your Honor --
18             THE COURT:  -- so find.  Okay?
19             MR. GEIST:  Your Honor, if I may, I just --
20    I don't want to go through everything that happened, as
21    we discussed before.  It would be impossible.  I'm
22    going to share the recording with my client.
23             But I wanted my client to know a lot of
24    this has been discussed, and I wanted her to -- I was
25    advising her to stop along those lines because some of
```

52
```
1     the decisions have gone in her favor, and I don't want
2     the Court to reconsider anything.
3              And I wanted my client to know that one of
4     these requests was to suspend her parenting time and
5     your Honor denied that request.
6              THE COURT:  That's correct.
7              MR. GEIST:  And I wanted her to know --
8              THE COURT:  There was a request by the
9     other side to deny -- to suspend your parenting time
10    because you haven't followed the judgment of Judge
11    Mawla, July -- since July 25 of 2017 and even my own
12    order of February 5, 2019 as it relates to signing up
13    for the parent coordinator.
14             THE PLAINTIFF:  But, your Honor --
15             THE COURT:  But I denied that.
16             THE PLAINTIFF:  -- if I don't have money,
17    what recourse do I have?  That's bullying me.
18             THE COURT:  You never said anything --
19             THE PLAINTIFF:  I said I have no money.
20             THE COURT:  You never raised any issue
21    about inability to pay the retainer when you were here
22    on February 5 --
23             THE PLAINTIFF:  Yes, I did.
24             THE COURT:  -- 2019.
25             THE PLAINTIFF:  Yes.  I have the
```

53

```
 1    transcript, Jared.  Show him the transcript where I
 2    said that that -- that the law firm Judge Mawla ordered
 3    wanted a $10,000 retainer and that I have no ability to
 4    pay it.
 5              THE COURT:  Well, the law firm --
 6              THE PLAINTIFF:  Show him the transcript
 7    where I said that.
 8              THE COURT:  -- that Judge Mawla appointed
 9    is no longer in the case.  That's Ms. Shimalla is no
10    longer --
11              THE PLAINTIFF:  Yeah, but I don't have the
12    money.  So that situation today remains the same.  I
13    don't have the money.
14              THE COURT:  All right.
15              THE PLAINTIFF:  So what am I do --
16              THE COURT:  Ms. Messner --
17              THE PLAINTIFF:  -- if I don't the money?
18              THE COURT:  Ms. Messner, then you need to
19    file a motion that you claim a change of circumstance
20    now that didn't exist at the time of the February 5,
21    2019 -- okay? -- order.  That's what you're going to
22    have to do.  It's as simple as that.
23              Now, the next point of relief, defendant
24    asks for you to be required to reimburse him $1,204.17
25    for his overpayment of child support while you were the
```

54

```
 1    plaintiff of parent -- you were the parent of primary
 2    residence on paper, but the children were residing with
 3    him.  I'm going to --
 4              THE PLAINTIFF:  Oh, no, no, no.
 5    (Indiscernible).
 6              THE COURT:  Be quiet, please.
 7              THE PLAINTIFF:  (Indiscernible) --
 8              THE COURT:  Ms. Messner, be quiet, please.
 9              THE PLAINTIFF:  Wait a minute.
10              THE COURT:  Ms. Messner --
11              THE PLAINTIFF:  (Indiscernible) --
12              THE COURT:  -- please stop.  I'm going to
13    deny the request.  You need say nothing.
14              THE PLAINTIFF:  Okay.
15              THE COURT:  Denied.
16              Next point of relief, directing the
17    plaintiff to bring all child support arrearages current
18    within 60 days.  $2,879.34 was due and owing as of
19    February 1, 2019.  Denied.
20              Next request, directing plaintiff to pay
21    all parochial school tuition as provided for in the
22    judgment of July 25, 2017.  It's $8,680.25 for the
23    academic years 2017 through 2018 and 2018 through the
24    remainder of 2019.  Judge Mawla ordered you to pay 25
25    percent.  That's your pro rata share, which totalled
```

47

55

```
 1    $8,680.25.
 2              I'm granting it and just saying pay what
 3    Judge Mawla said you're supposed to pay.
 4              The next item, direct --
 5              THE COURT:  He said that we agreed to pay
 6    it.  We didn't agree to that.
 7              THE COURT:  Ma'am, it doesn't matter.
 8              THE PLAINTIFF:  (Indiscernible) --
 9              THE COURT:  It doesn't matter if you agreed
10    to do it.  Judge Mawla ordered it --
11              THE PLAINTIFF:  No.  He --
12              THE COURT:  -- and that decision is on --
13    was on appeal, and the Appellate Division affirmed --
14              THE PLAINTIFF:  That is not what the order
15    said (indiscernible) --
16              THE COURT:  -- and the Appellate Division
17    affirmed his judgment.  I have a copy of --
18              THE PLAINTIFF:  (Indiscernible) --
19              THE COURT:  I have a copy of the decision.
20              THE PLAINTIFF:  Mm-hmm
21              THE COURT:  It's dated February 20 of 2019.
22              THE PLAINTIFF:  Well, we disagreed with it.
23    (Indiscernible) --
24              THE COURT:  It doesn't matter if you agree
25    to it.
```

56

```
 1              THE PLAINTIFF:  (Indiscernible) --
 2              THE COURT:  Ma'am, I am not going to
 3    continue to argue with you.  Okay?  It is not my order.
 4    It's the judgment of Judge Mawla.  It was appealed.
 5    The Appellate Division affirmed him.
 6              I am simply saying do what Judge Mawla
 7    ordered and the Appellate Division affirmed unless the
 8    Supreme Court tells you something to the contrary.
 9              THE PLAINTIFF:  All right.
10              THE COURT:  Next item, directing plaintiff
11    to file a complete case information statement by
12    February 15, 2019 to include all her income for 2018.
13              THE PLAINTIFF:  (Sneezes).
14              THE COURT:  I am ordering you, by May the
15    1st, to file a complete, current case information
16    statement, and I want you to include all of the
17    required attachments as the form references --
18              THE PLAINTIFF:  Uh-huh.
19              THE COURT:  -- and you must include your
20    2017 and 2018 tax returns, W-2s, 1099s and K-1s for
21    both 2017 and 2018.
22              Next point of relief, directing plaintiff
23    to pay 50 percent of the parochial school tuition for
24    the year 2016/2017.  The sum is $4,854.13.
25              Did Judge Mawla address this issue in the
```

48

57

```
 1    judgment?
 2              THE PLAINTIFF:  No.
 3              THE COURT:  Okay.  Mr. Gussis, was that
 4    addressed in the judgment, that earlier year?
 5              MR. GUSSIS:  No, Judge.
 6              THE COURT:  Okay.  Denied.
 7              MR. GUSSIS:  It was not --
 8              THE COURT:  Denied.
 9              MR. GUSSIS:  That was the prior -- that was
10    the prior agreement between the parties, Judge.
11              THE COURT:  Denied.  Denied.
12              Number 13, denying plaintiff any makeup
13    parenting time claimed for days she is working on her
14    parenting time or for time the children are engaging in
15    their activities on plaintiff's parenting time.
16              This issue is subject to the parent
17    coordinator.  Okay?  The parent coordinator will make
18    those recommendations and will determine whether or not
19    there should be makeup time, given the respective facts
20    and circumstances in each situation why the parenting
21    time did not occur.
22              Next point of relief --
23              THE PLAINTIFF:  One thing that Judge Mawla
24    -- one thing, your Honor, is that (indiscernible)
25    denied me parenting time to be a direct violation of
```

58

```
 1    the (indiscernible), that both parents have to have
 2    equal time and an equal relationship with the children,
 3    and Miklos has denied me that.
 4              I didn't see my (indiscernible) --
 5              THE COURT:  Let me -- let me --
 6              THE PLAINTIFF:  (Indiscernible) --
 7              THE COURT:  Ms. Messner, let me -- let me
 8    remind you once again I am not ruling against you with
 9    regard to that point of relief.  I'm just putting the
10    parties back in the status quo position where they're
11    supposed to be since the time that the Judgment of
12    Divorce was entered.  Work through the parent
13    coordinator.  Okay?
14              Next item for relief, relieving the
15    parents' daughter Olivia, now 18, from complying with
16    any parenting time as set forth in the judgment of the
17    Court dated July 25, 2017 and relieving her of any
18    obligations to plaintiff which would result in
19    defendant being penalized for her noncompliance.
20              Olivia is now a legal adult.  She's over 18
21    --
22              THE PLAINTIFF:  However, (indiscernible)
23    she's a minor child (indiscernible).  So at least take
24    that into consideration and order therapy, the therapy
25    that she was denied while -- during the time that she
```

49

59

1  was a minor.
2           He took her without her -- since she was 15
3  years old, and then even Judge Mawla and the other
4  therapist said that both children need to be in
5  therapy.
6           The reason why Judge Mawla didn't deny --
7  denied it is he said (indiscernible).  He said that I
8  didn't go, but I had -- I went (indiscernible) and the
9  children went.  And I have Dr. Schuler's billing
10 statement that shows that I went (indiscernible) --
11          THE COURT:  Ms. -- Ms. Messner --
12          THE PLAINTIFF:  (Indiscernible) --
13          THE COURT:  Ms. Messner, I'm apologizing.
14 I'm interrupting you again, but the point is this.
15 Even if everything you are telling me now is true --
16 and you would tell me more if I was inclined to take
17 your testimony about that issue -- it is irrelevant
18 because Olivia is 18.  I have no authority.  I have no
19 jurisdiction.  I have no power --
20          THE PLAINTIFF:  (Indiscernible) --
21          THE COURT:  -- to order her.  It's up to
22 her, as an adult, to decide with her parents when she
23 wants to spend time or if she wants to spend time
24 either with mom or either with dad.  Therefore --
25          THE PLAINTIFF:  (Indiscernible).  I have

60

1  not spoken to her since like we were an (indiscernible)
2  birthday party.  My family was destroyed because of his
3  kidnapping of the children, and that's why I would like
4  for the family therapy to be ordered so we all could
5  have our (indiscernible) to be together.
6           THE COURT:  Ms. Messner, you're divorced
7  for many years now.  Okay?
8           THE PLAINTIFF:  Really?  Why is it --
9           THE COURT:  More than a year now, I should
10 say.
11          THE PLAINTIFF:  Okay.  But it should have
12 never happened --
13          THE COURT:  Okay.
14          THE PLAINTIFF:  I should never
15 (indiscernible).
16          THE COURT:  The family is not going to get
17 back together.  There's not going to be therapy ordered
18 with regard to Olivia.  Okay?
19          THE PLAINTIFF:  (Crying).
20          THE COURT:  I'm -- I'm sorry that there's
21 nothing the Court can do at this point concerning any
22 adult child.
23          THE PLAINTIFF:  (Indiscernible) --
24          MR. GEIST:  Your Honor, I just wanted to
25 add for the record it was a judgment after a plenary

50

61

1    hearing.  It's an FD case.  So there was no marriage or
2    divorce.  The judgment from Judge Mawla was from the
3    trial -- from a plenary hearing.  I just wanted to
4    state that for the record.  That's all.
5              THE COURT:  Thank you for that correction,
6    sir.  You are -- you are correct.
7              The relationship is not going to be
8    reconciled and the parties are not going to live
9    together with the children.
10             All right.  Next item of relief is a
11   request for counsel fees in the amount of $4,425 to be
12   paid within 30 days of this order.  The Court is going
13   to deny the request for attorneys fees.  Each side will
14   bear their own respective attorney fees.
15             All right.  That concludes today's
16   proceeding.  I'm asking our team leader, Noella
17   (phonetics) to please provide to me a draft of the
18   order based upon what I've been deciding over the
19   course of today.
20             Whether the attorneys have enough time to
21   remain or not to get a copy of the order now -- if not,
22   we can fax out copies tomorrow.  It's already quarter
23   to 5, and it's going to be a lengthy order.  Okay?
24             THE PLAINTIFF:  Your Honor, what we -- you
25   know, I just want to let you know that if I did not

62

1    (indiscernible).  I wish this didn't happen.  I wish
2    this (indiscernible), and I want you to understand
3    that.
4              I want you to understand how my family was
5    destroyed because the defendant did not want to drive
6    to Garwood, and that was (indiscernible), and I just
7    want to say that.
8              I want to thank you for your time and for
9    (indiscernible).
10             THE COURT:  I'm not doubting the -- I'm not
11   doubting the love of either parent for their children,
12   ma'am.
13             Okay.  That will be the end of the
14   proceeding.  I'm going to go off the Polycom now, and,
15   Kevin, we will now go off the record and conclude
16   today's proceeding.
17             I thank everyone.  Good day.
18             THE COURT CLERK:  Thank you.
19             MR. GEIST:  Thank you, your Honor.
20             THE COURT:  Thank you.
21             Noella, I'll be in chambers whenever you're
22   --
23
24             * * * (End of Proceeding) * * *
25

63

```
 1
 2
 3
 4                         CERTIFICATE
 5
 6
 7         I, PATRICIA A. BRILL, C.S.R., the assigned
 8   transcriber, do hereby certify the foregoing transcript
 9   of proceedings on March 26, 2019, Digital Index Number
10   from 2:58:47 to 4:47:13, is prepared in full compliance
11   with the current Transcript Format for Judicial
12   Proceedings and is a true and accurate compressed
13   transcript of the proceedings as recorded.
14
15
16
17
18                         /S/PATRICIA A. BRILL, C.S.R.
19                         AOC NUMBER 470
20
21
22
23   Date: April 25, 2019
24
25
```

